# EXHIBIT #1

## DECISION
### In Re: Lisa Brady
#### Introduction

On December 12, 2014, the Superintendent of the Somersworth School District ("District"), Jeni Mosca, wrote to Lisa Brady, a special education teacher, informing Ms. Brady that she, as Superintendent, was recommending that Ms. Brady be dismissed by the Somersworth School Board ("Board"), pursuant to RSA 189:13 and ED 302(h). On January 9, 2015, January 12, 2015 and January 13, 2015, the Somersworth School Board conducted a public hearing at Ms. Brady's request in accordance with RSA 189:13. At the conclusion of the testimony, the Board convened in non-public session to discuss the charges and evidence and to render a decision. The Board voted on each of the charges in the Superintendent's letter of December 12, 2014 and made findings of fact prior to voting on the ultimate issue of dismissal. Those votes are described below.

### Preliminaries and Hearing

The Somersworth School Board responded to the Superintendent's recommendation of dismissal by convening a hearing on January 9, 2015. The Board authorized the hiring of Attorney John Teague of the law firm of Upton & Hatfield, LLP to advise the Board and to act as a hearing officer by conducting the hearing process.

Ms. Brady informed the District that she wished to exercise her right to a public hearing and that she would not be represented by counsel. Attorney Jeanne Kincaid of the law firm of Drummond Woodsum represented the administration throughout the process.

Attorney Teague conducted two conference calls with Ms. Brady and Attorney Kincaid on December 30, 2014 and January 7, 2015. During the first call, it was decided that the parties would send their proposed exhibits to Attorney Teague by email on January 5, 2015 and file their objections to exhibits by January 7, 2015. Preliminary to the hearing, Ms. Brady had requested that various staff members be subpoenaed to appear at the hearing by the Board. During the conference call on December 30, 2014, Attorney Teague explained that the Board lacked statutory subpoena power and was also prohibited from compelling testimony of staff by the collective bargaining agreement with teachers. Attorney Teague offered two alternatives of affidavit or offers of proof to Ms. Brady so that the expected testimony could be presented. During the second conference call, Attorney Teague, who by then had read and viewed the several hundred pages of exhibits and materials, discussed the need to maintain

confidentiality of both student and staff private information. To that end, since most of the proffered exhibits contained such references or information, Attorney Teague announced his intention to receive the evidence at the hearing as non-public documents pursuant to RSA 91-A:5 II and IV. Attorney Teague also discussed the need to move the hearing into non-public session pursuant to RSA 91-A:3 when testimony was about to include confidential staff or student information as part of the question or answer. Attorney Teague noted that Ms. Brady's preference was to make the whole hearing as public as possible and a commitment was made that the public process, including local television coverage, would be followed whenever confidential information was not involved.

The hearing began January 9, 2015 at 5:30 p.m. The hearing was recorded by a court stenographer and continued to 10:00 p.m. Subsequent sessions of the hearing occurred on January 12, 2015 and on January 13, 2015. The hearing was held in the council chambers of the Somersworth City Hall. The hearing concluded on January 13, 2015 at 8:45 p.m. at which time the Board convened in non-public session to deliberate. Attorney Teague took no part in deciding the issues in the case other than to assist in the organization of the issues before the Board and to provide assistance in the preparation of a draft written decision. That decision will be presented to the Board for public ratification and approval on January 20, 2015.

The Board made every effort to conduct a full and fair hearing during the three nights it heard the case. Present were Board Members Donald Austin, Kelly Brennan, Joanne Pepin, Jessica Paradis, Dana Rivers, Karen Hiller, Bob Gibson and Ken Bolduc. Board Chairman Austin chaired the meeting and, on nine occasions, entertained motions to go into non-public session pursuant to the applicable sections of RSA 91 -A. A roll call vote was taken each time. The administration presented it case through witnesses: Principal Dana Hilliard, Special Investigator Dr. Wendy Jack, Special Education Director Pamela MacDonald and the Superintendent, Jeni Mosca.

Following the testimony of each witness, Ms. Brady was given an opportunity to ask any questions of the witnesses she wished. Board members were then invited to ask questions directly of each witness. During the testimony, repeated references were made to items in the exhibits of significance to either side. The Administration then rested.

Ms. Brady then put on her case. Ms. Brady's only witness was herself, though references were made in her testimony as to expected testimony or opinions of various staff

members, in particular, certain paraprofessionals working in the self-contained classroom at the Middle School.

Following Ms. Brady's testimony, no questions were asked by the Administration. However, many questions were asked by Board members.

By prior agreement, each side was given an opportunity to present both an opening statement at the beginning of the hearing and a closing statement at the end. Both opportunities were taken. The Board ruled that it would not allow a Power Point presentation on screen by the Administration as Ms. Brady was under the impression that Attorney Teague had said that no

Power Point was possible in City Hall during her telephone conversation on January 9, 2015.

## Findings

1. The Board found that the charge that Ms. Brady acted in an unprofessional and unethical manner when she sought to have bodily fluids of another staff member tested for identification without the knowledge or consent of the staff member and thereafter reported the results of the test to others was sustained by the evidence. The Board found (by a vote of 7 yes, 1 abstention) that the behavior violated RSA 141-H:2. School District policies, in particular the Staff Ethics Policy GBEA (Administration #7), were also cited by the Board as prohibiting this conduct.

2. The Board found that the allegations concerning Ms. Brady's repeated communications to third parties, not connected with the School District, containing non-directory personal information regarding a student and, further, her doing so after being advised to cease, was sustained by the evidence. On a preliminary question as to whether the distribution of this information by email to dozens of institutions, publications and governmental officials at all levels, constituted violations of the Family Educational Rights and Privacy Act (FERPA), as the Board understood that Act, the vote was 7 yes and 1 no. The Board went on to discuss and point to the more specific policies of the District, i.e., the Staff Ethics Policy GBEBB (Administration #6) which contains the following: "District employees will . . . maintain all privacy and confidentiality standards as required by law" and the very explicit directive contained in Policy

GBEBB Employee — Student Relations:

10. Staff members shall not disclose information concerning a student, other than directory information, to any person not authorized to receive such information. This includes, but is not

limited to, information concerning assessments, ability scores, grades, behavior, mental or physical health and/or family background.

Though there was some disagreement as to the extent of the violations, a large majority of the Board found that these policies had been violated by Ms. Brady. The Board noted that Ms. Brady's belief that the public's right to know, regarding an alleged mischaracterization of a student in a public video, justified further discussions about the student or his team with unauthorized third parties may explain but does not excuse these violations. While the Board does not dispute Ms. Brady's right to express her opinions regarding a student's educational program, that opinion must be delivered within the confidential confines of the school and team meetings. Broadcasting that discussion, without explicit parental consent, to the world, steps over the line and violates the spirit and intent of law and District policy. In the Board's opinion, Ms. Brady's continuing to send emails containing this discussion, after receiving the directive of October 14, 2014 from the Superintendent (Administration 20), supported the Superintendent's charge of insubordination. The letter contains the following statement:
In the interim, I remind you to safeguard student privacy and that substantial violations of student confidentiality obligations will result in disciplinary action up to and including termination.

  3.  The charge that Ms. Brady's admitted conduct violated, in a serious and substantial manner, a number of District policies, is supported by the evidence. In particular, Policy GBEBB, Employee-Student Relations   has been disregarded by Ms. Brady on numerous occasions. Ms. Brady's belief that her suspicions of wrongdoing regarding a video of a student justifies ignoring that student's protected right of privacy is unfounded. The case law cited by Ms. Brady in her defense is inapposite. The cases pertain to situations in which the federal FERPA law was used to cover up wrongdoing in the university setting. The Board has seen no evidence that Somersworth staff, faculty or administration have participated in wrongdoing with regard to this student or in any kind of cover up of wrongdoing. Ms. Brady made it clear that she disagrees with some methodologies used in seeking to find a means of communication for this nonverbal student. However, in Ms. Brady's view, sincere differences of opinion become the foundation for charges of illegal and deceptive conduct on the part of the Administration and staff. The Board found these charges baseless. In the classroom, Ms. Brady's tendency to turn disagreements into intemperate, unsupported allegations appears to have poisoned the relationship between Ms. Brady and a paraprofessional. As noted above,

Ms. Brady violated policy GBEA, the Staff Ethics Policy, particularly the last two bulleted sections when she sought to use bodily fluids to tie the staff member to suspected conduct involving Ms. Brady's cabinet and I.D. badge. In the view of the Board, this behavior contributed to such a breakdown of trust and confidence between supervisor and subordinate that the Superintendent had no choice but to separate and transfer Ms. Brady and the staff member in the manner she saw fit. It is apparent that the decision was not only rejected by Ms. Brady but served as fuel for her campaign to tie the offending administrators to alleged but unsubstantiated crimes and misdemeanors.

Policy JRA (Administration #7) Student Records and Access makes it clear that no school district personnel will divulge or discuss with third parties, student records, defined as "all records, files, documents and other material containing information directly related to a student" beyond directory information. On this issue, members of the Board observed that the charge

regarding FERPA was not well defined or explained by the Administration. Nevertheless, on balance, the Board found that Policy JRA has been violated by Ms. Brady particularly given that she was advised in writing to refrain from doing so. The Board concluded its discussion of the third charge of violation of District policies by taking a vote. The vote was 7 yes, 1 abstention, on a motion to find the charge substantiated.

4.      The final charge arises from Ms. Brady's repeated statements that she was "not interested" in her new assignment to the Maple Wood Elementary School and insists that she be reinstated at the Middle School in the self-contained classroom. While Ms. Brady argues continuously of her dedication and passion for working with seriously disabled students, she refuses to acknowledge that her behavior contributed to and made necessary her removal from the Middle School. The Board found by a unanimous vote that Ms. Brady has abandoned her assigned position at the Maple Wood Elementary School. The Superintendent's authority to reassign staff is central to the orderly and successful operation of the District and is memorialized in school policy, the collective bargaining agreements with staff and their individual contracts. Ms. Brady's statements and conduct demonstrate a refusal to accept the Superintendent's decision and, alone, justify the recommendation of dismissal.

In sum, the Board finds that the statutory bases for dismissal have been met. The Board found by a vote of 7 yes, 1 no, that Ms. Brady's conduct has been immoral. Following discussion, the Board adopted for clarity the following definition of "immoral" from

Dictionary.Ref.com as:

violating moral principles, not conforming to the patterns of conduct usually accepted or established as consistent with principles of personal and social ethics.

By a vote of 7 yes, 1 no, the Board found that Ms. Brady's conduct, particularly with regard to her treatment of her subordinate, was unethical and therefore immoral.

The Board found by a vote of 7 yes, 1 no, that Ms. Brady's conduct demonstrates a failure to maintain the competency standards established by the District. The Board referenced a number of examples including Ms. Brady's abandonment of her assigned teaching position and her disregard for the obligation to protect the privacy rights of staff and students.

Finally, the Board found by a vote of 8 yes, 0 no, that Ms. Brady has repeatedly failed, after being warned, to conform to regulations prescribed. In particular, the Board referenced Administration Exhibit 20 in which the Superintendent made it clear that Ms. Brady was to cease any conduct that violated student privacy rights and Administration Exhibit 10 in which she was cited for her failure to administer the state's NECAPS assessment as required by the student's IEP.

A final vote was taken on the Superintendent's recommendation of dismissal subject to ratification in public session. The vote was unanimous in favor of a motion to supportthat recommendation of dismissal.

Signed,
Donald Austin, Chairman
Somersworth School Board

# EXHIBIT#2

Somersworth



**JRA**

## STUDENT RECORDS AND ACCESS

See also EHB, JRC

### ACCESS TO STUDENT RECORDS - FERPA

<u>General Statement.</u> I t is the policy of the School Board that all school district personnel will follow the procedures outlined herein as they pertain to the maintenance of student records. Furthermore, it is the policy of the School Board that all school district personnel will follow the provisions of the Family Educational Rights Privacy Act (FERPA) and it's corresponding    regulations

<u>Education Record.</u> For the purposes of this policy and in accordance with FERPA, the term "educational record" is defined as all records, files, documents and other material containing information directly related to a student; and maintained by the school district; or by such other agents as may be acting for the school district. Such records include, but are not limited to, handwriting, videotape, audiotape, electronic or computer files, film, print, microfilm and/or microfiche.

<u>Directory Information.</u> For the purposes of this policy, and m accordance with the provisions of FERPA and New Hampshire RSA 1 89: I-e, the term "directory information" means:

• Students' name, address, telephone number, date and place of birth, dates of enrollment
• Parents/guardians name and address
• Students' grade level, enrollment status and dates of attendance
• Students' photograph
• Students! participation in recognized school activities and sports
• Weight and height of members of athletic teams
• Students' diplomas, certificates, awards and honors received

The District may release or disclose student directory information without prior consent of the student's parents/eligible students. Within the first three weeks of each school year, the District will provide notice to parents/eligible students that the District may publish directory information without their prior consent. Parents/eligible students will be given until [date to be determined by the Superintendent] to notify the District in writing of any or all directory information items that they refuse to permit the District to release or disclose. Notice from a parent/eligible student that any or all direction information shall not be released will only be valid for that school year and must be re-issued each school year.

Somersworth

## STUDENT RECORDS AND ACCESS

Parents/eligible students may be assisted or represented by one or more individuals of their own choice, including an attorney.

The school board will issue its final decision in writing within 30 days of the hearing, and will notify the parents/eligible student thereof via certified mail, return receipt requested.

The school board will base its decision solely on the evidence presented at the hearing. The school board's written decision will include a summary of the evidence and the reasons for its decision.

If the school board determines that the student record should be changed or amended, it will direct the Superintendent to do so as soon as possible. The Superintendent will then contact the parents/eligible student for a meeting so they can review and inspect the records to verify that they have been changed or amended. At this meeting, both parties shall sign a document/form stating the date the records were changed and that the parent/eligible student is satisfied with the correction.

The school board's decision will be final.

Disclosure of Student Records and Student Information. In addition to directory information, the District may disclose student records and student information without consent to the following parties or under the following conditions.

1. School Officials with a Legitimate Educational Interest. School officials with a legitimate educational interest may access student records. "Legitimate education interest" refers to school officials or employees who need to know information in a student's education record in order to perform the employee's employment responsibilities and duties.

2.      Other schools into which a student is transferring or enrolling.

3.      Officials for audit or evaluation purposes.

4.      Appropriate parties in connection with financial aid.

5.      Organizations conducting certain studies for, or on behalf of the school district. Student records or student information will only be provided pursuant to this paragraph if the study is for the purpose of developing, validating or administering predictive tests; administering student aid programs; or improving instruction.

6.      Accrediting organizations.

7.      Judicial orders or lawfully issued subpoenas.

8.      Health and safety emergencies.

# EXHIBIT #3

## Virginia Barry Complaints   July 11, 2014

-------- Forwarded Message --------
| | |
|---|---|
| **Subject:** | Complaint |
| **Date:** | Fri, 11 Jul 2014 13:23:24 +0000 |
| **From:** | Lisa Brady <lisa.brady@comcast.net> |
| **To:** | Barry, Virginia <Virginia.Barry@doe.nh.gov>, Jim Bianco <jbianco@biancopa.com>, Christina Ferrari <cferrari@biancopa.com> |

Dear Commissioner Barry,

SAU 56 representatives; Pam MacDonald (Director of Special Education), and Superintendent Jeni Mosca, acted with deliberate ignorance of the truth and reckless disregard when they allowed the NH Institute of Disability representatives, with a conflict of interest, Dan Habib and Michael McSheehan,  to portray in a video, a significantly profound, cognitively impaired student in my class, AC, as a college bound <u>while using federal grant money obtained from the USDOE (</u>The National Center and State Collaborative (NCSC) and  Schoolwide Integrated Framework for Transformation (SWIFT)).  Superintendent Mosca and Special Education Director, Pam MacDonald's actions amount to fraud.  They took advantage of one of the most vulnerable students in their school district in order to promote their own careers.
In September 2012 when the student transferred to Somersworth middle school, it was immediately apparent that any data used to support that the student was functioning on grade level was done using a controversial, experimental method of communication called "Facilitated Communication."  Dr. G, a behavior consultant that worked in my program indicated at the time that he did not believe the student was intellectually at the level being claimed and recommended that I speak with the special education director about his involvement with my student.  He also said that it was sad when he had to deal with the families on the other end when they find out that the facilitator was the one doing the writing.  The speech pathologist at the Middle School, Robin Scott, indicated that she believed that AC was not cognitively functioning on grade level and that we should not be relying solely on the data used from facilitated communication to determine his cognition.  Additionally, she did not feel comfortable using facilitated communication
 because it was not approved by ASHA, her professional governing body.

- At that time I requested additional communication testing and Pam MacDonald denied my request.
- The team collected data all summer and submitted it to Pam MacDonald for review; it supported that the student did not have alphabet or letter recognition.
- I attempted to establish a meeting to try to change the student's IEP by putting the student back on an Alternative Assessment.
- When educational records were sent up to the middle school, there were recent evaluations to support that the student was significantly impaired.
- The student did not turn in an alternative portfolio as required in the spring of 2012 and reasoned that Michael McSheehan from the Institute of disability and consultant with NHDOE in the area of alternative portfolios, recommended that he take the NECAPS.
- Director MacDonald stalled my attempts to set up a meeting.
- I communicated with AC's parent and they said that they have tried to do facilitated communication and A never wrote anything and they didn't believe it.  They also agreed that A was functioning at a much lower level than what the Idlehurst team had claimed.  She also expressed anger about the Idlehurst team using writing through facilitated communication with A to file a complaint against them with DCYF about abuse. (just one of the major reasons why ASHA does not approve)
- I filed a grievance against Director MacDonald in September 2012 and noted my fear of retaliation.
- Given that the student's plan did not indicate that facilitated communication was an accommodation, the middle school did not use it and relied on Picture Exchange Communication.
- Removed Information
- In March 2013 I was retaliated against by Director MacDonald, entering false allegations into my employment file.
- I entered a rebuttal to the false allegations and once again noted my fear of retaliation.

  - The Institute of Disability did not produce A's video or use it until this past February 2014 and, once again, I was retaliated against with false information entered into my employee file and a forced to leave my job at the middle school and sent to Maplewood and had I not hired attorney's at Bianco Professional Associates, I have no doubt the Superintendent would have fired me.
  - My attorney's are currently in the process of filing a whistlblowers suit and I want my job back at the middle school.

- I would welcome you to contact my attorney's because, as you can imagine, there are many factors involved with this case.

**Summary of the past five IEP's for the Student Student's (taken from one of my grievance letters to the school district.**

| IEP Date | Primary Coding | Excerpt about Development | Describe why student cannot take regular assessment. |
|---|---|---|---|
| **12/12/2008** | Mental Retardation/Autism | Math Present Level: Student can count to two while engaging in a movement activity. | "Student has a limited vocabulary and is not yet able to read. The regular assessment is not appropriate to accurately measure Student's abilities and his degree of progress." |
| **12/18/2009** | Mental Retardation/Autism | Speech:  Present Level: "significant delays in all academic areas and is presently working on pre-academic and functional skills." | Student's communication style has made it difficult to assess his current cognitive level of function and adaptive behavioral skills are significantly below grade level. He is receiving systematic instruction with tasks in small steps and requires a 1:1 support person at all times for all tasks |
| 12/12/2010 | Mental Retardation/Autism | Able to recognize and match a variety of pictures | The computer based MAPS testing is not an appropriate method of measuring Student's academic growth. Student is non-verbal and a non-reader who requires maximum assistance in all areas of academics and life skills |
| 12/12/2011 ***** The Idlehurst Team Was obligated to complete an alternative assessment! | Autism | Student is functioning in the skill level of a three year old with some aspects of his self-help such as toileting and cutting food. | (a) Describe why student cannot take regular assessment.Student's communication style has made it difficult to assess his current cognitive level of function and adaptive behavioral skills are significantly below grade level. He is receiving systematic instruction with tasks in small steps and requires a 1:1 support person at all times for all tasks. |
| 05/24/2012 After the Window Of Testing: Oct. 2011- May 5, 2012 | Autism | He requires information to be read aloud to him, but performs most grade-level tasks proficiently with generous support | Entered  NECAP testing in IEP |

http://www.whocaresaboutkelsey.com/about/the-mini-films

A is a fifth grader with autism who is non-verbal and exhibits significant behavioral challenges. Through effective communication supports, A was able to learn fifth grade general education curriculum in a general education classroom. Support for this film was provided by the National Center and State Collaborative.
Please investigate this issue.  My attorneys can be reached at the number below.
Sincerely,
Lisa Brady, M.Ed.
*Jim Bianco, Esquire, Christina Ferrari, Esquire. Bianco Professional Association, Attorneys at Law 18 Centre Street Concord, NH 03301 Phone: (603) 225-7170 Fax: (603) 226-0165  cferrari@biancopa.com   www.biancopa.com*


-------- Forwarded Message --------

   Subject: Complaint
   Date:     Fri. 11 Jul 2014  13:23:24+0000
   From:    Lisa Bradylisa.brady@comcast.net
   To:       Barry, Virginia <Virginia.Barry@doe.nh.gov>, Jim Bianco
<jbianco@biancopa.com>, Christina Ferrari <cferrari@biancopa.com>

Dear Commissioner Barry,

I am writing to further clarify my complaint with regard to fraud  against Superintendent Mosca and Special Education Director, Pam MacDonald.


The U.S. Department of Education Office of Inspector General (OIG) defines fraud as follows
1.     What is fraud in the context of education grants?
In a nutshell, fraud occurs when education grants are not applied for, received, or spent for their intended purposes, generally through theft, misappropriation, or false statements.  Fraud can occur in applying for a grant, such as if false information is provided on the grant application.  Fraud can also occur during performance of a grant, such as through false assertions on a performance report, theft or misappropriation of grant funds, or certain types of lack of performance under the grant.  Fraud also happens when grantees try

to cover up underlying problems by <u>creating false documents,</u> by destroying documents, or by <u>not being truthful with investigators or others</u>. It's important to recognize that there can be fraud even if no money has been received, such as when false information is provided in a grant application, and that type of fraud should also be reported, investigated, and prosecuted.

SAU 56 Superintendent Mosca and Special Education Director, Pam MacDonald, may not have actually received the grant money but, they benefited from the video completed by Michael McSheehan and Dan Habib by drawing attention to the school district and what wonderful things they were doing with inclusion. They were aware that the video completed on A was for a grant funded project. They knowingly allowed fraud (creating a false documentary) to occur and did so in order to further their careers. Additionally, they have made my life increasingly difficult, causing significant emotional distress, due to the ongoing retaliation that has occurred since I brought up the fact that my student's intelligence was being determined using what is considered and experimental strategy (facilitated communication). In determining that A was "college bound," they did so while ignoring all evaluations and IEP's within his record to support his significant cognitive impairment. They did so knowing that he did not have number or alphabet recognition. Pam MacDonald refused to have A re-evaluated, at my request, by an expert to determine his actual abilities at that time. Superintendent Mosca and Pam MacDonald, knowingly and willfully abused their position of trust for personal gain (attention and career accolades) at the expense of AC and his family and have since engaged in a pattern of retaliation against me.
Please contact my attorney's at the number below and investigate my complaint or forward to the office of attorney general for investigation.
Sincererly,
Lisa Brady, M.Ed.

<u>Bianco Professional Association</u> Attorneys At Law | 18 Centre Street Concord, NH 03301 | Telephone: 603-225-7170 | 800-262-8112 | Fax: 603-226-0165

# EXHIBIT#4

Virginia M. Barry, Ph.D.
Commissioner of Education
Tel. 603-271-3144
Paul K. Leather
Deputy Commissioner of
Education



Tel. 603-271-3801

STATE OF NEW HAMPSHIRE
DEPARTMENT OF EDUCATION
101 Pleasant Street
Concord, N.H. 03301
FAX 603-271-1953
Citizens Services Line 1-800-339-9900

November 13, 2014

Lisa Brady
8 Constable Road
Dunham, NH 03824

Dear Ms. Brady,

The New Hampshire Department of Education received your complaint dated October 14, 2014 of
education grant fraud against the Institute of Disability for the film project Education Revolution: The
Students with Emotional/Behavioral Challenges. The New Hampshire Department of Education provided
funding for this film project through the Governor and Council process. The Institute of Disability
submitted invoices regarding the amount for reimbursement as well description of the costs.

Upon review of the documentation submitted by the Institute of Disability, the New Hampshire
Department of Education has concluded that the grant money was used and reimbursed appropriately.
Therefore, the New Hampshire Department of Education has concluded that this complaint is unfounded.

Sincerely,

*Virginia M. Barry*

Virgin Virainia M. Barry. Ph.D.         M.
Barry, Ph.D.
Commissioner of Education

VB/st

# EXHIBIT#5

# STATE OF NEW HAMPSHIRE
# SUPERIOR COURT OF STRAFFORD COUNTY
( )Court
(X)Jury

| | | |
|---|---|---|
| Lisa M. Brady | ] | January 2, 2018 |
| **Plaintiff** | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | Civil No._____ |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities; JEANNE KINCAID, Attorney ] | | |
| for SAU#56, in both her individual and official | ] | |
| capacities. | | |

### Defendants

### Declaration of Writ of Summons

The Plaintiff, Lisa Brady, alleges the following complaint against Defendants.

### Preliminary Statement

This claim against the Somersworth School District (SAU 56), Jeni Mosca,

Pamela MacDonald, and Jeanne Kincaid arises from Lisa Brady's termination

hearing which; was decided on January 20, 2015. The Defendant's charged

Plaintiff, Lisa Brady, with violating NH State Laws for DNA testing (NH RSA 141

H;2) without legal jurisdiction. "The law requires proof of jurisdiction to

appear on the record of the administrative agency and all administrative

proceedings." *Hagans v Lavine 415 U. S. 533. Lisa Brady's teacher contract bargaining agreement (CBA hereafter), under article 5 A [Ex 8] stipulates an agreement between the School Board and the Association and a commitment to adhere to RSA 273-A (Public Employee Labor Relations).  The agreement prohibits unfair labor practices and using a school board hearing to determine that Brady violated NH RSA 141 H:2 (DNA laws) without authoritative or legal jurisdiction, breaches the collective bargaining agreement. Additionally, in the State of New Hampshire under Title XV Chapter 189:13 Dismissal of Teacher. – "no teacher shall be so dismissed before the expiration of the period for which said teacher was engaged without having previously been granted a full and fair hearing."*  Brady was denied a full and fair hearing and the Somersworth School Board violated the law when they publicly and deceitfully took on legal jurisdiction afforded to NH Superior Court to determine Brady was guilty of violating DNA laws. [Ex 33-40].

## Complaint Venue and Subject Matter Jurisdiction

- This Court has jurisdiction and venue is proper because Somersworth School District and at least one defendant resides in Strafford County and
- because the amount in controversy exceeds $15,000.

## Complaint Viability

- February 22, 2016 Brady filed a federal claim in NH District Court
- November 3, 2016 NH District Court Judge DiClerico dismissed Brady's federal claims and stated the following in his order granting defendants' motion to dismiss: *"The defendants' judgment is granted. The state law claims are dismissed without prejudice.*
- November 29, 2016, a final order was issued dismissing Brady's complaint

filed with NH.

- <u>November 29, 2016</u> Brady filed an appeal of Judge DiClerico's decision with the First Circuit Court in Boston Massachusetts.

- <u>October 13, 2017</u> The First Circuit Court found in favor of the Defendants' and denied Brady's Appeal of Judge DiClerico's decision related to Brady's federal claims. The Court of Appeals stated, "Having properly disposed of Brady's federal claims against the school district, Mosca, and MacDonald, the district court did not err in declining to exercise supplemental jurisdiction over Brady's state law claims against those parties." [Ex p. 42]

- <u>October 25, 2017</u> Brady Appealed the First Circuit Decision.

  **Parties**

1. The Plaintiff, Lisa Brady, was a tenured teacher and worked for the Somersworth School District for 7.5 years until her termination on January 20, 2015. Brady is and was at all times mentioned in this complaint, a resident of Stafford County, New Hampshire.  Brady has a master's degree in special education and resides at 8 Constable Road, Durham, NH 03824.

2. The Defendant, Somersworth School District (SAU 56) is a New Hampshire public school district, located at 51 West High Street, Somersworth, NH 03878

3. The Defendant, Jeni Mosca, was employed at all times mentioned in this complaint by Somersworth School District up until her retirement this past July 2017.  This party resides at:  24 High Street, Hampton, NH 03842.

4. Defendant Pam MacDonald is now and at all times mentioned in this complaint the director of special education for SAU 56 and at all time a resident of Strafford, County, NH.  This party resides at 2 Beech Hill Rd. Durham, NH 03824. This defendant currently works for SAU 56 at 51 West High St., Somersworth NH, 03824.

5. Defendant Jeanne Kincaid was and is now and at all times mentioned in this complaint a lawyer practicing out of Portsmouth, NH for Drummond and Woodsum. This party resides at 24 Brickyard Lane, Eliot Maine 03903. Her work address is 100 International Drive, Suite 340, Portsmouth, NH 03801.

**Factual Background**

6. Brady was a tenured teacher at Somersworth Middle School and had excellent teaching evaluations from the time she began teaching at Somersworth between August 2008 and January of 2015. [Ex p. 44-49]. Brady had a teaching contract with Somersworth and, as a tenured teacher, had an existing teacher contract [Ex p. 1] and CBA. [Ex 2-31].

