# EXHIBIT #15

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
2964
Dover NH 03820

Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735-

http://www.courts.state.nh.us

## NOTICE OF DECISION

File Copy

Case Name:      Lisa M Brady v Somersworth School District, School Board, SAU #56, et
al Case Number:  219-2018-cv-00002

Enclosed please find a copy of the court's order of December 12, 2019 relative to:

Omnibus Order on Pending Motions

December 13, 2019

Kimberly T. Myers
Clerk of Court

(277)

C: Lisa M Brady; Brian J.S. Cullen, ESQ

NHJB-2503-S (07/01/201 1 )

### STATE OF NEW HAMPSHIRE

**STRAFFORD COUNTY**                                         **SUPERIOR COURT**

**Lisa M. Brady**

Somersworth School District School Board (SAU #56),
Jeni Mosca, Superintendent of SAU #56, in both her individual and official capacities, and
Pamela MacDonald, Special Education Director of SAU #56, in both her individual and official capacities

Docket No.: 219-2018-CV-00002

## OMINBUS ORDER ON PENDING MOTIONS

The plaintiff Lisa M. Brady filed this action against the above-named defendants, seeking damages for numerous claims stemming from the School Board's termination of her employment as a teacher. [1](Court Index HI). A spate of motions are pending before the court, chief among them is the Defendants' Motion for Summary Judgment on all claims. (Court Index #61). The Defendants' Memorandum of Law in Support of Motion for Summary Judgment is filed under seal due to the confidential nature of certain facts set forth in the memorandum. (Court Index #63) Brady objects. (Court Index #71). The defendants filed a reply to the objection, (Court Index #77), and Brady filed a sur-reply, (Court Index #78). Brady requests a hearing on the motion. (Court Index #74). Because the court determines that a hearing would not assist the court in the resolution of the summary judgment motion, a hearing is denied. Super. Ct. R. 13.

Based on the parties' arguments by pleading,   as moot, except as otherwise explained in

this order.

___

[1] Jeanne Kincaid, attorney for the Somersworth School District, was also a named defendant but was dismissed from this lawsuit by earlier order of the court (Houran J.). (Court Index #12).

### Order on Motion for Summary Judgment (Court Index #61)

The material facts relative to the motion for summary judgment are either undisputed or conclusively determined in prior proceedings. In addition, this court issued a prior ruling on Brady's Motion for Partial Summary Judgment. The court adopts and incorporates its prior order in the instant order.

The Somersworth School District is within School Administrative Unit (SAU) 56 and is comprised of the high school, middle school and two elementary schools, Defendant Mosca was the Superintendent of the SAU and Defendant MacDonald was the Director of Special Education. Beginning in September 2008, Brady was a special education teacher in the middle school where Dana Hilliard was the principal. Brady had a continuing contract which was

renewed annually through May 2014. Aff. of Jeni Mosca, ¶¶ 2-4; Ex. 1 to Aff.

In the summer of 2012, Brady was assigned to work with a middle school student (the

student) as his Case Manager. Before she was assigned the student, the student was in a UNH

167

documentary film. Aff. of Pam MacDonald, 3. Brady believed that the student's abilities were

misrepresented in the film. Comp. 7. She also believed that the use of hand over hand assistance

(Facilitated Communication) in the film violated the student's Individual Education Plan (IEP). Jd.

The student's IEP required that the student take the New England Common Assessment
Program (NECAP) test in the fall of 2012. MacDonald Aff., Il 5; Brady Depo. at 31. Brady
acknowledges that the student did not take the test, and despite the requirement in the student's
IEP, Brady maintained the test "was an absolute waste of time." Brady Depo. at 32, 35. Later, in
December 2012, Defendants Mosca and MacDonald instructed Brady to convene an LEP

meeting to correct an error regarding the student's ESOL services. Brady failed to convene the meeting and was the subject of a written warning.

In late 2013 and early 2014, Brady was allegedly having issues with a special education assistant, S.B., and claimed to be concerned that S.B., was abusing prescription medication. (Brady Depo. at 51-52). Brady informed her principal Dana Hilliard and the school's Speech

Pathologist, Robin Scott, of her suspicion. (Compl. ¶¶ 13–14; Compl. Attach. at 114–15; Brady

Depo. at 55). Shortly thereafter, in January 2014, Brady accused S.B. of biting her employee identification badge and kicking in her file cabinet. (Compl. II 17; Compl. Attach. at 1 19; Brady Depo. at 58-59). Brady believed that S.B. committed these acts to retaliate against Brady for informing Hilliard and Scott about her alleged prescription drug use. (Compl. Attach. at 1 19, 121). In an eff01t to prove S.B. had done so, Brady took the badge and a coffee mug which she believed S.B. used to a laboratory for DNA testing without S.B.'s knowledge or consent.

(Compl. 16; Compl. Attach. at I I 7—19, 121; Brady Depo. at 58-60). In February 2014, Brady shared her accusations with Hilliard and Scott and referenced the DNA testing. (Compl. Attach. at 119; Brady Depo. 65-66).

Brady and S.B. participated in mediation to address the issue. (Brady Depo. at 76).

When mediation failed, the matter was sent to Superintendent Mosca to resolve. (Compl. Attach.

at 121). Mosca determined that it was in the best interest of the school system to transfer Brady permanently to a

different school. (Id. at 125). By letter dated March 12, 2014, Mosca informed Brady that she had been assigned to the

Maple Wood and must report to work there on March 17, 2014. (Compl. II 22; Compl. Attach. at 125). Brady did not report

to the Elementary School and instead went on medical leave, which according to Brady was due to the stress she

experienced from the transfer. (Compl. ¶¶ 25–26).

In March 2014, around the same time Brady was transferred, a short documentary film produced by the University of New Hampshire Institute on Disability debuted. (Compl. II 23). The film featured A.C., a special needs student at the Middle School. (Id.). Brady, who was part of A.C.'s Individualized Education Program (IEP) team, became concerned about the portrayal of A.C.'s abilities in the film and the alleged involvement of Mosca and Special Education Director MacDonald in the film's production. (Compl. II 27). Subsequently, on July I I , 2014, Brady sent a complaint to the Commissioner of the New Hampshire Department of Education. (Jd.). The complaint disclosed A.C.'s full name and details relating to A.C.'s disability, the opinions of his IEP team, and communications with A.C.'s mother. (Compl. Attach. at 128—33). On October 2, 2014, after unsuccessful attempts to challenge her transfer, Brady again went on medical leave. (Compl. 35). During this time Brady continued to pursue her complaint to the Commissioner of Education against Mosca and MacDonald relating to the documentary film. (See Compl. II 37). On October 9, 2014, Brady again emailed the

Commissioner, as well as the Governor of New Hampshire, the New Hampshire Attorney

General, and numerous press outlets about her complaint. (Id.; Compl. Attach. at 155—157). The email included A.C.'s personal information, such as his first name and information relating to his

LEP team's assessment of his abilities. (Compl. Attach. at 156).

On October 14, 2014, Mosca informed Brady by letter that the School District had initiated an investigation

into her communications to third parties of confidential student information, noting that she may have violated the

Family Education Rights and Privacy Act

---

2 After Brady returned to work at the beginning of the school year in August 2014, she attempted to challenge her transfer by requesting a hearing with the School Board and a hearing with the New Hampshire State Board of Education. (Compl. 28, 31; Compl. Attach. at 136—37, 140—41). Both boards denied her request on the ground that the applicable statute, RSA 189:31—32, only provides a right to a hearing to employees who have been removed

from their position, not those who were merely transferred to another school. (Compl. ¶¶ 29, 34; Compl. Attach. at

138, 144). Brady then filed an appeal of the State Board's decision with the New Hampshire Department of Education, which concluded that the State Board's decision was correct. (Compl. Attach. at 159).

("FERPA") and the Individuals with Disabilities Education Act ("IDEA"). (Compl. Attach. at 158). The letter instructed Brady to "safeguard student privacy" and reminded her that

"substantiated violations of student confidentiality obligations will result in disciplinary action up to and including termination." (Id.). Despite the explicit warning, on November 18, 2014, Brady sent another email to the Commissioner of Education, the Governor, the Attorney General, numerous press outlets, and several other recipients. Again, Brady's email contained A.C.'s first name, information relating to his educational history, and the opinion of his IEP team relating to his abilities. (Id. at 203).

By letter dated December 13, 2014, Mosca informed Brady that she was recommending that the School Board

dismiss her from her position.[4] (Pl.'s Ex. B at I). After Brady notified the School Board that she wished to exercise her right

to a public hearing on the matter, the Board convened a three-day public hearing on January 9, January 12, and January

13, 2015, followed by a non-public session where the Board deliberated and rendered its decision terminating Brady's

employment. dd.).

Attorney John Teague presided over the hearing as the hearings officer. dd.). Prior to the hearing, Brady requested the Board to subpoena certain Middle School staff members to appear at the hearing to testify. (Id. at 2). Attorney Teague denied this request because the Board lacked subpoena power and was prohibited from compelling testimony of School District staff under the terms of the District's collective bargaining agreement. (Id.). As alternatives to live testimony, he permitted Brady to submit affidavits of witnesses or make offers of proof of the witnesses' expected testimony. dd.). At the hearing, the School District presented evidence through witnesses, including Hilliard, MacDonald, Mosca, and an investigator for the School District, all of whom Brady was permitted to cross-examine. (Id. at 3). Brady then testified and referenced in her testimony the expected testimony of the witnesses she wished to call. (Id.).

---

[4] At this time, Brady was still on medical leave. (Compl. Attach. at 172).

Following the hearing, the Board made several findings in support of Brady's termination, which it issued in writing on January 20, 2015. (See Pl.'s Ex. B). With respect to the DNA testing relating to S.B., the Board found that Brady "acted in an unprofessional and unethical manner" when she had "the bodily fluids of another staff member tested for identification" without the staff member's knowledge, and subsequently reported the results of the test to others. (E. at 4). The Board found both "that the behavior violated RSA 141-H:2," which prohibits genetic testing of individuals without their permission, and that it violated staff ethics policy. dd.).

Second, the Board found that Brady had "repeated communications to third parties, not connected with the School District, containing non-directory personal information regarding a student" and continued those communications even after the School District directed her to stop. (Id.). The Board found that these acts "constituted violations of the Family Educational Rights and Privacy Act (FERPA)," and various School District policies which mirror FERPA's rules to protect the confidentiality of student information. (Id. at 4, 6). The Board further found that Brady's belief that the public had the right to know about "an alleged mischaracterization of a student in a public video" did not justify her violation of these rules. (Id. at 5). Though the Board acknowledged Brady's right to express her opinion about a student's educational program, it noted that her concerns "must be delivered within the confidential confines of the school and team meetings." (Id.).

RSA 189: 13 authorizes the School Board to "dismiss any teacher found by them to be immoral, or who has not satisfactorily maintained the competency standards established by the school district, or one who does not conform to regulations prescribed." In applying the Board's findings to the language of the statute, the Board concluded that her conduct, "particularly with regard to her treatment of her subordinate [the paraprofessional], was unethical and therefore immoral." (Id. at 7). Furthermore, the Board concluded that her "disregard for the obligation to protect the privacy rights of staff and students" demonstrated her failure "to maintain the competency standards established by the District." dd. at 7—8). Finally, the Board concluded that she failed to conform to the regulations when she continued to violate the student privacy rules after receiving a warning from the School District.[5] dd. at 8). For these reasons, the Board voted to accept the School District's recommendation of her dismissal. (Id.).

Nearly six (6) months later, on July 3, 2015, Brady filed an appeal of the School Board's decision with the State Board of Education. (JA. at 174). By letter dated July 9, 2015, the

Department of Education denied the appeal for failure to timely file. (Id.). In 2016, Brady filed a complaint for damages in the United States District Court for the District of New Hampshire against Mosca, MacDonald, the School Board, and Jeanne Kincaid, the School District's attorney, asserting federal and state law claims against the defendants. (See Defs.'s Ex. A at I ). On the defendants' motion, the district court dismissed the federal claims and declined to exercise

---

[5] As additional grounds for termination, the School Board found that she abandoned her teaching assignment at Maple Wood Elementary School and failed to administer the state's NECAPS assessment required by A.C.'s IEP. (Pl.'s Ex. B at 8).

supplemental jurisdiction to consider the state law claims. (Id. at 16). Following an unsuccessful appeal to the United States Court of Appeals for the First Circuit, (Compl. Attach.

at 41—43), Brady filed her state law claims against the defendants with this court.

## Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, Ill. "An issue of fact is 'material' for purposes of summary judgment if it affects the outcome ofthe litigation under the applicable substantive law." VanDeMark v. McDonald's Corp., 153 N.H. 753, 756 (2006) (citation omitted). The moving party has the burden of proving its right to summary' judgment. Concord Grp. Ins. Co. v. Sleeper, 135 N.H. 67, 69 (1991). The court "must consider the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence." Id. (citation omitted). Where "the parties agree that there are no genuine issues of material fact in dispute," the court must determine "whether the moving party is entitled to judgment as a matter of law." Eby v. State, 166 N.H. 321, 327 (2014).

## Analysis

There are twelve remaining claims asserted in Brady's Complaint. For purposes of their motion, the defendants group their arguments in three categories: the contract claim, the tort claims and the Whistleblower claim. The court will address the claims in the same manner.

### Contract Claim

Brady claims that the Somersworth School District breached its contract with her by terminating her "based on a decision that Brady violated state DNA laws (NH RSA 141-H:2) . . .

without legal justification or "just cause" to make that determination." Compl. 63. She claims that the District did not have the legal authority or jurisdiction to make a determination under RSA 141-H:2. Compl. 64. Importantly, in her objection to the motion for summary judgment, Brady does not dispute that she engaged in the conduct by obtaining a bodily fluid of a colleague without consent and subjecting it to genetic testing. She argues only that the school board wrongly concluded that such conducted violated RSA 141-H:2, since the board was without the authority to make such a determination.

This court has already concluded as a matter of law in its order denying Brady's Motion for Partial Summary Judgment that the school board was well within its purview to consider her violation of State law as a ground for dismissing her. Although the school board clearly does not have the authority to adjudicate a violation of RSA 141-H:2, it can certainly consider conduct that violates State law in determining whether to dismiss a teacher. Since there is no genuine issue of material fact concerning her undisputed conduct with regard to the DNA testing of a coworker and this is the only basis for her breach of contract claim, she cannot prevail as a matter of law on her contract claim. Accordingly, judgment is entered for the defendants on this claim.

## Tort Claims

Brady's myriad tort claims sound in misrepresentation, negligence, intentional interference with contract,

defamation, wrongful termination, negligent infliction of emotional distress, and abuse ofprocess. Compl. Counts 11,

111, V, VII, VIII-x, XII, and XV.

Summary judgment must be granted to the defendants as a matter of law because RSA 189: 14 provides the exclusive

potential remedy for a teacher dismissed in violation of RSA 189: 13, and RSA 507-B otherwise limits the liability of

governmental units to certain types actions. In addition, with respect to the individual claims, there is no genuine issue

of material fact and the defendants are entitled to judgment as a matter of law.

---

5 In her objection, Brady argues that RSA 141-H:2 does not apply to her, and if it does, "recent legislative changes" to the statute render it
inapplicable to "abandoned property." First, the plain language of RSA 141-H:2, II, clearly prohibits genetic testing on an individual based on bodily
fluids obtained in this State, except under certain circumstances inapplicable here, without the consent of the individual. Again, Brady does not
deny the underlying conduct that she obtained bodily fluid from a co-worker and subjected it to genetic testing. Second, the statute has not been
amended to include an exception for genetic testing on abandoned property.

In this case, it is undisputed that Brady was dismissed pursuant to RSA 189:13. That statute provides:

The school board may dismiss any teacher found by them to be immoral, or who has not satisfactorily
maintained the competency standards established by the school district, or one who does not conform to
regulations prescribed; provided, that no teacher shall be so dismissed before the expiration of the period for
which said teacher was engaged without having previously been notified of the cause of such dismissal, nor
without having previously been granted a full and fair hearing.

RSA 1 89:13. If the school board dismisses a teacher in violation of RSA 189: 13, the teacher's cause of action is strictly
limited by 189:14. Section 14 provides:

The district shall be liable in the action of assumpsit to any teacher dismissed in violation of the provisions of RSA
189: 13, to the extent of the full salary for the period for which such teacher was engaged.

RSA 189:14. Section 14 limits both the cause of action (assumpsit, or breach of contract) and the extent of damages (full
salary for the contract period). The legislature having elected a singular cause of action and a limit on the calculation of
damages, Brady is precluded from bringing any other causes of action based on her termination. Cf. Appeal of Cover,
168 N.H. 614, 622      is implied that the legislature intended to exclude other things in a statute by identifying a
particular thing). To hold otherwise and allow other causes of action to remedy a teacher's termination would render
RSA 189: 14 meaningless.

The limited liability provisions of RSA 507-B buttress this conclusion, and themselves preclude Brady's tort claims.
Section 2 of the statute provides that a governmental unit, which includes a school district, RSA 507-B:I, may be held
liable for damages for "bodily injury, personal injury or property damage caused by its fault . . . arising out of ownership,
occupation, maintenance or operation of all motor vehicles, and all premises." RSA 507-B:2. All other tort claims, except
as may be otherwise allowed by statute, are precluded under RSA 507-B:5, which reads:

No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or is provided or may be provided by other statute.

RSA 507-B:5. Personal injury includes, by definition, "libel, slander, where the publication or utterance of other defamatory or disparaging material." RSA 507-B:l. Personal injury also includes privacy and mental anguish claims. Id. As such, Brady's tort-based claims are ban•ed because they do not arise out of the district's ownership, occupation, maintenance or operation of a motor vehicle or a premise.

To the extent Brady is not barred from bringing her tort claims against the defendants, they nevertheless fail because there is no genuine issue of material facts with respect to each of the claims. With regard to her claim of misrepresentation, she asserts that the school district misrepresented its authority to prosecute her for a violation of RSA 141-H:2 and that she relied on that representation in preparing her defense at the termination hearing.

The court has scrutinized the record on this issue and finds no evidence that the school district represented in any way that it had the authority or jurisdiction to prosecute a violation of the genetic testing statute. To the contrary, the school district clearly informed Brady that she was alleged to have violated the district's rules and regulations when she engaged in her effort to collect the DNA sample and have it tested without her coworkers consent. She further violated school district norms and staff privacy rights when she attempted to disseminate the information.

There is no genuine issue of material fact that the school district did not misrepresent its authority or jurisdiction in any way.

With regard to her negligence claims, she asserts that the school district and the individual defendants knew or should have known that they did not have the authority or jurisdiction to prosecute a violation of the genetic testing law. Simply put, there is no evidence that either the school district or the individual defendants undertook to prosecute her for a violation of the statute. It is an entirely different matter that the school district took into account in terminating her that the undisputed evidence amounted to a violation of state law under the genetic testing statute. There is no evidence that the school district or the individual defendants breached any duty of care to Brady in their consideration of her conduct in terminating her.

Brady also asserts that the individual defendants interfered with her employment when they "brought charges" against her for violating the genetic testing statute. Once again, Brady misapprehends the issue. The individual defendants did not bring any charges against her for a violation of the statute. She was given proper notice that her conduct may have violated state law and that she could be terminated for her conduct, as well as for several other reasons. There is no evidence that the individual defendants' role in initiating termination proceedings was in any way improper. Accordingly, they are entitled to summary judgment on this count.

With regard to Brady's defamation claim against the individual defendants, she makes no allegation that the individual defendants made any statements against her that were defamatory. Instead, she argues that the school district's attorney made defamatory statements and that the individual defendants promoted and facilitated the attorney's defamatory statements. Assuming that accomplice to defamation is a cognizable claim under New Hampshire law, Brady has offered no evidence that the individual defendants promoted or facilitated any statement by the district's attorney. Accordingly, the individual defendants are entitled to summary judgment on this count.

174

Brady asserts a separate tort claim for wrongful termination, alleging that she was fired in retaliation for filing certain complaints with public officials, such as the Commissioner of

Education and the governor. This claim is clearly barred by RSA 189:14. Nevertheless, even if the claim is not barred, she must produce evidence that her termination was motivated by bad faith, retaliation or malice. Mac.Kenzie v. Lenihan 158 N.H. 476 (2009). She has offered no evidence, beyond the bare facts that she made the complaints and she was in fact terminated, to support the conclusion that her termination was in any way motivated by bad faith, malice, or in retaliation for her complaints. To the contrary, the undisputed evidence is that the school district engaged in a lengthy independent investigation and held a three-day evidentiary hearing on the grounds for termination. There is no evidence in the record to suggest that the school district engaged in any bad faith, malice or retaliatory conduct. Accordingly, summary judgment is granted in favor of the defendants on this count.

Brady also claims negligent infliction of emotional distress. Like many of her other claims, this claim is based on her allegations that the individual defendants prosecuted her for, and the school district was without legal authority to adjudicate, a violation of the genetic testing statute. The premise of the claim is misplaced for the reasons previously described. She was neither prosecuted for, nor adjudicated guilty of a violation of the genetic testing statute. There is no evidence that either the school district or the individual defendants breached any duty of care to Brady in recommending her termination, giving her notice of the grounds for her termination, or in conducting a lengthy evidentiary hearing to determine the facts surrounding her termination. Accordingly, the defendants are entitled to summary judgment on this count.

