# THE UNITED STATES DISTRICT COURT
# OF NEW HAMPSHIRE

September 1, 2021                                         Case No. 1:21-cv-00614-PB

Lisa M. Brady, Pro se'
**Plaintiff**
v.
Judge Mark E. Howard, Strafford Superior Court In his individual and professional capacity.
Senior Associate Justice Gary E. Hicks In his individual and professional capacity. N.H.
Supreme Court Associate Justice James P. Bassett, In his individual and professional capacity.
N.H. Supreme Court Associate Justice Anna Barbara Hantz Marconi, In her individual and
professional capacity. N.H. Supreme Court Associate Justice Patrick E. Donovan, In his
individual and professional capacity. N.H. Supreme Court
**Defendants**

### OBJECTION TO DEFENDANTS MOTION TO DISMISS

The Plaintiff, Lisa M. Brady, objects to the Defendants motion to dismiss and argument

set forth in the memorandum of law submitted to the Court on August 24, 2021. The

Defendants Motion was premised under Rule 12(b)(1) – *Dismissal for Lack of Subject Matter*

*Jurisdiction* under the Rooker-Feldman doctrine and 12(b)(6) - Failure to State a Claim Upon

Which Relief Can Be Granted.  All New Hampshire Court decisions that have been rendered

since Judge Howard's omnibus, from December 12, 2019, are voidable because Judge

Howard's order was a purposeful fraud on the court.  In denying Lisa Brady any opportunity

to appeal the fraudulent order, the New Hampshire Supreme Court condoned the fraud.

> *"Fraud upon the court" has been defined by the 7th Circuit Court of*
> *Appeals to "embrace that species of fraud which does, or attempts to,*
> *defile the court itself, or is a fraud perpetrated by officers of the court*
> *so that the judicial machinery cannot perform in the usual manner its*
> *impartial task of adjudging cases that are presented for*
> *adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's*
> *Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further*
> *stated "a decision produced by fraud upon the court is not in essence*
> *a decision at all, and never becomes final."*

**FACTS:**

1.  On February 25, 2021 Brady filed a motion with the New Hampshire Supreme Court

    for Original jurisdiction and issuance of a mandamus and stated, in part, the

    following under question number three, on page three of that motion:

    > *"Whether Judge Mark E. Howard of N.H. Strafford Superior Court,*
    > *arbitrarily and capriciously denied Brady equal access to justice*
    > *under the law in contravention of the 5th and 14th amendment of the*
    > *U.S. Constitution and article 14 of the Bill of Rights & N.H.*
    > *constitution and whether they knowingly and willfully failed to*
    > *exercise discretion when they refused to reverse the error that they*
    > *committed when they knowingly used a document without any legal*
    > *effect and granted the defendants summary judgment." [Com. E 27].*

2.  The New Hampshire Supreme Court denied Brady's mandatory appeal and two

    follow up motions for original jurisdiction. Judge Howard knowingly falsified court

    records in this case and the N.H. Justices never discussed the merits of any claim

    lodged.

    > *"When the source of the injury is the defendant's actions (and not the*
    > *state court judgments), the federal suit is independent, even if it asks*
    > *the federal court to deny a legal conclusion reached by the state*
    > *court." Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, <u>615</u>
    > <u>F.3d 159, 167</u> (3d Cir. 2010)

    The New Hampshire State Judges actions were the sources of Brady's  injuries.

3.  The Defendants claim on page five of their motion to dismiss:

    > *Brady, "by her own admission, "states that she litigated the School*
    > *District's motion for summary judgment in the superior court and the*
    > *New Hampshire Supreme Court*."

4.  No matter how much effort the Defendants made to normalize judicial decisions as

    reasonable, and in accordance with New Hampshire statutes, the exhibits attached to

    Brady's complaint show that Judge Howard acted under color of law and contrary to

    New Hampshire Statutes for summary judgment (See NH Title LI, 491:8-a Motions

    for Summary Judgment. – *III*  ), and that he committed a Class B felony (Title LXII

    Criminal Code, Chapter 641:3 *Falsification in Official Matters*).