7. September 2, 2012 Brady filed an internal civil rights complaint with Somersworth Superintendent, Jeni Mosca, against Somersworth Special Education Director, Pam MacDonald. [Ex p. 50-68]. The complaint detailed her student, AC, and Pam MacDonald's involvement with violating his IEP by utilizing a method of communication, facilitated communication, that was not in the student's IEP and for allowing district personnel to falsify Brady's student, AC, and his cognitive abilities in a public film on inclusion, titled 'Axel,' selling out of UNH Institute on Disability. The project involved the use of federal and NH State education grant funding and claims to be a documentary based on the truth.

8. February 1, 2013, Brady documented additional IEP/civil rights violations committed by Somersworth Special Education Director Pam MacDonald against Brady's special needs student, AC. [Ex p. 69-70].

9. March of 2013: MacDonald placed a false and misleading disciplinary warning in Brady's personnel file, directly related to her case management of AC. [Ex p. 71-72].

10. <u>April 1, 2017</u>: Brady filed another civil rights grievance against SAU 56 Director MacDonald. [Ex p. 73-107].

11. <u>April 17, 2013:</u> Lisa Brady entered another a rebuttal to the false and retaliatory warning that had been placed in Lisa Brady's file. [Ex p. 108-112].

12. <u>May 1, 2013:</u>  Middle School Principal Hillard changed Brady's title to include more responsibility as a "School Wide Inclusion Specialist." [Ex p. 113].

13. <u>December 14, 2013:</u> Brady informed Middle School Principal Dana Hilliard about concerns she had related to her program assistant, whom she did not have supervisory authority over, related to addiction issues with the prescription drug Oxycontin and falling asleep while working with a nonverbal autistic child with low cognition in her program.  [Ex p.114].

14. <u>December 15, 2013</u>: Somersworth Speech Pathologist Robin Scott agreed with Brady regarding concerns about safety related to the program assistant's drug use. [Ex 115].

15. <u>January 15, 2014</u>: Brady's program assistant sent her an email apologizing for whatever she did and stated the following: "If it wasn't for you noticing how the medication was affecting me I don't know where I be. <u>I don't recall a lot that I did or said during that time.</u> I'm sorry if I did something." [Ex p.116].

16.  January 17, 2014: Brady frustrated by the lack of investigation, had her private property DNA tested (badge & mug) on her own time. The only name written on the test was Brady's.  [Ex p.117-118].

17. <u>February 18, 2014</u>: Brady reported to Principal Hilliard that she did not tell anyone in the middle school about her accusations of her program assistant biting her badge other than he and Speech Pathologist, Robin Scott.  [Ex p.119].

18. February 20, 2014: Brady reported to Principal Hilliard and mediator, Emily Hayden, that mediation confidentiality agreement with her assistant was breached directly after mediation. [Ex p.120].

19. March 6, 2014: Brady sent an email to Superintendent Mosca stating that middle school union representative, Jeni Hahn, "contacted me today saying that because I had DNA tested from saliva on my badge and coffee mug that Starr had been using (my property), that I would potentially be removed from my position at the middle school." [Ex p. 121].

20. March 10, 2014: Middle School Principal, Dana Hilliard sent Brady a letter accusing Brady of violating NH State Law RSA 141 H:2 and threatens termination. [Ex p.122].

21. March 11, 2014: Internal posting for a job opening at Maplewood Elementary School for a grade 3 elementary teacher. Flyer was placed in Brady's employee file. (violated Brady's CBA) [Ex p.123-124].

22. March 12, 2014: Superintendent Jeni Mosca permanently transferred Brady from the Middle School to Maple Wood Elementary. [Ex p.125].

23. March 22, 2014: The mini film "Axel" debuted in Keene, NH. [Ex p.126]

24. June 2014: New Hampshire Educator Information System support that Somersworth had changed her assignment from "General Special Education" to a "Paraeducator-II" (violations of the CBA). [Ex p.127].

25. March 2014: Brady went out on the Family Medical Leave Act due to the mental stress over the transfer.

26. June 2014: Brady returned to Maplewood Elementary School for the last five days of school.

27. July 11, 2014: Brady sent a complaint in two emails to NH Commissioner of Education, Virginia Barry with information from AC's IEP's and evaluations to prove he had a severe cognitive deficit and yet the public film "Axel" portrayed

him as no longer cognitively impaired, functioning "on grade level," and "college-bound." Brady accused Mosca and MacDonald of fraud. [Ex p.128-135].

28. August 20, 2014: Attorney Bianco (Brady's attorney) sent Attorney Jean Kincaid a letter requesting a hearing before the SAU56 School Board regarding her unlawful transfer. [Ex p. 136-137].

29. August 26, 2014: Jean Kincaid denied the request for a School Board Hearing using Article 10 of the CBA to deny that Lisa Brady had a right to a hearing. [Ex p.138-139].

30. August 2014, Brady reported to Maplewood Elementary School

31. September 8, 2014 Attorney Bianco requested a hearing before the NH State Board of Education. [Ex p.40-141].

32. September 17, 2014: Lisa Brady sent NH Commissioner of Education, Virginia Barry an email questioning the status of her investigation related to the complaint that had been lodged against Mosca and MacDonald on 7-11-2014. [Ex p.142].

33. September 20, 2014: Lisa Brady e-mailed NH Commissioner of Education, Virginia Barry and asked if she wanted to interview her about the allegations of fraud. [Ex p.143].

34. September 25, 2014: Steve Berwick denied Brady's appeal for a hearing related to her unlawful transfer.  [Ex p.144].

35. October 2, 2014: Lisa Brady's physician recommended a medical absence due to the ongoing job-related stress. [Ex p.145].

36. October 7, 2014: Lisa Brady filed a Whistle-Blower case with the NH DOL regarding her unlawful and retaliatory transfer and demotion from Somersworth Middle School to Maplewood Elementary School. [Ex p.146-154].

37. <u>October 9, 2014</u>: Lisa Brady emailed Virginia Barry and members of the press, along with SAU 56 Principal Dana Hilliard regarding the criminal allegations made against SAU 56 and UNH IOD staff (Brady did not list the student's <u>last name</u> within the emails). [Ex p.155-157].

38. <u>October 14, 2014</u>: Jeni Mosca wrote a letter to Lisa Brady and threatened termination. [Ex p.158].

39. <u>October 15, 2014</u>:  NH Commissioner Virginia Barry denied Lisa Brady a hearing to appeal her transfer. [Ex p.159].

40. <u>October 15, 2014</u>:  Lisa Brady e-mailed Superintendent Jeni Mosca stating the following: "Please be more specific so that I can offer a defense." And, stated the following about the "Axel" film: "The district's interpretation of Axel's abilities was grossly over stated and pose a safety risk to AC." [Ex p.160-161].

41. <u>October 29, 2014</u>: Lisa Brady wrote to the Somersworth Board complaining that Attorney Kincaid violated professional conduct under Rule 1.2 by "assisting a client in conduct that the lawyer knows is criminal or fraudulent." Directly related to Kincaid's allegations that Brady violated NH RSA 141 H:2. [Ex p.162-163].

42. <u>Email Evidence</u>:  Copies of the full emails used to terminate Brady and evidence to prove that she made a good faith effort to protect student information by not listing student's last name and focused on the illegal actions of Superintendent Mosca and Pam MacDonald.  [Ex 189-206]

43. <u>January 9, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

44. <u>January 12, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

45. <u>January 13, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

46. <u>January 20, 2015</u>: Lisa Brady and SAU56 attended the Department of Labor Whistleblower hearing in Concord, New Hampshire (hearing regarding Brady's retaliatory transfer from the Middle School to Idlehurst).

47. January 20, 2015: Somersworth School District officially terminated Lisa Brady's employment. [Ex p.33-40].

48. February 16, 2015:  Attorney Kincaid publicly defamed Brady on local television at a grievance hearing at Somersworth City Hall. [Ex p. 169-170 full testimony at 166-171].

49. July 9, 2015: NH DOE Commissioner Barry denied Lisa Brady an appeal to her termination. [Ex p.174].

50. July 13, 2015:  Lisa Brady filed an appeal to NH DOE for a hearing. [Ex p.175-176].

**Brady's Termination Findings**

51. Brady's teachers' contract stated the following under Article 5C Teachers' Rights #5 as follows: "*No teacher shall be disciplined except for just cause.*" [Ex p. 9]. Brady's due process before the Somersworth School Board was an illegal process. The Somersworth School Board failed to follow statutory procedures for jurisdiction when they charged and found Brady violated NH RSA 141 H:2.  The 'rules of evidence' do not apply at school board dismissal hearings and Brady was denied any opportunity to defend herself meaningfully in a manner consistent with the NH Constitution. "The law requires proof of jurisdiction to appear on the record of the administrative agency and all administrative proceedings." *Hagans v Lavine 415 U. S. 533. The Somersworth School Board found Brady violated the law without jurisdiction and without a complaining witness.*

52. The SAU 56 School Board listed 4 reasons for Brady's termination and the first, third, and fourth reason for termination referenced claims that Brady violated NH DNA laws (RSA 141 H:2). [Ex 33-40]. Within Brady's dismissal letter the Somersworth School Board stated the following within reason number one: *"The Board found that the charge that Ms. Brady acted in an*

*unprofessional and unethical manner when she sought to have bodily fluids of another staff member tested for identification without the knowledge or consent of the staff member and thereafter reported the results of the test to others was sustained by the evidence.* ***The Board found (By a vote of 7 yes, 1 abstention) that the behavior violated RSA 141 H:2.*** *School District Policies, in particular the staff ethics Policy GBEA (Administration #7), were cited by the Board as prohibiting this conduct.*" [Ex p.36].

53. Violations of RSA 141 H:2 are remedied in <u>superior court</u> (RSA 91-A:7 Violation) under NH 141-H:6 Civil Action (2015). – *An aggrieved individual <u>may bring a civil action under this chapter</u> and, if successful, shall be awarded special or general damages of not less than $1,000 for each violation, and costs and reasonable legal fees. Source. 1995, 101:1, eff. Jan. 1, 1996.*

54. Within Part II, Article 73-A of the New Hampshire Constitution, the Supreme Court detailed the rules of evidence. Unlike school board hearings, the Rules of Evidence apply to all court proceeding in the State of New Hampshire. SAU 56 denied Brady due process rights to the rules of evidence when they found that she violated RSA 141 H:2. Brady was denied an opportunity to confront any complaining witness related to violations of DNA laws because no staff member at SAU 56 ever accused Brady of that violation.

55. Brady was subjected to <u>two disciplinary procedures</u> for violations of NH RSA 141 H:2; first being transferred and demoted in March of 2014 and then terminated on January 20, 2015 for the same offense, violations of NH RSA 141 H:2. [Ex p.122 & p. 33-40]. Double Jeopardy in the United States Constitution states that no person shall be "subject for the same offense, to be twice put in jeopardy of life or limb."

56. The Somersworth School Board stated the following in Brady's termination decision:

"*The Superintendent made it clear that Ms. Brady was to cease any conduct that violated student privacy rights and Administration Exhibit 10 in which she was cited for her failure to administer the State's NECAPS assessment as required by the student's IEP.*"  [Ex p.40].

57. The Somersworth School Board's decision to terminate Brady had a disparate-impact on Brady and evidenced a strong bias on the part of the Board. Brady was terminated for violating student privacy when, in "*good faith,*" she reported the criminal involvement of Mosca and MacDonald directly related to their role in the exploitation of Brady's former student, AC. [Ex 189-206]. Brady did not personally identify AC by using his full name in any of the e-mails that resulted in her termination. The Somersworth School Board terminated Brady for reporting a crime involving privacy violations and yet, Somersworth School Board did not even investigate or hold administrators (Mosca and MacDonald) accountable for a serious breach of student privacy when they allowed staff and administrators to falsify AC's abilities in the public film "Axel," that is currently selling nationwide and does reveal AC's last name to the public within the film.  The Somersworth School Board terminated Brady for reporting a crime, committed by the school district's superintendent and Special Education Director, to the press and yet, did not even investigate Brady's criminal allegations against a student in the Somersworth School District.

58. The Somersworth School Board determined that Brady violated AC's IEP when she did not administer the NECAP testing to AC, it also had a disparate impact on Brady when compared to staff at Maplewood Elementary School. [Ex 40]. The Maplewood team violated AC's IEP in May of 2012 when they failed to send AC's portfolio into the State Department of Education and yet, the Idlehurt Elementary Staff responsible received no punishment.  [82-106]

59. After AC transferred from the Idlehurst Elementary School to the Middle School, his IEP was changed in December of 2012 and he was put back on an alternative portfolio. AC's IEP was changed during the filming of "Axel". AC did not have the cognitive capability to participate in the NECAP [see most recent testing Ex 211-213] testing and Pam MacDonald expected Brady to put her hand on top of AC's hand and take the test for him using a controversial method of communication, facilitated communication, which; was not in AC's IEP or condoned by his Parent. [Ex 187-188].

60. On page 7 of Brady's termination hearing decision, the Somersworth School Board unanimously found that Brady had abandoned her teaching position. [Ex p. 39]. However; the evidence supports that Brady was out on a <u>valid medical leave</u> due to the emotional distress directly related to Somersworth School District's unlawful (without jurisdiction) finding that Brady violated DNA laws and transfer from the middle school to the elementary school in March of 2014. [Ex p.145].

## Count I  Breach of Contract

61. Plaintiff repeats the allegations of paragraphs 1 through 60 of the specifications.

62. Brady's teachers' contract stated the following under Article 5C Teachers' Rights #5 (p. 9): *"No teacher shall be disciplined except for just cause."*

63. On January 20, 2015, the Somersworth School District breached Lisa Brady's teaching contract with willful and wanton negligence when they terminated her employment based on a decision that Brady violated state DNA laws (NH RSA 141 H:2). They did so without legal jurisdiction or "just cause" to make that determination.

64. The Somersworth School District did not have NH Constitutional legal authority or jurisdiction to determine that Brady Violated NH RSA 141 H:2.

65. Somersworth School District's (SAU 56) breach of contract has caused Brady substantial damage, she has suffered economic loss and emotional distress.

## Count II Deceit

66. Plaintiff repeats the allegations of paragraph 1-65 of the specification.

67. Somersworth School District misrepresented an issue of material fact to the plaintiff, knowing it was false: The Somersworth School District misrepresented their authority to determine if Lisa Brady violated state law when they used a school board hearing, without legal jurisdiction, to determine that Brady violated NH State Laws for DNA testing (NH RSA: 141 H:2).

68. The defendants, Somersworth School District (SAU 56), were legally required to inform Brady that they did not have legal jurisdiction to determine if she violated NH RSA 141 H:2 and Brady was given no choice but to rely on their false authority of jurisdiction.

69. Plaintiff, Lisa Brady, without knowledge of SAU 56's false representation of authority, detrimentally relied on the misrepresentation when she prepared her defense at her termination hearing.

70. Somersworth School District's (SAU 56) deceitful use of authoritative jurisdiction to rule on NH DNA laws at Brady's administrative termination hearing caused substantial damage to Brady; economic and emotional distress.

## Count III Negligence

71. Plaintiff repeats the allegations of paragraph 1-70 of the specifications.

72. [T]hat Somersworth School District's negligence foreseeably injured plaintiff in that defendant knew or should have known that Brady would be forced to rely on the Somersworth School District's claim of authority to "prosecute" Brady for violations of State Law NH RSA 141 H:2 in a hearing conducted by Somersworth School District and did, in fact, result in Brady's termination. The Somersworth School District knew or should have known that they did not

have legal jurisdiction to prosecute Brady for violations of DNA laws. The defendant's negligence was a proximate cause of the harm to plaintiff, who is entitled to recovery.

73. The Somersworth School District owed the Plaintiff a duty, not to terminate Brady without "just cause" as detailed in her CBA.

74. The Somersworth School District owed Plaintiff a duty of care and breached that duty when they terminated Brady without "just cause" when they prosecuted her for violations of NH State Law (RSA 141 H:2) without legal jurisdiction during Brady's termination hearing on January 20, 2015.

75. As a result of that breach of a duty of care, Brady suffered damages; economic, retirement loss, emotional distress and has been unable to find work as a special education teacher, a career she invested in and enjoyed.

**Count IV Negligence:**

76. Plaintiff repeats the allegations of paragraph 1-75 of the specifications.

77. Defendant, Attorney Jeanne Kincaid's negligence foreseeably injured Lisa Brady. Kincaid knew or should have known that she did not have the legal authority or jurisdiction to prosecute Brady for violations of DNA laws (NH RSA 141 H:2) before the Somersworth School Board. Attorney Kincaid knew or should have known that a school board termination hearing would not afford Brady her constitutional right to the rules of evidence which; Brady would have been entitled to had she ever been accused of violating DNA laws in any NH Court of legal jurisdiction.

78. Attorney Kincaid breached her professional duty when she prosecuted Brady for violations of state law (RSA 141 H;2) without legal jurisdiction. Kincaid's negligence was a proximate cause of the harm to plaintiff, who is entitled to recovery.

79. As a result of Kincaid's negligent breach of duty, Brady has suffered substantial

damage; economic and emotional distress.

## Count V Negligence

80. Plaintiff repeats the allegations of paragraph 1-79 of the specifications.

81. Defendant's Jeni Mosca and Pam MacDonald negligence foreseeably injured Lisa Brady in that they knew or should have known that they did not have authority to bring charges against Brady for violating NH DNA laws before the Somersworth School Board. Mosca and MacDonald knew or should have known that Brady had never been found guilty of violating that law in any court of legal jurisdiction and that no staff member within the Somersworth School District accused Brady of violating their DNA rights. Mosca and MacDonald should have known that if they had "legitimate" "non-retaliatory" concerns about Brady violating DNA laws, that they had a duty to forward their accusations to the proper "legal authorities."

82. MacDonald and Mosca's breach of professional obligation was negligent and caused Brady substantial damage; economic and emotional distress.

## Count VI Interference with Contractual Relations

83. Plaintiff repeats the allegations of paragraph 1-82 of the specifications

84. Defendants Pam MacDonald, Jeni Mosca, and Attorney Jeanne Kincaid, in their individual and professional capacities, improperly and intentionally interfered with contractual relationship between Brady & and the Somersworth School District when they brought charges against Brady for violating NH RSA 141 H:2 and knew or should have known that no court of legal jurisdiction had ever found that Brady violated that law and knew or should have known that no employee in the Somersworth School District had ever accused Brady of violating their DNA rights.

85. As a result of MacDonald, Mosca and Kincaid's interference with Brady's contract, she has suffered substantial damage; emotional and economical.

**COUNT VII Defamation of Character:**

86. Plaintiff repeats the allegations of paragraph 1-85 of the specifications.

87. On February 16, 2015 Attorney Jeanne Kincaid, in her individual and professional capacities knowingly, willfully, and wantonly communicated orally (slander) on local television in Somersworth New Hampshire, information that she knew was false.

88. The oral testimony was directly related to assuring the public that Somersworth School Board had "legitimately" determined that Plaintiff, Lisa Brady violated a state law (NH RSA 141 H:2).  [Ex 170]

89. Kincaid had a professional duty to inform the public that Superior Court, not the Somersworth School Board, had legal jurisdiction to determine if Brady was guilty of violating the law.

90. Attorney Jeanne Kincaid's actions were not privileged because she was ethically and legally bound to inform the Somersworth School District, Jeni Mosca, and Pam MacDonald that the Somersworth School Board did not have legal jurisdiction to find Brady in violation of State law NH RSA 141 H:2. Attorney Kincaid acted "under color of law" and is not protected by privilege. See United States v. Classic, 313 U.S. 299, 326 , 61 S.Ct.1031, 1043, it stated 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.'

91. Attorney Kincaid's testimony was also reduced to writing (libel) and currently available online as a written transcript (see: http://www.sau56.org/wp-content/uploads/2015/03/Somersworth-School-Board-Hearing-February-16-2015.pdf). [ Ex 166-171]

92. As a veteran attorney, practicing with NH Bar, Attorney Kincaid knew or should have known that her actions would expose Brady to public hatred,

contempt, or ridicule and that there would be the strong likelihood that Brady
would be shunned by the teaching profession, interfering with employment
prospects based on her false statement to the public.

93. Kincaid's defamation of character has caused the Plaintiff substantial damages;
economic and emotional distress.

**COUNT VIII Defamation of Character:**

94. Plaintiff repeats the allegations of paragraph 1-93 of the specifications.

95. On February 16, 2015 the Somersworth School District, Superintendent Jeni
Mosca and Director of Special Education Director Pam MacDonald, in their
individual and professional capacities, promoted and facilitated Attorney
Jeanne Kincaid when she knowingly made false oral (slander) representation
on local television in Somersworth New Hampshire.  information that she knew
was false.

96. The oral testimony was directly related to assuring the public that Somersworth
School Board had "legitimately" determined that Plaintiff, Lisa Brady violated
a state law (NH RSA 141 H:2).

97. The Somersworth School District, Jeni Mosca, and Pam MacDonald had no
authority to allow Attorney Kincaid to prosecute Brady before the School
Board for violations of NH RSA 141 H:2 when no court of legal jurisdiction in
the state of New Hampshire had ever found her guilty of violating that law.

98. The Somersworth School District, Jeni Mosca, and Pam MacDonald promoted
and facilitated Attorney Kincaid's testimony which; was also reduced to
writing (libel) and currently available online as a written transcript (see:
http://www.sau56.org/wp-content/uploads/2015/03/Somersworth-School-Board-Hearing-
February-16-2015.pdf). [Ex 161-171]

99. The Somersworth School District, Jeni Mosca, and Pam MacDonald knew or
should have known that in releasing Kincaid's oral and written testimony to the

public would expose Brady to public hate, contempt, ridicule, and being shunned by the teaching profession, interfering with employment prospects.

100.    The Somersworth School District, Superintendent Jeni Mosca, and Director of Special Education Pam MacDonald's promotion and facilitation of Attorney Jeanne Kincaid's defaming false statements on public record were sanctioned with willful, wanton conduct and has caused the Plaintiff substantial damage; economical and emotional distress.

**Count IX Wrongful Termination**

101.    Plaintiff repeats the allegations of paragraph 1-100 of the specifications

102.    The Somersworth <u>School Board District</u> wrongfully discharged Lisa Brady. Her termination was motivated by "bad faith retaliation, and malice" in retaliation over Brady filing criminal complaints against Mosca and MacDonald with public officials (NH Commissioner of Education, Virginia Barry and NH Governor Maggie Hassan).

103.    Public policy would encourage a teacher to speak up if they have evidence to support a former student was being purposefully mischaracterized by Somersworth administration and staff within a publicly funded film, "Axel" (selling out of UNH) as "college bound" and having "grade level cognition," when they were fully aware based on the student's most recent evaluation, that he was significantly cognitively impaired. [Ex 211-213].

104.    Brady's termination was motivated by bad faith, retaliation or malice. Six months before Superintendent Jeni Mosca petitioned the Somersworth School board to terminate Brady's employment, Brady filed a complaint with NH Commissioner of Education, Virginia Barry, making allegations of criminal wrongdoing against Superintendent Mosca and Special Education Director Pam MacDonald. [Ex 128-135, 142-143].

105.   Brady sent multiple complaints against Mosca and MacDonald to public officials and the press. [Ex 146-154, 155-157, 164, 201-206]

106.   Public policy would condone a teacher, in *good faith*, reporting a crime involving her former student to authorities [Ex 128-135] and would not condone the NH Commissioner of Education, Virginia Barry's, failure to investigate Brady's actual complaint allegations and answering a complaint Brady never filed [Ex 165]. Public policy would not condone terminating Brady for privacy violations, when in good faith she reported a crime involving her former student to the press, without using his full name. And, after authorities with a duty to investigate, failed to investigate, it resulted in the Somersworth School District's false portrayal of the Student's abilities in a public film currently selling nationwide (which is an invasion of the student's privacy). [Ex 210]. Public policy would condemn the sale of a film that falsely portrays and exploits a non-verbal autistic child.

**Count X Negligent Infliction of Emotional Distress**

107.   Plaintiff repeats the allegations of paragraph 1-106 of the specifications.

108.   Defendants Somersworth School District (SAU 56) negligently inflicted emotional distress on Plaintiff, Lisa Brady, when they terminated her for violating NH RSA 141H:2 <u>without legal jurisdiction</u> in the State of New Hampshire.

109.   As a result of the Somersworth School District's falsely asserted authority in finding Brady guilty of violating RSA 141 H:2, she suffered significant emotional harm with physical symptoms.

**Count XI Negligent Infliction of Emotional Distress**

110.   Plaintiff repeats the allegations of paragraph 1-109 of the specifications.

111.   Defendant Attorney Jeanne Kincaid, in her individual and professional

capacities, negligently inflicted emotional distress on Plaintiff, Lisa Brady, when she prosecuted her at her termination hearing for violating NH RSA 141H:2 without legal jurisdiction in the State of New Hampshire.

112.   As a result of Attorney Kincaid's falsely asserted authority (without legal jurisdiction) to prosecute Brady for violating RSA 141 H:2 before the Somersworth School Board, Brady has suffered significant emotional harm with physical symptoms that resulted in a medical leave from her job at Somersworth.

113.   Attorney Kincaid acted with recklessness, willful, and wanton misconduct in falsely representing her legal jurisdiction to prosecute Brady for violating a law.

## XII Negligent Infliction of Emotional Distress

114.   Plaintiff repeats the allegations of paragraph 1-113 of the specifications.

115.   Defendant Somersworth Administrators, Pam MacDonald and Jeni Mosca, in their individual and professional capacities, negligently inflicted emotional distress on Plaintiff, Lisa Brady, when they brought charges against her to the Somersworth School Board, accusing Brady of violating NH RSA 141 H:2.

116.   Mosca and MacDonald should have reasonably known that the Somersworth School District did not have jurisdiction to decide if Brady violated DNA law.

117.   Mosca and MacDonald brought the charges before the school board knowing Brady had already been unlawfully disciplined for violating NH RSA 141 H:2 in March of 2014 when she was transferred from the Middle School to the Elementary School.

118.   As a result of Mosca and MacDonald's "double jeopardy" DNA charges, without jurisdiction, Brady was terminated and has suffered significant emotional harm with physical symptoms. Brady went out on medical leave

twice and was accused of "abandoning her job" while out on a valid medical leave due to job stress caused by Mosca and MacDonald.

119.   Mosca and MacDonald acted with recklessness, willful and wanton misconduct with deliberate intent to destroy Brady's teaching career.

### Count XIII: Abuse of Process

120.   Plaintiff repeats the allegations of paragraph 1-119 of the specifications

121.   Defendant Somersworth School District used Brady's administrative termination hearing for a purpose for which it was not legally authorized; to determine that Plaintiff, Lisa Brady, violated NH State DNA laws (NH RSA 141 H:2) and the abuse of process caused harm to Brady. Defendant Somersworth School District did so wantonly, maliciously, and with the intent to terminate Lisa Brady's employment and because of the abuse of process, Lisa Brady has suffered economic loss and emotional distress.

### Count XIV: Abuse of Process

122.   Plaintiff repeats the allegations of paragraph 1-121 of the specifications Defendant, Attorney Jeanne Kincaid, in her individual and professional capacities, used Lisa Brady's administrative termination hearing for a purpose for which she was not legally authorized; to prosecute Brady for violations of NH State DNA laws (NH RSA 141 H:2); knowing that Brady had not been found guilty of violating that law in any NH court of legal jurisdiction. The abuse of process caused harm to Brady. Attorney Kincaid did so in violation of her professional and legal obligations as a practicing attorney and she did so knowing that her actions would violate Brady's constitutional rights to due process in the State of New Hampshire. She did so wantonly, maliciously, and with the intent to terminate Lisa Brady's employment. Because of the abuse of process, Brady has suffered economic loss and emotional distress.

## Count XV: Abuse of Process

123.    Plaintiff repeats the allegations of paragraph 1-122 of the specifications

124.    Defendants' Jeni Mosca and Pam MacDonald, in their individual and professional capacities, used Brady's administrative termination hearing for a purpose for which they were not legally authorized; to determine that Plaintiff, Lisa Brady, violated NH State DNA laws (NH RSA 141 H:2) and the abuse of process caused harm to Brady.  Mosca and MacDonald did so in violation of the law and in breach of the "just cause" contractual condition upon which employment could be terminated. Mosca and MacDonald knowingly violated Brady's "fair" due process rights at her administrative hearing when they charged her with violating NH RSA 141 H:2 when they should have "reasonably" known that those charges were not within Somersworth School Board's legal jurisdiction to decide. They did so wantonly, maliciously, and with the intent to terminate Lisa Brady's employment and because of the abuse of process, Lisa Brady has suffered economic loss and emotional distress.

## COUNT XVI Violation of Whistleblower's protection Act

125.    NH Title XXIII of the Whistleblower Act states under 275-E:9 Protection of Public Employees. – "*No governmental entity shall threaten, discipline, demote, fire, transfer, reassign, or discriminate against a public employee who files a complaint with the department of labor under RSA 275-E:8" [Ex 33-40, 146-153]. Brady filed a complaint with the NH Department of Labor on November 7, 2014 [Ex 146-153] and was terminated [Ex 33-40] from her job on January 20, 2015 which; was the same day that her NH DOL hearing for her retaliatory hearing began.*

        WHEREFORE, the Plaintiff, Ms. Lisa Brady demands judgement against the Defendants, severally liable: court costs and fees, damages for lost earnings, lost future earnings, interest as allowed by law, enhanced

compensatory damages in an amount to be determined by the court and for such other further relief as justice may require.

I, Lisa Brady, do hereby verify under penalty or perjury under the laws of the United States of America that the forgoing complaint is true to the best of my knowledge, information and belief, is based upon my personal knowledge and is true and correct.