Finally, Brady claims that the defendants abused the termination process by using it for a purpose for which it was not intended, specifically, to adjudicate a violation of the genetic testing statute. To be clear, there is no evidence that the administrative process was used for this purpose. The only evidence presented to this court is that the termination proceeding termination proceeding was used precisely för, and in the manner which it was intended. That is, Brady was given notice of the grounds for her termination, given a full and fair hearing and provided a complete opportunity to be heard on the proper grounds for termination. There is no genuine issue of material fact regarding her abuse of process claim, and therefore the defendants are entitled to judgment as a matter of law.

Whistleblower Claim

Brady claims under RSA 275-E:9 that she was terminated from her employment because she filed a complaint with the Department of Labor regarding her transfer within the school district from the Middle School to Maple Wood Elementary. She filed the complaint in or about November 2014. She was terminated from employment on January 20, 2015, the same day of her hearing on her transfer complaint.

RSA 275-E:9 protects public employees from retaliatory action by a governmental entity:

175

"No governmental entity shall threaten, discipline, demote, fire, transfer, reassign, or discriminate against a public employee who files a complaint with the department of labor under RSA 275-E:8 . . . . Notwithstanding this provision of law, public employers may discipline, demote, fire, transfer, or reassign an employee so long as the action is not arbitrary or capricious and is not in retaliation for the filing of a complaint under this chapter.

Brady does not claim that the defendants' actions were arbitrary or capricious; she claims that her termination was retaliatory. Except for the bare facts that she filed a Labor Department complaint and was terminated over two months later, Brady points to no evidence that her termination was even related to her complaint, much less in retaliation for it. Instead, the undisputed evidence is that the school district commissioned an extensive independent investigation of Brady's actions regarding her repeated improper disclosures of confidential student information. She was recommended for termination only after the investigation was

---

6 The court assumes without deciding that an abuse of process claim can be brought based on an administrative proceeding. Case law suggests that such a claim is limited to judicial proceedings. Long v. Long, 136 N.H. 25, 30(1992).

complete. Moreover, she was referred for termination on the additional grounds that she abandoned her position by stating that she would not return to her assigned position at Maple Wood Elementary; that she tested the genetic material of a co-worker without consent and in violation of State law and school district policy; and failed to follow directives of her superiors. Thus, not only has Brady offered no evidence to support a claim of retaliation, the overwhelming evidence supports legitimate, non-retaliatory reasons for her termination.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

Motion to Exceed Length ofResponse to Defendants' Motion for Summary Judgment (Court Index #70).

This motion is moot. Brady filed a 25-page response. She also filed a request to consider additional evidence, which the court has granted by separate order herein.

Plaintiff's Motion to Compel Discovery (Court Index #75)

The motion is denied as moot.

PlaintiffMotion to Reconsider Decision for Partial Summary Judgment (Court Index # 76) Upon review, motion

denied.

Plaintiff's Motion to Consider Additional Evidence Prior to Ruling on Defendant 's Motion for Summary Judgment (Court Index #91).

Motion granted. The court took into account the substance of this pleading in ruling on the Motion for Summary Judgment.

Plaintiff's Expedited Motion to Reopen Discovery and Requestfor Subpoena and Depositions (Court Index #99)

Motion denied. Discovery closed in March 2019. The motion does not set forth compelling grounds to order additional depositions.

Motion to Amend Damages and Motionfor Evidentimy Hearing (Court Index #100).

      Denied as moot.

Plaintiff's Motion to Compel Answers and Requested Discovery Documents and Admission of New Material Evidences as Proof ofBad Faith and a Denial ofJustice (Court Index #105)

                    Motion denied as moot. Moreover, the motion was untimely, as discovery had closed in

 March 2019.

Plaintiff's Motion for Subpoena (Court Index #108).

      Denied as moot.

                    So Ordered.

December 12.2019_____

Date                   Mar E. Howard  Mark E. Howard

# EXHIBIT #16

STATE OF NEW HAMPSHIRE
SUPERIOR COURT OF STRAFFORD COUNTY

December 19, 2019

Lisa M. Brady
   *Plaintiff*                     ]
   V.                         ]
Somersworth School District, School Board,  ]
SAU#56; JENI MOSCA, Superintendent SAU56, ]  **Civil No. <u>219-2018-cv-00002</u>**
in both her individual and official capacities;  ]
PAMELA MACDONALD, Special Education   ]
Director SAU#56, in both her individual and   ]
official capacities.                      ]
   *Defendants*

## PLAINTIFF MOTION FOR RECONSIDERATION

NOW COMES Plaintiff, Lisa Brady, Pro Se' to file this motion for reconsideration of Summary

Judgment Decision & Order issued by Hon. Howard on December 13, 2019. **There has never been any**

**evidentiary hearing in this case or prior federal rulings to dispute the false, retaliatory, and defamatory**

**statements used to terminate Brady. This court denied the Plaintiff's timely request for an evidentiary**

**hearing to dispute the facts and did not rule on Brady's Motion to Compel Discovery.** See Court Motion

dated 2-26-2019. The following clarification of facts and law are provided to address, that which may have

been, "overlooked or misapprehended" Super. Ct. R. 59-A.

*Statement of Facts*

1) On 09-02-12, Brady filed a grievance against Special Education Director, Pam MacDonald, over the use

   of "Facilitated Communication" (FC) with student A.C. See Com. Ex. p. 51-68.

2) On or about 9-05-12, Assistant Superintendent, Bob Marquis, directed Brady to withdraw the grievance or

   risk termination of her employment.

3) On or about 9-07-12, Brady withdrew the grievance.

4) On 2-1-13, Brady sent a complaint via e-mail to Director MacDonald for making a unilateral action that

   violated Axel's civil rights. Complaint Ex. p.69

5) On 3-22-13, Pam MacDonald issued a warning to Brady. Complaint Ex. p.71-72.

179

6) On 4-01-13, Brady filed a grievance against Pam Mac Donald. Com. Ex. p.73-197. On 1-4-19, Deposition of Middle School Speech Pathologist, Robin Scott, <u>corroborated material assertions</u> within the pleadings. See Scott Dep. P. 17-23, 30-33, 34 (sealed student portions).

7) On or about the first week of April, Assistant Superintendent, Bob Marquis, once again directed Brady to withdraw the grievance or risk termination of her employment. Marquis also recommended that she place a rebuttal in her personnel file. Com. Ex. p.108-112

8) On 12-04-13, Brady reported behaviors exhibited by her Program Assistant that put students at risk to Principal Hilliard related to SB's admitted narcotic use at school. Brady Affidavit to the Court 10-29-19, Com. Ex. p. 114 & 119. On 1-4-2019, Robin Scott corroborated material assertions in Brady's pleading at her deposition. Scott Dep. P. 27& 33-37.

9) On 5-1-13, Principal Hilliard gave Brady a title change, to expand her duties to "school wide Inclusion specialist." See Com. Ex. p. 113.

10) On or about 1-5-2014, Brady returned from break, and discovered evidence of a violent act. Her file cabinet had been kicked-in, and her identification badge had visible impressions from teeth marks and an accumulation of dried brown saliva. Based on legitimate concerns about safety, Brady reported the threat to Principal Hilliard and had several conversations about testing the DNA to capture the identity of the aggressor and to preserve the evidence for future criminal retribution. Brady suspected SB was the culprit. She asked Hilliard to pay for the test and he indicated that he wouldn't however; he did not object to the testing in any way. He did not say or indicate that the test was improper or against school rules or norms. Hilliard provided either express, or tacit approval to Brady and left her with the impression that completing the test would be permissible.

11) On 3-10-14, Brady received a letter of reprimand form Principal Hilliard alleging that she violated N.H. laws for "genetic testing" under N.H. RSA 141 H:2 based solely on her "supposed admission." Brady denied she ever "genetically" tested SB from the abandoned saliva on her private property.

12) The sole basis for Principal Hilliard's determination that Brady violated NH RSA 141 H:2 were drawn from a letter of reprimand dated March 10, 2014. Complaint Ex. P 122. There are thousands of consumer and medical DNA tests and Hilliard chose the RSA 141 H:2 statute to set the stage for Brady's retaliatory termination based on her protected advocacy.

13) Hilliard's testimony during the 1-4-19 deposition provided material evidence of willful blindness to the notice of approval provided for testing when Somersworth engaged in the pretext "sham" investigation of Brady. Hilliard Dep. P. 20, 21, 42-45.

14) On 3-12-14, Mosca violated the CBA when she "removed" Brady from the middle school and transferred her to Maple Wood, claiming it was for the "good of the school," and not disciplinary based on Hilliard's reprimand. She circumvented Brady's rights under the CBA. See Complaint Ex. p. 121.  They also went into to Brady's education licensing site with the N.H. DOE and changed her job title from Special Educator to a Paraeducator II. Com. Ex. p. 27.

15) March of 2014, it was no coincidence the "Axel" film debuted in Keene New Hampshire. Complaint Ex. P 126.

16) 7-11-14, Brady filed a complaint with N.H. DOE, Commissioner, Virginia Barry, and accused Mosca and MacDonald of violating AC's education rights and for fraud, directly related to their role in the public film titled "Axel," currently selling out of U.N.H. IOD. See Complaint Ex. p. 128-133.

17) The school gave Dan Habib, a film maker and promoter of junk science cures--who has no educational or professional license--access to a special education student, A.C., in order to make him the next poster child for FC, a dangerous and debunked cure of a cognitive disability.  The N.H. DOE and N.E.A. teacher's union were major funders of the film.

18) The film claims that through AAC (Augmentative Alternative Communication) they discovered that Axel was no longer significantly delayed but, functioning on "grade level" and "college bound."  FC does not

fall under the category of AAC because it is harmful. At the beginning of the film they described the "before Axel" as the way he truly functioned, at a pre-school level. Brady's complaint exhibits contain irrefutable "material" evidence about AC's then, present level, most recent, cognitive functioning abilities, six months before filming. Com. Ex. p. 211-213. If his cognitive status had changed, the school would have been required under N.H. state and federal special education laws to document the "miracle" with scientific testing and not "snake oil." Principal Dana Hilliard acknowledged at his deposition that he agreed with Brady regarding the student and the film. Hilliard Dep. P. 70-71. <u>Robin Scott's testimony at deposition, fully supported Brady's statement</u>. Com. Ex. p. 211-213. See also, the Scott Dep. P.15, 16(15-23), 17 (1-23), 20(1-23), 26, 30-(8-23), 31 (1-10), 32(1-17), 33(1-10), 34(1-18), and 38(22-23) * sealed portions

19) On 10-2-2014, Brady went out on a valid medical directly related to the stress of the transfer. See Com. Ex 145.

20) On 11-7-2014 Brady filed a Whistleblower complaint with the N.H. DOL to fight the unlawful transfer. See Complaint Ex. p. 146-154.

21) On 11-13-14, Commissioner Barry issued finding from a fraud claim that Brady never lodged. Com. Ex. p. 165 and compare to Brady's actual complaint. Com. Ex. p. 128-135.

22) On 11-18-14, Brady filed a criminal fraud complaint with the N.H. Office of Inspector General, Joseph Foster against Mosca, MacDonald, and U.N.H. IOD. (See Complaint Evidence p. 201-205).

23) Between October 2, 2014 and December 17, 2014, Brady exercised her rights under the Somersworth School Board Policy, which; gave her the same authority as an administrator, to release student information under the FERPA exceptions. Def. MSJ Ex 4 p. 1&3. Brady also had a duty to report the abuse and fraud under NH Ed 510.01.

24) 10-14-14 Superintendent Mosca informed Brady to guard student privacy. Brady had reported Mosca's involvement with the fraudulent "Axel" film to public officials and copied the press. Com.Ex. p.150.

25) On 10-15-14, Brady reported health and safety concerns she had related to AC.

26) The Somersworth School District **recklessly exposed the student to harm** . They allowed a student to be used for the public promotion of a notorious, dangerous, and unequivocally debunked cure for a cognitive  disability, which asserts that guiding the hands of a disabled child on a keyboard or otherwise will cure mental deficiencies, and transform the child to being "college bound." alleging amelioration of a cognitive disability through guided typing or direct hand over hand assist.

27) In December of 2014, Jeni Mosca prepared to terminate Brady; hired an outside investigator that never interviewed Brady.  She accused Brady of "abandoning her job."  She violated Brady's CBA for procedures under Article 9 B titled complaint procedures. (See Com. Ex. p. 12).  Brady was out on a valid medical leave and there was never any kind of meeting to discuss the status of her leave. Superintendent Mosca never met with Brady to complain about her leave status in writing with signature as required by the contract.

28) On 1- 15-15, Brady was terminated from the school district. Com.Ex. p.150.

29) On 1-15-15, Brady's NH DOL Whistleblower transfer hearing began, in direct violation of regulations under 275-E:9. Whistle Blower's Act.

30) On 2-16-15, Somersworth School District informed the public, on local television, at a town hall hearing, that Brady had violated RSA 141 H:2. They also published the hearing transcript online.

31) Brady timely notified the NEA teacher's union and indicated she wanted to go to arbitration, and they made her go through hearings for nearly six months before they denied her. Commissioner Barry denied Brady a hearing. Brady provided the Court with exhaustion evidence to prove her case is viable

183

in superior court. See Brady response to SJ on 2-19-2019.

Respectfully Submitted with signed affidavit, 12/19/2019

*Lisa Brady*

Lisa Brady, Pro Se'
    8 Constable Road
    Durham, NH 03824 603-292-5052
    lisa.brady@comcast.net

### Certificate of Service

I certify that a copy of this filing was hand delivered to the Court and served first class
mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.

.

Dated:   December 19, 2019
*Lisa Brady*
/s/ Lisa Brady, Pro Se
Lisa Brady

# EXHIBIT #17

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
259 County Farm Road, Suite 301
Dover NH 03820

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

Case Name:  Lisa M Brady v Somersworth School District, School Board, SAU #56, et al
Case Number: 219-2018-CV-00002

Please be advised that on March 05, 2020 Judge Howard made the following order relative to: Plaintiff Motion for Reconsideration; "Upon review, denied. The court did not overlook or misapprehend any material point of fact or law in its original order. "Plaintiff Motion for Correction of Date; Granted

March 10, 2020

Kimberly T. Myers
Clerk of Court

(277)

C: Lisa M Brady; Brian J.S. Cullen, ESQ

NHJB-2501-S (07/01/2011)

186

# EXHIBIT #18

**STATE OF NEW HAMPSHIRE**
**SUPERIOR COURT OF STRAFFORD COUNTY**

| | | |
|---|---|---|
| Lisa M. Brady | ] | March 17, 2019 |
| *Plaintiff* | ] | |
| | ] | |
| V. | ] | |
| | ] | |
| Somersworth School District, School Board, | ] | |
| SAU#56; JENI MOSCA, Superintendent SAU56, | ] | **Civil No. <u>219-2018-cv-00002</u>** |
| in both her individual and official capacities; | ] | |
| PAMELA MACDONALD, Special Education | ] | |
| Director SAU#56, in both her individual and | ] | |
| official capacities; | | |
| *Defendants* | | |

<u>**PLAINTIFF'S MOTION TO RECONSIDER SUMMARY JUDGMENT ORDER**</u>

Plaintiff, Lisa Brady, files this motion to reconsider summary judgement under

Superior Court *General Principles Rule 1. Scope, Purpose, Enforcement, Waiver and Substantial Rights (e)*

<u>*A plain error that affects substantial rights*</u> *may be considered and corrected by the court of its own*

*initiative or on the motion of any party.*  Brady notified the Defendants and they did not assent to this

motion.  Considering the error and the broadened implications within the appeal claims, Brady further

motions that the Court reconsider her Partial Motion for Summary Judgement submitted on January 7, 2019.

Reconsider compelling the Defendants to cooperate with Discovery (and March 11, 2019) and granting the

timely evidentiary hearing that Brady requested (February 26, 2018).

**FACTS:**

1. Plain Error: Brady's amended complaint granted by this Court on February 12, 2019 supplanted the original

   complaint filed on January 2, 2018. See *Young v. City of Mount Ranier*, <u>238 F.3d 567, 573</u> (4th Cir. 2001).

   Because the Court's analysis and findings quoted the original complaint throughout the order, it unduly

   prejudiced the plaintiff.

   On page 8 of the court's order, it stated the following under Brady's contract claim:

*"Brady claims that the Somersworth School District breached its contract with her by terminating her "based on a decision that Brady violated state DNA laws (NH RSA 141H:2) . . .without legal justification or "just cause" to make that determination." Compl.*
*63. She claims that the District did not have the legal authority or jurisdiction to make a determination under RSA 141-H:2. Compl. 64*
The amended version of the same complaint stated:

*"On January 20, 2015, the Somersworth School District breached Lisa Brady's teaching contract with willful and wanton negligence when they terminated her employment based on a decision that Brady violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was "immoral," "abandoned her position," and "violated student privacy." They did so without "just cause" to make that determination." Amended Compl 63.*

(*Brady has documented only a few of the inconsistencies but, they exist throughout the order).

2.   On December 28, 2018, the Defendants' objected to Brady's motion to amend and stated:

*"The Plaintiff appears to seek three things by way of the proposed amendment: (a) removing Attorney Kincaid as a named defendant; (b) reframing her claims against the District Defendants to remove the core complaint that they "lacked jurisdiction" to determine that she violated RSA 141-H:2 and replace it with far broader claims that District Defendants lacked evidence to conclude that she violated the statute and failed to consider FERPA exceptions in determining that she violated the Student's privacy rights; and (c) amending her Whistleblower claim (Count XVI in the Original Complaint). None of these goals support amendment at this time, and amendment would impose a substantial burden on Defendants."*

3.   LACK of EVIDENCE: Somersworth School District refused to cooperate with Brady's discovery requests and Brady filed a motion to compel discovery (2-26-19). Additionally, all Brady's professional teacher evaluation were excellent and Principal Dana Hilliard had promoted her to "School Wide Inclusion Specialist, just ten months before the false DNA charges. Com. Ex. p. 44-49 and 113.

4.   PRIOR COURT ORDERS:  On October 13, 2017, the First Circuit Court of Appeals stated: "the district Court did not err in declining to exercise supplemental jurisdiction  over Brady's state law claims against those parties." Com. Ex p. 41-43. The state claims were *dismissed without prejudice* and Brady's claims to Strafford Superior Court are not identical and deserving of de *novo review*. Brady did not have a lawyer and the errors were related to technical deficiencies that she tried to

correct with the present suit. There are contractual claims, statutory claims, school policy claims, retaliation, and several issues raised that were not been raised in federal court. Brady submitted evidence to the Court that had not been submitted in the federal case.i.e. *Appeal of Farmington School District*, No. 2015-0032 (N.H. 2016), FERPA Staff school policy, DNA Laws, Affidavits and depositions that supported Brady's claims and not part of the federal record. The Defendants have not answered Brady's actual complaint and, instead, continue to rest on their laurels, claiming the issues before this Court have already been decided. There has never been an evidentiary hearing in this case.

*A local school board's factual finding must be upheld unless "unsupported by the evidence." Taylor–Boren v. Isaac, 143 N.H. 261, 264 (1998). In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. See Del Norte, Inc., 142 N.H. at 537, 703 A.2d 890.*

5. **DNA:** On page 8 Court order on Summary Judgment, it stated the following:

*"Importantly, in her objection to the motion for summary judgment, Brady does not dispute that she engaged in the conduct by obtaining a bodily fluid of a colleague without consent and subjecting it to genetic testing. She argues only that the school board wrongly concluded that such conducted violated RSA 141-H:2, since the board was without the authority to make such a determination." *Original not amended compl.*

Brady only contended that she believed it was SB's DNA, not that she unlawfully "obtained" it or knew for sure that it belonged to SB. She completed the test only after being the victim of a threatening and uninvestigated violent act in her classroom and then was falsely accused by Hilliard, on March 10, 2014, of violating New Hampshire state laws for RSA 141 H:2. Brady responded to Hilliard in an email written on the same day as follows: See Hilliard depo.