*5.* An exception to the Rooker-Feldman applies when a plaintiff alleges <u>"a conspiracy</u>

<u>to reach a predetermined outcome in state court"</u> See Great W. Mining & Mineral

Co. v. Fox Rothschild LLP, 615 F.3d 159, 173 (3d Cir. 2010). Federal courts, under

Rule 60(b) and (d)(3) *"will set aside a judgment for fraud on the court."*

6. Chief Judge Posner stated (Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995):

> *"Were Nesses merely claiming that the decision of the state court was*
> *incorrect, even that it denied him some constitutional right, the*
> *doctrine would indeed bar his claim. But if he claims, as he does, that*
> *people involved in the decision violated some independent right of his,*
> *such as the right (if it is a right) to be judged by a tribunal that is*
> *uncontaminated by politics, then he can, without being blocked by the*
> *Rooker-Feldman doctrine, sue to vindicate that right and show as*
> *part of his claim for damages that the violation caused the decision to*
> *be adverse to him and thus did him harm. Nelson v. Murphy, 44 F.3d*
> *497, 503 (7th Cir. 1995); GASH Associates v. Village of Rosemont,*
> *supra, 995 F.2d at 728.*

7. Lisa Brady filed an amended writ in Strafford Superior Court on December 13, 2018.

On December 28, 2018 the Somersworth Defendants objected:

> *"Such changes greatly expand the claims <u>from a narrow challenge</u> to*
> *a single basis for her termination <u>to a broad attack on every basis for</u>*
> *<u>termination</u>."* [Com. E7 P.65-68].

When Judge Howard granted the amended complaint on February 12, 2019 he stated:

> *"In this case, while the proposed **<u>amendments alter the plaintiff's</u>***
> ***<u>substantive claims</u>**, the causes of action are not entirely new and the*
> *evidence is not markedly different from what is already known to the*
> *defendants. Accordingly, the amendments are allowed."* [Com.E10
> P.100-104].

The Somersworth Defendants never answered Brady's amended complaint, and it

didn't matter because Judge Howard granted them summary judgment and used the

void "original" writ. (Com.E 5). He did not address claims set forth in the amended

complaint.

8. Whenever judges commit fraud during a proceeding, they are engaged in a "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985). Brady's federal claims detailed the corruption she incurred in pursuance of her state civil claims. Her claims are not vague, speculatory, or "merely conclusionary." **The exhibits attached to her complaint are public records that prove intentional fraud**.  The exhibits are plain on their face and support that in delivering his omnibus order (Com. E.15), Judge Howard used a legally void document, the original complaint (Com. E.5), and that he failed to use the amended complaint (Com. E.6), that he granted on February 12, 2019 (Com. E. 10).  When Judge Howard granted Lisa Brady's amended complaint, he knew or should have known that the Somersworth School District's motion for summary judgment was moot (Com. E. 9). On March 17, 2020, Brady discovered that Judge Howard erred, and motioned him to correct the error (Com. E.18). She motioned him at a point when his actions would have been considered a simple a mistake, if he had corrected the error. Judge Howard abused his discretion when he failed to correct his error. (Com. E. 19).  Brady filed a mandatory appeal with the New Hampshire Supreme Court,( Com. E.20) and they denied her an appeal (Com. E.21), and motion for reconsideration (Com. E.22). Brady filed successive motions for discretionary appeals (Com. E. 25, 27) and the N.H. Supreme Court Justices denied those appeals as well. (Com. E.28, see Exhibit 1 attached below). Judge Howard also knowingly used a legally void complaint to justify denying all Brady's discovery requests (the Somersworth School District refused to provide any discovery), a timely filed evidentiary hearing, and a motion to reconsider partial summary judgment. (Com. E.15). In *Pumphrey v. Thompson Tool Co,* the Ninth Circuit Court stated:

*"The U.S. Supreme Court, in Scheuer v. , supra, 416 232, 94 S.Ct. 1683, 1687 (1974)  "A court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, supra,  453 F.2d 645 (1st Cir. 1972).)."*

9. Judge Howard knew or should have known on **February 12, 2019** (Com. E.10), that

   the Somersworth School District's motion for summary judgment was moot and

   Brady discovered his error on **April 17, 2020** (Com. E. 18).  <u>He coveted his trickery</u>

   <u>and deceit for thirteen months,</u> dangling and withholding due process, knowing that

   Brady had lost her teaching career and future retirement benefits.