Jury request

Respectfully Submitted,

Date:   January 2, 2018

*Lisa Brady*

_____

Lisa Brady/Pro Se

8 Constable Road
Durham, NH 03824

(603)292-5052

lisa.brady@comcast.net

PARTIES ON WHOM TO SERVE COMPLAINT

Two copies of the Writ have been provided to the Strafford Superior Court and each of the following defendant's to be served:

1. Somersworth School District (SAU# 56) 51 West High Street, Somersworth, NH 03878
2. Attorney Jean Kincaid, 24 Brickyard Lane, Eliot Maine 03903 (Home). 100 International Drive, Suite 340 Portsmouth, NH 03801-6891(Work)
3. Jeni Mosca, 24 High Street, Hampton, NH 03842. (Home).
4. Pam MacDonald, 2 Beech Hill Rd. Durham, NH 03824 (Home). 51 West High Street, Somersworth, NH 03878 (Work).

*Lisa Brady*

Lisa Brady, Pro Se
Plaintiff/Appellant

_____01/02/2018
Date

# EXHIBIT#6

**STATE OF NEW HAMPSHIRE**
**SUPERIOR COURT OF STRAFFORD COUNTY**

( )Court
(X)Jury

December 13, 2018

| | | |
|---|---|---|
| Lisa M. Brady | | |
| *Plaintiff* | ] | |
| V. | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. 219-2018-cv-00002** |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities. | ] | |
| *Defendants* | | |

**Amended from 01/02/2018 Complaint**

<u>**Declaration of Writ of Summons**</u>

The Plaintiff, Lisa Brady, alleges the following complaint against Defendants.

<u>**Preliminary Statement**</u>

This claim against the Somersworth School District (SAU 56), Jeni Mosca and Pamela MacDonald arises from Lisa Brady's termination hearing which; was decided on January 20, 2015. The Defendant's charged Plaintiff, Lisa Brady, with violating NH State Laws for DNA testing (NH RSA 141 H;2) without "just cause." Lisa Brady's teacher contract bargaining agreement (CBA hereafter), under article 5 A [Ex 8] stipulates an agreement between the School Board and the Association and a commitment to adhere to RSA 273-A (Public Employee Labor Relations). The agreement prohibits unfair labor practices. The Defendants used a school board hearing to determine that Brady violated NH RSA 141 H:2 (DNA laws) and reduced it to writing without any material evidence or complaining witness; a breach of the collective bargaining agreement. Additionally, in the State of New Hampshire under Title *XV Chapter 189:13 Dismissal of Teacher.* – *"no teacher shall be so dismissed before the expiration of the period for which said teacher was engaged without having previously been granted a full and fair hearing."* Brady was denied a full and fair

hearing and the Somersworth School Board violated the law when they publicly and

deceitfully determined Brady was guilty of violating DNA laws.

[Ex 33-40].

**Complaint Venue and Subject Matter Jurisdiction**

- This Court has jurisdiction and venue is proper because Somersworth School District and at

  least one defendant resides in Strafford County and

- because the amount in controversy exceeds $15,000.
- The damages claimed are within the jurisdiction limits of the Court.

**Complaint Viability**

- February 22, 2016 Brady filed a federal claim in NH District Court
- November 3, 2016 NH District Court Judge DiClerico dismissed Brady's federal claims and

  stated the following in his order granting defendants' motion to dismiss: *"The defendants'*

  *judgment is granted. The state law claims are dismissed without prejudice.*

- November 29, 2016, a final order was issued dismissing Brady's complaint filed with NH.
- November 29, 2016 Brady filed an appeal of Judge DiClerico's decision with the First
  Circuit Court in Boston Massachusetts.
- October 13, 2017 The First Circuit Court found in favor of the Defendants' and denied

  Brady's Appeal of Judge DiClerico's decision related to Brady's federal claims. The Court

  of Appeals stated, "Having properly disposed of Brady's federal claims against the school

  district, Mosca, and MacDonald, the district court did not err in declining to exercise

  supplemental jurisdiction over Brady's state law claims against those parties." [Ex p. 42]

- October 25, 2017 Brady Appealed the First Circuit Decision.

**Parties**

1. The Plaintiff, Lisa Brady, was a tenured teacher and worked for the Somersworth

   School District for 7.5 years until her termination on January 20, 2015. Brady is and was at

   all times mentioned in this complaint, a resident of Stafford County, New Hampshire.

   Brady has a master's degree in special education and resides at 8 Constable Road, Durham,

   NH 03824.

2. The Defendant, Somersworth School District (SAU 56) is a New Hampshire public school district, located at 51 West High Street, Somersworth, NH 03878

3. The Defendant, Jeni Mosca, was employed at all times mentioned in this complaint by Somersworth School District up until her retirement this past July 2017.  This party resides at:  24 High Street, Hampton, NH 03842.

4. Defendant Pam MacDonald is now and at all times mentioned in this complaint the director of special education for SAU 56 and at all time a resident of Strafford, County, NH. This party resides at 2 Beech Hill Rd. Durham, NH 03824. This defendant currently works for

SAU 56 at 51 West High St., Somersworth NH, 03824.

**Factual Background**

5. Brady was a tenured teacher at Somersworth Middle School and had excellent teaching evaluations from the time she began teaching at Somersworth between August 2008 and January of 2015. [Ex p. 44-49]. Brady had a teaching contract with Somersworth and, as a tenured teacher, had an existing teacher contract [Ex p. 1] and CBA. [Ex 2-31].

6. September 2, 2012 Brady filed an internal civil rights complaint with Somersworth Superintendent, Jeni Mosca, against Somersworth Special Education Director, Pam MacDonald. [Ex p. 50-68]. The complaint detailed her student, AC, and Pam MacDonald's involvement with violating his IEP by utilizing a method of communication, facilitated communication, that was not in the student's IEP and for allowing district personnel to falsify Brady's student, AC, and his cognitive abilities in a public film on inclusion, titled 'Axel,' selling out of UNH Institute on Disability. The project involved the use of federal and NH State education grant funding and claims to be a documentary based on the truth.

7. February 1, 2013, Brady documented additional IEP/civil rights violations committed by

   Somersworth Special Education Director Pam MacDonald against Brady's special needs

   student, AC. [Ex p. 69-70].

   8. March of 2013: MacDonald placed a false and misleading disciplinary warning in Brady's

      personnel file, directly related to her case management of AC.  [Ex p. 71-72].

   9. April 1, 2017: Brady filed another civil rights grievance against SAU 56 Director
      MacDonald. [Ex p. 73-107].

   10. April 17, 2013: Lisa Brady entered another a rebuttal to the false and retaliatory warning that

      had been placed in Lisa Brady's file. [Ex p. 108-112].

   11. May 1, 2013:  Middle School Principal Hillard changed Brady's title to include more

      responsibility as a "School Wide Inclusion Specialist." [Ex p. 113].

   12. December 14, 2013: Brady informed Middle School Principal Dana Hilliard about concerns

      she had related to her program assistant, whom she did not have supervisory authority over,

      related to addiction issues with the prescription drug Oxycontin and falling asleep while

      working with a nonverbal autistic child with low cognition in her program.  [Ex p.114].

   13. December 15, 2013: Somersworth Speech Pathologist Robin Scott agreed with Brady

      regarding concerns about safety related to the program assistant's drug use. [Ex 115].

   14. January 15, 2014: Brady's program assistant sent her an email apologizing for whatever she

      did and stated the following:

      *"If it wasn't for you noticing how the medication was affecting
      me I don't know where I be. I don't recall a lot that I did or said during that time. I'm sorry
      if I did something." [Ex p.116].*

   15. January 17, 2014: Brady frustrated by the lack of investigation, had her private property

      DNA tested (badge & mug) on her own time. The only name written on the test was Brady's.

      [Ex p.117-118].

16. February 18, 2014: Brady reported to Principal Hilliard that she did not tell anyone in the middle school about her accusations of her program assistant biting her badge other than he and Speech Pathologist, Robin Scott. [Ex p.119].

17. February 20, 2014: Brady reported to Principal Hilliard and mediator, Emily Hayden, that mediation confidentiality agreement with her assistant was breached directly after mediation. [Ex p.120].

18. March 6, 2014: Brady sent an email to Superintendent Mosca stating that middle school union representative, Jeni Hahn, "contacted me today saying that because I had DNA tested from saliva on my badge and coffee mug that Starr had been using (my property), that I would potentially be removed from my position at the middle school." [Ex p. 121].

19. March 10, 2014: Middle School Principal, Dana Hilliard sent Brady a letter accusing Brady of violating NH State Law RSA 141 H:2 and threatens termination. [Ex p.122].

20. March 11, 2014: Internal posting for a job opening at Maplewood Elementary School for a grade 3 elementary teacher. Flyer was placed in Brady's employee file. (violated Brady's CBA) [Ex p.123-124].

21. March 12, 2014: Superintendent Jeni Mosca permanently transferred Brady from the Middle School to Maple Wood Elementary. [Ex p.125].

22. March 22, 2014: The mini film "Axel" debuted in Keene, NH. [Ex p.126]

23. June 2014: New Hampshire Educator Information System support that Somersworth had changed her assignment from "General Special Education" to a "Paraeducator-II" (violations of the CBA). [Ex p.127].

24. March 2014: Brady went out on the Family Medical Leave Act due to the mental stress over the transfer.

25. June 2014: Brady returned to Maplewood Elementary School for the last five days of school.

26. July 11, 2014: Brady sent a complaint in two emails to NH Commissioner of Education, Virginia Barry with information from AC's IEP's and evaluations to prove he had a severe

cognitive deficit and yet the public film "Axel" portrayed him as no longer cognitively

impaired, functioning "on grade level," and "college-bound." Brady accused Mosca and

MacDonald of fraud. [Ex p.128-135].

27. August 20, 2014: Attorney Bianco (Brady's attorney) sent Attorney Jean Kincaid a letter

requesting a hearing before the SAU56 School Board regarding her unlawful transfer. [Ex p.

136-137].

28. August 26, 2014: Jean Kincaid denied the request for a School Board Hearing using Article
10 of the CBA to deny that Lisa Brady had a right to a hearing. [Ex p.138-139].

29. August 2014, Brady reported to Maplewood Elementary School

30. September 8, 2014 Attorney Bianco requested a hearing before the NH State Board of
Education. [Ex p.40-141].

31. September 17, 2014: Lisa Brady sent NH Commissioner of Education, Virginia Barry an

email questioning the status of her investigation related to the complaint that had been

lodged against Mosca and MacDonald on 7-11-2014. [Ex p.142].

32. September 20, 2014: Lisa Brady e-mailed NH Commissioner of Education, Virginia Barry
and asked if she wanted to interview her about the allegations of fraud. [Ex p.143].

33. September 25, 2014: Steve Berwick denied Brady's appeal for a hearing related to her

unlawful transfer. [Ex p.144].

34. October 2, 2014: Lisa Brady's physician recommended a medical absence due to the

ongoing job-related stress. [Ex p.145].

35. October 7, 2014: Lisa Brady filed a Whistle-Blower case with the NH DOL regarding her

unlawful and retaliatory transfer and demotion from Somersworth Middle School to

Maplewood Elementary School. [Ex p.146-154].

36. October 9, 2014: Lisa Brady emailed Virginia Barry and members of the press, along with

SAU 56 Principal Dana Hilliard regarding the criminal allegations made against SAU 56 and

UNH IOD staff (Brady did not list the student's last name within the emails). [Ex p.155-

157].

37. <u>October 14, 2014</u>: Jeni Mosca wrote a letter to Lisa Brady and threatened termination. [Ex p.158].

38. <u>October 15, 2014</u>:  NH Commissioner Virginia Barry denied Lisa Brady a hearing to appeal her transfer. [Ex p.159].

39. <u>October 15, 2014</u>:  Lisa Brady e-mailed Superintendent Jeni Mosca stating the following: *"Please be more specific so that I can offer a defense." And, stated the following about the "Axel" film: "The district's interpretation of Axel's abilities was grossly over stated and pose a safety risk to AC." [Ex p.160-161].*

40. <u>October 29, 2014</u>: Lisa Brady wrote to the Somersworth Board complaining that Attorney Kincaid violated professional conduct under Rule 1.2 by "assisting a client in conduct that the lawyer knows is criminal or fraudulent." Directly related to Kincaid's allegations that Brady violated NH RSA 141 H:2. [Ex p.162-163].

41. <u>Email Evidence</u>:  Copies of the full emails used to terminate Brady and evidence to prove that she made a good faith effort to protect student information by not listing student's last name and focused on the illegal actions of Superintendent Mosca and Pam MacDonald.  [Ex 189-206]

42. <u>January 9, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

43. <u>January 12, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

44. <u>January 13, 2015</u>: SAU#56 had a hearing to terminate Lisa Brady

45. <u>January 20, 2015</u>: Lisa Brady and SAU56 attended the Department of Labor Whistleblower hearing in Concord, New Hampshire (hearing regarding Brady's retaliatory transfer from the Middle School to Idlehurst).

46. <u>January 20, 2015</u>: Somersworth School District officially terminated Lisa Brady's employment.
[Ex p.33-40].

47. <u>February 16, 2015</u>:  Attorney Kincaid publicly defamed Brady on local television at a grievance hearing at Somersworth City Hall. [Ex p. 169-170 full testimony at 166-171].

48. <u>July 9, 2015</u>: NH DOE Commissioner Barry denied Lisa Brady an appeal to her termination. [Ex p.174].

49. <u>July 13, 2015:</u>   Lisa Brady filed an appeal to NH DOE for a hearing. [Ex p.175-176].

**Brady's Termination Findings**

50. Brady's teachers' contract stated the following under Article 5C Teachers' Rights #5 as

follows: "*No teacher shall be disciplined except for just cause.* " [Ex p. 9]. The 'rules of

evidence' do not apply at New Hampshire school board dismissal hearings and Brady was

denied any opportunity to defend herself meaningfully in a manner consistent with the NH

Constitution. " The Somersworth School Board found Brady violated the law <u>without any</u>

<u>material evidence, knowing that no court of legal jurisdiction ever found that Brady violated</u>

<u>the law</u> and <u>without a</u> <u>complaining witness.</u>

51. The Board listed 4 reasons for Brady's termination and the first, third, and fourth reason for

termination referenced claims that Brady violated NH DNA laws (RSA 141 H:2). [Ex 33-

40]. Within Brady's dismissal letter the Somersworth School Board stated the following

within reason number one:

> "*The Board found that the charge that Ms. Brady acted in an unprofessional and unethical
> manner when she sought to have bodily fluids of another staff member tested for
> identification without the knowledge or consent of the staff member and thereafter reported
> the results of the test to others was sustained by the evidence. **The Board found (By a vote
> of 7 yes, 1 abstention) that the behavior violated RSA 141 H:2.** School District Policies, in
> particular the staff ethics Policy GBEA (Administration #7), were cited by the Board as
> prohibiting this conduct.*" [Ex p.36].

52. Violations of RSA 141 H:2 are remedied in <u>superior court</u> (RSA 91-A:7 Violation) under

NH 141-H:6 Civil Action (2015). – *An aggrieved individual <u>may bring a civil action under</u>*

*<u>this chapter</u> and, if successful, shall be awarded special or general damages of not less than*

*$1,000 for each violation, and costs and reasonable legal fees. Source. 1995, 101:1, eff. Jan.*

*1, 1996.*

53. Within Part II, Article 73-A of the New Hampshire Constitution, the Supreme Court detailed

the rules of evidence. Unlike school board hearings, the Rules of Evidence apply to all court

proceeding in the State of New Hampshire. The Board found that the evidence supported

Brady violated NH RSA 141 H:2 when no court of legal jurisdiction ever found her guilty of

violating the law, without a complaining witness and without any material evidence. Brady

was denied an opportunity to confront any complaining witness related to violations of DNA

laws because no staff member at SAU 56 ever accused Brady of that violation.

54. Brady was subjected to two disciplinary procedures for violations of NH RSA 141 H:2; first

being transferred and demoted in March of 2014 and then terminated on January 20, 2015

for the same offense, violations of NH RSA 141 H:2. [Ex p.122 & p. 33-40]. Double

Jeopardy in the United States Constitution states that no person shall be "subject for the

same offense, to be twice put in jeopardy of life or limb."

55. The Somersworth School Board stated the following in Brady's termination decision:
    *"The Superintendent made it clear that Ms. Brady was to cease any conduct that violated
    student privacy rights and Administration Exhibit 10 in which she was cited for her failure
    to administer the State's NECAPS assessment as required by the student's IEP."* [Ex p.40].

56. The Somersworth School Board's decision to terminate Brady had a disparate-impact on

Brady and evidenced a strong bias on the part of the Board. Brady was terminated for

violating student privacy when, in "*good faith*," she reported the criminal involvement of

Mosca and MacDonald directly related to their role in the exploitation of Brady's former

student, AC. [Ex 189-206]. Brady did not personally identify AC by using his full name in

any of the e-mails that resulted in her termination. The Somersworth School Board

terminated Brady for reporting a crime involving privacy violations and yet, Somersworth

School Board did not even investigate or hold administrators (Mosca and MacDonald)

accountable for a serious breach of student privacy when they allowed staff and

administrators to falsify AC's abilities in the public film "Axel," that is currently selling

nationwide and does reveal AC's last name to the public within the film.  The Somersworth

School Board terminated Brady for reporting a crime, committed by the school district's

superintendent and Special Education Director, to the press and yet, did not even investigate

Brady's criminal allegations against a student in the Somersworth School District.

57. The Somersworth School Board determined that Brady violated AC's IEP when she did not

administer the NECAP testing to AC, it also had a disparate impact on Brady when

compared to staff at Maplewood Elementary School. [Ex 40]. The Maplewood team violated

AC's IEP in May of 2012 when they failed to send AC's portfolio into the State Department

of Education and yet, the Idlehurt Elementary Staff responsible received no punishment.

[82-106]

58. After AC transferred from the Idlehurst Elementary School to the Middle School, his IEP

was changed in December of 2012 and he was put back on an alternative portfolio. AC's IEP

was changed during the filming of "Axel". AC did not have the cognitive capability to

participate in the NECAP [see most recent testing Ex 211-213] testing and Pam MacDonald

expected Brady to put her hand on top of AC's hand and take the test for him using a

controversial method of communication, facilitated communication, which; was not in AC's

IEP or condoned by his

Parent. [Ex 187-188].

59. On page 7 of Brady's termination hearing decision, the Somersworth School Board

unanimously found that Brady had abandoned her teaching position. [Ex p. 39]. However;

the evidence supports that Brady was out on a valid medical leave due to the emotional

distress directly related to Somersworth School District's knowingly false finding that Brady

violated DNA laws and transfer from the middle school to the elementary school in March of

2014. [Ex p.145].

**Count I  Breach of Contract**

60. Plaintiff repeats the allegations of paragraphs 1 through 59 of the specifications.

61. Brady's teachers' contract stated the following under Article 5C Teachers' Rights #5 (p. 9):

    "*No teacher shall be disciplined except for just cause.*"

62. On January 20, 2015, the Somersworth School District breached Lisa Brady's teaching contract with willful and wanton negligence when they terminated her employment based on a decision that Brady violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was "immoral," "abandoned her position," and "violated student privacy." They did so without "just cause" to make that determination.

63. The Board determined that Brady Violated NH RSA 141 H:2 without a complaining witness and knowing that no court of legal jurisdiction had ever found that she violated the law. They also failed to consider school board policy which; included exceptions to FERPA when they determined Brady violated student privacy.

64. Somersworth School District's (SAU 56) breach of contract has caused Brady substantial damage, she has suffered economic loss and emotional distress.

**Count II Deceit**

65. Plaintiff repeats the allegations of paragraph 1-64 of the specification.

66. Somersworth School District misrepresented an issue of material fact to the plaintiff, knowing it was false and denied her 'fair' due process. Somersworth School District used a school board hearing with deceitful intent when they knowingly misrepresented the truth and terminated Brady's employment based on a decision that she violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was "immoral," "abandoned her position," and "violated student privacy." They did so without "just cause" to make that determination.

67. The defendants, Somersworth School District (SAU 56), were **legally required** to terminate Brady based on "just cause" (Article 5C Teachers' Rights #5 (p. 9). They were obligated to

give Brady fair due process and to report the truth and they knowingly did not.  Brady was

given no choice but to rely on their false assertions of erroneous facts.

68. Plaintiff, Lisa Brady, without knowledge of SAU 56's misrepresentation of applying a "just

cause" standard, detrimentally relied on the misrepresentation at her termination hearing.

Somersworth School District used a school board hearing with deceitful intent when they

knowingly misrepresented the truth and terminated Brady's employment based on a decision

that Brady violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was

"immoral," "abandoned her position," and "violated student privacy."  They did so without

"just cause".

69. The deceitful decision has caused substantial damage to Brady; economic and emotional
distress.
   **Count III Negligence**
70. Plaintiff repeats the allegations of paragraph 1-69 of the specifications.
71. [T]hat Somersworth School District's negligence foreseeably injured plaintiff in that

defendants knew or should have known that there was no material evidence or complaining

witness to support a conclusion that Brady violated DNA laws and that they were required to

consider school district policy on FERPA exceptions and they did not, when they determined

that Brady violated student privacy. The defendant's negligence was a proximate cause of

the harm to plaintiff, who is entitled to recovery.

72. The Somersworth School District owed the Plaintiff a duty, not to terminate Brady without

"just cause" as detailed in her CBA (Article 5C Teachers' Rights #5 (p. 9).

73. The Somersworth School District owed Plaintiff a duty of care and breached that duty when

they terminated Brady without "just cause" when they knowingly used false and misleading

facts to terminate Brady on January 20, 2015.

74. As a result of that breach of a duty of care, Brady suffered damages; economic, retirement

loss, emotional distress and has been unable to find work as a special education teacher, a

career she invested in and enjoyed.

### Count IV Negligence:

75. Plaintiff repeats the allegations of paragraph 1-74 of the specifications.

76. Defendant's Jeni Mosca and Pam MacDonald's negligence foreseeably injured Lisa Brady in

that they knew or should have known that the DNA charges brought against Brady were

unfounded and that they did not have "just cause" to bring them to the Board. They also

knowingly brought charges against Brady in "bad faith" for "immorality," "abandoned her

position," and violating student privacy.  They did so without "just cause" to bring those

charges and with foreseeable negligence.

77. MacDonald and Mosca's breach of professional obligation was negligent and caused Brady

substantial damage; economic and emotional distress.

### Count V Interference with Contractual Relationship

78. Plaintiff repeats the allegations of paragraph 1-77 of the specifications

79. Defendants Pam MacDonald and Jeni Mosca, in their individual and professional capacities,

improperly and intentionally interfered with contractual relationship between Brady & and

the Somersworth School District after Brady filed civil rights and criminal complaints

against them which; were directly related to violations they committed against her special

needs student. All charges brought before the Board by Mosca and MacDonald in support of

terminating Brady were made in 'bad faith," false and misleading.

80. As a result of Mosca and MacDonald's interference with Brady's contract, Brady was

terminated and has suffered substantial damage; emotional and economical.

### Count VI  Defamation of Character

81. Plaintiff repeats the allegations of paragraph 1-80 of the specifications.

82. On February 16, 2015 the Somersworth School District, Superintendent Jeni Mosca and

Director of Special Education Director Pam MacDonald, in their individual and professional

capacities, promoted and facilitated Attorney Jeanne Kincaid, when she made false oral

(slander) representations on local television in Somersworth New Hampshire, information

that they knew

was false.

83. The oral testimony was directly related to assuring the public that Somersworth School

Board had "legitimately" determined that Plaintiff, Lisa Brady violated DNA laws (NH RSA

141 H:2).

84. The Somersworth School District, Jeni Mosca, and Pam MacDonald allowed Attorney

Kincaid to knowingly make false statement on local television, informing and assuring the

public that Brady violated NH RSA 141 H:2.

85. The Somersworth School District, Jeni Mosca, and Pam MacDonald promoted and

facilitated Attorney Kincaid's testimony which; was also reduced to writing (libel) and

currently available online as a written transcript (see:

http://www.sau56.org/wpcontent/uploads/2015/03/Somersworth-School-Board-Hearing-

February-16-2015.pdf). [Ex

161-171]

86. The Somersworth School District/Board, Jeni Mosca, and Pam MacDonald knew or should

have known that in releasing Kincaid's oral and written testimony to the public, it would

expose Brady to public hate, contempt, ridicule, and being shunned by the teaching

profession, interfering with employment prospects.

87. The Somersworth School District, Superintendent Jeni Mosca, and Director of Special

Education Pam MacDonald's promotion and facilitation of Attorney Jeanne Kincaid's

defaming false statements on public record were sanctioned with willful, wanton conduct

and has caused the Plaintiff substantial damage; economical and emotional distress.

**Count VII Wrongful Termination**

88. Plaintiff repeats the allegations of paragraph 1-87 of the specifications

89. The Somersworth <u>School Board District</u> wrongfully discharged Lisa Brady. Her termination

    was motivated by "bad faith retaliation, and malice" in retaliation over Brady filing criminal

    complaints against Mosca and MacDonald with public officials (NH Commissioner of

    Education, Virginia Barry and NH Governor Maggie Hassan).

90. Public policy would encourage a teacher to speak up if they have evidence to support a

    former student was being purposefully mischaracterized by Somersworth administration and

    staff within a publicly funded film, "Axel" (selling out of UNH) as "college bound" and

    having "grade level cognition," when they were fully aware based on the student's most

    recent evaluation, that he was significantly cognitively impaired. [Ex 211-213].

91. Brady's termination was motivated by bad faith, retaliation or malice.  Six months before

    Superintendent Jeni Mosca petitioned the Somersworth School board to terminate Brady's

    employment, Brady filed a complaint with NH Commissioner of Education, Virginia Barry,

    making allegations of criminal wrongdoing against Superintendent Mosca and Special

    Education Director Pam MacDonald.  [Ex 128-135, 142-143].

92. Brady sent multiple complaints against Mosca and MacDonald to public officials and the

    press.  [Ex 146-154, 155-157, 164, 201-206]

93. Public policy would condone a teacher, in *good faith*, reporting a crime involving her former

    student to authorities [Ex 128-135] and would not condone the NH Commissioner of

    Education, Virginia Barry's, failure to investigate Brady's actual complaint allegations and

    answering a complaint Brady never filed [Ex 165]. Public policy would not condone

    terminating Brady for privacy violations, when in good faith she reported a crime involving

    her former student to the press, without using his full name and in compliance with the

    School Board FERPA policy exception clause related to student's safety, health and welfare.

And, after authorities with a duty to investigate, failed to investigate, it resulted in the Somersworth School District's false portrayal of the Student's abilities in a public film currently selling nationwide (which is an invasion of the student's privacy). [Ex 210]. Public policy would condemn the sale of a film that falsely portrays and exploits a nonverbal autistic child.

**Count VIII Negligent Infliction of Emotional Distress**

94. Plaintiff repeats the allegations of paragraph 1-93 of the specifications.

95. Defendants Somersworth School District (SAU 56) negligently inflicted emotional distress on Plaintiff, Lisa Brady, when they wrongfully terminated her employment. They failed to consider school board policy on FERPA exceptions and determined she violated NH DNA laws (NH RSA 141 H:2) without evidence or "just cause."

96. As a result of the Somersworth School District's false finding that Brady was guilty of violating RSA 141 H:2 and wrongfully terminating her employment in retaliation for advocating for her student, Brady has suffered significant emotional harm with physical symptoms.

**Count IX Negligent Infliction of Emotional Distress**

97. Plaintiff repeats the allegations of paragraph 1-96 of the specifications.

98. Defendants Pam MacDonald and Jeni Mosca, in their individual and professional capacities, negligently inflicted emotional distress on Plaintiff, Lisa Brady, when they brought false 'retaliatory' dismissal charges against her to the Somersworth School Board in "bad faith" and without "just cause" after Brady had filed multiple civil right and criminal complaints against them to public officials directly related to violations they committed against her special needs student..

99. Mosca and MacDonald should have reasonably known that what they were doing to Brady was unethical, unprofessional, a breach of duty, and cruel. They used their power and influence to destroy Brady's reputation and teaching career.

100.    Mosca and MacDonald wrongfully disciplined Brady in March of 2014 and then again at her termination for violating DNA charges

101.    As a result of Mosca and MacDonald's "bad faith" DNA charges and other false charges

brought to the school board, Brady has suffered significant emotional harm with physical

symptoms. Brady went out on medical leave twice and was accused of "abandoning her job"

while out on a valid medical leave due to job stress caused by Mosca and MacDonald.

102.    Mosca and MacDonald acted with recklessness, willful and wanton misconduct with

deliberate intent to destroy Brady's teaching career.

### Count X: Abuse of Process

103.    Plaintiff repeats the allegations of paragraph 1-102 of the specifications.

104.    Defendant Somersworth School District used Brady's administrative termination

hearing in "*bad faith*;" when they knowingly falsely asserted the evidence sustained Brady

violated  NH State DNA laws (NH RSA 141 H:2) without any material evidence, a

complaining witness, knowing that no court of legal jurisdiction had ever found that Brady

violated the law and after failing to consider Brady's concerns about safety in her classroom.

The abuse of process caused harm to Brady.  Defendant Somersworth School District did so

wantonly, maliciously, and with the intent to terminate Lisa Brady's employment and

because of the abuse of process, Lisa Brady has suffered economic loss and emotional

distress.

### Count XI: Abuse of Process

105.    Plaintiff repeats the allegations of paragraph 1-104 of the specifications.

106.    Defendants' Jeni Mosca and Pam MacDonald, in their individual and professional

capacities, used Brady's administrative termination hearing in "*bad faith*;" when they

knowingly falsely asserted that Plaintiff, Lisa Brady, violated DNA laws; and the abuse of

process caused harm to Brady.  Mosca and MacDonald did so in violation of the law and in

breach of the "just cause" contractual condition upon which employment could be

terminated. Mosca and MacDonald knowingly violated Brady's "fair" due process rights at

her administrative hearing when they charged her with violating NH DNA laws when they

should have "reasonably" known that those charges were false. They did so wantonly,

maliciously, and with the intent to terminate Lisa Brady's employment and because of the

abuse of process, Lisa Brady has suffered economic loss and emotional distress.