Exhibit 1 and 4:
-----------*Original Message---------- Subject: False Accusations*
*Date: Mon, 10 Mar 2014 20:41: 47 -0400*
*From: Lisa Brady <lisa.brady@comcast.net.>*
*To: dhilliard@SAU56.ORG, jmosca@sau56.org, ksegal@sau56.org, vhahn@sau56.org, pmacdonald@SAU56.org*

*Dear Principal Hilliard,*
*Additional statements for the record:* ***Excerpts from the reprimand with my responses:***

***As you know. You have admitted that you had the bodily materials of a paraprofessional subjected to genetic testing.***

*I have made no such admission. I have admitted that I had two items of my own personal property tested to determine if DNA existed on them other than my own, and if the same DNA were present on both of MY items.  Whose bodily materials were present is purely subject to conjecture.*

***Accordingly, you admitted that you unilaterally took items that you believed contained the DNA of the subordinate to undergo genetic testing***

*Again, the implication here is that I took something that was not mine.  I have repeatedly stated that the items involved were mine.  Whose DNA I believed to be on them is irrelevant. Since I was not conducting tests on a person, the requirement to gain permission from these does not exist.*
*The name was listed as unknown.*   Court submitted Motion on January
28, 2019 to the Court p. 8-9

***Moreover, you have announced to others that you had the genetic testing done on the subordinate and have repeatedly attempted to announce to others the results of such testing without the prior written and informed consent of the subordinate.***

*Again, a complete fabrication. I have announced that I had testing done on a cup and a badge, the results of which do not point to any individual. They are anonymous DNA samples some of which match from the coffee cup and badge. The sources from the items is unknown for any scientific or legal purpose.*

*Most importantly, I sought guidance from Principal Hilliard with regard to DNA testing and had he told me that I it would be ill advised, I would have followed his direction.*
    Brady's motion for reconsideration to the court (December 20, 2019) detailed issues relevant to the

false and defamatory DNA charges and the Court did not comment. Hilliard's testimony at deposition

proved that the conclusions he made within his letter of reprimand on March 10,2014 was *the only*

*evidence* that he relied on. Brady had several conversations with Hilliard about testing the DNA to

capture the identity of the aggressor and to preserve the evidence for future criminal retribution.

Principal Hilliard did nothing to dissuade her from testing and his silence on the issue gave Brady the

impression he approved the test. Had he told Brady not to do the test, she would have complied. The

evidence shows he was also aware that Brady had concerns about safety related to herself and students

in the class. Principal Hilliard and Brady were involved with an assault investigation involving SB and a special needs student in Brady's class. He was aware SB had a recent history of overdosing on her prescription medication causing her to be hospitalized. Any reasonable person working with SB would have been highly concerned. Speech Pathologist, Robin Scott, testified during her deposition about her concerns about SB related to safety. The evidence from deposition was material and part of the Court record.

6. On January 7, 2019 Brady filed a motion for partial summary judgement and asked the following question:

*"Did the Somersworth School Board erroneously apply the plain language of RSA 141 H:2 at Lisa Brady's termination hearing when they failed to provide analogous applicability to Brady's employment discipline?"*

Brady requests that the Court find that she is entitled to a ruling in her favor.

7. On page 10 of the MSJ Court order, the Court referenced the school district's liability under the provisions of 507-B. Brady argued "immunity" on page 2 of her February 19, 2019 Objection to Summary Judgment. She cited Robinson V. Hillsborough County, N.H. Supreme Court, No. 2114-0648, (2015) noting that a governmental agency could be held liable if its employees negligently follow or fail to follow established standards. Brady does not contest that Somersworth School District is considered a "governmental unit" or other provisions that it noted under RSA Chapter 507-B. Brady argues that her case involved constitutional claims of "Whistle-blowing" and wrongful termination

which; would prevent a qualified immunity defense. See Porter v. City of Manchester, 151 N.H. 30, 48 (2004). Brady's whistle-blowing and wrongful termination claims were backed up with material evidence, submitted to the court. The evidence shows that Brady made multiple civil rights and criminal complaints against Superintendent, Jeni Mosca, and Special Education Director, Pam MacDonald (detailed in the writ and·Brady's motion for reconsideration). The evidence proves the

egregious retaliation that the district administrators used to target and then terminate Brady.

CONCLUSION: Brady submitted a *prima facie* amended complaint that was granted by this court. The Strafford Superior Court has jurisdiction over Brady's complaint. She has also submitted voluminous material evidence that can only be ignored by this court if they look to the original complaint and not the amended version which; corrected the deficiencies. The Defendants have not provided a defensible argument to Brady's claims. They continue to play the victims and point to previous decisions that were never tried in a court of law and not subjected to basic evidentiary hearing standards. The New Hampshire teacher's union refused to help Brady during her termination and long after, she discovered that the NH NEA was a major sponsor of the film "Axel;" at the very heart of this case. The egregious onslaught of lies perpetuated by the school district is well documented in the record and this court should not continue to allow them the benefit of not being held accountable.

Wherefore Plaintiff pleads this court to consider all evidence, without prejudice:

- Reverse the Defendants Motion for Summary Judgment,
- Find in favor of Brady's partial summary judgment motion from January 7, 2019: *"Did the Somersworth School Board erroneously apply the plain language of RSA 141 H:2 at Lisa Brady's termination hearing when they failed to provide analogous applicability to Brady's employment discipline?"*
- *Order the Defendants to cooperate with Brady's discovery request*
- *Order an Evidentiary Hearing*

Respectfully Submitted and signed under the threat of penalty of perjury.
3/17/2020

*Lisa Brady*

Lisa Brady, Pro Se', 8 Constable Road Durham, NH 03824 603 292-505 lisa.brady@comcast.net Certificate of Service:
I certify that a copy of this filing was hand delivered to the Court and served first class mail/email to Attorney Brian Cullen, 10 E. Pearl St., Nashua NH 03060.


Dated:   March 17, 2020                    *Lisa Brady*

/s/ Lisa Brady, Pro Se
     Lisa Brady

# EXHIBIT #19

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
259 County Farm Road, Suite 301
Dover NH 03820

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE OF DECISION

FILE COPY

Case Name:  Lisa M Brady v Somersworth School District, School Board, SAU #56, et al
Case Number: 219-2018-CV-00002

Please be advised that on April 01, 2020 Judge Howard made the following order relative to: Plaintiff's Motion to Reconsider Summary Judgment Order; "Denied as untimely."

May 06, 2020

Kimberly T. Myers
Clerk of Court

(277)
C: Lisa M Brady; Brian J.S. Cullen, ESQ

NHJB-2501-S (07/01/2011)

195

# EXHIBIT #20

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

## RULE 7 NOTICE OF MANDATORY APPEAL

This form should be used for an appeal from a final decision on the merits issued by a superior court or circuit court except for a decision from: (1) a post-conviction review proceeding; (2) a proceeding involving a collateral challenge to a conviction or sentence; (3) a sentence modification or suspension proceeding; (4) an imposition of sentence proceeding; (5) a parole revocation proceeding; (6) a probation revocation proceeding; (7) a landlord/tenant action or a possessory action filed under RSA chapter 540; (8) an order denying a motion to intervene; or (9) a domestic relations matter filed under RSA chapters 457 to 461-A other than an appeal from the first final order. (An appeal from the first final order issued in a domestic relations matter filed under RSA chapters 457 to 461-A should be filed on this form.)

1. COMPLETE CASE TITLE AND CASE NUMBERS IN TRIAL COURT

**Lisa M Brady V Somersworth School District, School Board, Sau #56, et al**

---

2. COURT APPEALED FROM AND NAME OF JUDGE(S) WHO ISSUED DECISION(S)

**Strafford Superior Court (Judge Mark Howard)**

---

| 3A. APPEALING PARTY:  NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER. | 3B. APPEALING PARTY'S COUNSEL:  NAME, BAR ID NUMBER, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER. |
|---|---|
| Lisa Brady, Pro Se'<br>8 Constable Road<br>Durham, NH 03824<br><br>E-Mail address:lisa.brady@comcast.net<br><br>Telephone number:    603-292-5052 | _____<br>_____<br>_____<br>_____<br>_____<br>E-Mail address:<br>Telephone number: |

| 4A. OPPOSING PARTY:  NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER. | 4B. OPPOSING PARTY'S COUNSEL:  NAME, BAR ID NUMBER, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS, AND TELEPHONE NUMBER. |
|---|---|
| Somersworth School District, et.al.<br>51 West High Street<br>Somersworth, NH 03878<br><br>E-Mail address:<br>Telephone number: (603) 692-4450 | Attorney Brian Cullen<br>10 E. Pearl St.<br>Nashua, NH 03060<br>Cullen Collimore, PLLC  NH Bar#11265<br>**E-Mail address:**<br>**bcullen@cullencollimore.com**<br>**Telephone number: 603-881-5500** |

197

5. NAMES OF ALL OTHER PARTIES AND COUNSEL IN TRIAL COURT

   Pamela MacDonald (same counsel as Somersworth)
   Jeni Mosca  (same counsel as Somersworth)

---

6. DATE OF CLERK'S NOTICE OF DECISION ON POSTTRIAL
MOTION, IF ANY.  ATTACH OR INCLUDE COPY OF NOTICE
AND DECISION

   **May 6, 2020**

7. CRIMINAL CASES: DEFENDANT'S SENTENCE
AND BAIL STATUS

_____

_____

_____

_____

_____

---

8. APPELLATE DEFENDER REQUESTED?                    YES or NO: **NO**
IF YOUR ANSWER IS YES, YOU MUST CITE STATUTE OR OTHER LEGAL AUTHORITY UPON WHICH CRIMINAL LIABILITY
WAS BASED AND SUBMIT A CURRENT REQUEST FOR A LAWYER FORM (FINANCIAL STATEMENT).  SEE SUPREME COURT
RULE 32(4).

---

9. IS ANY PART OF CASE CONFIDENTIAL?                    YES or NO: **YES**
IF SO, IDENTIFY WHICH PART AND CITE AUTHORITY FOR CONFIDENTIALITY.
SEE SUPREME COURT RULE 12.

---

10. IF ANY PARTY IS A CORPORATION, LIST THE NAMES OF PARENTS, SUBSIDIARIES AND AFFILIATES.

---

11. DO YOU KNOW OF ANY REASON WHY ONE OR MORE OF THE SUPREME COURT JUSTICES WOULD BE
DISQUALIFIED FROM THIS CASE?                    YES or NO: **NO**

IF YOUR ANSWER IS YES, YOU MUST FILE A MOTION FOR RECUSAL IN ACCORDANCE WITH SUPREME COURT RULE 21A.

12. IS A TRANSCRIPT OF TRIAL COURT PROCEEDINGS NECESSARY FOR THIS APPEAL? SEE SUPREME COURT RULE 15, COMMENT. **NO, just court records exhibits depositions**

YES or NO: **NO**

IF YOUR ANSWER IS YES, YOU <u>MUST</u> COMPLETE THE TRANSCRIPT ORDER FORM ON PAGE 4 OF THIS FORM.

13. LIST SPECIFIC QUESTIONS TO BE RAISED ON APPEAL, EXPRESSSED IN TERMS AND CIRCUMSTANCES OF THE CASE, BUT WITHOUT UNNECESSARY DETAIL. STATE EACH QUESTION IN A SEPARATELY NUMBERED PARAGRAPH.

**Questions Raised on Appeal**

**25** Did the Court commit a reversible error when it used the original, "moot," complaint filed with the Court and not the "operative," amended version, as justification for summary judgement? (The original complaint was filed on 1-2-2018, amended one filed on 12-13-2018, Defendant MSJ filed 1-25-2019, Court granted amended complaint on 2-12-2019).

**26** Whether an error made by the Court should result in a miscarriage of justice for Brady. *Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel." See* Rappleyea v. Campbell, 884 P.2d 126, 132 (California 1994).

**27** Whether the Court should have waived the rules for "timeliness," under Superior Court Rule 1, and corrected the summary judgment order after Brady filed a second motion for reconsideration and called the Court's attention to the error. In New Hampshire Judges are supposed to *"make reasonable efforts, consistent with the law and court rules, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard"* (N.H. Jud. Code 2.2(B)).

**28** Whether the Defendants' Motion for Summary Judgment *foreclosed the need for a trial.*

**29** Did the court decide disputed issues of material fact, thereby erroneously granting summary judgement?

**30** Whether the Court prejudiced Brady when it prematurely granted summary judgement before the Plaintiff had even obtained discovery, further depositions, or an evidentiary hearing that would have given rise to a triable issue of fact.

**31** Whether the Court granted summary judgment by proxy when it relied on material facts from separate court matters, *wrought with mere pro se' legal technicalities,* that were corrected in the instant matter before the Strafford Superior Court.

**32** Whether the court granted summary judgment in error when it relied on material facts and findings from a local school board's "sham" hearing and extrajudicial hypothetical violation of N.H. RSA 141 H:2, in a personnel matter, and then used to deny Brady's partial summary judgment.

**33** Whether the Court erroneously applied the plain meaning of laws for mandated and protective reporting under N.H. Ed.186 C:3(a)(II)(e) and N.H.RSA 169-C:29 when it implied that the use of Facilitated Communication with Brady's student was discretionary and not an egregious violation of her student's privacy and civil rights

**14. CERTIFICATIONS**

I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading. To the extent that an unpreserved issue is raised as plain error, I hereby certify that I have specifically identified that issue as plain error in section 13.

*Tom Brady*

_____
Appealing Party or Counsel

I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Supreme Court Rules 5(1) and 26(2) and with Rule 18 of the Supplemental Rules of the Supreme Court.

May 31, 2020                                    *Tom Brady*

_____        _____
Date                                               Appealing Party or

200

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

SUPERIOR COURT

Strafford Superior Court
2964
Dover NH  03820

Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735

http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

___Case Name: **Lisa M Brady v Somersworth School District, School Board, SAU #56, et al** Case
Number: **219-2018-CV-00002**

Please be advised that on April 01, 2020 Judge Howard made the following order relative to:

Plaintiff's Motion to Reconsider Summary Judgment Order; "Denied as untimely."

May 06, 2020

Kimberly T. Myers
Clerk of Court

(277) C: Lisa M Brady; Brian J.S. Cullen, ESQ

201

Case 1:21-cv-00614-PB   Document 1-3   Filed 07/22/21   Page 38 of 114

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

SUPERIOR COURT

Strafford Superior Court
2964
Dover NH  03820

Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735-

http://www.courts.state.nh.us

## NOTICE OF DECISION

**FILE COPY**

___Case Name: **Lisa M Brady v Somersworth School District, School Board, SAU #56, et al** Case Number: **219-2018-CV-00002**

Please be advised that on March 05, 2020 Judge Howard made the following order relative to:

Plaintiff Motion for Reconsideration; "Upon review, denied. The court did not overlook or misapprehend any material point of fact or law in its original order."

Plaintiff Motion for Correction of Date; Granted

March 10, 2020

Kimberly T. Myers
Clerk of Court

(277)

C: Lisa M Brady; Brian J.S. Cullen, ESQ

·    202

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Strafford Superior Court
2964
Dover NH 03820

Telephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735

http://www.courts.state.nh.us

## NOTICE OF DECISION

File Copy

Case Name:     Lisa M Brady v Somersworth School District, School Board, SAU #56, et
al Case Number: 219-2018-cv-00002

Enclosed please find a copy of the court's order of December 12, 2019 relative to:

Omnibus Order on Pending Motions

December 13, 2019                    Kimberly T. Myers
                                    Clerk of Court

(277)

C: Lisa M Brady; Brian J.S. Cullen, ESQ

NHJB-2503-S (07/01/201 1 )

## STATE OF NEW HAMPSHIRE

### STRAFFORD COUNTY

### SUPERIOR COURT

Lisa M. Brady

v.

Somersworth School District School Board (SAU #56),
Jeni Mosca, Superintendent of SAU #56, in both her individual and official capacities, and
Pamela MacDonald, Special Education Director of SAU #56, in both her individual and official
capacities

### Docket No.: 219-2018-CV-00002

## OMINBUS ORDER ON PENDING MOTIONS

The plaintiff Lisa M. Brady filed this action against the above-named defendants, seeking

damages for numerous claims stemming from the School Board's termination of her employment

as a teacher. [1] (Court Index HI). A spate of motions are pending before the court, chief among

them is the Defendants' Motion for Summary Judgment on all claims. (Court Index #61). The

Defendants' Memorandum of Law in Support of Motion for Summary Judgment is filed under

seal due to the confidential nature of certain facts set forth in the memorandum. (Court Index

#63) Brady objects. (Court Index #71). The defendants filed a reply to the objection, (Court

Index #77), and Brady filed a sur-reply, (Court Index #78). Brady requests a hearing on the

motion. (Court Index #74). Because the court determines that a hearing would not assist the

court in the resolution of the summary judgment motion, a hearing is denied. Super. Ct. R. 13.

Based on the parties' arguments by pleading, the relevant facts , and the applicable law, the

Defendant's Motion of Summary Judgment is GRANTED. The other pending motions

are denied as moot, except as otherwise explained in this order.

Jeanne Kincaid, attorney for the Somersworth School District, was also a named defendant but was dismissed from this lawsuit by earlier order of the court (Houran J.). (Court Index #12).

### Order on Motion for Summary Judgment (Court Index #61)

The material facts relative to the motion for summary judgment are either undisputed or conclusively determined in prior proceedings. In addition, this court issued a prior ruling on Brady's Motion for Partial Summary Judgment. The court adopts and incorporates its prior order in the instant order.

The Somersworth School District is within School Administrative Unit (SAU) 56 and is comprised of the high school, middle school and two elementary schools, Defendant Mosca was the Superintendent of the SAU and Defendant MacDonald was the Director of Special Education. Beginning in September 2008, Brady was a special education teacher in the middle school where Dana Hilliard was the principal. Brady had a continuing contract which was renewed annually through May 2014. Aff. of Jeni Mosca, ¶¶ 2-4; Ex. 1 to Aff.

In the summer of 2012, Brady was assigned to work with a middle school student (the student) as his Case Manager. Before she was assigned the student, the student was in a UNH documentary film. Aff. of Pam MacDonald, 3. Brady believed that the student's abilities were misrepresented in the film. Comp. 7. She also believed that the use of hand over hand assistance (Facilitated Communication) in the film violated the student's Individual Education Plan (IEP). Jd.

The student's IEP required that the student take the New England Common Assessment Program (NECAP) test in the fall of 2012. MacDonald Aff., II 5; Brady Depo. at 31. Brady acknowledges that the student did not take the test, and despite the requirement in the student's IEP, Brady maintained the test "was an absolute

waste of time." Brady Depo. at 32, 35. Later,  in December 2012, Defendants Mosca and MacDonald instructed Brady to convene an IEP meeting to correct an error regarding the student's ESOL services. Brady failed to convene the meeting and was the subject of a written warning.

In late 2013 and early 2014, Brady was allegedly having issues with a special education assistant, S.B., and claimed to be concerned that S.B., was abusing prescription medication. (Brady Depo. at 51-52). Brady informed her principal Dana Hilliard and the school's Speech Pathologist, Robin Scott, of her suspicion.  (Compl. ¶¶ 13–14; Compl. Attach. at 114–15; Brady Depo. at 55). Shortly thereafter, in January 2014, Brady accused S.B. of biting her employee identification badge and kicking in her file cabinet. (Compl. II 17; Compl. Attach. at 1 19; Brady Depo. at 58-59). Brady believed that S.B. committed these acts to retaliate against Brady for informing Hilliard and Scott about her alleged prescription drug use. (Compl. Attach. at 119, 121). In an eff01t to prove S.B. had done so, Brady took the badge and a coffee mug which she believed S.B. used to a laboratory for DNA testing without S.B.'s knowledge or consent. (Compl. 16; Compl. Attach. at I I 7—19, 121; Brady Depo. at 58-60). In February 2014, Brady shared her accusations with Hilliard and Scott and referenced the DNA testing. (Compl. Attach.at 119; Brady Depo. 65-66).

Brady and S.B. participated in mediation to address the issue. (Brady Depo. at 76).

When mediation failed, the matter was sent to Superintendent Mosca to resolve. (Compl. Attach.at 121). Mosca determined that it was in the best interest of the school system to transfer Brady

permanently to a different school. (Id. at 125). By letter dated March 12, 2014, Mosca informed Brady

that she had been assigned to the Maple Wood and must report to work there on March 17, 2014.

(Compl. Il 22; Compl. Attach. at 125). Brady did not report to the Elementary School and instead went

on medical leave, which according to Brady was due to the stress she

experienced from the transfer. (Compl. ¶¶ 25–26).

In March 2014, around the same time Brady was transferred, a short documentary film

produced by the University of New Hampshire Institute on Disability debuted. (Compl. Il 23). The film

featured A.C., a special needs student at the Middle School. (Id.). Brady, who was part of A.C.'s

Individualized Education Program (IEP) team, became concerned about the portrayal of A.C.'s abilities

in the film and the alleged involvement of Mosca and Special Education Director MacDonald in the

film's production. (Compl. Il 27). Subsequently, on July I I , 2014, Brady sent a complaint to the

Commissioner of the New Hampshire Department of Education. (Id.). The complaint disclosed A.C.'s

full name and details relating to A.C.'s disability, the opinions of his IEP team, and communications

with A.C.'s mother. (Compl. Attach. at 128—33).

On October 2, 2014, after unsuccessful attempts to challenge her transfer, Brady again

went on medical leave. (Compl. 35). During this time Brady continued to pursue her

complaint to the Commissioner of Education against Mosca and MacDonald relating to the

documentary film. (See Compl. Il 37). On October 9, 2014, Brady again emailed the

Commissioner, as well as the Governor of New Hampshire, the New Hampshire Attorney

General, and numerous press outlets about her complaint. (Id.; Compl. Attach. at 155—157). The

email included A.C.'s personal information, such as his first name and information relating to his IEP

team's assessment of his abilities. (Compl. Attach. at 156).