10. On page four of the Defendants memorandum of law they stated:

    *"The Rooker-Feldman doctrine bars 'cases brought by state-court losers complaining of injuries **<u>caused by state-court judgments</u>** rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Adames v. Fagundo, 198 Fed. Appx. 20, 22 (1st Cir. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). In other words, "if federal litigation is initiated after state proceedings have ended, and the plaintiff implicitly or explicitly seeks review and rejection of the state judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and . . . the federal courts lack jurisdiction."*

11. The Rooker-Feldman doctrine applies when four requirements are met: (1) the

    federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by

    the state court judgment, (3) that judgment issued before the federal suit was filed,

    and (4) the plaintiff invites the district court to review and reject the state court

    judgment.

*12.* <u>The First Rooker-Feldman criteria</u>, the plaintiff must be a "*state-court loser.*" See

    Exxon Mobil, 544 U.S. at 284; Great W. Mining, 615 F.3d at 166. Lisa Brady did not

    lose in New Hampshire state court because she was denied process. Brady's injury

    was caused by a corrupt New Hampshire judicial process.

*13.* The second Rooker-Feldman criteria states that "the plaintiff complains of injuries caused by the state court judgment." Brady's injuries were caused by the Defendants unlawful actions in denying process. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010)

14. **The Third Rooker-Feldman criteria**, requires that a State judgment be issued before the federal suit was filed. Contrary to the Defendants claim, Superior Court matters were not "officially" resolved. Brady filed the Federal complaint on **July 22, 2021** and the Supreme Court did not issue its' final rule until **July 27, 2021.** See attached exhibit 1 below.

15. The Fourth and final Rooker-Feldman criteria requires that the plaintiff invites the district court to review and reject the state court judgment. Lisa Brady has invited the federal court to review the State Court judges Constitutional, and statutory violations in denying Brady's equal access to justice.

*16.* On page seven of the Defendants motion they state:

> "Here, Plaintiff's allegations and claims against Judge Howard relate to Judge Howard's rulings on various motions filed in the Superior Court Action over which he presided. Likewise, Plaintiff's allegations and claims against the Supreme Court Justices concern the Supreme Court Justices' rulings on various matters related to Plaintiff's appeal and subsequent petition for original jurisdiction. Because all of these judicial rulings were well within the scope of the Judge Howard's and the Supreme Court Justices' normal judicial duties, judicial immunity bars Plaintiff's claims. Cf. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)

17. To adopt the Defendants' position, the federal court would have to find that Judge Howard's use of the original complaint ("*the dead letter*") was justifiable. It would defy case law [Com.E. 15&19] precedent on amended pleadings superseding the original complaint. It would also defy NH statutes for what defines summary judgement. See NH Title LI, 491:8-a.

**IMMUNITY**

18. On page eight of the motion to dismiss, the defendants stated, "*declaratory judgment is meant to define the legal rights <u>and obligations of the parties in anticipation of some future conduct,</u> not simply to proclaim liability for a past act*."  <u>Brown v. Rhode Island</u>.  Brady seeks prospective relief to have her day in court, she has been denied equal access to due process in the State of New Hampshire, and gaining access would be prospective.