### COUNT XII Violation of Whistleblower's protection Act

107.    Plaintiff repeats the allegations of paragraph 1-106 of the specifications.

108.    NH Title XXIII of the Whistleblower Act states under 275-E:9 Protection of Public

Employees. – *"No governmental entity shall threaten, discipline, demote, fire, transfer,*

*reassign, or discriminate against a public employee who files a complaint with the*

*department of labor under RSA 275-E:8" [Ex 33-40, 146-153].* Brady filed a complaint with

the NH Department of Labor on November 7, 2014.

109.    The defendant's knowingly, willfully and maliciously fired Brady on the same day as

her NH Department of Labor Hearing began (January 20, 2015) regarding her unlawful,

retaliatory transfer from Somersworth Middle School to Maple Wood Elementary School.

As a result, Brady was unable to get her job back at the Middle School because she was

terminated.

WHEREFORE, the Plaintiff, Ms. Lisa Brady demands judgement against the

Defendants, severally liable: court costs and fees, damages for lost earnings, lost future

earnings, interest as allowed by law, enhanced compensatory damages in an amount to be

determined by the court and for such other further relief as justice may require.

I, Lisa Brady, do hereby verify under penalty or perjury under the laws of the United States

of America that the forgoing complaint is true to the best of my knowledge, information and

belief, is based upon my personal knowledge and is true and correct.

Respectfully Submitted,

Date:  December 13, 2018

*Lisa Brady*

_____

Lisa Brady/Pro Se
8 Constable Road
Durham, NH 03824 (603)292-5052 lisa.brady@comcast.net

**Certificate of Service**

I certify that a copy of this filing was hand delivered to the Court and served first class
mail/Email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

*Lisa Brady*

Date 12/13/2018
Lisa Brady, Pro Se
Plaintiff/Appellant

# EXHIBIT #7

**STATE OF NEW HAMPSHIRE**

**STRAFFORD, SS**                                                    **SUPERIOR COURT**

**Lisa Marie Brady**
**Somersworth School District,**
**School Board (SAU #56), et al.**
**Docket No. 219-2018-CV-00002**

## DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Now come Defendants, Somersworth School District, Jeni Mosca and Pamela MacDonald ("District Defendants") by their attorneys, CullenC011imore, pllc, and object to Plaintiff's Motion to Amend the Complaint. In support here of, Defendants state as follows:

1. The Plaintiff appears to seek three things by way of the proposed amendment: (a) removing Attorney Kincaid as a named defendant; (b) reframing her claims against the District Defendants to remove the core complaint that they "lacked jurisdiction" to determine that she violated RSA 141-H:2 and replace it with far broader claims that District Defendants lacked evidence to conclude that she violated the statute and failed to consider FERPA exceptions in determining that she violated the Student's privacy rights; and (c) amending her Whistleblower claim (Count XVI in the Original Complaint). None of these goals support amendment at this time, and amendment would impose a substantial burden on Defendants.

## PROCEDURAL HISTORY

2.     Plaintiff first sued the Defendants in February, 2016 in the United States District Court for the District of New Hampshire asserting a variety of state and federal claims against the Somersworth School District, it's then Superintendent Jeni Mosca, and Special Education Director Pamela MacDonald, as well as the District's Attorney, Jeanne Kincaid. On November 3, 2016, the Federal Court granted Defendants' Motion for Judgment on the Pleadings on all federal claims. On November 29, 2016, the Court denied the Plaintiff's Motion for Reconsideration of that Order. The Federal Court Order was affinned on appeal by the First Circuit Court of Appeals on October 13, 2017..

3.     On or about January 2, 2018, Plaintiff filed the instant action pursuant to reviving many of her state court claims against the various Defendants in a 125 parågraph Complaint, to which she appended over 200 pages of exhibits.

4.     Attorney Kincaid moved to dismiss the claims, while the District Defendants filed a comprehensive Answer.

5.     Attorney Kincaid's Motion was granted and she has been dismissed by order of this Court.

## ARGUMENT

6.     With respect to Attorney Kincaid, no amendment is necessary to remove her from the Complaint as she is no longer a party to this case. Likewise, removing the Counts against her (Counts IV (negligence); VI (defamation); Count XI (Negligent Infliction of Emotional Distress) and XIV (Abuse of Process)) is not necessary as those counts have been dismissed.

7.     The remaining amendments should also be rejected.

8.     With respect to the announced changes surrounding RSA 141-H:2 and Plaintiffs violation of same, the proposed changes are far broader than Plaintiff represents. She does not merely "cure[] a defect in the wording of her complaint," Motion at 2, she has substantively altered her claims, not merely retracting her claim that the Defendants "lacked jurisdiction to prosecute her," which was the sole basis of the majority of her claims, but now adding new claims that the Defendants breached her contract and committed various torts by dint of the other findings supporting termination. Compare, e.g., Complaint 63 (alleging breach of contract based on termination for violation of DNA laws) with Proposed Amended Complaint 1162 (alleging breach of contract based on termination for violation of DNA laws and 'based on a decision that she was 'immoral,' 'abandoned her position,' and 'violated student privacy. and Complaint 66 (alleging deceit based on based on termination for violation of DNA laws and "based on a decision that she was 'immoral,' 'abandoned her position,' and 'violated student privacy. '")

9.     Such changes geatly expand the claims from a narrow challenge to a single basis . for her termination to a broad attack on every basis for termination.

10.     Finally, Plaintiff's by her proposed amendment to her Whistleblower Claim (Count XVI of the Complaint and Count XII of the Amended Complaint) Plaintiff seeks to add to her claim an allegation that because the District Defendants terminated her on the day of her Department of Labor hearing, she "was unable to get her job back a the Middle School because she was terminated." Proposed Amended Complaint 109. In fact, however, the DOL ruled after the hearing that the District had established that her transfer was motivated by "legitimate, non-retaliatory reasons. "

11.     As such, with or without the amendments, Plaintiff's Whistleblower claim must fail and the proposed amendment is futile.

12.     Overall, Plaintiff seeks file a substantially new, 109 paragraph Complaint nearly a year after her original state court claim was filed and less than a month before dispositive motions are due.

13.     The timing of Plaintiffs Motion will disrupt the filing of dispositive motions and potentially require a continuation of such deadlines, and trial deadlines, to give Defendants sufficient opportunity to respond to an Amended Complaint.

Given the scope of the proposed amendments, the motion should be denied. Short thereof, Defendants will be obligated to seek amendments to the structuring conference order to per...me to address the amended claims.

## CONCLUSION

For the reasons stated above, Plaintiffs Motion to Amend should be denied or a new motion and trial schedule prepared.

Respectfully submitted,

SOMERSWORTH SCHOOL DISTRICT

PAMELA MACDONALD and JENI MOSCA

By their Attorneys,

CULLENCOLLIMORE, PLLC

Dated: December 28,2018        By:_____

Brian J. se Cullen, NH Bar # 11265

10 East Pearl Street Nashua, NH 03060 (603) 881-5500 bcullen@cullencollimore.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via mail on this day to Lisa Brady, pro se Plaintiff, at 8 Constable Road, Durham, NH 03824.

Dated December 28, 2018

Brian J.S. Cullen

# EXHIBIT #8

STATE OF NEW HAMPSHIRE SUPERIOR COURT OF
STRAFFORD COUNTY

Lisa M. Brady                         ]          January 7, 2019
    *Plaintiff*

    V.

Somersworth School District, School Board,  ]
SAU#56; JENI MOSCA, Superintendent SAU56, ]

                             **Civil No. 219-2018-cv-00002**

in both her individual and official capacities;  ]
PAMELA MACDONALD, Special Education      ]
Director SAU#56, in both her individual and    ]
official capacities;
    *Defendants*

## MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

A movant is entitled to summary judgment if the pleadings, admissions and affidavit
"show that there is no genuine issue as to any material fact and that the moving part
is entitled to judgment as a matter of law." RSA 491 :8-a, III.

This action seeks a ruling from this Court on the following legal questions:

A. Did the Somersworth School Board erroneously apply the plain language of RSA 141

    H:2 at Lisa Brady's termination hearing when they failed to provide analogous

    applicability to Brady's employment discipline?

B. Did the Somersworth School District manufacture standing for third party

    representation of Brady's co-worker (SB hereafter), by association, and will this

    obstruct an efficient, orderly and 'meaningful' opportunity for fair process in

    Brady's present suit?

C. Are the Defendants currently violating SB's rights to privacy as a third party;
    unaware that the
    School District has been using her as a pawn to destroy Brady's career?
    **On October 29, 2018 Brady provided the Court with affidavit regarding highly

    private and personal matters concerning SB. She did so in order to defend herself

and why she was concerned about classroom safety at the time she had a DNA test completed on her private property.  Brady has a right to defend herself and a right to face any accusers. In this case there was never any accuser. The Defendants have not objected to the Affidavit as a matter of privacy and it has been on the public record since October 29th without a protective order.  Brady was unaware of the full extent of the Defendants violation of SB's rights to privacy until her deposition which; was held on 1/4/2017. Brady will no longer use SB's full name and will no longer forward the record believing it to be "public." The Defendants are fully liable for any and all breaches of privacy claims that SB may happen to file with regard to this matter. The Defendants have been knowingly violating SB's privacy rights since 2015, using her and opening her up to public scrutiny without her knowledge or permission. They have done so, in order to continue to silence and destroy Brady's reputation and teaching career.  As a weapon of the oppressed and powerless, Brady has relied on getting her story out to the public and the District is fully aware of this fact and yet, they knowingly continue to use SB.

A finding in favor of Brady would significantly impact all pleadings filed including: breach of contract, deceit, negligence, interference with contractual relations, defamation of character, wrongful termination (as an indicator of motivation to terminate Brady), negligent infliction of emotional distress, and abuse of process.

## ARGUMENT
### Erroneous Application: plain language of RSA 141 H:2

1. Brady was terminated from her special education position with the Somersworth

School district in January of 2015 and stated the following within its' finding under

number 1:

*"The Board found that the charge that Ms. Brady acted in an unprofessional and unethical manner when she sought to have bodily fluids of another staff member tested*

*for identification without the knowledge or consent of the staff member and thereafter reported the results of the test to others was sustained by the evidence. **The Board found (By a vote of 7 yes, 1 abstention) that the behavior violated RSA 141 H:2.** [Complaint Ex p.36].*

2.  The Legislative intent for RSA 141H:2  (See Appendix A for bill and Appendix B for

    Statute) was to recognize a property right and by its plain language to protect

    privacy of genetic characteristics (that can have deleterious effects as result of

    exposure, i.e., to discover a loathsome disease etc.) that did not apply to the

    Somersworth School Board's use of the Statute (See Appendix B) in terminating

    Brady's employment.  A statute can be used as a duty of care standard in

    negligence cases. But this statute as written does not provide analogous

    applicability to employment discipline because its plain language does not apply.

3.  *"The interpretation of a statute is a question of law." See Zorn v. Demetri, 158 NH, 437,438 (2009). In interpreting a statute, courts look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. (Courts) interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. (Courts) construe all parts of a statute together to effectuate it overall purpose and avoid an absurd or unjust result. Moreover, (courts) do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. at 438-39 (citation omitted).*
    *"Rules adopted by administrative agencies may not add to, detract from, or in any way modify statutory law and may fill in details to effectuate the purpose of the statute." State v. Elements Chem., 152 N.H.794, 803 (2005).*

4.  NH legislation for Genetic Testing under **141-H:1 Definitions**.
    ***"Genetic testing"*** *means a test, examination, or analysis which is generally accepted in the scientific and medical communities <u>for the purpose of identifying the presence, absence, or alteration of any gene or chromosome, and any report, interpretation, or evaluation of such a test, examination,</u> or analysis, but excludes any otherwise lawful test, examination, or analysis that is undertaken for the purpose of determining whether an individual meets reasonable functional standards for a specific job or task. "*

5.  There is no statutory support under the RSA 141:H2 to conclude that Brady violated the

Statute and the evidence supports the testing would not meet the statute's

definition of "Genetic testing." Brady's DNA test was considered a "relationship

test" to see if the samples from her private property matched (see Complaint Ex

117-118 signed by the director of relationship testing Director, Zach Gaskin).

6. See Complaint Exhibit pages 117-118 for a copy of the DNA test that Brady had
   completed on her private property. The receipt on page one indicated that the
   sample was "non-legal." It was test that was considered non-legal and not generally
   accepted in science (no chain of custody) or court admissible. **Brady has never
   disclosed the full report to anyone.** The only time she released a portion of the
   report to the Somersworth School district was after she had been accused by Middle
   School Principal, Dana Hilliard, of violating SB's privacy rights under RSA 141 H:2.
   Brady revealed portions of the test that she deemed pertinent to clear her name.
   The portions that Brady revealed to the school stated the following (Ex. P. 117-118):
   Samples tested were considered "mixed." (they didn't identify one person), the listed
   date collected: unknown, Name unknown,

   Control: Coffee Mug, Race unknown, Evidence: Badge with bite mark:
   RaceUnknown. The only information that Somersworth used to determine that
   Brady violated RSA 141 H:2 is contained within the lab report. A full report was never
   disclosed to anyone at any time. The Somersworth School District determined Brady
   violated RSA 141 H:2 based on limited information and it does not comport with the
   plain language and intent of the RSA 142 H:2 statute.

7. Principal Hilliard issued a letter of reprimand to Brady on March 10, 2014, accusing
   her of violating NH RSA 141 H:2 (See complaint Ex. P. 122) and Brady's response in

refuting that letter is attached in Appendix C.  This is the extent of the evidence used against Brady.

8. The identity of a person is not a private genetic characteristic as envisioned by the legislature when crafting RSA 141 H:2 (see Appendix A).  There is no information on chromosomal abnormalities or propensity towards diseases of any kind.

9. Using the information in number 6 above, Somersworth Middle School accused Brady of violating RSA 141 H:2 in March of 2014 and subsequently transferred her to the Elementary School as punishment.  Coincidentally, the film which; falsely portrayed Brady's special needs student was being released to the Public at about the same time. Brady has always presumed a retaliatory nexus between the DNA charges and her blowing the whistle on the false portrayal of her former student featured in UNH's "Axel" film.

10. Brady tested her property; an identification badge and a coffee mug (Ex p. 117-118) to see if they were a match.  In early January 2014, Brady returned to school after holiday break and discovered that someone had vandalized her file cabinet and had bitten her employee identification badge.  There was a big brown wad of saliva with teeth marks on the badge.  Brady's badge was in her desk and her mug was in her classroom, out in the open, on top her desk and had not been cleaned.  The DNA from the saliva on Brady's mug was abandoned and the saliva on Brady's badge was discarded by an anonymous person (Brady suspected it was SB's) that she perceived to be a threat. The individual that used Brady's mug could have cleaned it after using it and the person that purposefully bit her badge was perceived by Brady to be a perpetrator.

11. Brady reported the vandalism to Middle School Principal Dana Hilliard and the fact

    that she believed it was committed by her co-worker, SB.  Brady had recently

    reported to Principal Hilliard that SB had admitted getting prescriptions for

    Oxycontin (see Ex.#114) from two different physicians, had been falling asleep

    while working with a non-verbal autistic student, placing children on equipment in

    an unsafe manner. Principal Hilliard did not complete an investigation into the

    vandalism and Brady asked him if he would pay for DNA testing. He indicated that

    he would not pay for the test and did not advise Brady against testing. (see Ex. P.

    183, Hilliard excerpt from DOL hearing testimony).

12. In response to an email that Brady sent to Middle School Speech and Language

    Pathologist, Robin Scott, related to concerns she had about SB posing a direct

    threat to health and safety, Robin Scott stated the following:

    *"I am in total agreement with you.  I personally feel she should be written up with
    documentation that you have given her a verbal warning. This is ridiculous."
    (Ex.P.115)*

13. On January 15, 2015 SB emailed Brady apologizing if she had done anything and
    stated:
    *"If it wasn't for you noticing how the medication was affecting me I don't know
    where I be. I don't recall a lot that I did or said during that time. I'm sorry if I did do
    something." (See Ex. P. 116)*


    ### Somersworth Standing for Third Party Representation

14. The Defendant's had no representational standing to find Brady violated SB's rights

    under RSA 141 H:2 and, in doing so, they violated SB's rights to privacy. They did so

    without the knowledge or expressed consent of SB. They cannot assert a defense

    on the part of SB in the present suit because she is not a party before the Court and

    NEVER filed a written or verbal complaint against Brady. Somersworth brought a

    third-party claim against Brady at her termination hearing and found she violated

SB's privacy rights under NH RSA 141 H:2. They have <u>no evidence to show that SB</u>

<u>suffered any kind of injury</u> or was in any way <u>hindered from</u> <u>filing a complaint</u> on

her own against Brady.  In fact, at the time of Brady's termination SB had <u>quit</u>

<u>working in Somersworth nearly seven months prior</u> so that there was no longer any

associational employment relationship with SB.  The present case <u>violates SB's</u>

<u>rights to</u> <u>privacy</u> and Brady cannot meaningfully defend herself against the charges

of RSA 141 H:2 without accessing SB's personnel and discipline records within the

Somersworth School

district.

15. SB has a reasonable expectation of privacy and Brady cannot meaningfully defend

herself without "fair" discovery involving records within employee files and School

Resource Officer reports which; included the following requests:

On January 2, 2019 the Defendants responded to Brady's request for discovery as
follows:

**REQUEST:** *Any and all documents sent, received, or created between Middle
School personnel Robin Scott, Ann Noonan, Principal Dana Hilliard and Officer
Rick Campbell related to a reported physical assault committed by SB, against a
middle school student (RG) and slamming a desk hard into his stomach while
disciplining him.*
**RESPONSE:**

*Defendants object to this request as overly broad and not reasonably calculated to
lead to the discovery of admissible evidence. Plaintiff was transferred as a result of a
breakdown in the relationship between her and SB. Any alleged assault by SB is
neither relevant to the current claim nor reasonably calculated to lead to the
discovery of evidence relevant to the current claim.*

**REQUEST:** *Copy of any letter of reprimand or any other document Somersworth
School District created to discipline Starr Breton for assaulting a student (RG) or any
other reprimands within SB's employee file.*
**RESPONSE:**
*Defendants object to this request as overly broad and not reasonably calculated to
lead to the discovery of admissible evidence. Plaintiff was transferred as a result of a
breakdown in the relationship between her and SB. Any alleged assault by SB is*

*neither relevant to the current claim nor reasonably calculated to lead to the*
*discovery of evidence relevant to the current claim.*

16. The Defendants have engaged in an ongoing invasion of SB's privacy; asserting she

    was victimized by Brady, advocating for her rights and yet, to date, SB has not been

    informed that the Somersworth School District has continued to champion her

    cause. SB quit working for Somersworth in June of 2014 three months after

    Somersworth transferred her from the middle school to the Elementary school and

    demoted her from a program assistant to a classroom paraprofessional. When

    Brady was terminated from Somersworth in January of 2015, SB no longer had any

    associational relationship with Somersworth.

17. At this time discovery is ongoing, and the Defendants are unwilling to release

    pertinent records related to SB (Brady will appeal to the court) from the

    Somersworth Resource officer and other employee disciplinary records which;

    report an assault that was committed by SB on one of Brady's former special

    education student.

18. Somersworth has effectively handicapped Brady's rights to due process in the
    current forum
    with a third-party victim that is unaware that she is even a victim or a subject of this

    hearing. The Defendants find themselves in a conundrum; if they release discovery

    requested by Brady they further violate SB's rights to privacy and if they fail to

    release essential evidence (records, officer's report on the assault of a disabled

    child at the Middle School), Brady is unable to meaningfully defend herself against

    the charges. Brady had legitimate concerns about safety in her classroom related

    to SB's behavior over an extended period. SB had admitted getting Oxycontin from

    two different physicians, was falling asleep while working with students, not

    ensuring student safety within the class, assaulted a student, attempted suicide by

over-dosing on her medication and had admitted to Brady that she had bitten her
husband in a domestic dispute. Brady tested her private property only after
administration failed to take her safety concerns seriously and investigate her
kicked in file cabinet and bitten badge.  This is clearly NOT the legislations intent for
use of the RSA 141H:2 statute.

Brady's right to present her case in a *meaningful manner* has already become
more difficult, laborious, and sluggish as the Defendants are already denying Brady
access to SB's employee files and records with the school resource officer.  SB is a
third party and unaware that the Somersworth has used her, without consent, to
assert that Brady violated her rights under RSA 141 H:2.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court:

A.  Grant Plaintiff's Motion for Partial Summary Judgment and declare, pursuant to
RSA141 H;2, that the Somersworth School Board erroneously used the statute as
written because it does not provide an analogous applicability to employment
discipline because its plain language does not apply.

B.  Grant Plaintiff's Motion for Partial Summary Judgement and find that the
Somersworth School District's manufactured standing for third party representation
of SB, by association, when they found that Brady violated SB's rights under RSA
141H:2 at her termination hearing in January of 2015. The Defendants are
currently obstructing discovery and preventing Brady from an efficient, orderly and
meaningful opportunity for fair process in the present suit.

Respectfully Submitted, 1/7 /2019

*Lisa Brady*

Lisa Brady, Pro Se 8 Constable Rd.

Durham, NH 03824 603-292-5052
lisa.brady@comcast.net

**Certificate of Service**

I certify that a copy of this filing was hand delivered to the Court and served first

class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

.

Dated: January 7, 2019

*Lisa Brady*

/s/ Lisa Brady, Pro Se
Lisa Brady

# EXHIBIT A

SPONSORS: Rep. Kurk, Hills. 2; Rep. Itse, Rock. 10

COMMITTEE: Judiciary

-----------------------------------------------------------------

ANALYSIS

This bill declares that an individual's genetic information and DNA sample are the property of the individual.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - -

 Explanation: Matter added to current law appears in bold italics.
Matter removed from current law appears [in brackets and struckthrough.]
Matter which is either (a) all new or (b) repealed and reenacted appears in regular type. 18-2553
01/04

STATE OF NEW HAMPSHIRE

In the Year of Our Lord Two Thousand Eighteen

**AN ACT relative to an individual's property right in his or her DNA.**

Be it Enacted by the Senate and House of Representatives in General Court convened:

1  New Paragraph; Genetic Testing; Definition Added.  Amend RSA 141-H:1 by inserting after paragraph I the following new paragraph:
I-a.  "DNA sample" means any human biological specimen from which DNA was extracted, or any human biological specimen that is obtained or retained for the purpose of extracting and analyzing DNA to determine a genetic characteristic. "DNA sample" shall also include DNA extract from the specimen.
2  New Paragraph; Genetic Testing; Definition Added.  Amend RSA 141-H:1 by inserting after paragraph III the following new paragraph:
III-a.  "Genetic information" is the information about an individual or family obtained from a genetic test or from an individual's DNA sample.
3  New Section; Individual's Right to Genetic Information.  Amend RSA 141-H by inserting after section 2 the following new section:
141-H:2-a  Individual Right to Genetic Information.  An individual's genetic information and DNA sample are the property of the individual, and, except as

expressly otherwise provided in statute, shall not be acquired, retained, or disclosed without the written consent of the individual or his or her legal representative or, after the individual's death, his or her executor or other legal representative.  This section shall not apply to the identification of individuals in criminal investigations.

4  Effective Date.  This act shall take effect January 1, 2019.


# EXHIBIT B

### 141-H:2 Conditions of Genetic Testing. –

II. Except as required to establish paternity under RSA 522, or as required to test newborns for metabolic disorders under RSA 132:10-a, or as required for purposes of criminal investigations and prosecutions, or as is necessary to the functions of the office of chief medical examiner, no genetic testing shall be done in this state on any individual or anywhere on any resident of this state based on bodily materials obtained within this state, without the prior written and informed consent of the individual to be tested, the parent, guardian, or custodian if the individual is a minor under the age of 18, or the legal guardian or conservator if the individual is an incompetent person. The results of any such test shall be provided only to those persons approved in writing by the individual, the parent, guardian, or custodian if the individual is a minor under the age of 18, or the legal guardian or conservator if the individual is an incompetent person. No person shall refuse to perform genetic testing, or to arrange for genetic testing to be performed, or to do business with an individual, solely because the individual to be tested refuses to consent to providing the test results to some or all persons.     III. Except as provided in paragraph II, or authorized by RSA 141-J, no person shall disclose to any other person that an individual has undergone genetic testing, and no person shall disclose the results of such testing to any other person, without the prior written and informed consent of the individual, the parent, guardian, or custodian if the individual is a minor under the age of 18, or the legal guardian or conservator if the individual is an incompetent person.     IV. Nothing in this section shall be construed to regulate or apply to genetic testing or genetic analysis used for diagnosis and treatment of a patient by a clinical laboratory that has received a specimen referral from the individual patient's treating physician, genetic counselor, or another clinical laboratory. Nothing in this section shall be construed so as to waive the requirement that the treating physician obtain specific informed consent in accordance with the provisions of this section.

**Source.** 1995, 101:1. 2000, 304:1. 2008, 186:2. 2013, 271:7, eff. July 1, 2013.


# Exhibit C

Subject: False Accusations
Date:  Mon, 10 Mar 2014 20:41: 47 -0400
From: Lisa Brady <lisa.brady@comcast.net.>
To: dhilliard@SAU56.ORG, jmosca@sau56.org, ksegal@sau56.org, vhahn@sau56.org, pmacdonald@SAU56.org
Dear Principal Hilliard,
Additional statements for the record:

Excerpts from the reprimand with my responses:

*As you know. You have admitted that you had the bodily materials of a para-professional subjected to genetic testing.*

**I have made no such admission. I have admitted that I had two items of my own personal property tested to determine if DNA existed on them other than my own, and if the same DNA were present on both of MY items. Whose bodily materials were present is purely subject to conjecture.**

*Accordingly, you admitted that you unilaterally took items that you believed contained the DNA of the subordinate to undergo genetic testing*

**Again, the implication here is that I took something that was not mine. I have repeatedly stated that the items involved were mine. Whose DNA I believed to be on them is irrelevant.**

**Since I was not conducting tests on a person, the requirement to gain permission from these does not exist. The name was listed as unknown.**

*Moreover, you have announced to others that you had the genetic testing done on the subordinate and have repeatedly attempted to announce to others the results of such testing without the prior written and informed consent of the subordinate.*

**Again, a complete fabrication. I have announced that I had testing done on a cup and a badge, the results of which do not point to any individual. They are anonymous DNA samples some of which match from the coffee cup and badge. The sources from the items is unknown for any scientific or legal purpose.**

**Most importantly, I sought guidance from Principal Hilliard with regard to DNA testing and had he told me that I it would be ill advised, I would have followed his direction.**

**Principal Hilliard indicated that I announced DNA results of my staff member and this is not truthful. I did not test DNA from a staff member. I had DNA tested on my badge and coffee mug to see if they matched. Of course, I had been handling my badge and my DNA would likely be included within the results. I was comparing the DNA on my property. I did not violate privacy because I listed my name as contact.**

**With regard to speaking and right to my opinion:**

- **I spoke about the issue in mediation, which is confidential.**
- **I spoke about it at the SAU meeting last week because the mediator, Emily Hayden, had been invited to talk about mediation.**
- **Additionally, the mediator was not being truthful when she stated that mediation had been a success and we had resolved issue.**
- **I provided you with an email that I had sent to Emily which; directly counters her assertion that our mediation was successful**
- **If the district did not want to talk about mediation then why did you invite Emily and open the door for discussion.**
- **The district has interviewed my staff and has evidence to support that I did not talk to them about it and that the staff member, in fact is the one that talked about it.**
- **I didn't tell anyone about DNA testing my badge and cup except Dana and Elaine A. (in confidence, on the day I was getting frustrated because Dana had said he would meet with me and he didn't)**
- **The evidence supports the issues involves my entire class and not just an issue between the staff member and me.**

**Dana refused to interview anyone in my classroom and it wasn't until the complaint went up to the SAU that he even talked to anyone in my program**

# EXHIBIT #9

**STATE OF NEW HAMPSHIRE**

**STRAFFORD, SS**                                                                                    **SUPERIOR COURT**

Lisa Marie Brady

Somersworth School District, School Board (SAU #56), et al.

Docket No. 219-2018-CV-00002

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF

## MOTION FOR SUMMARY JUDGMENT

Now come Defendants, Somersworth School District, Jeni Mosca and Pamela MacDonald ("District Defendants") by their attorneys, CullenCollimore, pllc, and submit this Memorandum of Law in Support of their Motion for Summary Judgment on all counts of the

Complaint.

### STATEMENT OF FACTS[1]

Somersworth School District is within SAU 56 and is comprised of a high school, middle

school and two elementary schools. At all times relevant hereto, Mosca was the Superintendent of the SAU and MacDonald was the Director of Special Education, while Dana Hilliard was the principal of the Middle School. Affidavit of Jeni Mosca, attached hereto as Exhibit A, "12-3. The Plaintiff was employed by the District as a special education teacher in the Somersworth Middle School beginning in September, 2008. Id. 114. She was subject to a continuing contract which was renewed each year through May, 2014. See Mosca Aff. Ex. L.