207

On October 14, 2014, Mosca informed Brady by letter that the School District had initiated an

investigation into her communications to third parties of confidential student

information, noting that she may have violated the Family Education Rights and Privacy Act

2 After Brady returned to work at the beginning of the school year in August 2014, she attempted to challenge her transfer by requesting a hearing with the School Board and a hearing with the New Hampshire State Board of Education. (Compl. 28, 31; Compl. Attach. at 136—37, 140—41). Both boards denied her request on the ground that the applicable statute, RSA 189:31—32, only provides a right to a hearing to employees who have been removed

from their position, not those who were merely transferred to another school. (Compl. ¶¶ 29, 34; Compl. Attach. at 138, 144). Brady then filed an appeal of the State Board's decision with the New Hampshire Department of Education, which concluded that the State Board's decision was correct. (Compl. Attach. at 159).

("FERPA") and the Individuals with Disabilities Education Act ("IDEA"). (Compl. Attach. at

158). The letter instructed Brady to "safeguard student privacy" and reminded her that

"substantiated violations of student confidentiality obligations will result in disciplinary action up to

and including termination." (Id.). Despite the explicit warning, on November 18, 2014, Brady sent

another email to the Commissioner of Education, the Governor, the Attorney General, numerous

press outlets, and several other recipients. Again, Brady's email contained A.C.'s first name,

information relating to his educational history, and the opinion of his IEP team relating to

his abilities. (Id. at 203).By letter dated December 13, 2014, Mosca informed Brady that she was

recommending that the School Board dismiss her from her position.[6] (Pl.'s Ex. B at I). After Brady

notified the School Board that she wished to exercise her right to a public hearing on the matter, the

Board convened a three-day public hearing on January 9, January 12, and January 13, 2015, followed

by a non-public session where the Board deliberated and rendered its decision terminating

Brady's employment. dd.).

Attorney John Teague presided over the hearing as the hearings officer. dd.). Prior to

[6] At this time, Brady was still on medical leave. (Compl. Attach. at 172).

the hearing, Brady requested the Board to subpoena certain Middle School staff members to appear at the hearing to testify. (Id. at 2). Attorney Teague denied this request because the Board lacked subpoena power and was prohibited from compelling testimony of School District staff under the terms of the District's collective bargaining agreement. (Id.). As alternatives to live testimony, he permitted Brady to submit affidavits of witnesses or make offers of proof of the witnesses' expected testimony. dd.). At the hearing, the School District presented evidence through witnesses, including Hilliard, MacDonald, Mosca, and an investigator for the School District, all of whom Brady was permitted to cross-examine. (Id. at 3). Brady then testified and referenced in her testimony the expected testimony of the witnesses she wished to call. (Id.).

Following the hearing, the Board made several findings in support of Brady's termination, which it issued in writing on January 20, 2015. (Sgg Pl.'s Ex. B). With respect to the DNA testing relating to S.B., the Board found that Brady "acted in an unprofessional and unethical manner" when she had "the bodily fluids of another staff member tested for identification" without the staff member's knowledge, and subsequently reported the results of the test to others. (E. at 4). The Board found both "that the behavior violated RSA 141-H:2," which prohibits genetic testing of individuals without their permission, and that it violated staff ethics policy. (Id.).

Second, the Board found that Brady had "repeated communications to third parties, not connected with the School District, containing non-directory personal information regarding a student" and continued those communications even after the School District directed her to stop. (Id.). The Board found that these acts "constituted violations of the Family Educational Rights

209

and Privacy Act (FERPA")," and various School District policies which mirror FERPA's rules to protect the confidentiality of student information. (Id. at 4, 6). The Board further found that Brady's belief that the public had the right to know about "an alleged mischaracterization of a student in a public video" did not justify her violation of these rules. (Id. at 5). Though the Board acknowledged Brady's right to express her opinion about a student's educational program, it noted that her concerns "must be delivered within the confidential confines of the school and team meetings."(Id.).

RSA 189: 13 authorizes the School Board to "dismiss any teacher found by them to be immoral, or who has not satisfactorily maintained the competency standards established by the school district, or one who does not conform to regulations prescribed." In applying the Board's findings to the language of the statute, the Board concluded that her conduct, "particularly with regard to her treatment of her subordinate [the paraprofessional], was unethical and therefore immoral." (Id. at 7). Furthermore, the Board concluded that her "disregard for the obligation to protect the privacy rights of staff and students" demonstrated her failure "to maintain the competency standards established by the District." dd. at 7—8). Finally, the Board concluded that she failed to conform to the regulations when she continued to violate the student privacy rules after receiving a warning from the School District.[7] dd. at 8). For these reasons, the Board voted to accept the School District's recommendation of her dismissal. (Id.).

Nearly six (6) months later, on July 3, 2015, Brady filed an appeal of the School Board's decision with the State Board of Education. (JA. at 174). By letter dated July 9, 2015, the Department of Education denied the appeal for failure to timely file. (Id.). In 2016, Brady filed a complaint for

---

[7] As additional grounds for termination, the School Board found that she abandoned her teaching assignment at Maple Wood Elementary School and failed to administer the state's NECAPS assessment required by A.C.'s IEP. (Pl.'s Ex. B at 8).

damages in the United States District Court for the District of New Hampshire against Mosca,

MacDonald, the School Board, and Jeanne Kincaid, the School District's attorney, asserting federal

and state law claims against the defendants. (Seg Defs.'s Ex. A at I ). On the defendants' motion, the

district court dismissed the federal claims and declined to exercise supplemental jurisdiction to

consider the state law claims. (Id. at 16). Following an unsuccessful appeal to the United States Court

of Appeals for the First Circuit, (Compl. Attach.at 41—43), Brady filed her state law claims against the

defendants with this court.

## Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." RSA

491:8-a, Ill. "An issue of fact is 'material' for purposes of summary judgment if it affects the

outcome of the litigation under the applicable substantive law." VanDeMark v. McDonald's

Corp., 153 N.H. 753, 756 (2006) (citation omitted). The moving party has the burden of proving

its right to summary' judgment. Concord Grp. Ins. Co. v. Sleeper, 135 N.H. 67, 69 (1991). The

court "must consider the evidence in the light most favorable to the party opposing the motion, giving

that party the benefit of all favorable inferences that may be reasonably drawn from the evidence." Id.

(citation omitted). Where "the parties agree that there are no genuine issues of material fact in

dispute," the court must determine "whether the moving party is entitled to judgment as a matter of

law." Eby v. State, 166 N.H. 321, 327 (2014).

211

### Analysis

There are twelve remaining claims asserted in Brady's Complaint. For purposes of their motion, the defendants group their arguments in three categories: the contract claim, the tort claims and the Whistleblower claim. The court will address the claims in the same manner.

#### Contract Claim

Brady claims that the Somersworth School District breached its contract with her by terminating her "based on a decision that Brady violated state DNA laws (NH RSA 141-H:2) . . . without legal justification or "just cause" to make that determination." Compl. 63. She claims that the District did not have the legal authority or jurisdiction to make a determination under RSA 141-H:2. Compl. 64. Importantly, in her objection to the motion for summary judgment, Brady does not dispute that she engaged in the conduct by obtaining a bodily fluid of a colleague  without consent and subjecting it to genetic testing. She argues only that the school board wrongly concluded that such conducted violated RSA 141-H:2, since the board was without the authority to make such a determination.

This court has already concluded as a matter of law in its order denying Brady's Motion for Partial Summary Judgment that the school board was well within its purview to consider her violation of State law as a ground for dismissing her. Although the school board clearly does not have the authority to adjudicate a violation of RSA 141-H:2, it can certainly consider conduct that violates State law in determining whether to dismiss a teacher. Since there is no genuine issue of material fact concerning her undisputed conduct with regard to the DNA testing of  a co- worker and this is the only basis for her breach of contract claim, she cannot prevail as a matter of law on her contract claim. Accordingly, judgment is entered for the defendants on this claim.

#### Tort Claims
212

Brady's myriad tort claims sound in misrepresentation, negligence, intentional

interference with contract, defamation, wrongful termination, negligent infliction of emotional

distress, and abuse of process. Compl. Counts 11, 111, V, VII, VIII-x, XII, and XV.

Summary judgment must be granted to the defendants as a matter of law because RSA 189: 14 provides

the exclusive potential remedy for a teacher dismissed in violation of RSA 189: 13, and    RSA 507-B

otherwise limits the liability of governmental units to certain types actions. In

addition, with respect to the individual claims, there is no genuine issue of material fact and the

defendants are entitled to judgment as a matter of law.

---

5 In her objection, Brady argues that RSA 141-H:2 does not apply to her, and if it does, "recent legislative
changes" to the statute render it inapplicable to "abandoned property." First, the plain language of RSA 141-H:2,
II, clearly prohibits genetic testing on an individual based on bodily fluids obtained in this State, except under
certain circumstances inapplicable here, without the consent of the individual. Again, Brady does not deny the
underlying conduct that she obtained bodily fluid from a co-worker and subjected it to genetic testing. Second,
the statute has not been amended to include an exception for genetic testing on abandoned property.
In this case, it is undisputed that Brady was dismissed pursuant to RSA 189:13. That

statute provides:

> The school board may dismiss any teacher found by them to be immoral, or who has not
> satisfactorily maintained the competency standards established by the school district, or
> one who does not conform to regulations prescribed; provided, that no teacher shall be so
> dismissed before the expiration of the period for which said teacher was engaged without
> having previously been notified of the cause of such dismissal, nor without having
> previously been granted a full and fair hearing.

RSA 1 89:13. If the school board dismisses a teacher in violation of RSA 189: 13, the teacher's cause of

action is strictly limited by 189:14. Section 14 provides:

> The district shall be liable in the action of assumpsit to any teacher dismissed in violation
> of the provisions of RSA 189: 13, to the extent of the full salary for the period for which
> such teacher was engaged.

RSA 189:14. Section 14 limits both the cause of action (assumpsit, or breach of contract) and

213

the extent of damages (full salary for the contract period). The legislature having elected a

singular cause of action and a limit on the calculation of damages, Brady is precluded from bringing

any other causes of action based on her termination. Cf. Appeal of Cover, 168 N.H.

614, 622 is implied that the legislature intended to exclude other things in a statute by

identifying a particular thing). To hold otherwise and allow other causes of action to remedy a

teacher's termination would render RSA 189: 14 meaningless.

The limited liability provisions of RSA 507-B buttress this conclusion, and themselves preclude

Brady's tort claims. Section 2 of the statute provides that a governmental unit, which includes a

school district, RSA 507-B:I, may be held liable for damages for "bodily injury, personal injury or

property damage caused by its fault . . . arising out of ownership, occupation, maintenance or

operation of all motor vehicles, and all premises." RSA 507-B:2. All other tort claims, except as may be

otherwise allowed by statute, are precluded under RSA 507-B:5, which reads:

No governmental unit shall be held liable in any action to recover for bodily injury,
personal injury or property damage except as provided by this chapter or is provided or
may be provided by other statute.

RSA 507-B:5. Personal injury includes, by definition, "libel, slander, where the publication or utterance

of other defamatory or disparaging material." RSA 507-B:I. Personal injury also

includes privacy and mental anguish claims. Id. As such, Brady's tort-based claims are ban•ed because

they do not arise out of the district's ownership, occupation, maintenance or operation of a motor

vehicle or a premise.

To the extent Brady is not barred from bringing her tort claims against the defendants,

they nevertheless fail because there is no genuine issue of material facts with respect to each of the

claims. With regard to her claim of misrepresentation, she asserts that the school district

214

misrepresented its authority to prosecute her for a violation of RSA 141-H:2 and that she relied on that representation in preparing her defense at the termination hearing.

The court has scrutinized the record on this issue and finds no evidence that the school district represented in any way that it had the authority or jurisdiction to prosecute a violation of the genetic testing statute. To the contrary, the school district clearly informed Brady that she was alleged to have violated the district's rules and regulations when she engaged in her effort to collect the DNA sample and have it tested without her coworkers consent. She further violated school district norms and staff privacy rights when she attempted to disseminate the information.There is no genuine issue of material fact that the school district did not misrepresent its

authority or jurisdiction in any way.

With regard to her negligence claims, she asserts that the school district and the individual defendants knew or should have known that they did not have the authority or jurisdiction to prosecute a violation of the genetic testing law. Simply put, there is no evidence that either the school district or the individual defendants undertook to prosecute her for a violation of the statute. It is an entirely different matter that the school district took into account in terminating her that the undisputed evidence amounted to a violation of state law under the genetic testing statute. There is no evidence that the school district or the individual defendants breached any duty of care to Brady in their consideration of her conduct in terminating her.

Brady also asserts that the individual defendants interfered with her employment when they "brought charges" against her for violating the genetic testing statute. Once again, Brady misapprehends the issue. The individual defendants did not bring any charges against her for a violation of the statute. She was given proper notice that her conduct may have violated state law and that she could be terminated for her conduct, as well as

215

for several other reasons. There is no evidence that the individual defendants' role in initiating termination proceedings was in any way improper. Accordingly, they are entitled to summary judgment on this count.

With regard to Brady's defamation claim against the individual defendants, she makes no allegation that the individual defendants made any statements against her that were defamatory. Instead, she argues that the school district's attorney made defamatory statements and that the individual defendants promoted and facilitated the attorney's defamatory statements. Assuming that accomplice to defamation is a cognizable claim under New Hampshire law, Brady has offered no evidence that the individual defendants promoted or facilitated any statement by the district's attorney. Accordingly, the individual defendants are entitled to summary judgment on this count.

Brady asserts a separate tort claim for wrongful termination, alleging that she was fired in retaliation for filing certain complaints with public officials, such as the Commissioner of Education and the governor. This claim is clearly barred by RSA 189:14. Nevertheless, even if the claim is not barred, she must produce evidence that her termination was motivated by bad faith, retaliation or malice. Mac.Kenzie v. Lenihan 158 N.H. 476 (2009). She has offered no evidence, beyond the bare facts that she made the complaints and she was in fact terminated, to support the conclusion that her termination was in any way motivated by bad faith, malice, or in retaliation for her complaints. To the contrary, the undisputed evidence is that the school district engaged in a lengthy independent investigation and held a three-day evidentiary hearing on the grounds for termination. There is no evidence in the record to suggest that the school district engaged in any bad faith, malice or retaliatory conduct. Accordingly, summary judgment is granted in favor of the defendants on this count.

Brady also claims negligent infliction of emotional distress. Like many of her other claims, this claim is based on her allegations that the individual defendants prosecuted her for, and the school district was without legal authority to adjudicate, a violation of the genetic testing statute. The premise of the claim is misplaced for the reasons previously described. She was neither prosecuted for, nor adjudicated guilty of a violation of the genetic testing statute. There is no evidence that either the school district or the individual defendants breached any duty of care to Brady in recommending her termination, giving her notice of the grounds for her termination, or in conducting a lengthy evidentiary hearing to determine the facts surrounding her termination. Accordingly, the defendants are entitled to summary judgment on this count.

Finally, Brady claims that the defendants abused the termination process by using it for a purpose for which it was not intended, specifically, to adjudicate a violation of the genetic testing statute. To be clear, there is no evidence that the administrative process was used for this purpose. The only evidence presented to this court is that the termination proceeding termination proceeding was used precisely för and in the manner which it was intended. That is, Brady was given notice of the grounds for her termination, given a full and fair hearing and provided a complete opportunity to be heard on the proper grounds for termination. There is no genuine issue of material fact regarding her abuse of process claim, and therefore the defendants are entitled to judgment as a matter of law.

## Whistleblower Claim

Brady claims under RSA 275-E:9 that she was terminated from her employment because she filed a complaint with the Department of Labor regarding her transfer within the school district from the Middle School to Maple Wood Elementary. She filed the complaint in or about November 2014.

217

She was terminated from employment on January 20, 2015, the same day of her hearing on her

transfer complaint.

RSA 275-E:9 protects public employees from retaliatory action by a governmental entity:

"No governmental entity shall threaten, discipline, demote, fire, transfer, reassign, or
discriminate against a public employee who files a complaint with the department of
labor under RSA 275-E:8 . . . . Notwithstanding this provision of law, public employers
may discipline, demote, fire, transfer, or reassign an employee so long as the action is not
arbitrary or capricious and is not in retaliation for the filing of a complaint under this
chapter.

Brady does not claim that the defendants' actions were arbitrary or capricious; she claims that

her termination was retaliatory. Except for the bare facts that she filed a Labor Department

complaint and was terminated over two months later, Brady points to no evidence that her termination

was even related to her complaint, much less in retaliation for it. Instead, the

undisputed evidence is that the school district commissioned an extensive independent

investigation of Brady's actions regarding her repeated improper disclosures of confidential

student information. She was recommended for termination only after the investigation was

---

6 The court assumes without deciding that an abuse of process claim can be brought based on an
administrative proceeding. Case law suggests that such a claim is limited to judicial proceedings. Long v. Long,
136 N.H. 25, 30(1992).

complete. Moreover, she was referred for termination on the additional grounds that she abandoned

her position by stating that she would not return to her assigned position at Maple Wood

Elementary; that she tested the genetic material of a co-worker without consent and in violation of

State law and school district policy; and failed to follow directives of her superiors. Thus, not only has

218

Brady offered no evidence to support a claim of retaliation, the overwhelming evidence supports

legitimate, non-retaliatory reasons for her termination.

### Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

*Motion to Exceed Length of Response to Defendants' Motion for Summary Judgment (Court Index #70).*

This motion is moot. Brady filed a 25-page response. She also filed a request to consider

additional evidence, which the court has granted by separate order herein.

*Plaintiff's Motion to Compel Discovery (Court Index #75)*

The motion is denied as moot.

*Plaintiff Motion to Reconsider Decision for Partial Summary Judgment (Court Index # 76)*

Upon review, motion denied.

*Plaintiff's Motion to Consider Additional Evidence Prior to Ruling on Defendant 's Motion for Summary Judgment (Court Index #91).*

Motion granted. The court took into account the substance of this pleading in ruling on the

Motion for Summary Judgment.

*Plaintiff's Expedited Motion to Reopen Discovery and Requestfor Subpoena and Depositions (Court Index #99)*

Motion denied. Discovery closed in March 2019. The motion does not set forth

compelling grounds to order additional depositions.

*Motion to Amend Damages and Motion for Evidentiary Hearing (Court Index #100).*

Denied as moot.

*Plaintiff's Motion to Compel Answers and Requested Discovery Documents and Admission of New*

*Material Evidences as Proof of Bad Faith and a Denial of Justice (Court Index #105)*

Motion denied as moot. Moreover, the motion was untimely, as discovery had closed in

March 2019.

*Plaintiff's Motion for Subpoena (Court Index #108).*

Denied as moot.

So Ordered.

*Mark E. Howard*

Mark E. Howard

December 12.2019

Date                                              MarK E. Howard

Presiding Justice

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH
## SUPERIOR COURT

Strafford Superior CourtTelephone: 1-855-212-1234 259 County Farm Road, Suite 301 TTY/TDD Relay: (800) 735-2964
Dover NH 03820                                              http://www.courts.state.nh.us

## NOTICE OF DECISION

**File Copy**

Case Name:Lisa M Brady v Somersworth School District, School Board, SAU #56, et al Case Number:  219-2018-cv-00002

Enclosed please find a copy of the court's order of December 12, 2019 relative to:

Notice of Narrative Order to Issue on Pending Motions

December 12, 2019                                 Kimberly T. Myers

.

Clerk of Court

(277)

C: Lisa M Brady; Brian J S. Cullen, ESQ

NHJB-2503-S (07/01/201 1)

## STATE OF NEW HAMPSHIRE

STRAFFORD COUNTY                                       SUPERIOR COURT

Lisa M. BradySomersworth
School District, et al.Docket
No.: 219-2018-CV- 002
## NOTICE OF NARRATIVE ORDER TO ISSUE ON PENDING MOTIONS

The parties are advised that the court intends to issue an omnibus narrative

order on or before Monday December 16, 2019, addressing all pending motions. As

explained fully in the narrative order, the defendants' Motion for Summary Judgment

is GRANTED. All other pending motions, unless otherwise noted in the narrative

order, are denied as moot. The Final

Pretrial Conference scheduled for December 18, 2019, is cancelled. The case is removed from

the court's trial docket.

The period for filing any motions to reconsider or appeals will begin with the date of the

Clerk's Notice of Decision on the narrative order to be issued.