19. On page nine of the Defendants motion to dismiss they state:

> " *Even if the type of retrospective proclamations Plaintiff seeks against Judge Howard and the Supreme Court Justices were properly available by way of a declaratory judgment, **claims for such retrospective relief are still barred by sovereign immunity under the Eleventh Amendment**.  <u>See</u> <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 106 (1984) (discussing the sovereign immunity conferred by the Eleventh Amendment and explaining that "an award of retroactive relief [against state officials] necessarily 'falls afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force'") (quoting <u>Edelman v. Jordan</u>, 415 U.S. 651, 665 (1974)).*

20. The Ex parte Young doctrine applies to violations of federal common law and federal constitutional or statutory law. Crowe & Dunleavy, P.C. v. Stidham, 640 F.3d 1140, 1155 (10 Cir. 2011). Plaintiff alleges claims that arise under federal 1983 and seeks declaratory and injunctive relief. Sovereign immunity does not protect the Defendants from the relief requested.  Under *Ex parte Young, the Court Stated:*

> "*Eleventh Amendment immunity does not extend to a state official sued in [her] official capacity when the plaintiff seeks only prospective, injunctive relief.*" *Tarrant Regional Water Dist. v. Sevenoaks, 545 F.3d 906, 911(10 Cir. 2008).*

21. In 1996, the Federal Courts Improvement Act 1996 (the "FCIA") amended Section 1983 to limit the availability of injunctive relief against judges but, declaratory relief is available to Plaintiffs, regardless of the availability of injunctive relief after the enactment of the FCIA. Lawrence, 271 Fed. Appx. at 766, 2008 WL 822458

At the bottom of  page six of the Defendants' motion to dismiss, they state:

> *"in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted.  Footnote p. 6. Def.*

22. The Defendants' argument failed to acknowledge the extent of judicial

corruption that Brady details within her complaint. .

"*A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357; Bradley v. Fisher, 13 Wall., at 351."*

23. On page seven of the Defendants' complaint, they stated:

> "*Because all of these judicial rulings were well within the scope of the Judge Howard's and the Supreme Court Justices' **normal judicial duties,** judicial immunity bars Plaintiff's claims.  Cf. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (ruling that judicial officer was "absolutely immune" from suit where plaintiff "failed to plead either absence of jurisdiction or that any of the judge's acts were not judicial in nature"); Decker v. Hillsborough County."*

Brady's claims do not include "normal" judicial duties. See Com.#28.

> "*Judge Howard violated Title LXII Criminal Code, Chapter 641:3 Falsification in Official Matters with a purpose to deceive the public in the performance of his official function as a judge in the State of New Hampshire*."

> "*To determine whether a judge acted 'in the clear absence of jurisdiction,' a court looks 'to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' " Madkins v. Platt, No. 15-3101-SAC-DJW, 2017 WL 3149299, at *2 (D. Kan July 25, 2017) (quoting Stump, 435 U.S. at 362).*

24. On page six of the Defendants motion to dismiss the Defendant state:

> "*In its 1984 decision in Pulliam v. Allen, 466 U.S. 522 (1984), a divided United States Supreme Court ruled that judicial immunity did not protect state judges from claims for injunctive relief in Section 1983 actions.  Congress thereafter amended Section 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted."*

25. In Georgevitch v. Strauss the Court Stated: "*Where a suit challenges 'statutes related*

*to the judicial process or statutes previously enforced by the particular  judge*

*against the plaintiff,' judges are proper parties*." See Georgevitch v. Strauss, 772

F.2d 1078, 1087 (3rd Cir. 1985).  Brady's claims include violations of statutes under

New Hampshire statute under Title LI, 491:8-a Motions for Summary and Title LXII

Criminal Code, Chapter 641:3 *Falsification in Official Matters.*

## CONSPIRACY:PREDETERMINED OUTCOME: NH STATE INTEREST IN "AXEL"

26. The seventh circuit court, in Nesses v. Shepard, ruled that Rooker-Feldman fails with

State conspiracy to reach an outcome because "*otherwise there would be no federal

remedy for a violation of federal rights whenever the violator so far succeeded in

corrupting the state judicial process as to obtain a favorable judgment.*" Nesses v.

Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995)

27. **New Evidence:**  In July of 2021, the University of New Hampshire, Institute on

Disability, stopped selling the public film "Axel," part of Dan Habib's "*Who Cares

about Kelsey*" teaching kit.  The U.N.H. Institute on Disability noted that: "*This

project was transferred to the Westchester Institute for Human Development in July

2021.*"  https://iod.unh.edu/projects/who-cares-about-kelsey.  The State of New

Hampshire had a vested interest in selling this film for the past seven years. The

film made outrageous claims about Axel's abilities using "*facilitated

communication (FC)*," a notorious,[1] fraudulent communication technique,[2],[3] that is

scientifically discredited.[4] Advocates for FC proffer the false hope of an instant cure

for Intellectual Disability. The use of FC, however, is at a minimum educational

---

[1] See New York Times, 2015; Slate Magazine, Auerbach; Science-based Medicine, Novella, "Decision against Spelling to Communicate – A Small Victory for Science. December 18, 2019. https://sciencebasedmedicine.org/decision-against-spelling-to-communicate-a-small-victory-for-science/?fbclid=IwAR0qV1d3NbpwFq3DRxcDQ5_jWuHRU3rIn5QMb8_YOS0iwr-0NqB8NIf1VY.

[2] *In the Matter of Louis Bass, Inc*., 119 FTC Docket C-3562 March 13, 1995. p. 323. ("*It is ordered*, That respondent, Louis Bass, Inc. (d//a Crestwood Company), … do forthwith cease and desist from misrepresenting, in any manner, directly or by implication, that such product enables autistic individuals to communicate through facilitated communication.")

[3] *Storch v. Syracuse University*, Sup Ct. of NY, Ulster Cty., 629 N.Y.S.2d 958 , June 20, 1995. (Civil claim for fraud against original promoter of FC in the US dismissed because his "optimistic opinions" about FC were merely "premature," and made in advance of studies that the FC lacked validity and was potentially dangerous.)

[4] Lilienfeld, et. Al., "The persistence of fad interventions in the face of negative scientific evidence: Facilitated communication for autism as a case example*," Evidence-Based Communication Assessment and Intervention*, 2014 pp. 62-101.

neglect, and otherwise an abusive practice. Moreover, there can be no greater

example of a practice that violates statutory requirements of Federal, and New

Hampshire Education law, than the use of FC in the classroom.

28. The documentary claimed Axel was cognitively functioning "on grade level" and "college-

bound." Lisa Brady submitted a copy of AC's draft I.E.P with Strafford Superior Court and the

New Hampshire Supreme Court, under seal, which; proved that at the time of filming, UNH

staff and Somersworth School Staff  knew or should have known, that AC had not mastered

basic numbers 1-10 or the alphabet. The draft I.E.P., under seal, proved that the criminal fraud

was intentional. It proved that the Somersworth School District and the University of New

Hampshire Institute on Disability conspired to commit fraud. It also vindicated Brady, who has

been subjected to court ruling claiming only that she "believed" the student was not on grade

level, while denying her discovery on claims.

    Lisa Brady had an impeccable teaching record until she reported civil rights violations and

the educational abuse and neglect of her student, AC, falsely featured within the "Axel" film.

The State of New Hampshire has not brought charges against the University of New

Hampshire Staff, Dan Habib, Michael McSheehan, or Somersworth School Administrators,

Superintendent Jeni Mosca, and Director of Special Education, Pam MacDonald, for

conspiracy to commit fraud. All teaching staff within the film that claimed Axel was

cognitively functioning on grade level were not being truthful.  Exhibit number two attached to

this objection, shows eight pictures of Axel, from the film.  Any reasonable person viewing the

pictures would conclude that Axel was forced to be a puppet.  Adults and other students were

grabbing hold of his hand and writing for him. The pictures show his complete disinterest in

being subjected to puppet status.  When he transferred to Lisa Brady's middle school program,

she too was expected to put her hand on AC's hand and treat him like a puppet.  She was

supposed to pretend he was functioning on a sixth-grade level, when he could not differentiate between a penny, nickel, or a dime. Lisa Brady is the only one that spoke up for AC and attempted to stop school officials from violating his rights and exploiting him within the public film.