In the summer of 2012, Plaintiff was assiY1ed to work with a new middle school student

(referred to herein as "Student") as his Case Manager. Affidavit of Pam MacDonald, attached

---

1 The Court issued a comprehensive order on Plaintiff's Motion for Partial Summary Judgment in this matter on June 21, 2018 incorporating undisputed facts for the purposes of that Order only. The facts set forth herein, however, are consistent with those set forth in that Order. hereto as Exhibit B, 1[3. Student had previously been enrolled in the Idlehurst School, an elementary school in the District. Id. Prior to that assignment, a UNH team filmed a documentary featuring Student. Id. Plaintiff believed

Student's abilities were misrepresented in the documentary. See Complaint 117. Plaintiff also maintained that the use of hand over hand

assistance (Facilitated Communication) in the film violated Student's IEP. Id. [1]

Student's IEP at that time required that Student take the state NECAP performance tests that fall, barring a change to his IEP. MacDonald Aff. 115; Deposition of Plaintiff ("Pl. Dep."), relevant portions of which are attached hereto as Exhibit C, at p. 31. Student's IEP was not changed, yet Plaintiff admits that Student did not sit for the NECAP test. Pl. Dep. pp. 32, 35 ("it was technically in his IEP that he was supposed to take the NECAP, but it was an absolute waste of his time").

On December 18, 2012, Student's IEP team met for the annual review of his IEP. MacDonald Aff. 116. The team purported to remove ESOL services from Student's IEP at the meeting. Id. Such a change, however, could not be made through the IEP process as ESOL services are subject to separate procedural rules. Id. As such, MacDonald and Mosca met with Plaintiff on December 20, 2012 and instructed Plaintiff to reconvene the IEP team and correct the error. MacDonald Aff. 116. See also Pl. Dep. at p. 30 ("Superintendent Mosca said that we made a mistake and that we needed to schedule a meeting immediately to correct the IEP team's mistakes that we made.").

By mid-March, 2013, Plaintiff had not convened the IEP meeting. MacDonald Aff. 117. On March 23, 2013, MacDonald and Hilliard issued Plaintiff written warning for failure to follow directives. MacDonald Aff. 18. Although Plaintiff filed a grievance regarding the warning, once again she withdrew it. Id.

### 2014 Staff Conflict and Resulting Transfer to Maple Wood

The District renewed Plaintiffs contract in April, 2013 and she was again assigned to the middle school where she continued to be Student's case manager. Mosca Aff. 114. Plaintiff appears not to have had any further issues with Student or the implementation of his IEP. However, in late December, 2013, the Plaintiff had growing issues with a special education assistant, "SB," who worked exclusively with Plaintiff as an assistant. Pl. Dep. pp. 51-52. Plaintiff reported that SB was having some substance abuse issues and informed Hilliard about her concerns. Pl. Dep. p. 55. In January, 2014, Plaintiff accused SB of damaging her filing cabinet and biting her school identification card or badge. Pl. Dep. pp. 58-59. In an effort to prove that SB had done so, Plaintiff submitted both the ID and a mug owned by Plaintiff (but that she believed SB had used) to a private company for DNA testing. Pl. Dep. pp 58-60. Plaintiff told Hilliard and Speech Language Specialist Robin Scott, a co-worker on Student's team about the test. Pl. Dep. p. 65. Plaintiff also told SB. Pl. Dep. p. 66. Plaintiff admits that SB was not happy about her testing the property. Pl. Dep. p. 68.

Good communication between members of a special education student's team is an essential requirement of successful special education. Mosca Aff. 115 The administration therefore asked Plaintiff and SB to attend a confidential mediation at the school in an attempt to resolve their differences. The mediation, however, was unsuccessful. Pl. Dep. p. 76.

---

[1] On or about September 2, 2012, Plaintiff filed a grievance listing various complaints about Student's IEP and MacDonald's communications with her regarding same. MacDonald Aff. 114. Plaintiff ultimately withdrew the grievance. Id. Plaintiff also brought a complaint to the State Department of Education against the UNH Institute of Disability asserting that the filmmakers committed education grant fraud in connection with the documentary. The Department rejected the claim, concluding that the grant money "was used and reimbursed appropriately." See Exhibit L.

Plaintiffs contract specifically provided that the District could change Plaintiffs assignment "in the best interest of the District." See Mosca Aff. Ex. J. On March 12, 2014, having learned that the mediation was unsuccessful, Superintendent Mosca decided to transfer Plaintiff to the Maple Wood Elementary School, effective March 17, 2014. Mosca Aff. ¶ 15. SB was also transferred. Id. [2]

2014-2015 School Attendance

Plaintiff did not report to work on March 17, 2014 as required, either instead going out on FMLA leave. Pl. Dep. p. 87. She ultimately attended only for the last few days of the year. Pl. Dep. p. 89. Despite the issues concerning Plaintiffs behavior, in the spring of 2014 the District renewed Plaintiffs contract for the following year, which she signed and returned. Pl. Dep. pp. 89-90; Mosca Aff. Ex. J. Plaintiff duly reported to work at Maple Wood at the start of the 201415 school year but went out again on medical leave on October 2, 2014. Pl. Dep. 93-94.

Department of Labor Complaint

Plaintiffs medical condition may have kept her out of school, but it did not slow her legal machinations. After her transfer appeal was denied by the State Board, see footnote 3, supra on or about October 9, 2014 Plaintiff filed a complaint pursuant to RSA 275-E with the Department of Labor ("DOL Complaint"), listing a slew of actions by the District (and Mosca and MacDonald in particular) that she claimed were retaliatory, including the written reprimands and her transfer. See Exhibit D. Therein, she disclosed information concerning Student, stating that Student was "profoundly cognitively impaired" and asserting that her transfer to the elementary school had been retaliatory. Id. She also attached to the Complaint "a summary of information from student's record." Id. p.3.

Unsatisfied, Plaintiff then emailed Commissioner Barry, Attorney General Foster, and a number of media outlets excerpts of the DOL Complaint, including portions specific to Student's IEP team's assessments of Student. See Exhibit E [October 9, 2014 email]. Plaintiff does not deny these disclosures, instead attempting to justify them:

> I did. When the sup -- when the Commissioner of Education doesn't respond to a complaint, a citizen complaint on fraud in a — or someone intimately involved with a student's program, you go through the proper channels. You go to your --first you go to your superintendent, then you go to the Commissioner and nobody responds, you go up you go up the chain and eventually you you include media outlets because at some point there's got to be someone that says this is wrong. We shouldn't be doing it.

Pl. Dep. p. 114.

MRI Investigation

On October 14, 2014 Superintendent Mosca notified Plaintiff that the District was initiating an independent investigation into the communications she had with third parties on the basis that she may have violated FERPA and the IDEA. Mosca Aff. ¶ 17. The investigation was conducted by Wendy Jack of Municipal Resources, Inc. Id.

---

[2] Plaintiff did not yieve the transfer decision, instead seeking through counsel to appeal it to the State Board of Education as a removal under RSA 189:31. Pl. Dep. pp. 92-93. The State Board ultimately rejected Plaintiffs claim in September, 2014. Pl. Dep. at pp. 92-93. Plaintiff immediately accused the State Coordinate of the unauthorized practice of law.

The notification of the investigation had no effect of Plaintiff's ongoing disclosures. To the contrary, on October 30, 2014 Plaintiff wrote to Governor Hassan disclosing numerous details of Student's IEP, team meetings, parent communications and other nondirectory information concerning Student. See Exhibit E [October 30, 2014 letter to Governor Hassan and

October 31, 2014 email forwarding same]. The following day, she emailed the letter to Governor Hassan, Commissioner Barry and members of the Somersworth School Board. Id. On November 1 8, 2014, Plaintiff emailed Attorney General Foster a document she prepared entitled

"Education Grant Fraud" both identifying Student and containing specific information regarding his education. See Exhibit q [November 18, 2014 email to Foster, et al.]. For example, the document noted that Student "transitioned from Rochester to Somersworth Middle School in December or [sic] 2011. His goals were at a pre-school level." Id. She copied to the Commissioner, Governor, and numerous news organizations. Id. On December 1, 2014, the Plaintiff again emailed the Attorney General, Commissioner and enumerable media outlets a copy of a virtually open letter to Attorney General Foster identifying Student and again including non-directory information regarding him, including that he was on a "pre-school level" at the time of his transition to middle school. See Exhibit [December 1, 2014 email to Foster, et al.].

On December 4, 2014, Ms. Jack issued her report and findings. Mosca Aff. 118. Not surprisingly, Ms. Jack concluded that Plaintiff had violated FERPA and the IDEA by disclosing personally identifiable information about Student without the authority to do so. Id . Jack also concluded that the allegation that the Plaintiff behaved in a nonprofessional manner violating the Somersworth School ethics was also supported by her violations of the student's privacy as well as her failure to demonstrate professional conduct. Id.

Termination

On December 1, 2014 Plaintiff noted that she would soon run out of her "sunshine days" and informed the District that she would not return thereafter:

> When my time runs out, I do not plan on going back to Maple Wood and would like my job back at the middle school.

Mosca Aff. 119 and Ex. 5 thereto; Pl. Dep. p. 98.

On December 12, 2014 Superintendent Mosca notified the Plaintiff that she was recommending termination for the following reasons: (1) failure to comply with mandated special education procedures after being directed to do so (specifically the NECAP testing); (2) the DNA testing issues; (3) the disclosure of personally identifiable information about a student/ongoing communications with media outlets; and (4) her abandonment of her job.

Mosca Aff. 1110 and Exhibit 6. On December 23, 2014, Superintendent Mosca emailed Plaintiff to advise her that all paid leave had now expired. Mosca Aff. ¶11 and Exhibit 7 thereto.

Plaintiff did not return to work then or at any time thereafter. Mosca Aff.¶ __.

The School Board held a hearing over three evenings (January 9, 12 and 13, 2015). Mosca Aff. 112. On January 20, 2015 the Board voted to terminate the Plaintiff. In an eight page written decision, the Board concluded that;

- She had acted in an unprofessional manner in having SBS DNA tested without her consent in violation of RSA 141-H:2 and staff ethics policy GBEA.

- She had communicated non-directory student information after being advised to cease in violation of FERPA and Staff Ethics Policy GBEBB.

- She violated Policy JRA by disclosing student information.

- She had "abandoned her assigned positon at the Maple Wood Elementary School."

See Mosca Aff. Ex. at pp. 3-7. Based on those findings, the Board further determined that

Brady's conduct was "immoral" for purposes of the termination, particular with respect to her

I treatment of SB (whom they refer to as her subordinate), failed to maintain competency standards (based on the abandonment of her position and her violation of student and staff privacy rights) and that she failed to conform with regulations. Id. at pp. 7-8.

### Department of Labor Decision

On the same day, the Department of Labor held a hearing on Plaintiffs complaint. On March 3, 2015 the Department of Labor rejected her complaint in a seven page decision.

Therein, the Hearings Officer made the following findings:

- "The claimant failed to follow the directives from the August 30, 2012 meeting and she did not have the Student participate in a test which is required of all students, unless an exception exists, which this Student did not have this time."

- After Plaintiff had the DNA tests conducted on the badge and coffee cup, "much commotion and disruption occurred within the school with both faculty and students. The employer determined the best course of action included removing both the Claimant and her subordinate."

See Department of Labor's Decision March 3, 2015, attached hereto as Exhibit I. Based on the findings of fact, the Hearings Officer determined that the Plaintiff had not established a prima facia case of retaliation. "The Claimant . . . fails to establish a causal connection between her protected reportings, and both the insertion of letter of her counsel in her personnel file and her transfer to the new job at Maplewood." Id. at p. 5. Moreover, the Hearings Officer ruled that "even if the Claimant has established a prima facia case of retaliation, the employer proved their actions were motivated by legitimate, non-retaliatory reasons, and not because the Claimant filed two grievances." Id. a p. 6.

### Appeal of Termination

On July 3, 2015, Plaintiff filed an appeal of her termination with the State Board of

Education. By letter dated July 9, 2015, the Department denied the appeal as untimely. See

Exhibit J.

Federal Litigation

On February 22, 2016 Plaintiff brought claims against each defendant herein in the United States District Court — New Hampshire, including claims pursuant to 42 U.S.C. 1983 for violation of protected due process and many of the claims now before this Court. On November 3, 2016, the federal court granted the District Defendants' Motion for Judgment on the Pleadings. See Order, November 3, 2016, attached hereto as Exhibit K. In so ruling, the court made the following findings of fact:

- "Brady did not ayee with the educational plan for [Student], however, and did not comply with the directions she was given."

- After having problems with another staff member whom Brady suspected of abusing prescription pain mediation, Brady submitted samples for DNA testing. Thereafter, "the relationship between Brady and the staff member deteriorated, and school administrators tried to mediation the situation."

- Dissatisfied with the Department of Labor's responses to her complaints, "Brady made statements to the media about her charges of grant fraud and disclosed confidential information about [Student]."

- "Brady was terminated for a variety of reasons, including that her reports to the media about the film and [Student] and her accusations of grant fraud disclosed confidential information about [Student], which violated his rights to privacy, state and federal law and school district requirements. She was also terminated because she secretly collected DNA samples from another staff member and had the samples tested in violation of school policy and state law. In addition, she was terminated because she abandoned her job by never reporting to work at the school where she had been transferred."

Order, at pp. 3-6, 9-10.

The Court also made rulings of law. Most significantly for purposes of this action, the Court held that Plaintiff "was afforded ample notice and multiple opportunities to be heard before and after her termination," and that "no procedural due process violation occurred." Id. at pp. 12-14. Plaintiff appealed the decision to the First Circuit, which upheld the decision.

ARGUMENT

The Plaintiff has brought the following twelve claims against the District Defendants

(collectively unless otherwise noted):

1.     Count I - Breach of contract (District only);

2.     Count II — Deceit (Misrepresentation) (District only);

3.     Count III and V — Negligence;

4.      Count VI - Intentional interference with contractual relations (MacDonald and Mosca only);

5.      Count VIII - Defamation;

6.      Count IX - Wrongful termination (District only);

7.      Count X and XII - Negligent infliction of emotional distress;

8.      Count XIII and XV — Abuse of Process; and

9.      Count XVI - N.H. Whistleblower's law 275-E:2 (District only).

Summary judgment is appropriate where the record, viewed in the light most favorable to the non-moving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. RSA 491:8-a. Here, a combination of the undisputed facts and the express findings of the federal court and the various agencies that have already reviewed and decided issues relating to the claims establish that the Defendants are entitled to summary judgment on each of the claims. To address the claims most efficiently, the claims fall into three broad categories: Contract Claims, Tort Claims and the Whistleblower claim. Each category is addressed in turn.

## 1. THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CONTRACT CLAIM.

By Count I of the Complaint, Breach of Contract claim Plaintiff alleges that the District breached her contract by terminating her "based on a decision that Brady violated state DNA laws . . . without legal jurisdiction or 'just cause' to make that determination." Complaint Il 63.

Plaintiffs claim is (at least) doubly flawed.

First, as this Court already (and correctly) determined, the Board was within its rights to consider a possible violation of RSA 141-H:2 in the context of the termination decision. See Order, June 7, 2018 at pp. 11-12 (noting that "nothing in RSA 189: 13 forbids the Board from considering state statutes that prohibit certain conduct when the facts of a given case implicate that conduct."). As such, Plaintiffs core assertion — that the Board "lacked jurisdiction" to determine whether she violated RSA 141-H:2 has already been decided against her in this case.

Second, three different fora have made findings of fact and rulings of law that are binding on Plaintiff and which defeat her claim:

⬤ In its March, 2015 decision, the Department of Labor found that Plaintiff failed to follow directives and contributed to such disruption that her transfer was warranted.

• In November, 2016 the federal court expressly found that the termination was not solely based on the alleged violation of RSA 141-H:2. Rather, as the District Court found, "Brady was terminated for a variety of reasons, including that . [she] disclosed confidential information about [Student], which violated [Student's] rights

to privacy, state and federal law and school district requirements. she secretly collected DNA samples from another staff member and had the samples tested in violation of school policy and state law. . . . [and] she abandoned her job ' Order, November 3, 2016 at PP. 9-10.

● Finally in June, 2018 this Court's concluded: "The Board . terminated Brady's employment after finding that Brady's conduct fell within all three younds in RSA 189: 13 to justify her termination." Order, June 7, 2018, at 11. "[T]he Board did not summarily decide to terminate her based on the statutory violation. Instead, the Board carefully followed RSA 189: 13 by making specific findings that Brady's conduct underlying the violation fell within two of the three categories in the statute." Id. These established facts defeat Plaintiffs breach of contract claim.

Plaintiff cannot and does not seriously dispute such findings. She admits that she circulated excerpts of the DOL Complaint containing nondirectory information to various media outlets, essentially claiming that she did so "for the greater good." The Plaintiff has not pointed to any such exception nor was the Board compelled to accept her explanation. The Board could instead find the disclosures to be part of a spiraling pattern of disclosure in pursuit of a misplaced vendetta against Mosca and MacDonald. Finally, Plaintiffs unequivocal statement that she would not return to Maple Wood when her leave expired was an egregious dereliction of her duties and alone would easily support termination.[3]

## 11. DEFENDANTS ARE ENTITLED To SUMMARY JUDGMENT ON EACH OF PLAmTIFF'S TORT CLAIMS.

Plaintiffs tort claims against the District Defendants likewise fail.

At the outset, RSA 189: 14 provides an exclusive remedy for improper termination in the form of an assumpsit claim:

The district shall be liable in the action of assumpsit to any teacher dismissed in violation of the provisions of RSA 189: 13, to the extent of the full salary for the period for which such teacher was engaged.

RSA 189:14. Having specified that the remedy for violation of the statute is by way of an action for assumpsit (the legal equivalent of breach of contract) and limited damages, Plaintiff is precluded from bringing tort claims arising directly from her termination. See Appeal of Cover, 168 N.H. 614, 622 (2016) (citing the "familiar axiom of statutory construction, expressio unius est exclusio alterius . the expression of one thing in a statute implies the exclusion of another")(further citations omitted). Otherwise, the legislature's identification of a remedy would be rendered superfluous.

---

[3] This Court also previously observed that Plaintiff failed to exhaust her administrative remedies. See Order, June 7, 2018 at 15. In fairness, the statute is less than clear on the proper forum for alleged violations of RSA 189:13. Whereas the statute clearly provides the appeals of non-renewals must be made to the state Board, with respect to termination the statute only provides a teacher may bring an assumpsit action for an alleged violation. See RSA 189:14. That ambiguity, however, does not necessarily save Plaintiff where she attempted to appeal to the state Board but the appeal was denied as untimely.

Moreover, each such claim is barred by RSA 507-B, which strictly limits the liability of governmental units — including school districts. Specifically, RSA 507-B:2 provides:

A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises RSA 507-B:5 then expressly precludes tort claims that do not arise either from those limited circumstances or as are otherwise provided by statute:No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute."(Emphasis added.) A "governmental unit" expressly includes school districts, RSA 507-B:I, and . "Personal injury" expressly includes "libel, slander, or the publication or utterance of other defamatory or disparaging material." See RSA 507-B:I. Personal injury also includes invasion of privacy and claims for mental anguish. Id.This action does not arise out of the District's ownership, occupation, maintenance or operation of a motor vehicle or premises. Thus, it is incontrovertible that the statute applies to bar the Plaintiffs claims for personal injury against the District, to include her claims for Deceit, Negligence, Defamation, Negligent Infliction of Emotional Distress and Wrongful Termination. Therefore, each of these tort claims must be dismissed. See Lamb v. Shaker Regional Sch. Dist., 168 N.H. 47 (2015) (affirming dismissal of negligence claims arising from accident on playground); Dichiara v. Sanbornton Regional Sch. Dist., 165 N.H. 694 (2013) (affirming summary judgment in favor of school district facing negligence claim); Farm Family Casualty Ins. Co. v. Rollinsford, 155 N.H. 669 (2007) (dismissing case where action did not arise out of town's ownership, occupation, maintenance or operation the premises at issue). As such, the claims are barred at least to the extent each is brought against the District (Counts II, III, IX, X and X111). [5] Even were Defendants not immune, however, liability would not attach on any of the tort claims for the reasons set forth below.

A.    Count II — Misrepresentation/DeceitAlthough captioned as an action for "deceit," Count II of the Complaint is best characterized as an attempt to assert an intentional misrepresentation claim. Plaintiff claims that the District misrepresented its authority to prosecute her for violating RSA 141-H:2 and that she relied on that representation in preparing her defense.    Complaint ¶¶ 67-69.    While New Hampshire recognizes such a cause of action in general, Plaintiffs claim falls short.

At the outset, the District did not represent that it had "jurisdiction" to determine that it had violated state law. Rather, as set forth in Superintendent Mosca's letter notifying Plaintiff of the potential gounds for termination observed that Plaintiff, having been warned to follow the prescribed rules and regulations by letter of March 22, 2013, nevertheless failed to do so when she undertook efforts to have "what you suspected to be the saliva of a paraprofessional in your classroom genetically tested," attempted to share such information without the staff member's consent, and that such conduct "represented a failure to maintain proper boundaries and violated staff privacy rights." See Mosca Ex. 3. Nowhere in that letter does the Superintendent represent that Brady is being prosecuted for violating state law. Moreover, the federal court has already conclusively established that the Plaintiffs continued claims in this regard stem from Plaintiffs apparent misunderstanding of the nature of the termination proceedings with respect to the DNA testing issue.

---

RSA 507-B also bars claims against the individual defendants to the extent they acted in the scope of their employment and in good faith. See RSA 507-B:4(IV).

In any event, however, even if the District had made the representation Plaintiffs asserts, she cannot show that she reasonably relied upon the representation. See Gray v. First NH Banks, 138 N.H. 279, 283 (1994) (identifying justifiable reliance on alleged misrepresentation as element of claim). Plaintiff understood that the District was seeking her termination. She was notified of the hearing dates and had an opportunity to have representation. She understood that the hearing would be an adversarial one. She had even engaged counsel to represent her to challenge her transfer from the middle school. Under such circumstances, she could not reasonably rely on any representations of the District regarding its legal authority to terminate her or the grounds therefor.

B.   Counts III, V - Negligence

By Count III of the Complaint Plaintiff asserts that the District had a duty not to terminate her without just cause and breached that duty "when they prosecuted her for violations of [RSA 141-H:2] without legal jurisdiction Complaint 1174. By Count V, Plaintiff asserts that Mosca and MacDonald "knew or should have known that they did not have authority to bring charges against Brady for violating NH DNA laws before the Somersworth School Board." Complaint 1181. The District Defendants are entitled to summary judgment on these counts for several reasons.

First, the Plaintiff cannot establish an actionable duty of care. Plaintiffs claim against the District is at base a breach of contract claim. It is long established in New Hampshire that no cause of action exists for the alleged negligent breach of a contract. See PK's Landscaping, Inc. v. N.E. Telephone Co., 128 N.H. 753, 757 (1986) (citing Lawton v. Great Southwest Fire Ins. Co., 118 N.H. 607, 613 (1978)) (further citations omitted). Plaintiff has not even articulated any duty of care owed to her by Mosca or MacDonald, nor could she. See Walls v. Oxford

Management Co., 137 N.H. 653, 656 (1993) (existence of duty of care is question of law for court; absent a duty "there is no negligence.") (citing Guitarini v. Company, 98 N.H. 118, 118 (1953)). Here, Mosca and MacDonald were co-workers and supervisors of Plaintiff. They did not owe her any duty of care.

Second, as the federal court has already established, the District Defendants did not "prosecute" Plaintiff for violating RSA 141-H:2. Rather, they considered her possible violation of the statute in the context of whether she had acted in an unprofessional or unethical manner in having her co-worker's DNA tested. Thus, even were a duty established, Plaintiff cannot demonstrate that Defendants breached such a duty by "prosecuting" her.

Finally, Plaintiff was terminated for a number of reasons after a three day hearing before the School Board. Those reasons included her violation of FERPA, which she essentially admits but attempts to excuse, and her failure to report to work after her leave had expired, something Plaintiff does not contest. Under such circumstances, Plaintiff cannot establish that any breach of duty with respect to the DNA allegations proximately caused her termination as there were ample and significant alternative reasons for her termination.

c.    Count VI— Interference with Contractual Relations

Plaintiff asserts that Mosca and MacDonald interfered with her employment when 'they brought charges" against her for violating RSA 141-H:2. The issues with her claim are myriad. At the outset, neither Mosca nor MacDonald 'brought charges" against her. Rather, Mosca alone made a recommendation that Plaintiff be terminated for her conduct in four different areas, all of which violated District policy. These included, but were not limited to, an allegation that Plaintiff had tested the saliva of her paraprofessional and attempted to share that information with others without the consent of the paraprofessional. See Mosca Ex. 6.

Second, Plaintiff does not dispute that she did so act. Rather, she argues only that those actions did not violate RSA 141-H:2. While the Board did conclude her actions violated the law, the Board decision in this regard rested on its determination that the actions violated District Policy, specifically the ethics policy. Finally, that determination was just one of the findings on which the Board's decision to terminate rested. They also found that Plaintiff had improperly published student information to third parties (here including various media outlets) and abandoned her position, findings well supported by the evidence.

To establish liability for tortious interference with contractual relations, a plaintiff must demonstrate that: "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." Hughes v. N.H. Div. ofAeronautics, 152 N.H. 30, 40-41 (2005). "Action is not improper when the interference in contractual relations fosters a social interest of greater public import than is the social interest invaded." City ofKeene v. Cleaveland, 167 N.H. 731, 738 (2015) (quoting Brownsville Golden Age Nursing Home, Inc. v. wells, 839 F.2d 155, 159 (3d Cir. 1988)).

As Superintendent, Mosca is tasked with the role of supervising teachers and making employment recommendations to the Board with the proper goal of making sure serious breaches of policy are addressed by the Board. Importantly, she does not make the final decision, which — as here — is made independently by the Board after notice and a hearing at which Plaintiff had the opportunity to appear, examine witnesses, and provide testimony and witnesses (had she had them) on her behalf. The role of the Superintendent in initiating the process is of significant importance and, under the circumstances here, is not improper. Moreover, as the Board made an independent decision based on the testimony of numerous witness confirming conduct that the

Plaintiff does not seriously dispute (but rather feels was justified), she cannot show that Mosca's recommendation was the proximate cause of her injury. As such, Mosca is entitled to summary judgrnent on this count.

D.    Count VIII - Defamation

Plaintiffs defamation claim as to Mosca and MacDonald is that they "promoted and facilitated" Kincaid's defamatory statements accusing her for violating RSA 141-H:2, essentially to an "aiding and

Page 95 of 279

abetting defamation" claim. New Hampshire does not appear to have recognized such a claim, nor should this Court do so here.

"Defamation is not a favored cause of action and must always be specifically alleged." Cimijotti v. Paulsen, 219 F. Supp. 621, 622 (N.D. Iowa 1963). To prove defamation, the Plaintiff must prove that "the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication." Thomas v. Telegraph Publishing Co., 155 N.H. 314, 321 (2007); see also Pierson v. Hubbard, 147 N.H. 760, 763 (2002)). Whether a statement is an actionable statement is a question of law for the trial court to determine in light of "the context of the publication as a whole." Nash v. Keene Publishing corp., 127 N.H. 214, 219 (1985). Under New Hampshire law, "[a] statement of opinion is not actionable, unless it may be reasonably be understood to imply the existence of a defamatory fact as the basis for the opinion." Thomas, 155 N.H. at 338 (citing Nash, 127 N.H. at 219; Milkovich v. Lorain Journal co., 497 U.S. 1, 18 (1990)). A statement that is true or substantially true is not actionable, nor is a statement of opinion.

In this case, the Plaintiff has not presented facts upon which relief can be granted. Her Complaint appears to allege that Attorney Kincaid defamed Plaintiff by announcing that the Board had legitimately terminated Plaintiff and that she violated RSA 141-H:2. The former is factually accurate in that at the time of the alleged statement the Board had in fact terminated Plaintiff and done so after a three day hearing and constitutionally sufficient due process. As to the latter, RSA 141-H:2, which regulates genetic testing and the disclosure of same, is not a criminal statute and therefore not defamatory per se. Moreover, there is no evidence that Mosca or MacDonald had any role in "promoting" or "facilitating" Attorney Kincaid's statements.

Based on all of the above, Mosca and MacDonald are entitled to Summary Judgment.

E.   Wrongful Termination (Count IX)

The Plaintiff also alleges that she was wrongfully terminated in retaliation for her "filing criminal complaints with public officials (NH Commissioner of Education, Virginia Barry, and NH Governor Maggie Hassan)." Complaint III 02. Plaintiffs claim fails.

At noted above, this tort claim is precluded by RSA 189: 14, which provides an exclusive remedy in the form of an assumpsit claim. Even absent such bar, however, Defendants would be entitled to summary judgment on the undisputed facts. To prevail in her wrongful termination claim, the Plaintiff must show that "(1) [her] termination was motivated by bad faith, retaliation or malice; and (2) that [she] was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." MacKenzie v.

Linehan, 158 N.H. 476, 388 (2009).

There is no basis in law or fact to sustain the Plaintiffs claim that the District terminated the Plaintiff because she filed claims with the Department of Education or Governor. Rather, the District's eight page decision demonstrates that the Board relied upon a series of violations established by the evidence presented to it over a three day period. Nothing therein suggests that the Board acted in bad faith or that she was tenninated for performing any act public policy would encourage. Quite the opposite: The Board had legitimate, non-retaliatory reasons for her termination, including her failure to submit student to NECAP testing, after being ordered to do so, her disclosure of non-directory information about Student to various mediation outlets and government officials, and her failure to return

to work after her leave expired. Plaintiff cannot establish that any of those grounds — the facts of which are not disputed — were pretextual. As such, Plaintiffs wrongful termination claim must be denied and summary judgment entered for the District.