So Ordered

December 12, 2019                          _Mark E. Howard_

Date          _____

Mark E. Howard

221

# EXHIBIT #21

# THE STATE OF NEW HAMPSHIRE
# SUPREME COURT

**In Case No. 2020-0274, Lisa M. Brady v. Somersworth School District, School Board, SAU #56 & a., the court on July 21, 2020, issued the following order:**

Rule 7(1) of the Supreme Court Rules requires that a notice of appeal be filed in this court within thirty days from the date on the clerk's written notice of the decision on the merits. A timely filed post-decision motion stays the running of the appeal period. However, successive post-decision motions filed by a party that is not a newly losing party will not say the running of the appeal period. See Supreme Court Rule 7(1)(C).The superior court denied Lisa Brady's motion to reconsider the court's December 12, 2019 order on March 10, 2020. The motion to reconsider that she filed on March 17, 2020, was a successive-post decision motion that did not stay the running of the appeal period. Consequently, the appeal should have been filed on or before April 9, 2020. The notice of appeal was filed on June 1, 2020, and thus is untimely filed. Accordingly, the appeal is dismissed as untimely filed. See Rule 5(4).Lisa Brady's motion for filing brief and appendices conventionally and after initial filing is moot.
Appeal dismissed.
This order is entered by a single justice (Hantz Marconi, J.). See Rule 21(7).

Timothy A. Gudas,
Clerk

Distribution:Clerk,
Strafford County Superior Court, 219-2018-CV-00002
Honorable Mark E. Howard
Ms. Lisa Brady
Brian J.S. Cullen,
Esquire Demetrio F. Aspiras, III, Esquire
File

# EXHIBIT#22

## The State of New Hampshire Supreme Court

**Case Name:** Lisa M Brady V. Somersworth School District, School Board,SAU#56, et al.
**Case Number:** 2020-0274
**Name of Party:** Lisa M. Brady
**Date:** July 22, 2020

## MOTION FOR RECONSIDERATION &WAIVER OF TIMELINE

Brady hereby respectfully motions this Court to reconsider its' July 21, 2020 decision to dismiss her mandatory appeal and to waive requirements for timeliness in filing so that an injustice does not occur. The Supreme Court, like the Superior Court, has built in mechanisms which allow waiver of timelines and other court rules under certain circumstances when injustices occur. *See rule 16 (a) plain error.* Brady's career was destroyed by the Defendants and the Strafford Superior Court failed to ensure that its' doors were open for justice to a dedicated whistle-blowing teacher that was unjustifiably fired from the Somersworth School District for reporting the abuse and neglect of her special need's student, AC, at the hands of school officials. The Defendants knowingly and willfully exploited Brady's student by falsifying AC's cognitive abilities within the public film,' Axel,' currently selling out of the University of New Hampshire Institute on Disability.

In the State v. Ortiz, No. 2010–269 (October 27, 2011), the N.H. Supreme Court detailed the

following condition for considering an appeal under the "plain error rule:"

*"The plain error rule" See State v. Russell, 159 N.H. 475, 489, 986 A.2d 515 (2009). "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." Sup.Ct. R. 16–A. "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Russell, 159 N.H. at 489, 986 A.2d 515 (quotation omitted). To find plain error: "(1) <u>there must be an error</u>; (2) <u>the error must be plain</u>; (3) the error <u>must affect substantial rights;</u> and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). We have looked to federal plain error analysis for guidance in applying our plain error rule. Id. at 489–90, 986 A.2d 515."*

Strafford Superior Court Judge, Mark Howard, committed a "plain error" and that error impacted Brady's rights to due process under Part I, article 14 of the N.H. State Constitution, when he erroneously granted the Defendants' motion for summary judgment and then refused to correct the errors, under superior court rule 1, within a second motion filed by the Plaintiff. The Judge unduly prejudiced Brady when he granted the Defendants summary judgment based solely on the original "nullified" complaint filed with the Court on January 2, 2018 and not the "actual" amended complaint filed on December 18, 2018 and granted by the Court on February 12, 2019. The Supreme Court decision to dismiss Brady's suit will seriously affect the public reputation of the N.H. Court system after Brady publishes her book about a pro se' whistle-blower teacher, her long up-hill battle, and failed efforts to secure justice despite having written a prima facie complaint and despite all the evidence willfully ignored by the court. The truth will make the Court look complicit with fraud and the exploitation of Brady's former special needs student, at the heart of this case.

On July 21, 2020 the court made the following ruling:

*"The superior court denied Lisa Brady's motion to reconsider the court's December 12, 2019 order on March 10, 2020. The motion to reconsider that she filed on March 17, 2020, was a successive-post decision motion that did not stay the running of the appeal period. Consequently, the appeal should have been filed on or before April 9, 2020. The notice of appeal was filed on June 1, 2020, and thus is untimely filed."*

**FACTS:**

1. On March 10, 2020 the Court issued an order on Brady's December 20, 2019 Motion for reconsideration.

2. On March 16, 2020, Brady contacted the Strafford Superior Clerk and told her that she had discovered that the judge made an error with his order on summary judgment when he relied on the original, 'moot' complaint and not the amended complaint granted by the court. The Court informed Brady that she could file a second motion for summary judgment and the supreme court deadline would stop the clock until after the judge ruled. Brady contacted Defendants' Council a short time later and sent the following email as proof of that call:

*Call may have been recorded at the courthouse.

226

---------- *Original Message* ----------
*From: Lisa Brady <lisa.brady@comcast.net>*
*To: Brian Cullen <Bcullen@cullencollimore.com>*
*Date: March 16, 2020 at 3:46 PM*
*Subject: Brady v. Somersworth*
*Dear Attorney Cullen,*

    *I just contacted the Courthouse and was told that I could file a motion for reconsideration because the judge's Order was based off of my original complaint and not my amended complaint. I can't find anything in the rules about this but, the woman that I spoke with said I could file another motion which; would stop the clock and the 30 day appeal to Supreme Court wouldn't start again until the judge ruled. Do you assent to my filing a motion to reconsider based on the fact that the judge used my original and not amended complaint when issued his findings? Thanks for your time, Lisa*

3. The Defendants Council sent the following reply:

    ---------- *Original Message* ----------
*From: Brian Cullen <bcullen@cullencollimore.com>*
*To: Lisa Brady <lisa.brady@comcast.net>*
*Date: March 16, 2020 at 4:28 PM*
*Subject: RE: Brady v. Somersworth*
*Hi Ms. Brady. While I honestly feel that it is long past time that you should let this matter go, having lost in federal court, at the First Circuit, and now at the Superior Court, I recognize that you have the right to disregard those decisions and appeal once more. I would ask that you take a step back and consider those opinions and whether there is truly anything to be gained by your continued pursuit of this action. Assuming you continue this matter, further motions to reconsider will likely only drag this matter out longer with little likelihood of success, needlessly costing my clients more money. As such, I cannot assent to your motion. Brian*

4. On <u>March 17, 2020</u> Brady filed a second motion for Summary Judgement. See July 15, 2020 Supreme Court Motion pages 20-27.

5. Within Brady's second motion for reconsideration, she detailed the Judge's error within his omnibus ruling regarding his use of the "original" complaint and not the "amended" "actual complaint" in effect. Brady filed that motion under the following Rule:

"Superior Court *General Principles Rule 1. Scope, Purpose, Enforcement, Waiver and Substantial Rights (e) <u>A plain error that affects substantial rights</u> may be considered and corrected by the court of its own initiative or on the motion of any party.*"

6. See p.20 July 15, 2020 Motion to Supreme Court.

7. The judge had the authority to waive any rule, including any for timeliness, to correct an error that he made which; unduly prejudiced Brady. When he chose not

to waive the timeline and correct his error, he knowingly allowed a, "fraudulent public record," (his order from December 13, 2019) to be forever memorialized. He showed bias and a dereliction of judicial duties for "fairness" and "impartiality." Given Judge Howard's unwillingness to correct his error, it seriously calls into question whether he knowingly and willfully ruled on summary judgment using the "wrong" complaint because he knew that Brady was not represented by Council and less likely to pick up on his *trickery.* Brady argues that the Court took advantage of her Pro Se' status and resorted to *trickery* in summarily dismissing her case because she had filed a Prima Facie amended writ. A complaint that was never answered by the Defendants.

8. Had the Strafford Superior Court informed Brady about her "untimeliness" right away, she still would have had two to three weeks to file an appeal with the Supreme Court by the April 9, 2020 deadline. The delay should not be overlooked by the supreme court in deciding this matter because it has cost Brady an appeal.

9. The Strafford Court Order was dated April 1, 2020 and not sent to the Plaintiff until May 6, 2020. Had the Court timely sent out that order, Brady still would have been able to secure her right to an appeal. The untimely delay, prejudiced Brady and she argues that it was deliberate.

10. The May 6, 2020 Strafford Court order stated:

> " Please be advised that on April 01, 2020 Judge Howard made the following order relative to: Plaintiff's Motion to Reconsider Summary Judgment Order; "Denied as untimely."

11. The Judge did not explain, to Pro Se,' Brady, what he meant by "untimely." Pro Se' litigants need more guidance to understand complicated legal terminology and proceedings. Brady filed her appeal with the N.H. Supreme Court within the thirty days that she had been told that she was entitled to take by the Strafford Court Clerk.

12. On May 31, 2020 Brady filed a mandatory appeal with the N.H. supreme Court which; included claims for the Court to consider directly related to the "timeliness" issue and warrant N.H. Supreme Court judicial review. The questions

for the Supreme Court related to the Court error and failure to exercise discretion
to correct those errors and included the following:

I.    *Did the Court commit a reversible error when it used the original, "moot,"
      complaint filed with the Court and not the "operative," amended version, as
      justification for summary judgement? (The original complaint was filed on 1-2-
      2018, amended one filed on 12-13-2018, Defendant MSJ filed 1-25-2019, Court
      granted amended complaint on 2-12-2019).*

II.   *Whether an error made by the Court should result in a miscarriage of justice for
      Brady. Once a pro se litigant has done everything possible to bring his action, he
      should not be penalized by strict rules which might otherwise apply if he were
      represented by counsel." See Rappleyea v. Campbell, 884 P.2d 126, 132
      (California 1994).*

III.  *Whether the Court should have waived the rules for "timeliness," under Superior
      Court Rule 1, and corrected the summary judgment order after Brady filed a
      second motion for reconsideration and called the Court's attention to the error. In
      New Hampshire Judges are supposed to "make reasonable efforts, consistent with
      the law and court rules, to facilitate the ability of all litigants, including self-
      represented litigants, to be fairly heard" (N.H. Jud. Code 2.2(B)).*

**CONCLUSION**

The New Hampshire Supreme Court, like the Superior Court, has the authority
to waive any rule in order to prevent injustices. Brady's career was destroyed by
the Defendants and she was revictimized by the Court to which; she appealed to
for justice.

On March 17, 2020 Brady filed a second motion to reconsider under Rule 1
and the Court refused to exercise its' discretion to correct their error which;
resulted in a miscarriage of justice for Brady. As the non- moving party for
summary judgement, Brady was entitled to have her case viewed in a light most
favorable to her defense. *White v. Asplundh Tree Expert Co.*, 151 N.H. 544, 547,
864 A.2d 1101 (2004). The judge used "moot" pleadings to portray Brady in the
weakest possible light and, it prejudiced her case.

*"Dismissal of pro se complaints absent a meaningful opportunity to be heard
is inconsistent with*out *due process."* Bonner v. City of Prichard, 661 F.2d 1206,
1212 (11th Cir. 1981). A Pro se' litigant is faced with overwhelming complexity
when trying to navigate the judicial system in the state of New Hampshire. In this
case, Brady's self-representative status was used to deny her the opportunity to be

heard , the results of which; give the impression of public corruption and a
deprivation of basic rights to fairness in the state of New Hampshire.

*"The legal effect of an amended pleading is that it supersedes and nullifies the
allegations made in the original pleading. "West Run Student Housing
Associates, LLC v. Huntington National Bank*, No. 12-2430, 2013 U.S. App.
Lexis 6804 at 14-15 (3d Cir. Apr. 4, 2013).

Brady's amended complaint superseded her originally filed complaint and
rendered it of no legal effect. See Pacific Bell Telephone Company v. Linkline
Communications, Inc., U.S., 129 S.Ct. 1109, 1123 n.4,172 L.Ed.2d 836,850 n.4
(2009). Judge Howard ruled on a complaint which; had no "legal affect." Brady
filed a second motion for reconsideration to give the lower court an opportunity to
correct its' error. Brady did not call the court's attention to the error within her
first motion for reconsideration because she did not pick up on the subtle trickery
within the order. Brady did not go to law school. The U.S. Supreme Court has
stated: "As has been well said, appellate courts are established for correction of
the errors of trial courts, and 'only in very exceptional cases can a point not
brought to the attention of the court below and not passed upon by that court be
raised upon appeal.'" Zindler v. Buchanon, 61 A.2d616, 617 (Mun. Ct. D.C.
1948). Brady acted in good faith in contacting the Superior Court Clerk on March
16, 2020 to inquire about how to proceed after she figured out that the judge made
a reversible error in her case. Brady filed a second motion for reconsideration
based on the clerk of court's recommendation. The judge took another month and
a half to inform Brady that he was denying her appeal as "untimely" and failed to
even state what that meant. He refused to correct his false findings of facts within
his order, and it was arbitrary and capricious, and violated Brady's rights to due
process.

The Strafford Superior Court Omnibus Order is a "fraud on the court." The
United States Supreme Court has described fraud on the court as "a wrong against
the institutions set up to protect and safeguard the public.'" Hazel-Atlas Glass,
322 U.S. at 246. The N.H. Supreme Court has stated that they will "uphold the
trial court's decision absent an error of law, an unsustainable exercise of
discretion, or clearly erroneous findings of fact." Atkinson, 164 N.H. at 66. Judge

Howard made a reversible, plain error when he used a "moot" complaint to justify granting summary judgment on behalf of the Defendants. He had the authority to correct his error, waive any rules for timelines to ensure basic fairness for Brady, and  instead, he allowed his false narrative to be the final ruling in this case.  In doing so, he violated basic judicial canons, showing "gross" bias and prejudice in favor of the Defendants. It was an unsustainable exercise of discretion.

Brady's career was destroyed by the Defendants and the Omnibus Court decision issued on December 13, 2019, validated all the defaming claims that drove Brady to the Courthouse in the first place.  Brady's constitutional right to due process have been substantially violated by a Court order that unduly prejudiced her.  If not for an error, committed by the Court, Brady's prima facie complaint would have moved forward to a jury trial.

Wherefore, Brady pleads the Court to reconsider and reverse the decision to dismiss Brady's complaint and to waive any timelines related to filing her appeal. Brady asserts the following:

- That she contacted Defendants' counsel and he did not assent.
- That she filed this motion electronically.  She certifies that a copy of this motion is being served to Defendants' counsel through the court's electronic filing system.
- There are 2,696 words within this motion.

Respectfully  Submitted, under the pains and penalties of perjury.

*Lisa Brady*   Lisa M. Brady, Pro Se'

8 Constable Road

Durham, NH 03824
603-292-5052
lisa.brady@comcast.net

# EXHIBIT#23

**THE STATE OF NEW HAMPSHIRE**
**SUPREME COURT**

**In Case No. 2020-0274, Lisa M. Brady v. Somersworth School District, School Board, SAU #56 & a., the court on August 18, 2020, issued the following order:**

Supreme Court Rule 22(2) provides that a party filing a motion for rehearing or reconsideration shall state with particularity the points of law or fact that she claims the court has overlooked or misapprehended. We have reviewed the claims made in Lisa Brady's motion for reconsideration and conclude that no points of law or fact were overlooked or misapprehended in the decision dismissing this appeal as untimely filed. Accordingly, upon reconsideration, we affirm the July 21, 2020 decision and deny the relief requested in the motion.

<u>Relief requested in motion for</u>
<u>reconsideration denied.</u>

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

Timothy A. Gudas,

Clerk

Distribution:
Clerk, Strafford County Superior Court, 219-2018-CV-00002
Honorable Mark E. Howard
Ms. Lisa Brady
Brian J.S. Cullen, Esquire
Demetrio F. Aspiras, III, Esquire
Lin Willis, Supreme Court
File

# EXHIBIT#24

**The State of New Hampshire Supreme Court**

**Case Name:** Lisa M Brady V. Somersworth School District, School Board,SAU#56, et al.
**Case Number:** 2020-0274
**Name of Party:** Lisa M. Brady
**Date:** August 31, 2020

**SECOND MOTION FOR RECONSIDERATION &  Waiver of Timeline**

Brady hereby respectfully motions this Court, for a second time, to reconsider its' decision from

its' August 18, 2020 decision to dismiss her mandatory appeal and to waive requirements for

timeliness in filing this motion so that an injustice does not occur and so that justice can be served

more efficiently, without a U.S. Supreme Court appeal.  Within the Court order it stated the

following:

*"Supreme Court Rule 22(2) provides that a party filing a motion for rehearing or
reconsideration shall state with particularity the points of law or fact that she claims the court
has overlooked or misapprehended. We have reviewed the claims made in Lisa Brady's
motion for reconsideration and conclude that no points of law or fact were overlooked or
misapprehended in the decision dismissing this appeal as untimely filed."*

**FACTS TO REFUTE ORDER**

1. On page 4 of Brady's motion for reconsideration dated July 22, 2020 she detailed Superior Court

   Judge, Mark Howard's order from May 6, 2020 which stated:

   *"Plaintiff's Motion to Reconsider Summary Judgment Order; "Denied as untimely."*

2. On pages two and three of Brady's motion for reconsideration, she detailed additional facts

   related to filing her appeal which; showed that it was filed within 10 days of Judge Howard's

   decision to dismiss her motion as untimely.

3. On March 17, 2020 Brady filed the second motion with the Strafford Superior Court and,

   upon arrival, was informed by security that she was not allowed in the building and could not

   deliver her second motion because the building was closed due to COVID.  Brady went

   directly from the Court House to the post office and mailed her appeal Certified.  See

   Appendix A attached.  Brady was informed, by the post office, that the Court would receive it

   within two days which; would have still been under the 10 day deadline.

4. If the Strafford Superior Court refused to let Brady drop off her complaint due to COVID, that should have also been considered by Judge Howard as a roadblock to filing and extenuating circumstances should have been warranted.

5. The record of evidence shows that Brady was not untimely and Judge Howard should not use that as an excuse not to correct the "plain error" that he committed when he granted the Defendants summary judgment based solely on the original "nullified" complaint filed with the Court on January 2, 2018 and not the "actual" amended complaint filed on December 18, 2018 and granted by the Court on February 12, 2019.

**CONCLUSION**

The NH Supreme Court has authority to waive any timeline to prevent injustices and Brady motions this Court to waive timelines in filing this second motion. Additionally, Courts are supposed to rule in favor of correcting the record with the economical spirit of rendering decisions in lower courts. Brady filed a prima facie writ which; was never answered by the Defendants. In addition to using a "moot complaint" to grant summary judgement in favor of the Defendants, the Strafford Superior Court denied Brady a timely filed evidentiary hearing, failed to ensure that Brady had access to any discovery requests and denied Brady's motion for partial summary judgement. The Court justified denying Brady these basic due process rights based solely on false facts delivered in the December 13, 2019 Omnibus ruling which; reference a writ that no longer had any legal effect. Brady's mandatory appeal to the supreme court addressed these issues.

Brady's career was destroyed by the Defendants, she has no retirement, no benefits and a victim of career ending defamation of character. If there is any justice in the State of New Hampshire, a belief in "basic fairness" and "common decency," in compliance with the spirit of due process, Brady's motions this Court for reconsideration. Brady has been on the receiving end of vicious retaliation and defamation of character which; only occurred after she filed multiple civil rights complaints against School Administrators from the Somersworth School District after they knowingly and willfully exploited and educationally neglected a special needs student in her program. The public film, titled "Axel" is a fraud, and still selling out of UNH Institute on Disability as part of the "Who Cares About Kelsey" teaching kit. Brady was fired for reporting the abuse and neglect of her student at the hands of the Somersworth School officials and UNH, using a cult-cure method of deception (facilitated communication) without the Student's Parent's permission. Ruling against Brady would give the public the perception that the State of New Hampshire condones publicly exploiting severely disabled children and destroying the teacher who

236

blew the whistle. Brady had a duty to report the abuse and had a duty to ensure that the wishes of her Student's Parent, backed up by his IEP, were honored.

Wherefore, Brady pleads the Court to reconsider all facts and evidence submitted and reverse the decision to dismiss Brady's complaint and to waive any timelines related to filing her appeal. Brady asserts the following:

- That she contacted Defendants' counsel and he did not assent to a motion for reconsideration.
- That she filed this motion electronically. She certifies that a copy of this motion is being served to Defendants' counsel through the court's electronic filing system.
- There are 925 words within this motion.

Respectfully Submitted, under the pains and penalties of perjury.

*Lisa Brady*    Lisa M. Brady, Pro Se'

8 Constable Road
Durham, NH 03824
603-292-5052
lisa.brady@comcast.net

# EXHIBIT#25

THE STATE OF NEW HAMPSHIRE

SUPREME COURT

Strafford Superior Court No.  219-2018-cv-00002 NH
Supreme Court Docket No. 2020-0274

Lisa M. Brady

v.

Somersworth School District, School
Board (SAU #56), et al.