Exhibit #3 attached below contains a blog post released on September 1, 2021 about the film 'Axel,' as it readies a new home-base in the state of New York. Janyce Boynton of Maine, a former speech therapist, detailed her background as a (former) facilitator. She was featured on Frontline's "*Prisoners of Silence*". She wrote about her experiences in an article called "Facilitated Communication: What Harm It Can Do - Confessions of a Former Facilitator." She has also written about her experiences in an article called "Facilitated Communication: What Harm It Can Do - Confessions of a Former Facilitator" (*EBCAI*, 2012) and co-hosted a series of talks about FC for the About Time Project with Susan Gerbic. When State's like New Hampshire refuse to hold local educational agencies and Universities accountable for serious violations against children, it does not go unnoticed and relocating the home base of the "Axel" film does not exonerate the State of New Hampshire from a duty to protect the public beyond the State of New Hampshire.

The UNH staff, the Somersworth Administrators, and the teaching staff were all mandated reporters. Brady blew the whistle on the fraud, lost her career, and lost her  retirement.  The retaliation that Brady experienced at her termination hearing, followed her to Strafford Superior Court, and then to New Hampshire Supreme Court. The State of New Hampshire is more interested in protecting corrupt school and university officials than they are in  providing due process to a special education teacher who tried to advocate for her student.  Lisa Brady was victimized by the Somersworth School District and then the New Hampshire Judicial System.

Wherefore Brady pleads this court:

- Deny the Defendants motion to Dismiss this action in its entirety; and

- Grant such further relief as is just and necessary

Respectfully submitted, (Sworn Affidavit Attached)


*Lisa Brady* ,  September 1, 2021

/s/ Lisa Brady, Pro se'
8 Constable Road
Durham, NH 03824
lisa.brady@comcast.net
603-292-5052

**CERTIFICATION OF SERVICE:**

I certify that on September 1, 2021,  that a copy of this objection was electronically served to Associate Attorney General  Ann Edwards and Attorney General JOHN M. FORMELLA through the Court's electronic filing system.

*Lisa Brady* , September 1, 2021

/s/ Lisa Brady, Pro Se'
8 Constable Road
Durham, NH 03824
lisa.brady@comcast.net
603-292-5052

---

**Exhibit 1** NH Supreme Court Order July 27, 2021

**Exhibit 2** picture clips from the Axel film showing educational neglect and exploitation of Brady's former special need's student

Exhibit 3 Article written about "Axel" film by Janyce Boynton of Maine

---

## SWORN AFFIDAVIT SIGNED
## BEFORE A NEW HAMPSHIRE
## NOTARY

Case No. 1:21-cv-00614-PB

### THE United State District Court of New Hampshire

### SWORN AFFIDAVIT

I declare under penalty of perjury under the laws of the State of New Hampshire, that I have read my objection to the Defendants' motion to dismiss with United States District Court of New Hampshire and I know it is true of my own knowledge, except as to those things stated upon information and belief, and as to those I believe it to be true.

**STATE OF NEW HAMPRHIRE COUNTY OF  STRAFFORD**

SUBSCRIBED AND SWORN TO BEFORE ME, on the 1st day of September 2021

_____
(Signature)

Lisa Brady
Printed Name

Signature _Rachel M. Deane_____ (Seal)

My Commission Expires: _May 19, 2026_____

RACHEL M. DEANE
NOTARY PUBLIC
State of New Hampshire
My Commission Expires
May 19, 2026

# EXHIBIT #1

## THE STATE OF NEW HAMPSHIRE
## SUPREME COUR

In Case No. 2021-0136, <u>Petition of Lisa M. Brady</u>, the court on July 27, 2021, issued the following order:

Supreme Court Rule 22(2) provides that a party filing a motion for rehearing or reconsideration shall state with particularity the points of law or fact that she claims the court has overlooked or misapprehended.

We have reviewed the claims made in Lisa M. Brady's motion for reconsideration and conclude that no points of law or fact were overlooked or misapprehended in our decision denying the petition for a writ of mandamus.  Accordingly, upon reconsideration, we affirm the May 17, 2021 decision and deny the relief requested in the motion.