### F. Counts X and XII - Negligent Infliction of Emotional Distress Claim

By Counts X and XII Plaintiff alleges negligent infliction of emotional distress claims against the District (Count X), Mosca and MacDonald (Count XII). As to the District, Plaintiff alleges that the District committed the tort when it "terminated her for violating NH RSA 141 H:2 without legal jurisdiction in the State of New Hampshire." Complaint 11108 (emphasis in original). As to Mosca and MacDonald, Plaintiff alleges both that the individual defendants 'brought charges against her to the Somersworth School Board, accusing Brady of violating NH RSA 141-H:2" without jurisdiction and that they did so knowing she "had already been unlawfully disciplined for violating RSA 141-H:2 in March of 2014 when she was transferred

from the Middle School to the Elementary School." Complaint ¶¶ 115-17. Defendants are

entitled to summary judgment on both counts.

. First, as to the District, the negligent infliction claim is the same as Plaintiffs negligence claims, seeking to turn a breach of contract into a tort. As set forth above, New Hampshire law does not recognized such a claim in this context. With respect to Ms. MacDonald, there is no support for Plaintiffs claim that MacDonald 'brought charges" against her. To the extent anyone could be said to do so, it was Mosca, not MacDonald, who made the recommendation for termination.

The claim, however, fares no better as to Mosca. New Hampshire has recognized a negligent infliction of emotional distress tort only in limited circumstances, typically involving the distress suffered by a family member who observes the outcome of negligent conduct of the defendant. See, e.g., Corso v. Merrill, 119 N.H. 647, 654-55 (1979). Under any version of the tort, however, to recover the plaintiff must first establish "causal negligence of the defendant." St. onge v. MacDonald, 154 N.H. 768, 770 (2007) (citing O'Donnell v. HCA Health servs. of

N.H., 152 N.H. 608, 611 (2005)). The allegations of the Complaint simply do not support the claim. Plaintiff can neither identify a cognizable duty of care owed to her by Mosca nor breach thereof. Mosca is obligated to make recommendations to the Board regarding teacher termination. The Board then conducts (and conducted here) a full and independent hearing on the recommendation. There is no legal basis to conclude that Mosca owed a duty of care to Plaintiff in carrying out her obligations to the District, nor that she breached such duty by listing Plaintiffs actions with respect to the DNA as part of her recommendation.

Moreover, as the Federal Court already ruled — correctly — that Plaintiff was never criminally charged with a violation of RSA 141-H:2. Rather, as set forth in the December 12, 2014 letter notifying Plaintiff of the termination recommendation, Mosca recommended termination for a series of issues, one of which was her unprofessionalism in the manner in which she handled her conflict with SB, which Mosca determined "violated staff privacy rights." Moreover, while the Board did ultimately conclude that Plaintiff violated RSA 141-H:2, they simultaneously found that her conduct violated District policies including ethics policies, a finding Plaintiff has not challenged.

### . G. Counts XIII and W - Abuse of Process

The Plaintiff contends that the Defendants committed an abuse of process by using the termination proceeding for a purpose for which it was not intended, namely, to determine that she violated RSA 141-H:2. *See* Complaint ¶¶ 121, 124. The claims do not pass muster.

"A party claiming abuse of process must prove the following elements: (1) a person used (2) legal process, whether criminal or civil, (3) against the party (4) primarily to accomplish a purpose for which it is not designed and (5) caused harm to the party (6) by the abuse of process." Long v. Long, 136 N.H. 25, 30 (1992). "Legal process" is narrowly defined to require court process. Id. (citing Amabello v. Colonial Motors, 117 N.H. 524, 558 (1980) (emphasizing need for exercise or reliance on "judicial authority")). This is an essential element of the claim. Id. (citing Martin-Trigona v. Brooks & Holtzman, 551 F.Supp. 1378, 1383 (S.D.N.Y.1982) ("An essential element of the tort of abuse of process is some form of compulsory process forcing the performance or forbearance of some prescribed act. Here, no court process was used by Defendants. As such, Plaintiff's claim fails.

To the extent Plaintiff intends her abuse of process claim to be a claim for violation of due process, the federal court properly dismissed that claim. The School Board conducted a hearing over three evening sessions at which it heard testimony from multiple school witnesses as well as the Plaintiff. The School Board also permitted the parties to submit hundreds of pages of exhibits for review prior to the hearing. After deliberation, the School Board found that the Plaintiff: (1) acted in an unprofessional and unethical — which equated to "immoral" — manner in having items tested for DNA of a co-worker and reporting the results to others in violation of the Staff Ethics Policy; (2) repeatedly provided confidential, non-directory information on a student to others and did so after being directed not to in violation of FERPA, Staff Ethics Policy and the Policy on Staff-Student Relations; (3) violated the Access to Student Records Policy by failing to obtain permission to access records and by accessing records after being directed not to do so; and (4) abandoned her assignment after refusing to accept to the Superintendent's decision to reassigl her to the Maple Wood Elementary School. The School Board unanimously voted to dismiss the Plaintiff.

## 111. DEFENDANT THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WHISTLEBLOWER CLAIM.

By Count XVI, Plaintiff claims that her termination was in response to her Department of Labor complaint and was done in retaliation therefor. RSA 275-E does protect against retaliatory terminations. As with the Plaintiffs similar claim before the Department of Labor, where Plaintiffs claim fails is the lack of evidence of that the District's action was retaliatory.

The District hired an independent investigator to review Plaintiffs conduct surrounding what would become her repeated disclosure of confidential student information to third parties, including media outlets. The investigator concluded that those disclosures were improper and violated federal law and District policy, as they clearly did. Only then did the Superintendent recommend Plaintiff's termination, and by then on

the additional grounds of abandonment of her position, testing a colleague's DNA in violation of District Policy, and failure to follow

directives, conduct which is established by Plaintiffs own testimony and documents. Moreover, even if Plaintiff established a prima facie case of retaliation, the District had legitimate, nonretaliatory reasons for the termination, not least of which was her abandonment of her position.

## CONCLUSION

The undisputed facts — indeed, Plaintiffs own documents and testimony — establish that Plaintiff failed to follow directives, tested a colleague's bodily fluids without her consent,

published detailed information from a student's IEP to the press, and failed to come to work after her extended leave expired. Those undisputed facts, as well as the legal barriers to her claim set forth above, require that summary judgnent enter for Defendants on all counts.

---

6 Having had the DOL determine that her claims relating to the warning in her file and transfer to the elementary school determined were not related to the Plaintiffs reports, but were based on the District's legitimate, non-retaliatory reasons, the Plaintiffs only remaining claim is for her termination.

Respectfully submitted,

**SOMERSWORTH SCHOOL DISTRICT, PAMELA MACDONALD and JENI MOSCA**

By their Attorneys,

CULLENCOLLIMORE, PLLC

Dated: January 25, 2019                    By:

Brian J. S. Cullen, NH Bar # 11265

10 East Pearl Street Nashua, NH 03060 (603) 881-5500
bcullen@cullencollimore.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via mail on this day to Lisa Brady, pro se Plaintiff, at 8 Constable Road, Durham, NH 03824.

# EXHIBIT #10

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
735-2964
Dover NH 03820

Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800)

http://www.courts.state.nh.us

## NOTICE OF DECISION

File Copy

Case Name:     Lisa M Brady v Somersworth School District, School Board, SAU #56, et al Case Number:     219-2018-cv-00002

Enclosed please find a copy of the court's order of January 29, 2019 relative to:

Order on Plaintiff's Motion to Amend Complaint

Order on Plaintiffs Motion to Amend Damages

February 12, 2019                                Kimberly T. Myers
                                                 Clerk of Court

C: Lisa M Brady; Brian U.S. Cullen, ESQ

NHJB-2503,,S (07/01/2011 )

101

STATE OF NEW HAMPSHIRE

STRAFFORD COUNTY                                                    SUPERIOR COURT

Lisa M. Brady......................................................................

................................................................................................

Somersworth School District, et al.

Docket No.: 219-2018-CV- 002

## ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT

The plaintiff seeks to amend her complaint to include allegations that the defendant School

Board's decision to terminate her was not supported by just cause. (Court Index #40 and #41). That is,

that there was insufficient evidence before the Board to support its bases for terminating her. The

primary amendments are to her "Abuse of Process" claims in Counts X and XI of her proposed amended

complaint. She also seeks to amend her Whistleblower Protection

Act claim reflected in Count XII. [1] The defendants object. (Court Index #43).

A trial court has broad discretion to allow amendments. See RSA 514:9 (1974); Keshishian v. CMC

Radiologists, et al., 142 N.H. 168, 175-76 (1997). New Hampshire law regarding amendment of

complaints is commonly characterized as liberal. Our Supreme Court has stated that, generally, a court

should allow amendments to pleadings "to correct technical defects but need only allow substantive

amendments when necessary to prevent injustice." Keshishian, 142 N.H. at 175 (citing Nat'l Marine

Underwriters v. McCormack, 138 N.H. 6, 8 (1993). Typically, the trial court is within its discretion to deny

substantive amendments which introduce new causes of action or call for markedly different evidence.

See Clinical Lab Prod's.

Inc. v. Martina 121 N.H. 989, 991, 437 A.2d 285, 286 (1981). The decision to deny or grant a

The plaintiffs proposed amended complaint also removes a party who had previously been dismissed, and removes claims upon which this court denied her summary judgment. Those amendments, while not necessary, are allowed.

motion to amend will not be upset on appeal in the absence of an unsustainable exercise of the trial court's

discretion. See Belcher v. Paine 136 N.H. 137, 148 (1992).

In this case, while the proposed amendments alter the plaintiff's substantive claims, the

causes of action are not entirely new and the evidence is not markedly different from what is already

known to the defendants. Accordingly, the amendments are allowed.

By this order and based on the pleadings to date in the case, the court waives the defendants'

obligation to file a formal Answer to the amended complaint and finds that the defendants have generally

denied the allegations. The defendants, however, are not precluded from filing an appropriate motion or

other responsive pleading.

Date: January 29, 2019

So Ordered,

Mark E. Howard
Presiding Justice

103

STATE OF NEW HAMPSHIRE

STRAFFORD COUNTY                                    SUPERIOR COURT

Lisa M. Brady

Somersworth School District, et al.

Docket No.: 219-2018-CV- 002

## ORDER ON PLAINTIFF'S MOTION TO AMEND DAMAGES

The plaintiff seeks to amend her amended complaint to include specific claims for damages and damage amounts. (Court Index #42 and undocketed, dated January 8, 2019). The defendants object. (Court Index undocketed, dated January 17, 2019).

The plaintiffs motion to amend damages is denied. While her proposed amendments may reflect her calculations of her alleged damages, it is not necessary to plead damages in a complaint with such specificity. Moreover, the defendant argues that the plaintiffs damages, in both type and amount, are subject to the provisions of RSA 1 89:14. The jury will be properly instructed on the elements of damages at the time of trial.

So Ordered

Date: January 29, 2019

Mark E. Howard
Presiding Justice

# EXHIBIT #11

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH

**SUPERIOR COURT**

Strafford Superior Court   Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735-2964

Dover NH 03820                                         http://www.courts.state.nh.us

## NOTICE OF DECISION
### FILE COPY

_____Case Name: **Lisa M Brady v Somersworth School District, School Board, SAU #56, et al** Case Number:    **219-2018-CV-00002**

Please be advised that on February 25, 2019 Judge Howard made the following order relative to:

Motion for Partial Summary Judgment; "Upon thorough review, motion denied. The court adopts the reasoning set forth in the defendants' objection."

Motion to Amend Damages; "Denied. See written order (Court Index #57)."

Plaintiff Motion for Discovery Sanctions and Filing Depositions in Support of Partial Motion for Summary Judgment from January 7, 2019; "Upon review of the motion, objection, and deposition excerpts, the request for sanctions is denied. The request to accept the depositions as evidence in support of partial summary judgment is granted. The court took the excerpts into account in denying the motion."

Defendants' Motion to Extend Time for Filing Motion for Summary Judgment; Granted

Defendants' Motion to Stay; "Upon review, motion denied as unnecessary. The court will rule on defendant's Motion for Summary Judgment when it is ripe for ruling."

February 25, 2019                              Kimberly T. Myers
Clerk of Court
(277)
C: Lisa M Brady; Brian J.S. Cullen, ESQ

NHJB-2501-S (07/01/

106

# EXHIBIT #7

## STATE OF NEW HAMPSHIRE SUPERIOR COURT OF STRAFFORD COUNTY

| | | |
|---|---|---|
| Lisa M. Brady | ] | February 26, 2019 |
| *Plaintiff* | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. 219-2018-cv-00002** in both her |
| individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities; | | |
| *Defendants* | | |

### PLAINTIFF MOTIION FOR EVIDENTIARY HEARING

Now comes Plaintiff, Lisa Brady, with a Motion for Evidentiary Hearing pursuant rule 13(b). Brady

objects to the Defendants contention that their Memorandum of Law (1/25/2019) was based on facts.

The evidence used to terminate Brady does not meet standards of acceptable evidence and consisted

of false allegations and misleading statements not backed up with legal authority.

### FACTS

1. The Defendants stated the following as a rationale as to why the Court should rule in their favor

   for a Motion of Summary Judgement on 1/25/2019:

   > *"Moreover, the combination of undisputed facts and prior, binding findings by the*
   > *federal court and various administrative bodies including the Department of Labor,*
   > *establish that Plaintiff cannot succeed on such claims."*

2. Brady submitted a 25-page response to that Memorandum of law to the Court on 2/25/2019

   however; she could have written much more about the false claims made by the Defendants.

3. The federal Court decisions were completed without an evidentiary hearing or full Discovery.

4. The Department of Labor Hearing was sabotaged by the Defendants when they terminated Brady on the same day as the Department of Labor Hearing began. Brady could not appeal because she no longer had a job.

5. The Decisions referenced by the Defendants are filled with hearsay and false statements. The Defendants retaliated against Brady after she reported what she believed to be the criminal behavior of Superintendent Jeni Mosca and Pam MacDonald.

6. An evidentiary hearing would prove that the Defendants proffed evidence does not bear the burden of sufficiency to warrant a motion for Summary Judgment. See *Bohan v.Ritzo, 141 N.H. 210, 218 (1996)*

**CONCLUSION**

Brady disputes the factual evidence submitted by the Defendants and requests and evidentiary hearing pursuant to Rule 13(b).

Wherefore Brady Pleads this Court to:

Order an evidentiary hearing.

Respectfully Submitted, 2/26 /2019

*Lisa Brady*

Lisa Brady, Pro Se 8
Constable Rd.
Durham, NH 03824 603-292-5052
lisa.brady@comcast.net **Certificate of Service**

I certify that a copy of this filing was hand delivered to the Court and served first class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

Dated:   February 26, 2019

**/s/ Lisa Brady, Pro Se**

# EXHIBIT #8

**STATE OF NEW HAMPSHIRE SUPERIOR COURT OF STRAFFORD COUNTY**

| | | |
|---|---|---|
| Lisa M. Brady | ] | February 26, 2019 |
| *Plaintiff* | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | <u>Civil No. 219-2018-cv-00002</u> |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities; | | |
| *Defendants* | | |

## PLAINTIFF MOTIION TO COMPEL DISCOVERY

Now comes Plaintiff, Lisa Brady, with a Motion to compel Discovery.

**INTRODUCTION**

      To date the **<u>Defendants have not provided Brady with any requested Discovery</u>**. The

Court ruling dated February 25, 2019 ruled on Discovery Sanctions but, did not address Brady's

request for production of Discovery.

**FACTS**

1. On **<u>December 3, 2018</u>** Brady made discovery requests to the Defendants. See Appendix A

   which; include a full rationale for all requested discovery.

2. On **<u>December 10, 2018</u>** Brady requested the following discovery:

   *"An audiovisual copy of the televised Somersworth School Board Hearing on February
   16th, 2015 at City Hall in Somersworth which; took place at 5:30 pm."*

   To date the Defendants have not cooperated with this request which; is essential evidence to the

   public defamation of Character.

3. On **January 8, 2019** Brady Countered her discovery request to the Defendants and to date, they still have not cooperated with discovery. See Appendix C which; include a full rationale for all requested discovery.

The Defendants have refused to cooperate with Discovery requests or admissions, many of which; fall under 91A. The Defendant's failure to cooperate has impeded Brady's rights to fair due process and is highly prejudicial to her case.

Wherefore Brady Pleads this Court to:

1. Order the Defendants to cooperate with all Discovery Requests. They have not cooperated at all with any written request.
2. Order Defendants to answer all questions that they refused to answer at deposition.

Respectfully Submitted, 2/26 /2019

*Lisa Brady*

Lisa Brady, Pro Se 8
Constable Rd.
Durham, NH 03824 603-292-5052
lisa.brady@comcast.net **Certificate of Service**

I certify that a copy of this filing was hand delivered to the Court and served first class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

.

Dated:   February 26, 2019

**/s/ Lisa Brady, Pro Se**

*Lisa Brady*

# Appendix A
**STATE OF NEW HAMPSHIRE**
**SUPERIOR COURT OF STRAFFORD COUNTY**

| | | |
|---|---|---|
| Lisa M. Brady | ] | December 3, 2018 |
| **Plaintiff** | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board,] | | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. 219-2018-cv-00002** |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities. | ] | |
| **Defendants** | | |

**Pre-Discovery Request Statement:**

The Plaintiff has requested redacted copies of AC's IEP's, progress notes, written prior notice, and information related to his participation in State Wide Testing.  Brady's competence as AC's case manager was challenged by the district and she was reprimanded and terminated, in part, for having failed to force her significantly cognitively impaired student to participate in the NECAP assessment in the Fall of 2012, a test which he did not legally meet academic criteria to take.  In order for Brady to defend herself, she requires information from the student's records which; confirm that his entire educational history supported that the student functioned academically on a pre-school level and that he met criteria to participate in the Alternative Portfolio Assessment. At no time did the student's cognitive abilities demonstrate growth to support that testing him with the NECAP's was appropriate nor did it meet the NH state standards for participation in the NECAP.  The Student's IEP progress note for June 2012 stated the following:

113

*"He still needs work with discrimination between pictures and icons, as he chooses one thing and means another frequently."*   When the student transferred from Idlehurst to the Middle School, he could not identify numbers 1-10 from a field of 3 and could not identify letters a-z from a field of 3. The Somersworth School District fired Brady, in part, for not administering NECAP testing to AC when they knew that his low cognition prevented him from any meaningful benefit and that the Alternative Assessment was the only appropriate method of testing.  The district also did not reprimand anyone from Idlehurst after they violated IDEA and NH State Special Education laws in May of 2012 by failing to turn in AC's alternative portfolio to the State DOE.  Had they turned the portfolio in, it would have proven that he did not belong on the NECAPS.  Brady is willing to compromise with Defendant's about viable options such as admissions to keep out information that a Court may deem as an intrusion on AC's privacy.  However; it is important to note that such information is already part of the public record due to the many public court proceeding and submitted documentation. Please refer to Brady's complaint of 4-1-13 against Director Pam MacDonald.

### NOTICE RE: PRESERVATION OF ELECTRONIC DATA

PLEASE TAKE NOTICE that all electronic data created by Somersworth School District from July 2012 through January 2015 must be preserved.  Please insure that all current back-up tapes, disks or drives that contain data for the relevant time period identified above are not rewritten.  Stop any rotation, alteration and/or destruction of electronic media that may result in the alteration or loss of any electronic data relating to the issues in this lawsuit.  Do not alter and/or erase active, deleted files or file fragments on any electronic media that may have any relation to this matter.  Do not conduct any maintenance such as defragging, reformatting or upgrading any hard drives that may contain data relevant to this litigation.  Do not dispose of any electronic media storage devices replaced due to failure and/or upgrade that may contain electronic data having any relation to this matter.

114

**INSTRUCTIONS**

### A.    REQUESTS FOR PRODUCTION.

1.    NH Rule 24: Production of Documents: *Scope.*  Any party may serve on any other party a request: (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, test, or sample any designated documents or electronically stored information including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, by the respondent into reasonably usable form, or to inspect and copy, test, or sample any designated tangible things which constitute or contain matters within the scope of Rule 21(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 21(b).
(b) *Procedure.*

(1) The request shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity.  The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts.

(2) The party upon whom the request is served shall serve a written response within 30 days after the service of the request.  A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties.  The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.  If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

(3) A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

### DEFINITIONS

The following are definitions of the terms used in this request for "production" discovery requests.  Please read the definitions carefully as some of the words used in these discovery requests may be more expansive than those terms are given in common usage.

1.    **"Document"** means recorded material in any form, including the original and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including, without limitation, correspondence-mails, grants, memoranda, notes, desk calendar, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, complaints, letters of reprimand, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, telephone calls, voice mails, chat rooms, meetings or other communications, bulletins, bulletin boards, magazines, publications, printed matter, photographs, video, computer stored or generated information, teletypes, telefax, invoices, worksheets and all

115

drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recording transcripts, graphic or aural records or representations of any kind, of which you have knowledge or which are or were formally in your actual or constructive possession, custody, or control.

     2.    The terms "relate to", "relating to", "pertain to", and "pertaining to" are used in the broadest sense and mean to refer to, discuss, involve, reflect, deal with, consist of, represent, constitute, emanate from, directed at, support, evidence, describe or mention.

### REQUESTS FOR PRODUCTION

Please produce or make available for inspection:

1. Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and any and all employees, consultants, or volunteers working for the University of New Hampshire Institute on Disability related to Facilitated Communication between September 2011 and through January 2015.

RESPONSE:

2. Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and any and all employees, consultants, or volunteers working for the University of New Hampshire Institute on Disability related to "Who Cares About Kelsey" and the mini films (include "Axel")  between September 2011 and through January 2015.

RESPONSE:

3. Any and all <u>redacted</u> documents sent, received, or created between Somersworth School District employees and any and all employees or consultants working for the University of New Hampshire Institute on Disability related to AC between September 2011 and through January 2015.

RESPONSE:

4. Any and all documents sent or received between Somersworth School District employees and any and all employees or consultants working for the University of New Hampshire Institute on Disability related to Lisa Brady between September 2011 and through January 2015.

RESPONSE:

5. Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and  the NH Department of Education, (any employee or contracted

representative) related to "Who Cares About Kelsey" and the mini films (include "Axel") between September 2011 and through January 2015.

RESPONSE:

6. Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and the US Department of Education, (any employee or contracted representative) related to "Who Cares About Kelsey" and the mini films (include "Axel") between September 2011 and through January 2015.

RESPONSE:

7. Any and all documents sent, received or created between the Somersworth School District (Jeni Mosca and Pam MacDonald) and the NH Department of Education (Virginia Barry, Richard Farrell, Judith Fillion or any other representative involved with complaint investigation) as it relates to Lisa Brady's fraud complaint against Pam MacDonald and Jeni Mosca, filed in 2014, related to the "Axel" film.

RESPONSE:

1. Any and all documents and other evidence used by the Somersworth School Board to terminate Lisa Brady, in part, for having violated NH RSA 141H:2.

RESPONSE:

2. Any and all documents sent, received or created from Jeni Mosca, Pam MacDonald, Dana Hilliard and Kate Seagal, related to claims that Lisa Brady violated NH RSA 141 H:2 in March of 2014 which; resulted in her transfer.

RESPONSE:

3. Any and all emails sent or received between all of the Somersworth Personnel related to Lisa Brady or any pseudo-name or initials that may have been created and meant to be about Lisa Brady between July 2012 through January 2015.

RESPONSE:

4. Any and all documents sent, received, or created between Middle School personnel Robin Scott, Ann Noonan, Principal Dana Hilliard and Officer Rick Campbell related to a reported physical assault

117

committed by Starr Breton, against a middle school student (RG) and slamming a desk hard into his stomach while disciplining him.

RESPONSE:

5. Copy of any letter of reprimand or any other document Somersworth School District created to discipline Starr Breton for assaulting a student (RG) or any other reprimands within Starr Breton's employee file.

RESPONSE:

6. Any and all documents sent or received between Pam MacDonald and Jeni Mosca and the NH Department of Education between December 2012- March 2013 related to ESOL services.

RESPONSE:

7. Any and all redacted documents created, sent or received between Jeni Mosca, Pam MacDonald, Bob Marquis, Dana Hilliard, Deb Mitchell, Meagan Davis, Michael Quigley, Michael McSheehan (UNH IOD), Laurie Lambert (UNH IOD), and the NH Department of Education related to student, AC, and his Alternative Portfolio between December 2012 through March 2013.

RESPONSE:

8. Any and all documents sent or received between Jeni Mosca and Pam MacDonald, UNH Institute on Disability, and the NH Department of Education related to Lisa Brady between July 2012 and January 2015.

RESPONSE:

9. Copies of AC's redacted IEP's from 2008 through December 2012 and redacted IEP progress note from June 2012 which; supported that AC "still needs work with discrimination between pictures and icons, as he chooses one thing and means another frequently."

RESPONSE:

10. Any and all redacted student documents or education plans proving AC's Parent agreed to allow him to

118

use the alleged communication method, facilitated communication or FC, at school or within the "Axel" film.

RESPONSE:

11. Any and all documents created by Somersworth School District to prove that they reprimanded staff at Idlehurst Elementary School for failing to turn in AC's alternative portfolio to the State which; was due in May of 2012 and in violation of NH State and IDEA Special Education laws.

RESPONSE:

12. A redacted copy of AC's Prior Written Notice from his IEP meeting in December of 2012 indicating that ESOL services would be eliminated from his IEP.

RESPONSE:

I appreciate you taking the time to process my request and please contact me to arrange for how best to have my request processed.

DATED this 3rd day of July, 2021.

By: *Lisa Brady*

Lisa Brady, ProSe
Phone Number: 603-292-5052
Email: lisa.brady@comcast.net
**Certificate of Service**

I certify that a copy of this filing was served first class mail/email to Attorney Brian Cullen, 10 E. Pearl

St., Nashua NH 03060.

Dated: December 3, 2018

*Lisa Brady*

/s/ Lisa Brady, Pro Se
Lisa Brady

# Exhibit B

## STATE OF NEW HAMPSHIRE
## SUPERIOR COURT OF STRAFFORD COUNTY

| | | |
|---|---|---|
| Lisa M. Brady | ] | December 16, 2018 |
| *Plaintiff* | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board,] | | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. <u>219-2018-cv-00002</u>** |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities. | ] | |
| *Defendants* | | |

**Discovery**
   **B.**      <u>REQUESTS FOR PRODUCTION.</u>


1.    NH Rule 24: Production of Documents: *Scope.*  Any party may serve on any other party a request: (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, test, or sample any designated documents or electronically stored information including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, translated, if necessary, by the respondent into reasonably usable form, or to inspect and copy, test, or sample any designated tangible things which constitute or contain matters within the scope of Rule 21(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 21(b).

## DEFINITIONS

The following are definitions of the terms used in this request for "production" discovery requests. Please read the definitions carefully as some of the words used in these discovery requests may be more expansive than those terms are given in common usage.


3.    **"Document"** means recorded material in any form, including the original and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), including, without limitation, correspondence-mails, grants, memoranda, notes, desk calendar, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, complaints, letters of reprimand, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, telephone calls, voice mails, chat

rooms, meetings or other communications, bulletins, bulletin boards, magazines, publications, printed matter, photographs, video, computer stored or generated information, teletypes, telefax, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, tapes, tape recording transcripts, graphic or aural records or representations of any kind, of which you have knowledge or which are or were formally in your actual or constructive possession, custody, or control.

4.     The terms "relate to", "relating to", "pertain to", and "pertaining to" are used in the broadest sense and mean to refer to, discuss, involve, reflect, deal with, consist of, represent, constitute, emanate from, directed at, support, evidence, describe or mention.

### REQUESTS FOR PRODUCTION

Please produce or make available for inspection:

8.   A copy of plaintiff pleadings in the Somersworth case involving Burnap v. Somersworth School District.

RESPONSE:

I appreciate you taking the time to process my request and please contact me to arrange for how best to have

my request processed.


DATED this 16th day of July, 2021.

By: *Lisa Brady*

Lisa Brady, ProSe
Phone Number: 603-292-5052
Email: lisa.brady@comcast.net
**Certificate of Service**

I certify that a copy of this filing was served first class mail/email to Attorney Brian Cullen, 10 E. Pearl

St., Nashua NH 03060.

Dated: December 16, 2018

*Lisa Brady*

/s/ Lisa Brady, Pro Se

Lisa Brady

# Exhibit C

## STATE OF NEW HAMPSHIRE
## SUPERIOR COURT OF STRAFFORD COUNTY

| | | |
|---|---|---|
| Lisa M. Brady | ] | January 8, 2019 |
| *Plaintiff* | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. <u>219-2018-cv-00002</u>** |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities; | ] | |
| *Defendants* | | |

### Plaintiff Counter to Defendant's Objections

**INTRODUCTION**

The Plaintiff  has countered the Defendants Objections to make a good faith effort to negotiate

Discovery.  The Counter requests are bolded below.

**RESPONSE:**

1.      Counsel objects to the Requests to the extent that they seek information subject to the attorney-
client privilege, the work product doctrine, or any other privilege or immunity which Defendant

may assert under law.

**COUNTER:**

**Brady did not and does not request any document that is protected by attorney-client**

**privileged. Oral or written communications of any kind with legal counsel.**

**RESPONSE:**

2.      Counsel objects to the Requests to the extent that they seek information which was prepared in

anticipation of litigation and/or for trial, including but not limited to communications between

onsite employees and risk management specialists.

**COUNTER:**

122

**Counsel's objections circumvent the purpose of discovery and deny Plaintiff the right to inspect records that are not covered under privileged communication.  Counsel appears to be broadly including all communications among staff as "anticipation of litigation." The law does not protect those documents under privilege because they are not an attorney client privilege.   Plaintiff seeks records which; are not protected by privilege.**

**RESPONSE:**

3.  Counsel objects to any Request that is burdensome or oppressive, and that seeks information which is already known by the Plaintiff, information that is already in the Plaintiffs possession, and/or information that is not relevant or is not reasonably calculated to lead to the discovery of admissible evidence.