PETITION FOR WRIT OF MANDAMUS
PURSUANT TO SUPREME COURT RULE
11

By:  Lisa M. Brady, Pro Se'

239

TABLE OF CONTENTS

I. DECISIONS TO BE REVIEWED:.........................................................................243
II. QUESTIONS PRESENTED FOR REVIEW:.........................................................243
III. CONSTITUTIONAL PROVISIONS, STATUTES, ORDINANCES, RULES, OR REGULATIONS INVOLVED IN THE CASE:.................................................244
IV. INSURANCE POLICY PROVISIONS, CONTRACTS, OR OTHER DOCUMENTS INVOLVED IN THE CASE, VERBATIM:....................................244
V. A CONCISE STATEMENT OF THE CASE CONTAINING THE FACTS MATERIAL TO THE CONSIDERATION OF THE QUESTIONS PRESENTED, WITH APPROPRIATE REFERENCES TO THE APPENDIX, IF ANY:...............244
VI. A CONCISE STATEMENT SPECIFYING THE STAGE OF THE PROCEEDINGS IN THE LOWER COURT OF ADMINISTRATIVE AGENCY AT WHICH THE QUESTIONS SOUGHT TO BE REVIEWED WERE RAISED, THE MANNER IN WHICH THEY WERE RAISED, AND THE WAY IN WHICH THEY WERE PASSED UPON BY THE LOWER COURT OR ADMINISTRATIVE AGENCY:..............................................................................................................245
HAD THROUGH OTHER PROCESSES: ..............................................................247
VIII. THE JURISDICTIONAL BASIS FOR THE PETITION, CITING THE RELEVANT STATUTES OR CASES: ....................................................................249
IX. A STATEMENT, IF APPLICABLE, THAT EVERY ISSUE SPECIFICALLY RAISED HAS BEEN PRESENTED TO THE  ADMINISTRATIVE AGENCY AND HAS BEEN PROPERLY  PRESERVED FOR APPELLATE REVIEW BY A CONTEMPORANEOUS OBJECTION OR, WHERE APPROPRIATE, BY A PROPERLY FILED PLEADING...............................................................................249
X. A LIST OF ALL PARTIES OF RECORD AND THEIR COUNSEL, AND THE ADDRESSEs OF ALL PARTIES AND ALL COUNSEL:  ....................................250
XI. A STATEMENT AS TO WHETHER A TRANSCRIPT OF ANY PROCEEDINGS WILL BE NECESSARY IF THE PETITION IS  ACCEPTED FOR FURTHER REVIEW BY THE COURT:...................................................................250

VII.        A DIRECT AND CONCISE ARGUMENT AMPLIFYING THE
            REASONS RELIED UPON FOR PETITIONING THIS COURT
            TO EXERCISE ITS ORIGINAL JURISDICTION AND
            SETTING FORTH WHY THE RELIEF SOUGHT IS NOT
            AVAILABLE IN ANY OTHER COURT OR CANNOT BE
                    THE STATE OF NEW HAMPSHIRE
                          SUPREME COURT
                                2020

## PETITION FOR ORIGINAL JURISDICTION

(Supreme Court Rule 11)

## INTRODUCTION

Appellant, Lisa M. Brady, brings forth this petition under Rule 11(1) to request that this Court exercise original jurisdiction based on erroneous decisions issued by Judge Mark Howard of Strafford Superior Court. The decisions at issue were not in accord with the law and far departed from acceptable standards of law. The New Hampshire Supreme Court will issue a writ of Mandamus under "extraordinary circumstances," and this case commands that distinction. Brady has been denied equal access to justice in the state of New Hampshire, in contravention of the fifth and fourteenth amendments of the U.S. Constitution and Article Fourteen of the N.H. Bill of Rights. Brady has no recourse without N.H. Supreme Court intervention. She seeks an order of remand to superior court.

Brady was a passionate, well-liked, and tenured special education teacher at Somersworth Middle School. She was fired six months after filing a complaint with N.H. Commissioner of Education, Virginia Barry. See App. B-p.3-10. Brady reported fraud, educational neglect, and the exploitation of her significantly impaired, non-verbal autistic student at the hands of the school's top administrators; Superintendent, Jeni Mosca and Special Education Director, Pam MacDonald. This case involves defamation claims, whistle-blower claims, contract and tort claims, all related to the retaliation that occurred only after Brady reported the abuse.

---

Appendix (App.) A (attached to this documents) or B (appendix attached to a separate document) and P (page#)

241

On December 13, 2019, Strafford Superior Court Judge, Mark E. Howard, issued an Omnibus order, granting summary judgment to the Defendants and disposed of all matters in this case. See App. A-P. 58-75. Judge Howard arbitrarily and capriciously granted the Somersworth Defendants' motion for summary judgment when he used a court document, without legal effect, as justification to dismiss all claims. He knowingly used the original writ, filed by Brady on January 2, 2018 and failed to reference the amended writ, submitted to the court on December 13, 2018 and granted by the Court on January 29, 2019. See App. A-P.32-78. He had full discretion and authority along with a legal and professional duty to correct his error and he refused. See Brady motion March 17, 2020 and Judge Howard's response on May 6, 2020, App. A-P.31& App B-p.67-73. Judge Howard essentially relinquished Strafford Superior Court's jurisdiction and knowingly and willfully harmed Brady by denying her the right to fair due process. He violated New Hampshire Judicial Canons to maintain integrity, to act with fairness, honesty, impartially, and to act in compliance with the law and promote public confidence.

Judge Howard also showed bias within his December 13, 2019 Omnibus Order when he used the original, "moot" complaint, as justification to arbitrarily and capriciously deny Brady's motion to compel discovery, her right to a timely filed evidentiary hearing, and he also dismissed her motion for reconsideration of partial summary judgment. See App. A-P.11-28, App B. p 51-60.

In State v. Russell, 159 N.H. 475, 489, 986 A.2d 515 (2009) the Court stated that "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." Sup.Ct. R. 16–A. "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Russell, 159 N.H. at 489, 986 A.2d 515. To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights;

242

and (4) the error must seriously affect the fairness, integrity or public reputation of judicial

proceedings." Id. (quotation omitted).

We have looked to federal plain error analysis for guidance in applying our plain error rule. Id.

at 489–90, 986 A.2d 515." Brady brought the errors to the Strafford Superior Court at a point

in time that would have allowed the Court to exercise discretion and correct the mistake. See

App B. 67-73.

Brady seeks a mandamus order from this Court in order to compel Strafford Superior Court to
hear

Brady's case and to prevent a miscarriage of justice.

## I.    DECISIONS TO BE REVIEWED:

A.  The Strafford Superior Court Omnibus Order Delivered by Judge Howard on
    December 13, 2019. See App. A- P.11-28.

B.  The Strafford Superior Court Notice of Decision delivered by Judge Howard on
    March 10, 2020. See App. A- P.29-30.

C.  The Notice of Decision Dated May 6, 2020 (though decided on April 4, 2020). See
    App. A- P.31.

## II.    QUESTION PRESENTED FOR REVIEW:

A.  Whether the Strafford Superior Court erred when they granted summary judgment to
    the Defendants and used the original "moot" complaint and not the "lawful" amended
    version as justification for that order.  Omnibus Order dated December 19, 2019. See
    App. A -P.1128.

B.  Whether the Court erred when they used the original, "moot complaint," as justification
    to deny Brady's motion for reconsideration of partial summary judgment (filed on
    Feb.28, 2019), motion for a timely filed evidentiary hearing (filed on Feb.26, 2019) ,
    and denied
    Brady's motion to compel discovery(filed on Feb.26, 2019). Omnibus Order dated
    December 13, 2019.  See App. A- P.11-28 App. B-51-60

C.  Whether the N.H. Strafford Court arbitrarily and capriciously denied Brady equal
    access to justice under the law in contravention of the 5th and 14th amendment of the
    U.S. Constitution and article 14 of the Bill of Rights & N.H. constitution and whether

they knowingly and willfully failed to exercise discretion when they refused to reverse the error that they committed when they knowingly used a document without any legal effect and granted the defendants summary judgment.

III. CONSTITUTIONAL PROVISIONS, STATUTES, ORDINANCES, RULES, OR REGULATIONS INVOLVED IN THE CASE:

U.S. Constitution, 5th and 14th amendment; N.H. Const. part I, article 14.

IV. INSURANCE POLICY PROVISIONS, CONTRACTS, OR OTHER DOCUMENTS INVOLVED IN THE CASE, VERBATIM:

Not applicable.

V. A CONCISE STATEMENT OF THE CASE CONTAINING THE FACTS MATERIAL TO THE CONSIDERATION OF THE QUESTIONS PRESENTED, WITH APPROPRIATE REFERENCES TO THE APPENDIX, IF ANY:

The factual and procedural background are set forth herein. The N.H. Supreme Court should consider this case extraordinary because Strafford Superior Court Judge, Mark E. Howard, knowingly denied Pro Se' Plaintiff, Lisa Brady, the right to have her prima facie writ move forward to a jury trial. In determining that Somersworth School District defendants met their burden for summary judgment, Judge Howard used the "original" complaint that Brady filed with the court (January 2, 2018) rather than the amended "legal" version (filed on December 13, 2018), in effect at the time of his decision. See App. A- P. 32-75. Brady's amended complaint granted by Strafford Superior Court supplanted the original writ. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001).

Brady filed a second motion to reconsider Summary Judgment on March 17, 2020 and the Court refused to exercise discretion to change the order and ensure that justice was served. See app B.- P.67-73. As Brady pointed out in her March 17, 2020 motion to the Strafford Court:

"Plaintiff, Lisa Brady, files this motion to reconsider summary judgement under
Superior Court General Principles Rule 1. Scope, Purpose, Enforcement, Waiver and Substantial Rights (e) A plain error that affects substantial rights may be considered and corrected by the court of its own initiative or on the motion of any party . Brady notified the Defendants and they did not assent to this motion. Considering the error and the broadening implications within the appeal claims, Brady further motions that the court reconsider her Partial Motion for Summary Judgment submitted on January 7, 2019. Reconsider compelling the Defendants to

244

cooperate with Discovery (and March 11, 2019) and granting the timely
evidentiary hearing that Brady requested 26, 2018)." App.

The Somersworth Defendants knew that Brady's proposed amendments to the writ, filed on

December 13, 2018, would greatly change the level of evidence they would have to produce

and stated the following in their objections to Court on December 28, 2018:

> "Such changes greatly expand the claims from a narrow challenge to a single basis
> for her termination to a broad attack on every basis for termination." See app B.-
> P. 11-16

The Defendants were cloaked by the court and  never called to answer the amended writ.

VI.    A CONCISE STATEMENT SPECIFYING THE STAGE OF THE PROCEEDINGS IN
THE LOWER COURT OF ADMINISTRATIVE AGENCY AT WHICH THE QUESTIONS
SOUGHT TO BE REVIEWED WERE RAISED, THE MANNER IN WHICH THEY WERE
RAISED, AND THE WAY IN WHICH THEY WERE PASSED UPON BY THE LOWER
COURT OR ADMINISTRATIVE AGENCY:

The questions to be reviewed arose from Judge Howard's Omnibus order delivered on

December 13, 2019 and his use of a legally defunct document to guide his orders without

consideration to Brady's rights or to his legal obligation to act impartially.  He used the

original writ, filed with the court on January 2, 2018  instead of the amended writ filed on

December 13, 2018 and granted by the Court on January 29, 2019. See App.-P.32-78.  These

facts can be easily corroborated by looking at four documents attached below. Judge

Howards omnibus order, the original complaint, the amended complaint and the order that

granted the amendment. See App.

A- P.11-28& 32-78. His use of a complaint, without any legal effect, as justification to

grant the Defendants summary judgment, does not pass the judicial sniff test. The Judge's

error did not impact Judge Howard or the Defendants, the only one profoundly impacted by

the judge's error was Brady. The litigant that was seeking justice for her unlawful

termination, the loss of her career and the loss of her retirement.

Brady filed a motion for reconsideration on December 20, 2019 and the Defendants filed

an objection on December 30, 2019. See app. B-p.17-31.  Brady filed a sur-reply to the

objection on January 2, 2020 and Judge Howard ruled on March 10, 2020. See app. B-app.A-p.19-20. Within 7 days of the order, Brady filed another motion for reconsideration (March 17, 2020) and was denied access to Strafford Superior Court due to COVID-19. See App. B p.95. She drove from the Courthouse to the post office to mail her motion certified. See app B.- P.95. The receipt indicated that the delivery date would take a couple days; still under the 10-day court rule for filing. On May 6, 2020 Judge Howard issued an order denying Brady's motion to reconsider . He had no intention of correcting his mistake and concluded that Brady was "untimely" See app A.- P. 31.

On July 21, 2020 the N.H. The Supreme Court agreed with Judge Howard's finding, that Brady was "untimely." See app B.- P. 80. Though Brady is not seeking a decision with this Court related to the timeline issue, it should be noted that the Court's decision did conflict with its' prior ruling in Prime financial group.

Prime Financial Group, 141 N.H. at 34, 676 A.2d at 530 as follows:

> "We hold that Ellis does not apply to a motion for a new trial and a successive motion for reconsideration. When a court denies a party's motion for a new trial, the party should be allowed to point out the errors of the lower court's order, and the lower court should be given the opportunity to correct those errors. Cf. Dziama v. City of Portsmouth, 140 N.H. 542, 545, 669 A.2d 217, 218-19 (1995) (recognizing that in context of RSA 677:3 (1986 Supp. 1988), successive motions for rehearing may be necessary to give zoning board of adjustment opportunity to correct its errors and allow court to consider all errors of board). Accordingly, we find that the plaintiff's motion for reconsideration stayed the running of the appeal period, and accordingly, its notice of appeal was timely filed. SUP.CT. R. 7 (1). We therefore address the merits of the plaintiff's appeal."

Brady's questions to this Court do not relate to timeliness in filing because Judge Howard had full discretion to waive any rule to ensure justice, including "timeliness." It is illogical to think that a litigant would lose rights to justice because they were not quick enough to point out the errors committed by a judge.

GOOD FAITH

On December 17, 2020 Brady contacted the N.H. Supreme Court to find out why it was taking so long for them to rule on motions filed with the N.H. Supreme Court on the following dates:

a. July 22, 2020 Motion for Reconsideration and Timeline Waiver See app B.- P.81-88
b. August 31, 2020 Second Motion for Reconsideration and Waiver of timeline See app B.-P.89-92
c. September 3, 2020 Defendant Objection See app B.- P.93-96
d. September 3, 2020 Plaintiff sur-reply to Defendant objections See app B.- P.97-106
e. September 6, 2020 Motion to include evidence. See app B- p. 107-115
f. November 10, 2020 Motion to Remand and Recuse See app B.- P. 116-122

g. December 1, 2020 Plaintiff Motion to Enter additional Information See app B.- P.123-126

Brady was informed that the Court would not be ruling on her motions. She fully believed that the N.H. Supreme Court would get back to her with an order on her motion for reconsideration.

In fact, after Brady filed a motion with the Court on September 3, 2020, the defendants also filed an objection. Brady has been waiting and expecting the court to reply. The Defendants have received copies of all Brady's motions and should recognize that she has not given up on her case. Brady pleads this Court to allow her an opportunity to have her day in court. Judge Howard took nine months to rule on Brady's motions to compel discovery, for an evidentiary hearing and to rule on a motion to reconsider partial summary judgment. Brady acted in good faith, has never abandoned her case and fully believed the N.H. Supreme Court was conducting business with the same efficiency as Strafford Superior Court.

VII.  DIRECT AND CONCISE ARGUMENT AMPLIFYING THE REASONS RELIED UPON FOR PETITIONING THIS COURT TO EXERCISE ITS ORIGINAL JURISDICTION AND SETTING FORTH WHY THE RELIEF SOUGHT IS NOT AVAILABLE IN ANY OTHER COURT OR CANNOT BE HAD **THROUGH OTHER PROCESSES:**

On page one of the N.H. Supreme Court task force on self-representation recommendations from January of 2004,[1] stated the following on page one:

> "Access to justice is an abiding principle of our system of justice and the doors of our courthouses are open to everyone, whether represented by a lawyer or not. It follows that the obligation of the court system is to see to it that justice is as fair and efficient as it can be for those who arrive on their own."

Brady was unlawfully terminated in January of 2015. She sought justice in New Hampshire Strafford Superior Court and was met with a system that denied her basic discovery, an evidentiary hearing and one that resorted to "trickery" in order to dispose of her case. The Strafford Court was legally and ethically obligated to exercise jurisdiction in a non-biased manner. Judge Howard knew that as a non-lawyer, Brady would struggle with procedures with a supreme court appeal. Because of the passage of time, Brady has no other choice but, to seek relief through a petition of Mandamus so that the breadth of extenuating circumstances can be factored into any decision. A Pro Se' litigant cannot be expected to "outsmart" a judge, abstaining from adjudication and willing to sacrifice the integrity of the court while creating ill-conceived precedent that runs contrary to the law.        The Fifth Amendment provides that citizens will not "be deprived of life, liberty, or property, without due process of law..." Due process is denied when a prima facie complaint is summarily dismissed

---

1. (https://www.courts.state.nh.us/supreme/docs/prosereport.pdf)

Within Brady's March 17, 2020 motion, she informed the court that she was filing under Rule 1 as follows:

"1. Plain Error: Brady's amended complaint granted by this Court on February 12, 2019 supplanted the original complaint filed on January 2, 2018. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). Because the Court's analysis and findings quoted the original complaint throughout the order, it unduly prejudiced the plaintiff.
On page 8 of the court's order, it stated the following under Brady's contract claim:
"Brady claims that the Somersworth School District breached its contract with her by terminating her "based on a decision that Brady violated state DNA laws (NH RSA 141H:2) . . .without legal justification or "just cause" to make that determination." Compl.
63. She claims that the District did not have the legal authority or jurisdiction to make a determination under RSA 141-H:2. Compl. 64
        The amended version of the same complaint stated:
"On January 20, 2015, the Somersworth School District breached Lisa Brady's teaching contract with willful and wanton negligence when they terminated her employment based on a decision that Brady violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was "immoral," "abandoned her position," and "violated student privacy." They did so without "just cause" to make that determination." Amended Compl 63. (*Brady has documented only a

248

few of the inconsistencies but, they exist throughout the order).  See App B.-
P.67-73.

On May 6, 2020, the Court notified the parties of the April 1, 2020 decision issued by Judge
Howard, and simply stated: "Denied as untimely."  See App. A- P. 21. Judge Howard had full
authority to correct his order and ensure that Brady's rights to due process were preserved.
Brady seeks a mandamus order from this Court to process Brady's complaint in Strafford
Superior Court. The Judge's unwillingness to correct his  error was evidence of bias and an
abdication of his judicial duties

## VIII. THE JURISDICTIONAL BASIS FOR THE PETITION, CITING THE RELEVANT STATUTES OR CASES:

New Hampshire Supreme Court Rule 11.  This Court should exercise original jurisdiction to review

Strafford Superior Court's failure to correct an "error" which resulted in a miscarriage of justice for

Brady.

> " A writ of mandamus is used to compel a public official to perform a ministerial
> act that the official has refused to perform, or to vacate the result of a public
> official's act that was performed arbitrarily or in bad faith." Petition of Cigna
> Healthcare, Inc., 146 N.H. 683, 687 (2001).

If not for Court error, Brady's prima facie case would have already been tried before a jury and
because of the passage of time Brady will not have any justice without Supreme Court
intervention with a Mandamus to compel the lower court to process Brady's complaint.

> "This Court will in its discretion, issue a writ of mandamus only where the
> petitioner has an apparent right to the requested reflief and no other remedy will
> fully and adequately afford relief." Cigna Healthcare, Inc., 146 N.H.  687 (2001).

## IX.    A STATEMENT, IF APPLICABLE, THAT EVERY ISSUE SPECIFICALLY RAISED HAS BEEN PRESENTED TO THE ADMINISTRATIVE AGENCY AND HAS BEEN PROPERLY PRESERVED FOR APPELLATE REVIEW BY A CONTEMPORANEOUS OBJECTION OR, WHERE APPROPRIATE, BY A PROPERLY FILED PLEADING:

The relevant documents are attached below and as a separate appendix for the Court's review.

X.    A LIST OF ALL PARTIES OF RECORD AND THEIR COUNSEL, AND THE
ADDRESSES OF ALL PARTIES AND ALL COUNSEL:

Appealing Party: Lisa Brady 8 Constable Road, Durham, NH 03824, Email:
lisa.brady@comcast.net, Telephone number: 603-292-5052

Opposing Party:
1.  Attorney Brian Cullen10 E. Pearl St., Nashua, NH 03060 Cullen Collimore PLLC    N.H. Bar
#11265 Telephone number: 603-881-5500 E-Mail address:
bcullen@cullencollimore.com

2.  Somersworth School District, 51 West High Street, Somersworth, NH 03878

3.  Pamela MacDonald (same counsel as Somersworth)

4.  Jeni Mosca (same counsel as Somersworth)

XI.    A STATEMENT AS TO WHETHER A TRANSCRIPT OF ANY PROCEEDINGS
WILL BE NECESSARY IF THE PETITION IS ACCEPTED FOR FURTHER REVIEW
BY THE COURT:

No transcript will be required.