This petition concerns the same trial court orders that Lisa M. Brady challenged in her Rule 7 appeal, case no. 2020-0274, <u>Lisa M. Brady v.</u>

<u>Somersworth School District, School Board, SAU #56 & a.</u>, and her prior petition for a writ of mandamus, case no. 2020-0592, <u>Petition of Lisa M. Brady</u>.  The court has thoroughly considered the issues raised in these matters, and will not consider any additional filings by Lisa M. Brady which seek to challenge either the trial court orders issued on December 13, 2019, March 10, 2020, and May 6, 2020 (dates of clerk's notices) or this court's orders issued in case nos. 20200274, 2020-0592, and 2021-0136.

<u>Relief requested in motion for reconsideration denied</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., participated.

**Timothy A. Gudas,**
**Clerk**

**Distribution:**

Clerk, Strafford County Superior Court, 219-2018-CV-00002
Honorable Mark E. Howard
Ms. Lisa Brady
Attorney General

# EXHIBIT#2

















# EXHIBIT #3

**https://www.facilitatedcommunication.org/blog/axel-raises-questions-about-fc-in-the-classroom**

*Janyce Boynton*

Janyce Boynton is an artist, educator, and advocate for evidence-based practices in the field of communication sciences and disorders. Her story as a (former) facilitator was featured on Frontline's "Prisoners of Silence". She has wrote about her experiences in an article called "Facilitated Communication: What Harm It Can Do - Confessions of a Former Facilitator" (*EBCAI*, 2012) and co-hosted a series of talks about FC for the About Time Project with Susan Gerbic. To date, she is one of the few facilitators world-wide to publicly acknowledge her role in producing FC messages and speak out against its use. She left teaching to pursue her artwork but has continued to be active in educating people about the dangers of FC and other facilitator-influenced techniques.

Available to speak online or in northern New England (U.S.)

## "Axel" Raises Questions About FC in the Classroom

Sep 1

Written By Janyce Boynton

"Axel" is a short film produced in 2012 by Dan Habib that focuses on a 12-year-old boy with autism and the staff at Idelhurst Elementary School in Somersworth, NH. The claim is that, through the use of Augmentative and Alternative Communication (AAC), Universal Design for Learning (UDL), Response to Intervention (RtI), social stories, visual schedules, and positive behavioral supports, Axel was able to transfer from a program that was focused on developing functional communication and behavioral skills directly into a 5th grade general education class and master the curriculum within a few months. By the end of the film, the principal of the school, Mike Quigley, reported the boy to be bilingual and bi-literate in English and Spanish, working on grade level, and excelling in his engagement with kids without disabilities.



*Two facilitators working with Axel. One holds his wrist to type, the other holds the board in the air. (from Axel, 2013 Youtube post, Dan Habib)*

Sound too good to be true? Yes, it did for me as well, so I took a closer look.

This video is different from the others I have reviewed so far, as, to me, it reveals more about the staff and politics of a particular school than simply on how ineffectual Facilitated Communication (FC) is as a technique for independent communication.

The staff seems to have banded together to "get themselves organized" and get Axel into the regular classroom. It appears there was a mandate from administration to mainstream all children, regardless of the individuals' educational needs and the appropriateness of the setting. This, even though, purportedly, Axel himself expressed to his teachers how chaotic the regular classroom was (through facilitator-authored messages?).



*The facilitator holds his hand to write with a pencil while Axel focuses on a laminated sentence strip. (from Axel, 2013 Youtube post, Dan Habib)*

Certainly, Axel's body language and non-verbal communication backs up these observations as, throughout the film, he spends a good deal of time running away from his paraprofessional into quieter places (e.g., back stage in the school's auditorium, into a field adjacent to the playground), walking around the classroom, staring out the window, sitting or standing on the periphery of groups (e.g, in gym class and on the playground), and whistling at or turning his body away from his facilitators as they grab his hand and force him to type.

Despite this sensory overload (their words, not mine), the educators insist on placing Axel in the exact environment that causes him distress: the regular classroom and then wonder why he uses self-stimming (e.g., sniffing or playing with a laminated sentence strip) to calm himself down. Assuming the filmmaker tried to put Axel and the staff in the best possible light for the video, full immersion in a mainstreamed classroom seems a less than acceptable result and it makes me wonder what happened to Axel when the cameras were turned off or, more likely, what was edited out of the film altogether.