**COUNTER:**

**Brady will amend the burdensome load, not seeking communication that was exchanged between parties at her termination hearing.**

**RESPONSE:**

4.  Counsel objects to the Requests to the extent that Plaintiff purports to condition Defendant's obligation, if any, to respond to the Requests in any manner other than what may be prescribed by court rules.

**COUNTER:**

**If you are talking about my request for a copy of the televised school board hearing from February 16, 2015 in which; Attorney Kincaid defamed me publicly, I am asking to have access to the video so that I can make a copy.  It is evidence of defamation of character and highly relevant to my defamation claim.  You have not responded to my request for the Kincaid televised board meeting as I requested also in December.**

**RESPONSE:**

5.  Counsel objects to producing protected student or employee records, including but not limited to IEP records, that are subject to federal, state or common law protection absent Court order.

**COUNTER:**

I don't need records:  I need admissions I cannot rely on Pam MacDonald to give honest testimony.  Brady has no desire to obtain protected student records. Brady was AC's case manager from July 2012 until March of 2014 and knows full well that Director Pam MacDonald has perjured herself in two hearings and at Deposition on January 4th, 2019.

ADMISSIONS

V.    Brady seeks admission from the district supporting that "facilitated communication" was not a method condoned by AC's IEP team for communication in the 2011 and 2012 IEP. Please note that Brady is NOT referencing "functional communication" which; is different and was mentioned in the IEP.  I am explicitly talking about facilitated communication and I know full well it was not in the IEP.

B.  Pam MacDonald also committed perjury related to her statement on January 4th deposition with regard to the Idlehurst team failing to turn AC's alternative portfolio into the state when it was due in early May of 2012.  At my termination hearing she stated the following:

See transcript page 366:

Brady:  And so did Idlehurst violate IDEA when
6 they didn't send that portfolio in?
7 Pam: A. I believe they did.
I am requesting an admission from the district that "Idlehurst failed to turn in a portfolio in May of 2012 to the State when it was due and in violation of AC's IEP AND that they did not punish anyone from Idlehurst when they violated the student's IEP. (Pam admitted this at the DOL hearing and at my termination hearing but, suddenly Idlehurst did not violate AC's IEP at last Friday's deposition).

C.  I am requesting admission from the District that AC's IEP team met to switch AC from the Alternative Portfolio on *5/24/2012*.  This meeting was long after the deadline to get the Portfolio into the State per NH Rules.

D.  I am requesting admission from the district that the Prior written notice that I personally wrote (wasn't very long) at AC's IEP meeting on December 18, 2018 included the fact that the AC's IEP team determined that we were going to drop ESOL service.

***See more admissions below.

124

V.      Each of the Defendant's responses are made subject to, and without waiving, the general
        objections
contained herein. The specific objections made hereafter are in addition to, and not in lieu of,

these general objections.

## REQUESTS FOR PRODUCTION

**REQUEST:**

V.      Any and all documents sent or received (internally and externally) or created between

        Somersworth School District employees and any and all employees, consultants, or

        volunteers working

for the University of New Hampshire Institute on Disability related to Facilitated

Communication between September 2011 and through January 2015.

**RESPONSE:**

        Defendants object to this request as it is overbroad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. In particular,

notwithstanding the large number of counts against the Defendants, the crux of Plaintiffs action

is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause

to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-

H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on

Disability film, all of which have determined her claims to be unfounded. See, e.g., letter

November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint

regarding grant fraud unfounded).

**COUNTER:**

**Virginia Barry investigated fraud related to finances and not related to the false portrayal**

**of student (see pages 17-24). Brady filed multiple civil rights complaints against Director of**

**Special Education, Pam MacDonald, including the false portrayal of her student, AC,**

**featured in the Axel film. The information is highly relevant. Brady will agree to**

**streamline this request to all electronic documents, emails (sent/received), meeting minutes**

**(not student), contracts, mail correspondence, computer stored or generated information.**

**This is not an overly broad request and very specifically indicative of internal search using**

**"FC" or "Facilitated Communication." The information requested is subject to public**

**disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring**

125

disclosure broadly, while construing exemptions narrowly. **N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003).** A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. **Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

V.      Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and any and all employees, consultants, or volunteers working

for the University of New Hampshire Institute on Disability related to "Who Cares About Kelsey" and the mini films (include "Axel") between September 2011 and through January 2015.

**RESPONSE:**

Defendants object to this request as it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiff's action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**Virginia Barry investigated fraud related to finances and not related to the false portrayal of student (please see complaint and Virginia Barry's response for proof she didn't investigate. Brady alleged her student was falsely portrayed not that UNH misused grant funds). Brady's complaint regarding wrongful termination involved allegations related to her protected advocacy involving the false portrayal of her student in the public film 'Axel," part of the Who Cares about Kelsey Teaching Kit. The information is highly relevant. Brady will agree to streamline this request to all electronic documents, emails (sent/received), meeting minutes (not student), contracts, mail correspondence, computer**

126

**stored or generated information.  The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

V.     Any and all redacted documents sent, received, or created between Somersworth School District employees and any and all employees or consultants working for the University of New Hampshire Institute on Disability related to AC between September 2011 and through January 2015.

**RESPONSE:**

Defendants object to this request as it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiff s action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education

Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**The documents requested involve information related to my former student's involvement in a film. My wrongful termination issue is directly related to my advocacy for my student while blowing the whistle on this film and the subsequent retaliation that resulted. Virginia Barry investigated fraud related to finances and not related to the false portrayal of student. The information is highly relevant. Brady will agree to streamline this request to all electronic documents, emails (sent/received), meeting minutes (not student), contracts, mail correspondence, computer stored or generated information.  The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will**

"construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996). **REQUEST:**

V.    Any and all documents sent or received between Somersworth School District employees and any and all employees or consultants working for the University of New Hampshire Institute on Disability related to Lisa Brady between September 2011 and through January 2015.

**RESPONSE:**

Defendants object to this request as it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiffs action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**Brady will agree to streamline this request to all emails (sent/received).  Any and all emails (internal and external) between Somersworth School District employees and any and all employees or consultants working for the University of New Hampshire Institute on Disability related to Lisa Brady between September 2011 and through January 2015. The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996). REQUEST:**

128

V.    Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and the NH Department of Education, (any employee or contracted representative) related to "Who Cares About Kelsey ' and the mini films (include "Axel") between September 2011 and through January 2015.

**RESPONSE:**

Defendants object to this request as it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiffs action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**Brady's complaint regarding wrongful termination involved allegations related to her protected advocacy involving the false portrayal of her student in the public film 'Axel," part of the Who Cares about Kelsey Teaching Kit. The information is highly relevant. Brady will agree to streamline this request to all electronic documents, emails (sent/received), meeting minutes (not student), contracts, mail correspondence, computer stored or generated information. The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

V.    Any and all documents sent or received (internally and externally) or created between Somersworth School District employees and the US Department of Education, (any employee

129

or contracted representative) related to "Who Cares About Kelsey" and the mini films (include "Axel") between September 2011 and through January 2015.

**RESPONSE:**

Defendants object to this request as it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiffs action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**This is not an overly broad request. Brady's complaint regarding wrongful termination involved allegations related to her protected advocacy involving the false portrayal of her student in the public film 'Axel," part of the Who Cares about Kelsey Teaching Kit. The information is highly relevant. The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

V.    Any and all documents sent, received or created between the Somersworth School District (Jeni Mosca and Pam MacDonald) and the NH Department of Education (Virginia Barry, Richard Farrell, Judith Fillion or any other representative involved with complaint investigation) as it relates to Lisa Brady's fraud complaint against

PamMacDonald and Jeni Mosca, filed in 2014, related to the "Axel" film.

**RESPONSE:**

Defendants object to this request as it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, notwithstanding the large number of counts against the Defendants, the crux of Plaintiff's action is one for breach of contract. In particular, Plaintiff claims that the Defendants lacked just cause to terminate her under RSA 183-13 insofar as they relied upon an alleged violation of RSA 141-H:2. Plaintiff has brought prior complaints in other I challenging the UNH Institute on Disability film, all of which have determined her claims to be unfounded. See, e.g., letter November 13, 2014 from Commissioner of Education Virginia Barry (finding Complaint regarding grant fraud unfounded).

**COUNTER:**

**Brady filed a complaint with Virginia Barry (see attachments evidence below) regarding the false portrayal of her student in a public film and Virginia Barry reported on allegations never lodged by Brady within her response. That does not have anything to do with the right to know laws. Brady will agree to streamline this request to all electronic documents, emails (sent/received), meeting minutes (not student), mail correspondence, written documents, computer stored or generated information. The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

8. Any and all documents and other evidence used by the Somersworth School Board to terminate Lisa Brady, in part, for having violated NH RSA 141H:2.

   **RESPONSE:**

   Defendants and unduly burdensome. Further responding, Defendants state that all evidence presented in connection with the termination proceedings regarding Plaintiff were provided to her at that time, and the Board only relied upon such evidence as was presented to it in connection with that hearing.

   **COUNTER:**

131

**All internal emails and documents used in the investigation to determine if Brady violated NH RSA 141H:2. Exclude anything in the District evidence binder submitted at my Board hearing.**

**REQUEST:**

9. Any and all documents sent, received or created from Jeni Mosca, Pam MacDonald, Dana Hilliard and Kate Seagal, related to claims that Lisa Brady violated NH RS 141 H:2 in March of 2014 which; resulted in her transfer.

    **RESPONSE:**

    Defendants object to this request to the extent that it seeks documents already in the Plaintiffs possession through prior litigation or hearings. Defendants will produce any additional responsive documents subject to redactions to protect confidential employee information.

    **COUNTER:**

    **All internal emails and documents used in the investigation to determine if Brady violated NH RSA 141H:2. Exclude anything in the District evidence binder submitted at my Board hearing.**

    **REQUEST:**

10. Any and all emails sent or received between all of the Somersworth Personnel relate to Lisa Brady or any pseudo-name or initials that may have been created and meant to be about Lisa Brady between July 2012 through January 2015.

    **RESPONSE:**

    Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants have previously produced to the Plaintiff her personnel file and all documents relied upon in connection with her termination. Without further specificity, this request is overbroad.

    **COUNTER:**

    **Any and all emails sent or received between Somersworth Personnel, Dana Hilliard, Pam MacDonald, Jeni Mosca, Bob Marquis, Robin Scott, Michael Quigley, Kate Seagal, and Tamara Halley that contain the name in the subject or body of the email the name: Lisa, Brady, or any pseudo-name or initials that may have been created and meant to be about Lisa Brady between July 2012 through January 2015.**

**REQUEST:**

V.      Any and all documents sent, received, or created between Middle School personnel Robin Scott, Ann Noonan, Principal Dana Hilliard and Officer Rick Campbell related to a reported physical assault committed by Starr Breton, against a middle school student (RG) and slamming a desk hard into his stomach while disciplining him.

**RESPONSE:**

Defendants object to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff was transferred as a result of a breakdown in the relationship between her and Ms. Breton. Any alleged assault by Ms. Breton is neither relevant to the current claims nor reasonably calculated to lead to the discovery of evidence relevant to the current claims.

**COUNTER:**

**The records requested are from a physical assault investigated by Officer Rick Campbell are subject to 91 A. A public-school teacher/Assistant can't assault a student and then claim that is private information.  It is not!!  Brady was accused of violating SB's rights under RSA 141H:2.  In order to defend herself meaningfully, Brady requires records which; corroborate that she had just cause to question SB's behavior in the classroom. Brady's experiences with SB while working with her for five years formulated her opinions which; were backed up by incidents in the record.**

**REQUEST:**

V.      Copy of any letter of reprimand or any other document Somersworth School District created to discipline Starr Breton for assaulting a student (RG) or any other reprimands within Starr Breton's employee file.

**RESPONSE:**

Defendants object to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff was transferred as a result of a breakdown in the relationship between her and Ms. Breton. The alleged assault by Ms. Breton is neither relevant to the current claims nor reasonably calculated to lead to the discovery of evidence relevant to the current claims.

**COUNTER:**

133

Brady was accused of violating SB's rights under RSA 141H:2. In order to defend herself meaningfully, Brady requires records which; corroborate that she had just cause to question SB's behavior in the classroom. SB's history related to her erratic behavior is highly relevant and a letter of reprimand in her file related to assaulting a student helps to validate Brady's concerns about SB and safety in the classroom.

**REQUEST:**

13. Any and all documents sent or received between Pam MacDonald and Jeni Mosca and the NH Department of Education between December 2012- March 2013 related to ESOL services.

**RESPONSE:**

Defendants have no documents responsive to this request. Further answering, Ms. MacDonald communicated with the DOE regarding ESOL by phone.

**COUNTER:**

**Admission with regard to ESOL identified in #5 above.**

**REQUEST:**

14. Any and all redacted documents created, sent or received between Jeni Mosca, Pam MacDonald, Bob Marquis, Dana Hilliard, Deb Mitchell, Meagan Davis, Michael Quigley, Michael McSheehan (UNH IOD), Laurie Lambert (UNH IOD), and the NH Department of Education related to student, AC, and his Alternative Portfolio between December 2011 through September 2012.

**REQUEST:**

15.      Any and all redacted documents created, sent or received between Jeni Mosca, Pam MacDonald, Bob

Marquis, Dana Hilliard, Deb Mitchell, Meagan Davis, Michael

Quigley, Michael McSheehan (UNH IOD), Laurie Lambert (UNH IOD), and the NH

Department of Education related to student, AC, and his Alternative Portfolio between December

2011 through September 2012.

**RESPONSE:**

Defendants object to this request as it is overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery of admissible evidence. In particular, it does not dispute that she was under instruction that the student should participate in the NECAP testing and that she did not effectuate that participation. In addition, communications with UNH IOD representatives are neither relevant to nor reasonably calculated to lead to the discovery of evidence relevant to this action.

**COUNTER:**

**Pam MacDonald issued a warning to me on March 23, 2013 in which she essentially accused me of being incompetent and threatened my termination. The warning was directly related to my case management of AC and his participation in standardized testing. It is highly appropriate and very specific. Michael McSheehan and Laurie Lambert attended a meeting for AC on May 24, 2012 and involved with the decision to take AC off the Alternative Portfolio Assessment. I have requested any documents you have between December 2011 and September 2012 which; is very specific. Any reasonable person would question why a group of professionals would place a student on a regular assessment when he had not mastered the alphabet or numbers 1-10.**

**REQUEST:**

V.      Any and all documents sent or received between Jeni Mosca and Pam MacDonald UNH Institute on Disability, and the NH Department of Education related to Lisa Brady between July 2012 and January 2015.

**RESPONSE:**

Defendants will produce all responsive documents.

**COUNTER:**

**The information requested is subject to public disclosure under 91 A and I have a right to it. Courts will "construe provisions favoring disclosure broadly, while construing exemptions narrowly. N.H. Civil Liberties Union v. City of Manchester, 149 NH 437, 439 (2003). A person's motives for seeking disclosure are irrelevant when determining whether a public record should be disclosed. Union Leader Corp. v. City of Nashua, 141 NH 473, 476 (1996).**

**REQUEST:**

16. Copies of AC's redacted IEP's from 2008 through December 2012 and redacted IEP progress note from June 2012 which; supported that AC "still needs work with discrimination between pictures and icons, as he chooses one thing and mean another frequently."

**RESPONSE:**

Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent that the request of production would violate the Student's privacy rights. Plaintiff is no longer an employee with the District. Moreover, the Student's IEP has no bearing on any of the issues before the Court in the instant action. Those issues are limited to whether Defendant's properly terminated the Plaintiff for failure to comply with District policies and failure to attend her designated place of employment. Neither of these issues appear to be contested in this case.

**COUNTER:**

17. **If the Defendants are willing to admit key information, Brady would not seek copies of the IEP's. An admission that the student was not cognitively functioning on "grade level" and "college bound" as asserted in the film "Axel." Brady was retaliated against after she filed a complaint against Pam MacDonald in September of 2012.      Additionally, Plaintiff would not need a copy of the student's progress note from June 2012 unless the District will admit that the it stated the following: "still needs work with discrimination between pictures and icons, as he chooses one thing and mean another frequently." I read and wrote it down at the time I was employed and I would like the district to confirm this in an admission.**

**REQUEST:**

V.    Any and all redacted student documents or education plans proving AC's Parent agreed to allow him to use the alleged communication method, facilitated communication or FC, at school or within the "Axel" film between December 2011 and January of 2015.

**RESPONSE**:

Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent that the request of production would violate the Student's privacy rights. Plaintiff is no longer an employee with the District. Moreover, the Student's IEP has any bearing on any of the issues before the Court in the instant action. Those issues are limited to whether Defendant's properly terminated the Plaintiff for failure to comply with District policies and failure to attend her designated place of employment.

Neither of these issues appear to be contested in this case.

**COUNTER:**

**See Brady response 5A above under admissions REQUEST:**

18. Any and all documents created by Somersworth School District to prove that they reprimanded staff at Idlehurst Elementary School for failing to turn in AC' alternative portfolio to the State which; was due in May of 2012 and in violation of NH State and

**⌁** IDEA Special Education laws.
**⌁** **RESPONSE:**

Defendants object to this request as over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request    that it misstates facts and is based upon a false assumption. Subject to and without waiving such objections, Defendants have no responsive documents as Idlehurst staff were not reprimanded for any activity concerning Student.

**COUNTER:**

**See Brady response 5B above under admissions.**

**REQUEST:**

19. A redacted copy of AC's Prior Written Notice from his IEP meeting in December of 2012 indicating that ESOL services would be eliminated from his IEP.

**RESPONSE:**

Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent that the request of production would violate the Student's'privacy rights. Plaintiff is no longer an employee with the District.

Moreover, the Student's'IEP has no bearing on any of the issues before the Court in the instant action. Those issues are limited to whether Defendant's properly terminated the Plaintiff for failure to comply with District policies and failure to attend her designated place of employment. Neither of these issues appear to be contested in this case

**COUNTER:**

**See Brady response 5D above under admissions**


Respectfully Submitted, 1/8 /2019

*Lisa Brady*

Lisa Brady, Pro Se 8
Constable Rd.
Durham, NH 03824 603-292-5052
lisa.brady@comcast.net

**Certificate of Service**

I certify that a copy of this filing was hand delivered to the Court and served first class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

.

*Lisa Brady*

Dated:   January 8, 2019

/s/ Lisa Brady, Pro Se
Lisa Brady

# EXHIBIT #14

## STATE OF NEW HAMPSHIRE SUPERIOR COURT OF STRAFFORD COUNTY

| | |
|---|---|
| Lisa M. Brady | December 4, 2019 |
| Plaintiff | ] |
| | ] |
| V. | ] |
| | ] |
| Somersworth School District, School Board, | ] |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ]   Civil No. 219-2018-cv-00002 |
| in both her individual and official capacities; | ] |
| PAMELA MACDONALD, Special Education | ] |
| Director SAU#56, in both her individual and   official | ] |
| capacities; | |
| Defendants | |

## PLAINTIFF TRIAL MANAGEMENT: PRETRIAL STATEMENTS

Pursuant to Superior Court Rule 35, the Plaintiff, Lisa Brady, hereby submits the following statement to the Defendants and Court, in compliance with the requirements set forth in Rule 35(I) Jury Trials, part (b)14 days prior to the Trial Management Conference, unless another time is directed by the court or agreed to by the parties, all parties shall file with the court and serve on the other parties Pretrial Statements, which shall include, by numbered paragraphs, a detailed, comprehensive, and good faith statement, setting forth the following:

1. Summary of the case:

Lisa Brady was a well-liked, fun, passionate, dedicated, and tenured Special Education teacher for the Somersworth School District. She was unlawfully terminated in January of 2015, just six months after filing a complaint against Somersworth Superintendent of Schools, Jeni Mosca and Director of Special Education, Pam MacDonald with the N.H. Commissioner of Education, Virginia Barry. Within the complaint to Virginia Barry, Brady stated the following:

"SAU 56 representatives; Pam MacDonald (Director of Special Education), and Superintendent Jeni Mosca, acted with deliberate ignorance of the truth and reckless disregard when they allowed the NH Institute of Disability representatives, with a conflict of interest, Dan Habib and Michael McSheehan,  to portray in a video, a significantly profound, cognitively impaired student in my class, Axel, as  college bound while using federal grant money obtained from the USDOE (The National Center and State Collaborative (NCSC) and  Schoolwide Integrated Framework for Transformation (SWIFT)).  Superintendent Mosca and Special Education Director, Pam MacDonald's actions amount to fraud.  They took advantage of one of the most vulnerable students in their school district in order to promote their own careers."

The fraudulent "Axel" film is currently selling out of the University of New Hampshire, Institute on Disability. It claimed to be based on truth when, in fact, it was based on bold-faced lies. For the sake of promoting an "inclusion at all cost" agenda  in our public education classrooms across this country

and at the expense of exploiting Axel, Dan Habib, producer of the film, and the staff at Idlehurst Elementary School, cheated when they put their hands on top of Axel's hand, "facilitated communication," so that they could answer questions for him and dupe the public into believing that he was no longer significantly cognitively impaired but, in fact,

"college bound," and functioning academically "on grade level." Staff at the University of New Hampshire, Institute on Disability and Somersworth Idlehurst Elementary School knew or should have known based on every shred of evidence in Axel's educational records and abilities that he functioned on a level consistent with a toddler. They all knew or should have known that he had not yet mastered alphabet or letter recognition. They also all knew or should have known that there was not a shred of empirical scientific evidence to warrant the use of hand-over-hand assist/facilitated communication with any student. Additionally, they all knew or should have known that Axel's IEP did not include an accommodation for the use of facilitated communication and that his mother did not agree with its' use.

The fallout from this criminal act involved Superintendent Mosca and Director of Special Education, Pam MacDonald, knowingly, maliciously and willfully targeting Lisa Brady for termination after she blew the whistle on the fraud. Brady has material evidence to refute all allegations made against her by the Somersworth School District at her termination hearing.

Brady's actions were based on her concerns about Axel's safety and, as a mandated reporter, had a duty to report her student's neglect at the hands of the Somersworth School District's top educational officials.

The evidence will show that after Lisa Brady reported Pam MacDonald and Jeni Mosca's involvement with the fraudulent "Axel" film, she was targeted for termination. The trail of lies and sloppiness did not end with the fraudulent film, it bubbled over in the form of false warnings related to her competence, claims that Brady violated the law, and false claims that Brady abandoned her job. Somersworth School Administrators maliciously and wrongfully persecuted Brady before the School Board. They did so without any evidence and while using tax-payer funds to protect their own selfish, criminal self-interests.   The evidence will show that they acted disgracefully and with an intent to destroy Brady's teaching career and future financial security.

   2. Disputed issues of fact;


A.     **Wrongful Termination**

   •     The Defendants believe they terminated Brady in compliance with 189:13

         and with "just cause" because she was immoral, incompetent, and engaged in
         misconduct.

   •     Brady believed her termination was motivated by "bad faith and malice" in

         retaliation for her filing civil rights and criminal complaints against Mosca and

         MacDonald with public officials, directly related to their role in the exploitation of

her Student, 'Axel,' in the fraudulent, grant funded, public film currently selling out

of U.N.H.

## B. Breach of Contract

- The Defendants believe that Brady failed to challenge the Board's termination

    through RSA 189:14 though a writ of assumpsit. They believe Brady would only be

    entitled to recovery within the remaining contract year from 2015.

- Brady countered the Defendants' assertion with a NH Department of Education

    Opinion written by Hearing Officer Scott Johnson as follows (see appendix A,

    September 25, 2019):

    In the New Hampshire Board of Education Teacher/Newmarket School District, SB-FY-

    0905-016, Hearing officer Scott Johnson stated the following:

    "It seems more likely that the Legislature intended the appeal of a dismissal to go to
    superior court because of its contractual nature and the potential for damages which
    distinguishes it from removal and non-renewal actions. Superior Courts can also order
    the kind of equitable remedies that the Board could not order, such as a finding that
    the dismissal violated the law.  In other words, the superior court can resolve all the
    issues, whereas the Board cannot."

    Hearing Officer Johnson also recommended:

    "that the Board find that it does not have jurisdiction under RSA 189:31 as long as the
    teacher is dismissed. In effect, the removal no longer exist because the teacher is no
    longer an employee of the school and does not need to be removed under RSA 189:31.
    If superior court were to find that the dismissal was in violation of the law, then the
    removal may again become active and the teacher should be able to refile the appeal
    on the removal. "See Appendix A September 25, 2019.
- Brady provided evidence to support that she exhausted her administrative remedies
    and made a good faith effort to appeal the decision and, at no fault of her own,
    was denied an appeal of the Board's decision.  Brady was a tenured teacher and
    her contract was on a 'continuing status' renewal basis and, had she not been
    wrongfully terminated, she would still be teaching in Somersworth.

## C. Defamation of Character

- At Brady's termination hearing on January 20, 2015 and at a school Board hearing on

February 16, 2015, the Board found that the evidence supported that Brady violated NH

RSA 141H:2. The Defendants published the false claims online, in writing, and announced it verbally on local public television.

• Brady's position is that the Defendants have defamed her and destroyed her reputation and teaching career. They did so was maliciously, willfully, and wantonly after Brady had filed written civil right and criminal complaints against Mosca and MacDonald.

### D. Brady "genetically tested" her co-worker

• The Defendants claim that Brady took her co-workers saliva and had it unlawfully genetically tested.

• Brady claimed that she did not "take" her co-workers saliva but, that she strongly believed the saliva abandoned on her private property belonged to her assistant.   Brady contends that she had a legal test done on her private property on her private time.

### E. Genetic Testing v. Legal Consumer Test

• The Board accused Brady of "genetically" testing her co-worker under NH RSA 141- H:2. Genetic testing is a medical test that looks at an individual's propensity toward diseases and genetic condition.  Genetic testing is medical test completed on an "individual."

• Brady's position is that she had a legal consumer DNA test completed outside of school. The DNA was "abandoned" on her private property (mug and school ID badge).  The evidence shows the sample was mixed and from unknown, multiple subjects. Brady's position is that Somersworth knowingly falsely accused her of violating the law (NH RSA 141H:2) because in order to terminate her employment they needed to challenge her ethics and morality.

### F. RSA 141-H:2 Law & House Bill 1373

• The Board found that Brady violated the NH RSA 141 H:2

.

- Brady's position has always been that she did not complete "genetic testing" on

    her coworker.  She had the abandoned DNA on her private property tested to

    see if it matched. NH legislative amendment (House Bill 1373) to the NH

    RSA 141-H:2-a statute which; further clarified legislative intent as stated; "This
    section shall not apply to abandoned property".

## G. Victim Consideration

Somersworth Administration portrayed Brady's co-worker, Ms. Breton, as a victim
of Brady's and the unlawful taking of her bodily fluids for genetic testing.

- Brady's co-worker never filed a complaint against her and never claimed to be
a victim. Brady thought her co-worker vandalized her file cabinet and bit her
identification badge after she had reported safety concerns to Principal Hilliard
about sleeping in class and admitted use of Oxycontin. Brady's coworker had also
admitted to obtaining Oxycontin prescriptions from two different physicians. Ms.
Brady and other staff members at the middle school were concerned about the co-
worker's lethargy, mood swings, and falling asleep while working with a severely
impaired student.  Brady's coworker had admitted in the past to biting her husband
in a domestic dispute and had a recent history that included assaulting a special
needs student in her program and a suicidal attempt (overdosing on her
prescription medication).  Brady believed Principal Hilliard had not taken her
concerns about classroom safety seriously after she reported vandalism in her
classroom and her program assistant's neglectful behavior while working with
students. The evidence will show that the DNA charge was a "red herring."

## H. School Board Ethics Policy

- In terminating Brady, the Board found that Brady violated ethical school policy

    standards (GBEA) and highlighted the provision which; stated: "Maintain all privacy

    and confidentiality standards as required by law." And "Exhibit professional conduct

    both on and off duty." The Board tied the school ethics policy to claims that Brady

    violated her co-worker's genetic privacy rights under RSA 141 H:2.

- Brady believed the DNA testing that she had done on her private property was

    legal and therefore "ethical."  Brady was also concerned about her safety and the

    safety of her students in the classroom and administration failed to investigate

    those concerns.  Additionally, Brady kept Principal Hilliard apprised of the fact that

she was going to have a comparison test completed on her private property and he

never discouraged her from doing so.

### I. FERPA Violation

• The Board claimed that Brady violated FERPA regulations and stated the following:

"The Board noted that Ms. Brady's belief that the public's right to know, regarding an alleged mischaracterization of a student in a public video, justified further discussions about the student or his team with unauthorized third parties may explain but does not excuse these violations."

• Brady's position was that the Board failed to acknowledge and consider that School

Board Policy in place, at the time Brady was terminated, allowed all teachers in district

to uni-laterally authorize the release of student information under the provisions of

FERPA which; included exceptions for health and safety.  Brady had expressed safety

concerns about the student, in writing, to Superintendent Mosca prior to termination.

She detailed concerns she had about student safety related to the gross

mischaracterization of her student's cognition within the public film. Additionally,

Brady's position is that she was a mandated reporter and that the use of FC with her

student was educationally neglectful.

## J. Insubordination

• The Board believed Brady was insubordinate and stated the following:

"Ms. Brady's continuing to send emails containing this discussion, after receiving the directive of October 14, 2014 from the Superintendent (Administration 20), supported the Superintendent's charge of insubordination. The letter contains the following statement: In the interim, I remind you to safeguard student privacy and that substantial violations of student confidentiality obligations will result in disciplinary action up to and including termination."