Respectfully submitted,

*Lisa Brady*

Date:  December 21, 2020                    By:/s/ Lisa M. Brady

Lisa M. Brady, Pro Se'

CERTIFICATION OF COMPLIANCE
(Supreme Court Rule 11(5))

I hereby certify that a copy of the foregoing has been mailed this 20th day of December 2020 to

the following parties to the case:

Attorney Brian Cullen, 10 E. Pearl Street Nashua , NH 03060

Strafford Superior Court   259 County Farm Rd., Dover, NH 03820

/S/Lisa M. Brady

*Lisa Brady*

## Appendix A

| | | |
|---|---|---|
| December 13, 2019 | Omnibus Order NODA | pages 11-28 |
| March 10, 2020 | NOD Strafford SC | pages 29-30 |
| May 6, 2020 | NOD court error | pages 31 |
| January 2, 2018 | Original Writ | pages 32-57 |
| December 13, 2018 | Amended Writ | pages 58-75 |
| January 29, 2019 | NOD  Amendment | pages 76-78 |

251

# EXHIBIT#26

# THE STATE OF NEW HAMPSHIRE
# SUPREME COURT

**In Case No. 2020-0592, Petition of Lisa M. Brady, the clerk of court on February 25, 2021, issued the following order:**

Petition for writ of mandamus pursuant to Supreme Court Rule 11 is denied. See Rule 11.

The respondents' motion for attorney's fees and costs is denied.

The respondents' motion to dismiss is moot. Lisa M. Brady's motions "to include additional evidence for the record and 'unseal' portions of the depositions confidentially," to "accept defendant's motion for summary judgment," and to "ammend writ to include Strafford Superior Court" are also moot.

Petition Denied

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., participated.

Timothy A. Gudas,
Clerk

Distribution:
Clerk, Strafford County Superior Court, 219-2018-CV-00002
Honorable Mark E. Howard
Ms. Lisa Brady
Brian J.S. Cullen, Esquire
File

253

# EXHIBIT#27

## THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

Lisa M. Brady

Writ of MANDAMUS filed against

Strafford Superior Court, Judge Mark E. Howard

(Orders in the matter of Lisa M Brady v Somersworth School District, School Board, SAU

#56 et al.    Strafford Superior Court No.  219-2018-cv-00002 NH

Also pertinent: Supreme Court Docket No. 2020-0274)

## PETITION FOR WRIT OF MANDAMUS
## PURSUANT TO SUPREME COURT RULE
## 11

By: Lisa M. Brady, Pro Se'

TABLE OF CONTENTS

I.   DECISIONS TO BE REVIEWED: ......................................................... 3
II.  QUESTIONS PRESENTED FOR REVIEW: ....................................... 3
III. CONSTITUTIONAL PROVISIONS, STATUTES, ORDINANCES, RULES, OR
     REGULATIONS INVOLVED IN THE CASE: .................. 4
IV. INSURANCE POLICY PROVISIONS, CONTRACTS, OR OTHER
DOCUMENTS INVOLVED IN THE CASE, VERBATIM: .................... 4
V.  A CONCISE STATEMENT OF THE CASE CONTAINING THE
FACTS MATERIAL TO THE CONSIDERATION OF THE
QUESTIONS PRESENTED, WITH APPROPRIATE REFERENCES
TO THE APPENDIX, IF ANY: .................................................................. 4 VI.
A CONCISE STATEMENT SPECIFYING THE STAGE OF THE
PROCEEDINGS IN THE LOWER COURT OF ADMINISTRATIVE
AGENCY AT WHICH THE QUESTIONS SOUGHT TO BE
REVIEWED WERE RAISED, THE MANNER IN WHICH THEY
WERE RAISED, AND THE WAY IN WHICH THEY WERE PASSED
UPON BY THE LOWER COURT OR ADMINISTRATIVE AGENCY: 5
HAD THROUGH OTHER PROCESSES: .............................................................. 7
VIII. THE JURISDICTIONAL BASIS FOR THE PETITION, CITING
THE RELEVANT STATUTES OR CASES: ............................................ 9
IX.  A STATEMENT, IF APPLICABLE, THAT EVERY ISSUE
SPECIFICALLY RAISED HAS BEEN PRESENTED TO THE
ADMINISTRATIVE AGENCY AND HAS BEEN PROPERLY
PRESERVED FOR APPELLATE REVIEW BY A
CONTEMPORANEOUS OBJECTION OR, WHERE APPROPRIATE,
BY A PROPERLY FILED PLEADING ..................................................... 9 X.  A
LIST OF ALL PARTIES OF RECORD AND THEIR COUNSEL,
AND THE ADDRESSEs OF ALL PARTIES AND ALL COUNSEL:  .. 9
XI. A STATEMENT AS TO WHETHER A TRANSCRIPT OF ANY
PROCEEDINGS WILL BE NECESSARY IF THE PETITION IS
ACCEPTED FOR FURTHER REVIEW BY THE COURT: .................. 10

VII. A DIRECT AND CONCISE ARGUMENT AMPLIFYING THE
REASONS RELIED UPON FOR PETITIONING THIS COURT
TO EXERCISE ITS ORIGINAL JURISDICTION AND
SETTING FORTH WHY THE RELIEF SOUGHT IS NOT
AVAILABLE IN ANY OTHER COURT OR CANNOT BE

## THE STATE OF NEW HAMPSHIRE
## SUPREME COURT  2021

### PETITION FOR ORIGINAL JURISDICTION

(Supreme Court Rule 11)

## INTRODUCTION

Appellant, Lisa M. Brady, brings forth this petition under Rule 11(1) to request that this Court exercise original jurisdiction based on erroneous decisions issued by Judge Mark Howard of Strafford Superior Court. The decisions at issue were not in accord with the law and far departed from acceptable standards of law. The New Hampshire Supreme Court will issue a writ of Mandamus under "extraordinary circumstances," and this case commands that distinction. Brady has been denied equal access to justice in the state of New Hampshire, in contravention of the fifth and fourteenth amendments of the U.S. Constitution and Article Fourteen of the N.H. Bill of Rights. Brady has no recourse without N.H. Supreme Court intervention. She seeks an order of remand to superior court.

Brady was a passionate, well-liked, and tenured special education teacher at Somersworth Middle School. She was fired six months after filing a complaint with N.H. Commissioner of Education, Virginia Barry. See App. B-p.3-10. Brady reported fraud, educational neglect, and the exploitation of her significantly impaired, non-verbal autistic student at the hands of the school's top administrators; Superintendent, Jeni Mosca and Special Education Director, Pam MacDonald. This case involves defamation

claims, whistle-blower claims, contract and tort claims, all related to the retaliation that occurred only after Brady reported the abuse.

---

Appendix (App.) A (attached to this documents) or B (appendix attached to a separate  document) and P (page#)

On December 13, 2019, Strafford Superior Court Judge, Mark E. Howard, issued an Omnibus order, granting summary judgment to the Defendants and disposed of all matters in this case. See App. A-P. 60-78. Judge Howard arbitrarily and capriciously granted the Somersworth Defendants' motion for summary judgment when he used a court document, without legal effect, as justification to dismiss all claims. He knowingly used the original writ, filed by Brady on January 2, 2018, and failed to reference the amended writ, submitted to the court on December 13, 2018 and granted by the Court on January 29, 2019. See App. A-P.33-78. He had full discretion and authority along with a legal and professional duty to correct his error and he refused. See Brady motion March 17, 2020 and Judge Howard's response on May 6, 2020, App. A-P.32 & App B-p.67-73. Judge Howard essentially relinquished Strafford Superior Court's jurisdiction and knowingly and willfully harmed Brady by denying her the right to fair due process. He violated New Hampshire Judicial Canons to maintain integrity, to act with fairness, honesty, impartially, and to act in compliance with the law and promote public confidence.

Judge Howard also showed bias within his December 13, 2019 Omnibus Order when he used the original, "moot" complaint, as justification to arbitrarily and capriciously deny Brady's motion to compel discovery, her right to a timely filed evidentiary hearing, and he also dismissed her motion for reconsideration of partial summary judgment. See App. A- P.12-29, App B. p 51-60.

In State v. Russell, 159 N.H. 475, 489, 986 A.2d 515 (2009) the Court stated that "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." Sup.Ct. R. 16–A. "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." Russell, 159 N.H. at 489, 986 A.2d 515. To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted).

We have looked to federal plain error analysis for guidance in applying our plain error rule. Id. at 489– 90,

986 A.2d 515." Brady brought the errors to the Strafford Superior Court at a point in time that would have

allowed the Court to exercise discretion and correct the mistake. See App B. 67-73. Brady seeks a

mandamus order from this Court in order to compel Strafford Superior Court to hear

Brady's case and to prevent a miscarriage of justice.

I.   DECISIONS TO BE REVIEWED:

A. The Strafford Superior Court Omnibus Order Delivered by Judge Howard on December 13, 2019. See App. A- P.12-29.

B. The Strafford Superior Court Notice of Decision delivered by Judge Howard on March 10, 2020. See App. A- P.30-31.

C. The Notice of Decision Dated May 6, 2020 (though decided on April 4, 2020). See App. A- P.32.

II.   QUESTION PRESENTED FOR REVIEW:

A. Whether Judge Mark E. Howard of N.H. Strafford Superior Court, erred when they granted summary judgment to the Defendants and used the original "moot" complaint and not the "lawful" amended version as justification for that order.  Omnibus Order dated December 19, 2019. See App. A -P.12-29.

B. Whether Judge Mark E. Howard of N.H. Strafford Superior Court, erred when he used the original, "moot complaint," as justification to deny Brady's motion for reconsideration of partial summary judgment (filed on Feb.28, 2019), motion for a timely filed evidentiary hearing (filed on Feb.26, 2019) , and denied
Brady's motion to compel discovery(filed on Feb.26, 2019). Omnibus Order dated December 13, 2019.  See App. A- P.12-29 App. B-51-60

C. Whether Judge Mark E. Howard of N.H. Strafford Superior Court, arbitrarily and capriciously denied Brady equal access to justice under the law in contravention of the 5th and 14th amendment of the U.S. Constitution and article 14 of the Bill of Rights & N.H. constitution and whether they knowingly and willfully failed to exercise discretion when they refused to reverse the error that they committed when they knowingly used a document without any legal effect and granted the defendants summary judgment.

III.   CONSTITUTIONAL PROVISIONS, STATUTES, ORDINANCES, RULES, OR REGULATIONS INVOLVED IN THE
       CASE:

       U.S. Constitution, 5th and 14th amendment; N.H. Const. part I, article 14.

IV.    INSURANCE POLICY PROVISIONS, CONTRACTS, OR OTHER DOCUMENTS INVOLVED IN THE CASE,
       VERBATIM:

       Not applicable.

V.   A CONCISE STATEMENT OF THE CASE CONTAINING THE FACTS MATERIAL  TO THE CONSIDERATION OF
THE QUESTIONS PRESENTED, WITH APPROPRIATE REFERENCES TO THE APPENDIX, IF ANY:

     The factual and procedural background are set forth herein. The N.H. Supreme Court should consider

this case extraordinary because Strafford Superior Court Judge, Mark E. Howard, knowingly denied Pro

Se' Plaintiff, Lisa Brady, the right to have her prima facie writ move forward to a jury trial.  In determining

that Somersworth School District defendants met their burden for summary judgment, Judge Howard

used the "original" complaint that Brady filed with the court  (January 2, 2018) rather than the amended

"legal" version (filed on December 13, 2018), in effect at the time of his decision. See App. A- P. 33-78.

Brady's amended complaint granted by Strafford Superior Court supplanted the original writ. See Young

v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001).

     Brady filed a second motion to reconsider Summary Judgment on March 17, 2020 and the Court refused to

exercise discretion to change the order and ensure that justice was served. See app B.- P.67-

73. As Brady pointed out in her March 17, 2020 motion to the Strafford Court:

          "Plaintiff, Lisa Brady, files this motion to reconsider summary judgement under
     Superior Court General Principles Rule 1. Scope, Purpose, Enforcement, Waiver and
     Substantial Rights (e) A plain error that affects substantial rights may be considered and
     corrected by the court of its own initiative  or on the motion of any party . Brady notified the
     Defendants and they did not assent to this motion. Considering the error and the
     broadening implications within the appeal claims, Brady further motions that the court
     reconsider her Partial Motion for Summary Judgment submitted on January 7, 2019.
     Reconsider compelling the Defendants to cooperate with Discovery (and March 11, 2019)
     and granting the timely evidentiary hearing that Brady requested 26, 2018)." App. B P-67-
     73.

261

The Somersworth Defendants knew that Brady's proposed amendments to the writ, filed on December 13, 2018, would greatly change the level of evidence they would have to produce and stated the following in their objections to Court on December 28, 2018:

"Such changes greatly expand the claims from a narrow challenge to a single basis for her termination to a broad attack on every basis for termination." See app B.- P. 11-16

The Defendants were cloaked by the court and never called to answer the amended writ.

VI.   A CONCISE STATEMENT SPECIFYING THE STAGE OF THE PROCEEDINGS IN THE LOWER COURT OF ADMINISTRATIVE AGENCY AT WHICH THE QUESTIONS SOUGHT TO BE REVIEWED WERE RAISED, THE MANNER IN WHICH THEY WERE RAISED, AND THE WAY IN WHICH THEY WERE PASSED UPON BY THE LOWER COURT OR ADMINISTRATIVE AGENCY:

The questions to be reviewed arose from Judge Howard's Omnibus order delivered on December 13, 2019 and his use of a legally defunct document to guide his orders without consideration to Brady's rights or to his legal obligation to act impartially. He used the original writ, filed with the court on January 2, 2018 instead of the amended writ filed on December 13, 2018 and granted by the Court on January 29, 2019. See App. A-P.32-78. These facts can be easily corroborated by looking at four documents attached below. Judge Howards omnibus order, the original complaint, the amended complaint and the order that granted the amendment. See App.

A- P.11-28 & 32-78. His use of a complaint, without any legal effect, as justification to grant the Defendants summary judgment, does not pass the judicial sniff test. The Judge's error did not impact Judge Howard or the Defendants, the only one profoundly impacted by the judge's error was Brady. The litigant that was seeking justice for her unlawful termination, the loss of her career and the loss of her retirement.

Brady filed a motion for reconsideration on December 20, 2019 and the Defendants filed an objection on December 30, 2019. See app. B-p.17-31. Brady filed a sur-reply to the objection on January 2, 2020 and Judge Howard ruled on March 10, 2020. See app. B-app.A-p.19-20. Within 7 days of the order, Brady filed another motion for reconsideration (March 17, 2020) and was denied access

262

to Strafford Superior Court due to COVID-19. See App. B p.95. She drove from the Courthouse to the

post office to mail her motion certified. See app B.- P.95. The receipt indicated that the delivery date

would take a couple days; still under the 10-day court rule for filing. On

May 6, 2020 Judge Howard issued an order denying Brady's motion to reconsider . He had no intention

of correcting his mistake and concluded that Brady was "untimely" See app A.- P. 31.   On July 21, 2020

the N.H. The Supreme Court agreed with Judge Howard's finding, that Brady was "untimely." See app

B.- P. 80. Though Brady is not seeking a decision with this Court related to the timeline issue, it should

be noted that the  Court's decision did conflict with its' prior ruling in Prime financial group.

Prime Financial Group, 141 N.H. at 34, 676 A.2d at 530 as follows:

> "We hold that Ellis does not apply to a motion for a new trial and a successive motion for
> reconsideration. When a court denies a party's motion for a new trial, the party should be
> allowed to point out the errors of the lower court's order, and the lower court should be
> given the opportunity to correct those errors. Cf. Dziama v. City of Portsmouth, 140 N.H.
> 542, 545, 669 A.2d 217, 218-19 (1995) (recognizing that in context of RSA 677:3 (1986 Supp.
> 1988), successive motions for rehearing may be necessary to give zoning board of
> adjustment opportunity to correct its errors and allow court to consider all errors of board).
> Accordingly, we find that the plaintiff's motion for reconsideration stayed the running of
> the appeal period, and accordingly, its notice of appeal was timely filed. SUP.CT. R. 7 (1).
> We therefore address the merits of the plaintiff's appeal."

Brady's questions to this Court do not relate to timeliness in filing because Judge Howard had full

discretion to waive any rule to ensure justice, including "timeliness." It is illogical to think that a litigant

would lose rights to justice because they were not quick enough to point out the errors committed by

a judge.

## GOOD FAITH

On December 17, 2020 Brady contacted the N.H. Supreme Court to find out why it was taking

so long for them to rule on motions filed with the N.H. Supreme Court on the following dates:

a.  July 22, 2020 Motion for Reconsideration and Timeline Waiver See app B.- P.81-88
b.  August 31, 2020 Second Motion for Reconsideration and Waiver of timeline See app B.-
    P.89-92

c.  September 3, 2020 Defendant Objection See App B.- P.93-96

d. September 3, 2020  Plaintiff sur-reply to Defendant objections See app B.- P.97-106

e. September 6, 2020 Motion to include evidence. See app B- p. 107-115

f. November 10, 2020 Motion to Remand and Recuse See app B.- P. 116-122

g. December 1, 2020 Plaintiff Motion to Enter additional Information See app B.-P.123-126

h. On December 21, 2020, Plaintiff filed a writ of mandamus with this court, erroneously listing Somersworth School District et. al. as the offending Party.

i. On January 18, 2021 Brady filed a Motion to amend the writ of Mandamus against Strafford Superior Court, and Judge Mark E. Howard's orders which denied Brady meaningful access to justice  in violation of  N.H. CONST. pt. I, art. 15 and fourteenth amendment to the United States Constitution.

> *We will uphold the trial court's ruling unless it is erroneous as a matter of law. See State v. Symonds, 131 N.H. 532, 534, 556 A.2d 1175, 1177 (1989).*

J. On February 25, 2021, the N.H.Supreme Court ordered the following:

> *"Petition for writ of mandamus pursuant to Supreme Court Rule 11 is denied. See Rule 11.*
> *The respondents' motion for attorney's fees and costs is denied. The respondents' motion to dismiss is moot. Lisa M. Brady's motions "to include additional evidence for the record and 'unseal' portions of the depositions confidentially," to "accept defendant's motion for summary judgment," and to "amend writ to include Strafford Superior Court" are also moot.. Petition Denied"*

k. Although Brady's original Mandamus intended Judge Howard/ Strafford Superior Court as the primary opposing party, she erroneously listed the Somersworth School District defendants. The amendment that Brady filed with the N.H. Supreme Court on January 18, 2021 to correct the error was deemed by the N.H. Supreme Court to be "moot" on February 25, 2021.

VII.                    DIRECT AND CONCISE ARGUMENT AMPLIFYING THE REASONS RELIED UPON

FOR PETITIONING THIS COURT TO EXERCISE ITS ORIGINAL JURISDICTION AND SETTING FORTH WHY THE RELIEF SOUGHT IS NOT AVAILABLE IN ANY OTHER COURT OR CANNOT BE HAD THROUGH OTHER PROCESSES:

On page one of the N.H. Supreme Court task force on self-representation  recommendations from January of 2004,[1] stated the following on page one:

"Access to justice is an abiding principle of our system of justice and the doors of our courthouses are open to everyone, whether represented by a lawyer or not. It follows that the obligation of the court system is to see to it that justice is as fair and efficient as it can be for those who arrive on their own."

Brady was unlawfully terminated in January of 2015. She sought justice in New Hampshire Strafford Superior Court and was met with a system that denied her basic discovery, an evidentiary hearing and one that resorted to "trickery" in order to dispose of her case. The Strafford Court was legally and ethically obligated to exercise jurisdiction in a non-biased manner. Judge Howard knew that as a non-lawyer, Brady would struggle with procedures with a supreme court appeal. Because of the passage of time, Brady has no other choice but, to seek relief through a petition of Mandamus so that the breadth of extenuating circumstances can be factored into any decision. A Pro Se' litigant cannot be expected to "outsmart" a judge, abstaining from adjudication and willing to sacrifice the integrity of the court while creating ill-conceived precedent that runs contrary to the law.     The Fifth Amendment provides that citizens will not "be deprived of life, liberty, or property, without due process of law..." Due process is denied when a prima facie complaint is summarily dismissed

---

1. (https://www.courts.state.nh.us/supreme/docs/prosereport.pdf)

Within Brady's March 17, 2020 motion, she informed the court that she was filing under Rule 1 as follows:

"1. Plain Error: Brady's amended complaint granted by this Court on February 12,

2019 supplanted the original complaint filed on January 2, 2018. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). Because the Court's analysis and findings quoted the original complaint throughout the order, it unduly prejudiced the plaintiff.

On page 8 of the court's order, it stated the following under Brady's        contract claim:

"Brady claims that the Somersworth School District breached its contract with her by terminating her "based on a decision that Brady violated state DNA laws (NH RSA 141H:2) . . .without legal justification or "just cause" to make that determination." Compl.