*A student facilitates. Axel looks at the student, not at the paper. (from Axel, 2013 Youtube post, Dan Habib)*

Like other pro-FC films, the fact that FC is being used is not mentioned. Instead, FC is described by the educators both as a "communication system" and "Augmentative and Alternative Communication " (AAC). FC is neither, since it builds dependence, not independence, on an assistant who, in all likelihood, controls the typing activity.

Twice, a title page appears on screen to claim the staff helped Axel "type independently". The educators, and by default, the producer of the film, have an odd way of defining "independence," since only when the facilitators hold on to his hand was Axel able to produce written responses to their questions. Quigley offers a weak explanation that an adult needs to stabilize his hand in order for him to write out words and letters (typical FC rhetoric) but in the one scene that appears legitimate, Axel successfully negotiates selecting a movie from a Netflix list on an iPad. He is able to isolate a finger for pointing, engage with the iPad, understand the icons (e.g., pictures) on the screen, and make a selection without any cuing or other interference from an assistant. These are all requisite skills for interacting with a communication device independently. Whether Axel knows his letters or how to put them together to make words and sentences is not an issue addressed in the film. Since the goals from his previous school were centered around communication and behavior skills, my guess is he does not.

This film raises many questions about FC in the classroom:

1)   Axel is shown interacting with an iPad on his own, with the motor skills to select pictures (e.g., a desired movie from Netflix). Why, then, would he need someone to hold his hand to type?

2)   In most, if not all, the scenes showing him being facilitated, Axel is not looking at the keyboard or paper. How can he type or write accurately when he is not looking?

3)   If only trained facilitators are supposed to be practicing FC (by proponents' own standards), then why is a student being allowed to facilitate with Axel? Did that person complete the training required to become a facilitator?

4)   How is it, as the educators in the film claim, that Axel reached grade level in a matter of months? Given Axel's lack of attention and engagement in the classroom and with the letter board or iPad, it would take an extraordinary effort to make that happen, miraculous, even. Were the communications objectively tested to determine authorship?

5)   How is it that his mother and stepfather and the school system have a widely disparate (too widely disparate) view of Axel's ability to communicate in writing? His parents, who seem to have a good understanding of Axel's capabilities, report he uses non-verbal communication (e.g., pointing, taking them by the hand and leading them to what he wants) and limited vocalizations (e.g., grunts) to let them know what he wants at home. The educators claim he is reading and typing in two different languages. Could the new "communication system" have something to do with the disparity? Could Axel type out Spanish responses with a facilitator who only knew English? Could he type out English responses with a facilitator who only knew Spanish?

6)   Why was FC being used in the school system, against the recommendations of major organizations at the time with statements opposing its use: American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Psychological Association, American Speech-Language-Hearing Association, Association for Behavior Analysis, Behavior Analysis Association of Michigan, and the New York State Health Department? (For a current list, click here.)

7)   Did the parents give informed consent for the use of FC? Before using FC with Axel, did the staff clearly explain to them that FC had no scientific basis for its claims, that organizations such as ASHA, AACAP, APA, etc. had statements opposing its use, that reliable, evidence-based tests demonstrated facilitator control due, in part, to the ideomotor response, and that there were multiple instances of false allegations of abuse made against

families of individuals being subject to its use? And, were the parents informed of and given the option to choose alternative programming for their child? Given the fact that the educators were not calling their "communication system" FC, odds are they were not.

Recommended Reading:

Auerbach, David. (2015, November 12). Facilitated Communication is a Cult That Won't Die. This discredited technique for communicating with profoundly disabled people is being pushed into public schools. Slate.

Gorman, B.J. (2011). Psychology and Law in the Classroom: How the Use of Clinical Fads in the Classroom may Awaken the Educational Malpractice Claim. *Brigham Young University Education and Law Journal*, 2011 (1), 29-50.