Brady believed that the school policy which; extended the FERPA provisions to staff, did not require that she get permission from the Superintendent before releasing the information. The primary objective of the emails in question was to expose Mosca and MacDonald's criminal behavior and exploitation of a

child.

145

### K. Unlawful Transfer in March of 2014

- Administration claimed that Brady was not transferred as punishment for allegations that she violated RSA 141 H:2 which; occurred in the same week as her transfer.

- Brady believed she was wrongfully accused of violating the law and then transferred for disciplinary reasons and not "for the good of the school district." Her transfer constituted a 'removal.' Further, administration argued that Brady had been causing disruptions in the classroom at the time of her transfer and there is not one shred of evidence to support that Brady ever caused any kind of disruption in her classroom or any other classroom.  Brady believed that the transfer was in retaliation after she had filed many civil rights complaints against  Special education director, Pam MacDonald.

### L. Transfer and Collective Bargaining Agreement
- The Board stated the following in Brady's termination letter:

The Superintendent's authority to reassign staff is central to the orderly and successful operation of the District and is memorialized in school policy, the collective bargaining agreements with staff and their individual contracts.

- Brady's position is that the CBA (Article 10 B) also stated the following: "A teacher being involuntarily transferred shall not be placed in a position for which he/she is not certified, except in emergency, nor in one which involves reduction in rank or compensation. Involuntary changes will be subject to the same conference outlined above."  At the time of Brady's transfer, there were no special education positions open at Maple Wood.  Further, someone from administration went online and reported information, to the NH Department of Education, to indicate that Brady was demoted from a special education teacher to a para-educator II. Additionally,

Brady was not provided with a conference as indicated under her rights within the

CBA. The evidence supported the transfer was in retaliation for Brady having blown

the whistle on the fraudulent student public film.

## M. Job Abandonment

- The Board claimed that Brady failed to maintain competency (p. 7 termination

  letter) when she abandoned her teaching assignment at Maple Wood.

- Brady's position is that she was out on a legitimate medical leave directly related to

  the ongoing stress and retaliation that had occurred. Ongoing stress that would be

  over-bearing for any normal adult.

## N. Student Assessment/ IEP

The Board's position was that Brady failed to conform to regulations when she failed to
deliver NECAP testing to her student in accordance with his IEP.

• Brady believed the charge was brought in bad faith and more evidence of disparate
treatment. Prior to the student transferring into her program, the Idlehurst elementary
school team violated the student's IEP when they failed to turn his alternative portfolio
into the NH DOE in early May of 2012 when it was due. The team met after the deadline
and unlawfully determined that the Student should participate in the

NECAP testing. They switched him from the Alternative Portfolio Assessment to the NECAP test

without any documented evidence of cognitive growth and without a school psychologist at the

meeting. They used facilitated communication (FC) as the sole method to determine that the

student was no longer profoundly cognitively impaired. FC was not an agreed upon method of

instruction in his IEP and the student's mother did not consent to using it with her son. The student

could not identify numbers 1-10 or the letters of the alphabet and had no ability to meaningfully

participate in the test. The student had always participated in the alternative portfolio given his

significant cognitive delays. The evidence also shows that after the Middle

School IEP team rightfully placed the Student back on an alternative portfolio assessment in

December of 2012, Mosca and MacDonald unilaterally ordered the team to put the Student back

on the NECAP test. They knowingly ordered an IEP team to place a child that did not have mastery

of number's 1-10 or alphabet recognition on the same assessment as his normally developed sixth

grade peers.  They did so with bad faith and in violation of the student's rights to a free and

appropriate public education (FAPE) as mandated by special education laws.

**O. Whistleblower's Protection Act** (Defendants terminated Brady's employment on the same day
as her NH Department of Labor whistleblower Hearing began, for her unlawful transfer, and in violation of
the act)

- The Defendants claim a victory because the DOL hearing officer ruled in their favor

    after Brady had filed a whistleblowing complaint with NH DOL related to her

    unlawful transfer from the Middle School to Maple Wood Elementary.

- Brady claimed that the Defendants violated the Whistleblowers protection act  and

    that because she was terminated, she was unable to appeal the hearing officer's

    decision because she was no longer employed by the district and even if she won on

    appeal, she no longer had a viable remedy.

    3. Applicable Law

        A.    RSA 141 H:2 statute

        B.    NH legislative amendment (House Bill 1373) to the NH RSA
              141-H:2-a

        C.    Defamation of Character

        D.    NH Title XXIII Chapter 275-E:9 Protection of Public Employees

Special Education Laws:

        E.    §34 CFR 300. 320 Definition of Individualized Education

              Program (peer reviewed research)

        F.    §34 CFR 300.532: Evaluation Procedures

        G.    §334 CFR 300.121: Free appropriate public education
              (FAPE)

148

H.      NH Ed 1107.04: Qualified Examiners

I.      §34 CFR 300.533: Determination of needed evaluation data.

J.      §34 CFR 300.346: Development, review, and revision of IEP

K.      §34 CFR 300.345: Parent Participation

L.      §34 CFR 300.347:  Content of IEP

M.      §34 CFR 300.503: Prior notice by the public agency; content of
        notice

4. Disputed issues of law;

The Defendants claim Brady violated RSA 141 H:2.

5. Specific claims of liability by the party making the claim

The NH Supreme Court ruled "We have previously held that the usual rule of
compensatory damages in tort cases requires that the person wronged receive a sum of
money that will restore the person as nearly as possible to the position he or she would
have been in if the wrong had not been committed." See Smith v. Cote, 128 N.H. 231,
243 (1986). Because of the Defendant's wrongful termination, the Plaintiff's career was
destroyed, and she lost all retirement benefits. Brady seeks back pay, front pay, benefits
and compensatory damages to make her whole. From an emotional perspective, Brady
was forced out a profession that she was passionate about and truly loved to be
involved in.  Brady went back to school and got her master's degree in teaching which;
was a second career.  You can put a price tag on financial damages however; the
Defendants will never be able to make Brady whole with the personal satisfaction and
joy that she has been robbed of.  Brady lives with resentment, chronic sadness and
extreme anxiety related to having no financial stability, no retirement, no benefits of
any kind and is completely dependent on her spouse.  The Defendants are directly
responsible for the chronic feelings of anxiety that Brady has about her future and being
a burden on her family.

"Loss of enjoyment of life damages connote the "deprivation of certain pleasurable
sensations and enjoyment through impairment or destruction of the capacity to engage
in activities formerly enjoyed by the insured plaintiff." Such damages are consistent with
the underlying purpose of compensatory damages, which is to make the plaintiff whole
again, and are recoverable under New Hampshire law. In addition, damages for loss of
enjoyment of life are a component of permanent impairment. Bennett v. Lembo, 761
A.2d 494 (N.H. 2000)."

The Defendants retaliatory actions were egregious, calculated and intentional

"when the act involved is wanton, malicious, or oppressive, the compensatory damages awarded may reflect the aggravating circumstances." Vratsenes v. N.H. Auto, Inc., 112 N.H. 71, 73, 289 A.2d 66, 68 (1972).

Brady seeks enhanced compensatory damages.

"In a civil action founded on a tort, nothing but compensatory damages can be awarded, but the injured party is entitled to full compensation for all the injury sustained, mental as well as material. In some cases, compensation for the actual material damage sustained will be full compensation. In other cases, the material damages may be trivial, and the principal injury be to the wounded feelings from the insult, degradation, and other aggravating circumstances attending the act." Kimball v. Holmes, 60 N.H. 163, 164 (1880); Friel v. Plumer, 69 N.H. 498, 500, 43 A. 618, 619 (1898).

6.  Defendant's specific defenses;

  - The Defendants recommended that Ms. Brady be dismissed by the

    Somersworth School Board ("Board"), pursuant to RSA 189:13.

  - The Board found that Brady's behavior violated RSA 141-H:2. School

    District policies, in particular the Staff Ethics Policy GBEA (Administration #7), were also cited by the Board as prohibiting this conduct. That Brady violated the

    Family Educational Rights and Privacy Act (FERPA)

  - Brady was insubordinate when she continued to send complaints while copying

    the media.

  - They also found that Brady abandoned her job failed to administer the state's

    NECAPS assessment as required by one of her student's IEP.

7.  Itemized special damages

8.  Specification of injuries with a statement as to which, if any, are claimed to be permanent.

9.  The status of settlement negotiations: The Defendants refuse to participate in any

    discussions to negotiate a settlement until after the Court rules on their motion for

    summary judgment.  The Court has not ruled on summary judgment.

150

10. <u>A list of all exhibits to be offered in the direct case of each party.</u> *Please note, Brady
would like to preserve the right to include exhibits that the defendants have so far,
refused to give Brady during discovery.  Brady has motioned the court to enforce discovery
and so far, they have not ruled.

| Exhibits | # of Pg.'s |
|---|---|
| 1. Lisa Brady Resume & Teacher Evaluations | 6 |
| 2. IDEA Laws<br><br>Johnson, S. (2006). New Hampshire Special Education Law Manual: A Guide of Parents, Educators & Professionals 3rd Edition. Concord, NH: NH EdLaw, LLC,<br><br>Page  198  34 CFR §300. 320 <u>Def. IEP</u> (includes peer review research)<br>Page  270  34 CFR §300.532 <u>Evaluation Procedures</u><br>Page  273  34 CFR §300.121 <u>Free appropriate public education</u> (FAPE)<br>Pages 275-276   NH Ed 1107.04 <u>Qualified Examiners</u><br>Page  276  34 CFR §300.533 <u>Determination of needed evaluation data</u>.<br>Pages.281-282 34 CFR §300.346 <u>Development, review, and revision of IEP</u><br>Pages 283-284 34 CFR §300.345 <u>Parent Participation</u><br>Pages 308 34   CFR §300.347 <u>Content of IEP</u><br>Pages 336-337 34 CFR §300.503 <u>Prior notice by the public agency; content of notice</u> | 12 |
| 3.NH Title X Chapter 141:H Genetic Testing & Amendment | 6 |
| 4. American Speech Language Hearing Association Position Statement on Facilitated Communication & FAQs: Practice Implications for ASHA's Position Statement on Facilitated Communication (FC) and Rapid Prompting Method (RPM) | 8 &17 |
| 5. Student redacted evaluations (Rochester & Bill White) | 17 |
| 6. "Axel" Film Transcript and film picture snippets | 9 |
| 7. "Axel" film advertisements | 3 |
| 8. July 2012-September Emails & meeting notes; student first transitioned | 24 |
| 9. Pam MacDonald Grievance filed by Lisa Brady Sept. 2012 | 20 |
| 10. Slate Magazine Article (FC is a Cult That Won't Die) November 12, 2015 by David Auerbach | 18 |

| | |
|---|---|
| 11.UNH public internal email copies, staff admitting FC used in Film<br><br>Copy of US DOE FAQ's Education Grant Fraud | 5 |
| 12. December 20, 2012 email Lisa Brady to Jeni Mosca (uni-lateral order to put a child without alphabet or basic number recognition on NECAPs) & Wrightlaw "Who Can Over-ride an IEP?" (1p.) NH 2011-2012 Rules for Alt. Portfolio. (2p.). | 2 |
| 13. NH Statewide Assessment Participation 2011-2012 (2 pages) & 2018-2019<br>Example of Decision-making process for participation in test. (2 pages) | 4 |
| 14. ESOL form sent home by ESOL teacher ending service & NH State Rules ESOL. | 3 |
| 15. 2/1/13 Email from Lisa Brady to Pam MacDonald documented civil rights violations. | 1 |
| 16. 3/22/2013 Pam MacDonald Warning | 2 |
| 17 4/1/2013 Pam MacDonald Grievance filed by Lisa Brady | 32 |

| | |
|---|---|
| 18. 4/16/2013 email Brady request 504 coordinator for the district<br><br>4/17/2013 Brady withdrew her grievance (letter) and placed a rebuttal in personnel file. | 7 |
| 19. 5/1/2013 Principal Hilliard assigned Lisa Brady as "School Wide Inclusion Specialist." 7/11/2013 Email Principal Hilliard agreed with Brady about the "shameful" student film. | 2 |
| 20. Police Log DUI Program Assistant, two hand written letters (11/12 & 11/16/13). | 3 |
| 21. Emails and hand-written notes documenting Brady's safety concerns date: 12/14/13, 12/15/13, 12/17/13, 1/15/14, and 1/26/14. | 13 |
| 22. DNA Consumer test results; non-medical, mixed sample "relationship" test. | 2 |
| 23. 2 letters Brady hand delivered to Hilliard: 2-18-14 letter (Brady was not announcing results) and mediation letter dated 2/19/2014. | 2 |
| 24. 3/6/14 Brady email to Mosca about concerns about building change punishment. | 1 |

| | |
|---|---|
| 25. 3/7/2014 Brady email to Mosca reporting humiliation incurred after meeting with her. | 1 |
| 26. 3/9/3014 Brady sent Mosca an email detailing her concerns. | 5 |
| 27. 3/10/2014 Principal Hilliard Reprimand Accused Brady of violating RSA 141 H:2<br><br>3/2014 Axel film Debut in Keene, New Hampshire | 2 |
| 28. 3/10/2014 Brady sent Hilliard 2 emails refuting his accusations and highlighting her personal concerns for safety. A third email from Jeni Mosca requesting meeting. | 4 |
| 29. 3/11/2014 Brady filed a complaint with Superintendent Mosca about Principal Hilliard's failure to investigate safety concerns in her class.  3/17/2014 Mosca replied that Brady's concerns make her question her professional judgement. | 6 |
| 30. 3/12/14 Brady emails Mosca informing her about "genetic testing" v. Consumer "relationship" testing | 2 |
| 31. 3/15/2014 Brady wrote Hilliard trying to reason with him and explaining the type of DNA test she had was legal. | 5 |
| 32. 4/8/14 Attorney Jim Bianco wrote Jeanne Kincaid alleging retaliation. 5 pages.  5/5/2014 Attorney Jim Bianco Letter to Jeanne Kincaid.4 pages. | 9 |
| 33. 4/16/14 Attorney Jeanne Kincaid accused Brady of violating RSA 141 H:2 and admits the school's actions were for disciplinary reasons on page 2. | 3 |
| 34. Screen shot of NH DOE Educator Information system showing demotion & letter dated June 5, 2014 from Pam MacDonald claiming it was an oversight. | 2 |
| 35. 2013 Somersworth Staffing budget proving Starr Breton was a Program Assistant. | 1 |
| 36. 7/11/14 Brady Complaint emails to NH Commissioner of Education Virginia Barry & her | 7 |

| | |
|---|---|
| response (11/13/14). | |
| 37. 10/1/2014 Melinda Sullivan Letter, Long term disability.<br><br>10/2/2-14 Medical Leave Documentation | 2 |

| | |
|---|---|
| 38. 10/15/2014 Mosca warns Brady about FERPA & investigation.<br>10/15/2014 Brady letter to Mosca; concerns retaliation & student safety with false portrayal.<br>10/20/2014 Mosca reiterated letter no further explanation about investigation<br>10/22/2014 Brady emailed Mosca asking about investigation.  Never told about hired outside investigator. | 4 |

| | |
|---|---|
| 39. 10/23/2014 Brady wrote Mosca and Union president. Sick time. | 1 |
| 40. 10/29/2014 Brady letter to the school board alleging Defamation of Character by Attorney Jeanne Kincaid in representing the district | 2 |
| 41. 10/31/2014 Attorney Kincaid filed two responses to the NH Department of Labor asserting Brady violated the law (RSA 141-H:2) & Mosca Affidavit (defamation DNA). | 14 |
| 42. 11/2/2014 Brady letter to the school board requesting a hearing. | 1 |
| 43. 11/07/2014 Brady responds to NH DOL accusing Kincaid and Mosca of Defamation and other violations. | 9 |
| 44. 12/4/2014 Brady filed defamation grievance against Mosca over NH DOL Affidavit.<br><br>12/10/2014 Maple Wood Principal Tamara Halley denied grievance.<br><br>12/11/2014 Brady appeals charging criminal defamation, unfair labor practice and violations of school policies. 5 p. attachment & 2 p. 12/18/2014   Mosca denied the grievance "no meeting" 2p. | 10 |
| 45. 12/10/2014 Brady email to Mosca move to Maple Wood | 1 |
| 46. 12/12/2014 Mosca recommends termination. | 3 |
| 47. 12/18/2014 Brady emailed Board requested hearing over Mosca Defamation. | 5 |
| 48. 12/19/2014 Human Resource Letter indicating Brady's salary and benefits will end on December 26, 2014. | 1 |
| 49. 12/23/2014 Mosca email accusing Brady of intentionally submitting document refusing to work. | 1 |
| 50. 12/23/2014 Brady emails Mosca reminding her she has not been medically released to go back to work. | 1 |

| | |
|---|---|
| 51. 12/23/2014 Brady emailed Mosca questioned being on sick leave, denied medical insurance, and COBRA. | 1 |
| 52. 12/24/2014 Brady received COBRA paperwork indicated she was on a "leave of absence." | 2 |
| 53. 1/9/15 Brady responds to e-mail from Mosca asserting Brady abandoned her job and demanded Brady pay $580.60 insurance. | 1 |
| 54. 1/21/2015 Letter from Attorney Jeanne Kincaid with Brady's termination letter. | 9 |
| 55. 1/28/2015 Brady email to Board titled "Defamation" | 2 |
| 56. Brady email Board (1/30/15) about email sent to the NH DHHS (1/23/15) and their response (1/30/15) | 3 |
| 57. 2/16/2015 copy of televised transcript from Board Hearing. | 1 |
| 58. 2/19/2015 Copy of Brady appeal of School Board Hearing. | 1 |
| 59. 3/3/2015   Principal Halley denied grievance appeal. | 2 |
| 60. 3/11/2015 Mosca agreed with Halley's denial of grievance. | 2 |
| 61. 3/14/2015 email Brady appeals. | 1 |
| 62. 5/23/2016 Admission statement from Somersworth that they used FC in the "Axel" film. | 1 |
| 63. "Axel" film advertisement & List of major sponsors | 1 |
| 64. NEA Denial of Arbitration | 1 |
| 65. Brady appeal to NH DOE | 3 |
| 66. NH DOE Denial of Appeal | 1 |
| 67. NH Supreme Court Case Law: Appeal of Farmington School District, 2016 | 27 |
| 68. Somersworth School District Dismissal Binder Exhibits (38) used to terminate Brady | All |

| | |
|---|---|
| 69. Somersworth School District Hearing Transcript | All |
| 70. NH DOL Hearing Transcript | All |
| 71. Burnap v. Somersworth School District Appeal N.H. Supreme Court- 9-15-2019; Specifically related to allegations of a "sham investigation". | |
| 72. Dr. Spitzer letter concerning Lisa Brady's emotional distress related to Count IX Negligent Infliction of Emotional Distress | |
| 73.  Job searches related to special education teaching | |

11. Depositions to be read into evidence as follows:

A. Depositions of Lisa Brady from December 19, 2018

B. Depositions of Somersworth Staff: Robin Scott, Pam MacDonald, and Dana

Hilliard from January 4, 2019.

12. A waiver of claims or defenses, if any; N/A

## 13. A list of the names and addresses of all witnesses who may be called

| Name and Address of Witness | Claims/Issues Addressed | Specific Topic | |
|---|---|---|---|
| 1. Lisa Brady, Plaintiff, 8 Constable Road, Durham, NH Special Education Teacher | All claims | All topics | |

156

| | | |
|---|---|---|
| 2. Expert Witness; <u>Howard Shane:</u> Boston Children's Hospital at 9 Hope Street, Waltham, MA 02453.  Director of the Autism Language Program and Communication Enhancement Program at Children's Hospital in Boston, Massachusetts, former director of the Institute on Applied Technology, and associate professor at Harvard Medical School. | Wrongful Termination | Facilitated Communication history, use with students, use in film, FC use & claims regarding cognition, use in standardized testing. Competence in using FC and professional opinions. |
| 3. <u>Frank Edelblut,</u> NH Commissioner of Education, New Hampshire Department of Education 101 Pleasant Street Concord, NH 03301-3860 | Wrongful Termination | All issues surrounding the fraud complaint Brady filed with the NH DOE on July 11, 2014. Brady's efforts to secure an appeal of Somersworth Board's Decision. (Edelblut attended Brady's appeal hearing with the NH NEA in June of 2015). |
| 4. <u>Jeni Mosca</u> 18 Thornhill Road, Stratham, NH 1646 <br><br> <u>Former Superintendent</u> | All claims | All topics |
| 5. <u>Pamela MacDonald</u> 33 Dewey St Rochester NH 03867-1204 <u>Director of Special Education</u> | All Claims | All topics |
| 6. <u>Dana Hilliard;</u> 11 Chabot Street, Somersworth, New Hampshire 03878 <u>Principal Middle School</u> | Wrongful Termination, infliction of emotional distress, breach of contract, defamation of character. | All matters surrounding Brady's student, falsely portrayed in film and civil rights complaints filed internally against Pam MacDonald. All matters surrounding March 2013 Letter of Reprimand & March 2014 letter of Reprimand.  Professional |

| | | evaluations on Brady |
|---|---|---|
| 7. Jeanne M Kincaid  24 Brickyard Ln, Eliot, ME Attorney | **Defamation of Character** | **Public comments made on February 16, 2015 Testimony on public comments only.** |
| 8. Kate Segal, 21 Tremont St Exeter NH 03833-3214 Former Middle School Assistant Principal | Wrongful Termination, infliction of emotional distress, Breach of contract, defamation of character | All matters surrounding Brady's student, falsely portrayed in film and civil rights complaints filed internally against Pam MacDonald. All matters related to issues addressed within March 2013 & March 2014 letter of Reprimand. Professional evaluations completed on Brady |
| 9. Robert D Marquis Phone numbers(603) 778-9204  3  Robin Glen Rd Stratham NH 03885-2236 Former Assistant Superintendent | Wrongful Termination, infliction of emotional distress, breach of contract, defamation of character | All matters surrounding Brady's student, falsely portrayed in film, and civil rights complaints filed internally against Pam MacDonald. |
| 10. Dr. Richard Guare  45 Pollock Dr Rye NH 03870-2120 Consulting Behavioral Psychologist | **Wrongful Termination** | All matters surrounding Brady's student, falsely portrayed in film and Brady's professional competence. |
| 11. Michael Cha McSheehan 41 Barbaro Dr Rochester NH 03867-4117 UNH IOD Staff | **Wrongful Termination** School Board terminated Brady, in part, for failing to deliver NECAP test to student in 2012. | All matters surrounding Brady's student, falsely portrayed in film and role at Student meeting when determining student should no longer participate in the Alternative portfolio and take the NECAP. |

| | | |
|---|---|---|
| 12. Robin Scott- 5 Kady Lane, Kensington, New Hampshire 03833 Speech Pathologist Middle School | Wrongful Termination, infliction of emotional distress, | All matters surrounding Brady's student, falsely portrayed in film and civil rights complaints filed internally against Pam MacDonald. All matters related to issues addressed within March 2013 & March 2014 letter of Reprimand. |

| | | |
|---|---|---|
| 13. Deborah Mitchell 10 Maplewood Ave Rochester NH 03867-2013 Elementary Special Education Teacher | Wrongful Termination<br><br>School Board terminated Brady, in part, for failing to deliver NECAP test to student in 2012. | Testimony will provide evidence of disparate treatment. All matters surrounding Brady's student, falsely portrayed in film and role at Student meeting when determining student should no longer participate in the Alternative portfolio and take the NECAP. *Found SB unconscious after she overdosed on prescription medication and called the ambulance. |

| | | |
|---|---|---|
| 14. Meghan E Davis 98 Sullivan St Apt E Berwick ME 03901-2960 Elementary Speech Pathologists | Wrongful Termination<br><br>School Board terminated Brady, in part, for failing to deliver NECAP test to student in 2012. | Testimony will provide evidence of disparate treatment. All matters surrounding Brady's student, falsely portrayed in film and role at Student meeting when determining student should no longer participate in the Alternative portfolio and take the NECAP. |

| 15. Jolene Francoeur<br>153 Crown Point Rd Rochester<br>NH 03867-4105<br><br>ESOL Teacher Elementary<br>School | Wrongful Termination, infliction of emotional distress | Testimony will provide evidence of disparate treatment.<br>All matters surrounding Brady's student, falsely portrayed in film and role at Student meeting when determining student should no longer participate in the Alternative portfolio and take the NECAP. |
| --- | --- | --- |
| 16. Carol Marshall 29 Tennyson Ave Dover NH 03820-4119<br>Middle School Special Educator | Wrongful Termination, infliction of emotional distress | All matters surrounding Brady's student, falsely portrayed in film and civil rights complaints filed internally against Pam MacDonald. Testimony about Brady's professionalism. |
| 17. Silke Hill 312 Cranberry Meadow Rd, Berwick, ME 207-715-0007<br>Student in questions assigned Para-educator at Middle School | Wrongful Termination, infliction of emotional distress | All matters surrounding Brady's student, falsely portrayed in film and civil rights complaints filed internally against Pam MacDonald. All matters related to issues addressed within March 2014 letter of Reprimand. |

| 18. Charlene Dibenedetto 13 Wildflower Cir Unit 2 Somersworth, NH 03878 Paraeducator at Middle School in Brady's Program | Wrongful Termination, infliction of emotional distress | All matters related to issues addressed within March 2014 letter of Reprimand. |
| --- | --- | --- |
| 19. Brenda Bastinelli Green Street, Somersworth, NH 03878 Para-educator at Middle School in Brady's Program | Wrongful Termination, infliction of emotional distress | All matters related to issues addressed within March 2014 letter of Reprimand.<br>*Found SB unconscious after she overdosed on prescription medication and called the ambulance. |

| | | |
|---|---|---|
| 20. Ann Noonan 64 Sullivan Farm Drive, Rochester, NH 3868 5721 Middle School Speech Assistant | Wrongful Termination, infliction of emotional distress | All matters related to issues addressed within March 2014 letter of Reprimand. *witnessed SB assault one of Brady's student's and filed an internal complaint with Principal Hilliard/Officer Campbell. |
| 21. Dan Habib, 40 Roger Ave, Concord, NH 03301. UNH Address: 57 Regional Drive, unit 8 Concord, NH    03301 | Wrongful Termination | Fraudulent "Axel" film. |
| 22. Karen Hiller, 3 Playhouse Cir., Hampton, NH 03842, | All Claims | All matters related to a publicly funded investigative report that she completed on Lisa Brady and used to terminate Brady from her job. |
| 23. Wendy Jack, 34 Goodhue Rd., Derry, NH 03038. Work Address: 120 Daniel Webster Highway, Merideth, NH 03253. | Wrongful termination, Defamation of Character | All matters related to a publicly funded investigative report that she completed on Lisa Brady and used to terminate Brady from her job. |
| 24. Don Austin, 51 Cinnamon Ridge, Somersworth, NH 03878. Town Council: 1 Government Way, Somersworth, NH 03878. | All Claims | All matters related to a publicly funded investigative report that she completed on Lisa Brady and used to terminate Brady from her job. |

| 25. Heilen Cameron, 8 Patricia St., Somersworth, NH 03878. | Wrongful Termination | The fraudulent Public Axel film and all matters related to the portrayal that Brady was incompetent as a special education case manager. |
|---|---|---|

14. Whether there will be a request for a view and, if so, who shall pay the cost in the first

   instance;

15. The names and addresses of the trial attorneys or non-attorney representatives. A.

   Lisa Brady, 8 Constable Road, Durham, NH 03824.


Additional Disputed Issue: To date, the Defendants have not provided Brady with any requested Discovery and she would like to include the information within her trial management plan.   Further, evidence from Brady's termination hearing, NH DOL hearing, and her deposition prove that Director MacDonald's testimony about information changes depending on how she is trying to cover up and mislead the interviewer. She continues to assert the Student had facilitated communication in his IEP as method of communication and that is a bold-faced lie. For Brady to secure justice, she requests that the Court subpoena the Student's IEP's, meeting minute notes, and prior written notices from December 2011 through December 2012. Brady is not requesting that they be made available to the public but, that she be allowed to prove that the decision she made regarding her student's IEP and assessment were competent and that Mosca and

MacDonald's actions were not in the best interest of a child and educationally neglectful.


Respectfully Submitted, 12/04/2019


*Lisa Brady*

   Lisa Brady, Pro Se'

   8 Constable Road

   Durham, NH 03824 603-292-5052 lisa.brady@comcast.net


Certificate of Service

162

I certify that a copy of this filing was hand delivered to the Court and served first class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

Dated:   December 4, 2019

*Lisa Brady*

/s/ Lisa Brady, Pro Se

Lisa Brady

163

## SWORN AFFIDAVIT SIGNED BEFORE A NOTARY
## STATE OF NEW HAMPSHIRE
## SUPERIOR COURT OF STRAFFORD COUNTY

Lisa M. Brady                          ]          December 4, 2019
    *Plaintiff   v.*                ]

Somersworth School District, School Board et. al, ]   Civil No. **219-2018-cv-00002**
*Defendants*

### AFFIDAVIT

I, Lisa Brady, of 8 Constable Road, in Durham New Hampshire, MAKE OATH AND SAY
THAT: Under Penalty of Perjury, the information within my pretrial statement under Superior
Court Rule 35 is made in good faith and accurate.

<u>**STATE OF NEW HAMPRHIRE COUNTY OF  STRAFFORD**</u>
SUBSCRIBED AND SWORN TO BEFORE ME, on the 4th  day of December, 2019

_____
(Signature)

_____
Printed Name

Signature _____ (Seal)

My Commission Expires: _____
PAULA A. DeSERRES, Notary Public
My Commission Expires July 27, 2023

164