63. She claims that the District did not have the legal authority or jurisdiction to make a determination under RSA 141-H:2. Compl. 64

The amended version of the same complaint stated:

"On January 20, 2015, the Somersworth School District breached Lisa Brady's teaching contract with willful and wanton negligence when they terminated her employment based

on a decision that Brady violated state DNA laws (NH RSA 141 H:2) and based on a decision that she was "immoral," "abandoned her position," and "violated student privacy." They did so without "just cause" to make that determination." Amended Compl 63. (*Brady has documented only a few of the inconsistencies but, they exist throughout the order). See App B.- P.67-73.

On May 6, 2020, the Court notified the parties of the April 1, 2020 decision issued by Judge Howard, and simply stated: "Denied as untimely." See App. A- P. 21. Judge Howard had full authority to correct his order and ensure that Brady's rights to due process were preserved. Brady seeks a mandamus order from this Court so that her complaint can be processed in Strafford Superior Court. The Judge's unwillingness to correct his error was evidence of bias and an abdication of his judicial duties

VIII. THE JURISDICTIONAL BASIS FOR THE PETITION, CITING THE RELEVANT STATUTES OR CASES:

New Hampshire Supreme Court Rule 11. This Court should exercise original jurisdiction to review Strafford

Superior Court's failure to correct an "error" which resulted in a miscarriage of justice for Brady.

> " A writ of mandamus is used to compel a public official to perform a ministerial act that the official has refused to perform, or to vacate the result of a public official's act that was performed arbitrarily or in bad faith." Petition of Cigna Healthcare, Inc., 146 N.H. 683, 687 (2001).

*If not for Court error, Brady's prima facie case would have already been tried before a jury* and because of the passage of time Brady will not have any justice without Supreme Court intervention with a Mandamus to compel the lower court to process Brady's complaint.

> "This Court will in its discretion, issue a writ of mandamus only where the petitioner has an apparent right to the requested relief and no other remedy will fully and adequately afford relief." Cigna Healthcare, Inc., 146 N.H. 687 (2001).

IX.    A STATEMENT, IF APPLICABLE, THAT EVERY ISSUE SPECIFICALLY RAISED HAS
BEEN PRESENTED TO THE ADMINISTRATIVE AGENCY AND HAS BEEN PROPERLY PRESERVED FOR APPELLATE
REVIEW BY A CONTEMPORANEOUS OBJECTION OR, WHERE APPROPRIATE, BY A PROPERLY FILED PLEADING:

The relevant documents are attached below and as a separate appendix for the Court's review.

X.    A LIST OF ALL PARTIES OF RECORD AND THEIR COUNSEL, AND THE ADDRESSES OF ALL PARTIES AND ALL COUNSEL:

Appealing Party: Lisa Brady 8 Constable Road, Durham, NH 03824, Email:

lisa.brady@comcast.net, Telephone number: 603-292-5052

**Opposing Party:**
Judge Mark E. Howard, Strafford Superior Court, 259 County Farm Rd., Dover, NH 03820 Phone : 1-855-212-1234

XI.    A STATEMENT AS TO WHETHER A TRANSCRIPT OF ANY PROCEEDINGS WILL BE NECESSARY IF THE PETITION IS ACCEPTED FOR FURTHER REVIEW BY THE COURT:

No transcript will be required.

Respectfully submitted under the pains and penalty of perjury,

*Lisa Brady*

Date: February 25, 2021                    By:/s/ Lisa M. Brady

Lisa M. Brady, Pro Se'

CERTIFICATION OF COMPLIANCE
(Supreme Court Rule 11(5))

I hereby certify that a copy of the foregoing will be hand delivered to the Strafford Superior Court/Judge Mark E. Howard on mailed the 26th day of  February 2021 and electronically to Attorney Brian Cullen.

Judge Mark E. Howard/Strafford Superior Court   259 County Farm Rd., Dover, NH 03820  Attorney Brian

Cullen, 10 E. Pearl Street Nashua , NH 03060

/S/Lisa M. Brady

*Lisa Brady*

# EXHIBIT#28

### THE STATE OF NEW HAMPSHIRE  SUPREME COURT

**In Case No. 2021-0136, Petition of Lisa M. Brady, the court on May 17, 2021, issued the following order:**

Petition for a writ of mandamus is denied. See Rule 11. Lisa Brady's "motion to access e-file" is moot.
The motion to enter evidence filed on April 12, 2021, the three motions to enter evidence filed on April 19, 2021, and the three motions to enter evidence filed on April 20, 2021, are granted to the extent that they request that the court consider the motions and attachments when deciding whether to grant or deny the petition. They are otherwise denied. Lisa Brady's "motion to enter evidence and factual relevant history attached herein and motion to allow Lisa M. Brady to hand deliver her termination hearing transcript to the court in support of her petition for  original jurisdiction," filed on April 26, 2021, is granted to the extent that it requests that the court consider the motion and the attached exhibit when deciding whether to grant or deny the petition. It is otherwise denied. The other two motions to enter evidence filed on April 26, 2021, by Lisa Brady are granted to the extent that they request that the court consider the motions and attachments when deciding whether to grant or deny the petition. They are otherwise denied.
The motions to enter evidence filed by Lisa Brady on April 28, 2021, May 4, 2021, and May 10, 2021, are granted to the extent that they request that the court consider the motions and attachments when deciding whether to grant or deny the petition. They are otherwise denied.

Petition denied.
Hicks, Bassett, Hantz Marconi, and Donovan, JJ., participated.
Timothy A. Gudas,
Clerk


Distribution:
Clerk, Strafford County Superior Court, 219-2018-CV-00002
Honorable Mark E. Howard
Ms. Lisa Brady
Attorney General
Brian J.S. Cullen, Esquire
File

# EXHIBIT #29

**THE STATE OF NEW HAMPSHIRE**
**SUPREME COURT CASE NO. 2021-0136**
PETITION OF LISA M. BRADY FOR ORIGINAL JURISDICTION
**(COURT RULE 11)**

RELEVANT CASE HISTORY:                              May 18, 2021
Strafford Superior Court No.  219-2018-cv-00002
N.H. Supreme Court Case No. 2021-0592
NH Supreme Court Docket No. 2020-0274

**MOTION FOR RECONSIDERATION WITH AFFIDAVIT**

Lisa M. Brady hereby motions the court to reconsider the decision to deny her petition for original jurisdiction under

Rule 11 which; was filed on April 5, 2021 and delivered on May 17, 2021.  Brady requests that the New Hampshire

Supreme Court consider her motion for reconsideration under Rule 16-A: *"A plain error that affects substantial rights*

*may be considered even though it was not brought to the attention of the trial court or the supreme court."*  Any error

committed by Brady was plain and should not result in a loss of  her right to due process. Brady pleads the Court to

exercise discretion, allow her to correct the record, and to consider the egregious violations committed by Strafford

Superior Court Judge, Mark Howard, when he knowingly and willfully acted under "color of law" to deny her state and

federal constitutional right to due process.

> *"[m]isuse of power, possessed by virtue of state law and made possible only because the*
> *wrongdoer is clothed with the authority of state law, is action taken `under color of' state*
> *law." Martinez v. Colon, 54 F.3d 980, 987(1st Cir. 1995)*

Lisa Brady filed a petition for original jurisdiction with this court, pursuant to Supreme Court Rule 11,

alleging and asking the following:

> A. *Whether Judge Mark E. Howard of N.H. Strafford Superior Court, erred when he granted summary*
> *judgment to the Defendants and used the original "moot" complaint and not the "lawful" amended*
> *version as justification for that order.  Omnibus Order dated December*
> *19, 2019. See App. A -P.12-29.*
>
> B. *Whether Judge Mark E. Howard of N.H. Strafford Superior Court, erred when he used the original,*
> *"moot complaint," as justification to deny Brady's motion for reconsideration of partial summary*
> *judgment (filed on Feb.28, 2019), motion for a timely filed evidentiary hearing (filed on Feb.26, 2019) ,*
> *and denied Brady's motion to compel discovery(filed on Feb.26, 2019). Omnibus Order dated December*

271

*13, 2019. See App. A- P.12-29 App. B-5160. Whether Judge Howard allowed the Somersworth Defendants to avoid discovery to cover up a crime. (Criminal fraud exploitation in a public film involving Brady's former student).*

C. *Whether Judge Mark E. Howard of N.H. Strafford Superior Court, arbitrarily and capriciously denied Brady equal access to justice under the law in contravention of the 5th and 14th amendment of the U.S. Constitution and article 14 of the Bill of Rights & N.H. constitution and whether he knowingly and willfully failed to exercise discretion when he refused to reverse the error that he committed when he knowingly used a document without any legal effect and granted the defendants summary judgment.*

Judicial immunity may bar damage actions under section 1983 however; it does not necessarily preclude suits under section 1983 for declaratory or injunctive relief. See Jacobson v. Schaefer, 441 F.2d 127, 130 (7th Cir. 1971). The Court has discretion under Rule 11, to issue a mandamus when there is an abuse of discretion.

> *"A writ of mandamus is used to compel a public official to perform a ministerial act that the official has refused to perform, or to vacate the result of a public official's act that was performed arbitrarily or in bad faith. See Guy J. v. Commissioner, 131 N.H. 742, 747, 565 A.2d 397 (1989)."*

As part of a petition for original jurisdiction under Rule 11, the court may issue a writ of mandamus to compel Judge Howard to vacate the results of his omnibus order which; was arbitrary, capricious, in bad faith and not in compliance with the law. Had judge Howard followed the law, Brady's claims would have already been processed by a jury of her peers.

## I.    RULE 11-PETITION FOR ORIGINAL JURISDICTION

Within the order denying Brady's petition, the Court stated:

> *"Petition for a writ of mandamus is denied. See Rule 11."*

The order is broad and open to countless interpretations that are listed under rule 11. As one possible point of confusion, Brady recognizes that on her cover page, she titled it petition for writ of mandamus under rule 11. However, on the fourth page of the petition, it correctly stated: *"PETITION FOR ORIGINAL JURISDICTION (Supreme Court Rule 11)"* Brady's petition was intended to be a petition for original jurisdiction under Rule 11. Brady requests that the record reflect her intent as such. The wording does not change the salience of Brady's complaint, and all pertinent questions posed within Rule 11 were answered.

The N.H. Supreme Court has jurisdiction over the Strafford Superior Court.

> *490:4 Jurisdiction. – The supreme court shall have general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses, including the authority to approve rules of court and prescribe and administer canons of ethics with respect to such courts, shall have exclusive authority to issue writs of error, and may issue writs of certiorari, prohibition, habeas corpus, and all other writs and processes to other courts, to corporations and to individuals, and shall do and perform all the duties reasonably requisite and necessary to be done by a court of final jurisdiction of questions of law and general superintendence of inferior courts.*

In the State v. Panarello, 157 N.H. 204, 207, 949 A.2d 732 (2008), the New Hampshire Supreme Court indicated how

they interpreted errors:

> *For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Panarello, 157 N.H. 204, 207, 949 A.2d 732 (2008).*

The court went on to include a fourth criteria as:

> *"If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." id. State v. Panarello*

Judge Howard's  omnibus order used a "legally void" writ as the basis for summary judgment . He met all criteria set

forth in State V. Panarello, including the last one when he showed bias, a lack of integrity, and a willingness to sacrifice

his public reputation to protect a corrupt local school district.

A Mandamus is issued only when there is a specific right to be enforced, a positive duty to be performed, and no

other specific remedy. Littlefield v. Williams, 343 S.C. 212, 540 S.E.2d 81 (2000).  The N.H. supreme court has jurisdiction

(petition under Rule 11) to ensure that Strafford Superior Court complies with the law and, may issue writs of

mandamus.  Brady requests that the Court interpret her complaint as a petition for original jurisdiction under Rule 11,

with the remedy of the issuance of a mandamus as part of that discretion through remand to Strafford Superior court.

Under introduction within her petition for original jurisdiction,

Brady stated:

> *Appellant, Lisa M. Brady, brings forth this petition under Rule 11(1) to request that this Court exercise original jurisdiction based on erroneous decisions issued by Judge Mark*

> *Howard of Strafford Superior Court. The decisions at issue were not in accord with the law and far departed from acceptable standards of law*

On page nine of the petition Brady stated the following:

> *This Court should exercise original jurisdiction to review Strafford Superior Court's failure to correct an "error" which resulted in a miscarriage of justice for Brady.*

## II  AFFIDAVIT

In trying to discern additional reasons for being denied a petition under Rule 11, Brady motions the N.H. Supreme Court to allow her to enter the attached Affidavit (see Exhibit A below page 7) in support of the April 5, 2021 petition, this motion for reconsideration, and all other motions submitted to the Court. If the Court denied Brady's petition based on a lack of Affidavit, Brady argues the following as a defense for the error:

1. The rules of the Supreme Court can be found at the following website:

   https://www.courts.state.nh.us/rules/scr/index.htm

2. The link to Rule 11 can be found at: https://www.courts.state.nh.us/rules/scr/scr-11.htm

3. When drafting the petition for original jurisdiction under Rule 11, Brady went directly to rules and used them as a template to formulate her complaint. No where within the outlined requirements for a petition does it indicate that an Affidavit was required. See Appendix B, pages 8-10 below, for a copy of the requirements listed for a petition under Rule 11. If the requirements had indicated that Brady needed to get an Affidavit, she would have ensured it was filed. Brady petitions the Court to allow her to enter the Affidavit at this time and to recognize that the error was, in part, related to the Supreme Court's instructions for filing a petition under Rule 11. Brady is a pro se' litigant, not trained in or familiar with supreme court rules, and she relied on the Court's requirements, listed under Rule 11, when she crafted her petition. The Court should not assume that pro se' litigants will include an Affidavit if they are not instructed to do so within Rule 11. Leaving out pertinent instructions that could result in dismissal of a pro se's case is denial of equal access to justice under the law. These kinds of legal "traps" knowingly prejudice pro se' litigants.

Wherefore Lisa M. Brady pleads this court to

- Change the title of this case from *Petition for a writ of mandamus* to *Petition for Original Jurisdiction*

- Grant Brady's petition for original jurisdiction under Rule 11

- Remand this case back to Strafford Superior Court (use discretion to issue a writ of mandamus) with a non-biased judge to ensure that Brady has an opportunity for justice

- Enter the attached affidavit and consider that any error of its' timely filing to be related to a lack of instruction under the N.H. Supreme Court Rule 11 instructions

- Consider all documents previously submitted in support of the petition for original jurisdiction.

- Allow oral arguments so that Brady can defend the merits to her right to a petition under Rule 11

- Order any other such actions as the court deems necessary to ensure that a miscarriage of justice does not occ in this case.

Respectfully Submitted under the pains and penalties of perjury,

*Lisa Brady*      May 18, 2021

Lisa Brady, Pro Se'

Telephone number: 603-292-5052
Name:  Lisa M. Brady
Mailing Address: 8 Constable Road, Durham, NH 03824  email
address: lisa.brady@comcast.net

I certify that a copy of this motion for reconsideration with inclusive Affidavit will be served to Attorney Brian

Cullen, ESQ and N.H. Solicitor General Daniel Will through  the court's electronic filing system.   *Lisa Brady*

May 18, 2021

I certify that there are 2,800 words within this document.   *Lisa Brady*   May 18, 2021

## EXHIBIT A

**SWORN AFFIDAVIT SIGNED BEFORE A NOTARY**

**STATE OF NEW HAMPSHIRE**
**SUPREME COURT**

**CASE NAME:** Petition of Lisa M. Brady          **Date:** May 18, 2021

**CASE NUMBER:** 2021-0136

**DATES:**

| | |
|---|---|
| April 5,2021- petition Writ Rule 11<br>April 12, 2021- motion to enter evidence<br>April 19, 2021- motions to enter evidence<br>April 20, 2021- motions to enter evidence<br>April 26, 2021- motion to hand deliver her<br>termination hearing transcript | April 26, 2021- motions to enter evidence<br>April 28, 2021- motion to enter evidence<br>May 4, 2021- motion to enter evidence<br>May 10,2021- motion to enter evidence |

I, Lisa Brady, of 8 Constable Road, in Durham New Hampshire, MAKE OATH AND SAY
THAT: Under Penalty of Perjury, the information within my stated petition for jurisdiction under
Rule 11, dated April 5, 2021, was made in good faith and accurate. All documents, evidence,
motions, and claims submitted to the Court have been accurate and made in good faith (see
motions listed above). Judge Howard denied Brady's 2nd motion for reconsideration summary
judgement to correct his error on May 6, 2020.

**STATE OF NEW HAMPRHIRE COUNTY OF  STRAFFORD**
SUBSCRIBED AND SWORN TO BEFORE ME, on the 18th day of May 2021

*Lisa Brady*
(Signature)

*Lisa Brady*

Printed Name

Signature *Donna S. Hamel*          (Seal)

My Commission Expires:  *06/01/2021*

**DONNA L HAMEL**
Notary Public - Justice of the Peace
Commission Expiration June 1, 2021

I certify that a copy of this motion will be served to Attorney Brian Cullen, ESQ and N.H. Solicitor
General Daniel Will through  the court's electronic filing system. *Lisa Brady*   May 18, 2021.

276

# EXHIBIT B

# https://www.courts.state.nh.us/rules/scr/scr-11.htm

Browse Previous Page | Table of Contents | Browse Next Page

**Supreme Court Rules Table of Contents**
**RULES OF THE SUPREME COURT OF THE STATE OF NEW HAMPSHIRE**
**PROCEDURAL RULES 1 TO 34**
**Rule 11. Petition for Original Jurisdiction.**

(1) Petitions requesting this court to exercise its original jurisdiction shall be granted only when there are special and important reasons for doing so. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of the reasons that will be considered: When a trial court or administrative agency has decided a question of substance not theretofore determined by this court; or has decided it in a way probably not in accord with applicable decisions of this court; or has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this court's power of supervision.

(2) A petition shall, as far as possible, contain in the order stated:

(a) A copy of the decision sought to be reviewed, if there is such a decision. The decision shall be annexed or appended to the petition;

(b) The questions presented for review, expressed in the terms and circumstances of the case, but without unnecessary detail. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the petition or fairly comprised therein will be considered by the court;

(c) The provisions of the constitutions, statutes, ordinances, rules, or regulations involved in the case, setting them out verbatim, and giving their citation. If the provisions to be set out verbatim are lengthy, their citation alone will suffice at that point, and their pertinent text shall be annexed or appended to the petition. If any documents are annexed or appended to the petition, then the petition shall contain a table of contents. If the provisions aggregate more than 5 pages, their text may be filed as a separate appendix, including a table of contents referring to numbered pages;

(d) The provisions of insurance policies, contracts, or other documents involved in the case, setting them out verbatim. If the provisions to be set out verbatim are lengthy, their pertinent text shall be annexed or appended to the petition. If any documents are annexed or appended to the petition, then the petition shall contain a table of contents. If the provisions aggregate more than 5 pages, their text may be filed as a separate appendix, including a table of contents referring to numbered pages;

(e) A concise statement of the case containing the facts material to the consideration of the questions presented, with appropriate references to the appendix, if any;

(f) A concise statement specifying the stage of the proceedings in the trial court or administrative agency at which the questions sought to be reviewed were raised, the manner in which they were raised, and the way in which they were passed upon by the trial court or administrative agency;

(g) A direct and concise argument amplifying the reasons relied upon for petitioning this court to exercise its original jurisdiction (see section 1 above) and setting forth why the relief sought is not available in any other court or cannot be had through other processes;

(h) The jurisdictional basis for the petition, citing the relevant statutes or cases;

(i) A statement, if applicable, that every issue specifically raised has been presented to the trial court or administrative agency and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading;

(j) A list of all parties of record and their counsel, the addresses of all parties and counsel, and the New Hampshire Bar identification numbers of counsel for the moving party;

(k) A statement as to whether a transcript of any proceedings will be necessary if the petition is accepted for further review by the court. If a transcript will be necessary if the petition is accepted, then the petition shall also contain a Transcript Order Form. (The Transcript Order Form appears as part of the two Notice of Appeal Forms that may be found in the appendix to these rules.)

All argument in support of the petition shall be set forth in the body of the petition. No separate brief in support of the petition shall be filed, and the court shall not consider any supporting brief.

(3)  The failure of a petition to present with accuracy, brevity and clearness whatever is essential to a ready and adequate understanding of the points requiring consideration will be a sufficient reason for denying the petition.

(4)  If several cases involve identical or closely related questions, a single petition covering all the cases shall suffice.

(5)  The petition shall be filed with the clerk of this court, accompanied by the filing fee. If the action is against the State, the petition must be served on the attorney general. Notice by serving, delivering or mailing a copy of the petition upon all parties or opponents below as well as the court or agency involved is the responsibility of the moving party, and a certificate of compliance stating their names and addresses must be filed with the petition.

(6)  If the supreme court is of the opinion that the petition should not be granted, it shall deny the petition. The supreme court may, in its discretion, accept and schedule for briefing, with or without oral argument, any question presented in the petition.

The supreme court may order that an answer to the petition be filed within the time fixed by the order. Two or more parties may answer jointly. Persons named as parties but having no interest in the outcome of the petition shall notify the clerk of the supreme court in writing that they have no interest in the proceedings and in the outcome

**Browse Previous Page | Table of Contents | Browse Next Page**

## Supreme Court Rules Table of Content