```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Lisa M. Brady**

    v.                                              Case No. 21-cv-614-PB
                                                                              Opinion No. 2022 DNH 006

**Mark E. Howard et al.**

## MEMORANDUM AND ORDER

Lisa Brady, appearing pro se, has sued New Hampshire Superior Court Judge Mark Howard and four Justices of the New Hampshire Supreme Court. Brady's claims arise out of her failed state court action challenging the termination of her employment as a middle school teacher in Somersworth, New Hampshire. After Judge Howard disposed of her claims against the school defendants on summary judgment, Brady unsuccessfully appealed to the New Hampshire Supreme Court. She later filed this federal complaint, seeking to revive her state action because defendants allegedly failed to afford her due process and equal protection during the state court proceedings and penalized her for exercising her First Amendment rights. Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. Because the Rooker-Feldman doctrine deprives this court of jurisdiction to review and reverse the state court judgment, defendants' motion is granted.

## I. BACKGROUND

This case stems from Brady's seven-year-long effort to challenge the termination of her employment as a special education teacher in the Somersworth School District in 2015. See Compl. ¶ 2, Doc. No. 1. She alleges that she was fired in retaliation for reporting to the New Hampshire Commissioner of Education that the school district and the University of New Hampshire Institute on Disability had fraudulently portrayed one of Brady's autistic students in a documentary film as having recovered from a severe cognitive impairment using junk science. Id. ¶¶ 2-4. Brady first sued the school district and several school officials in federal court. The court (Judge DiClerico) dismissed her federal claims for failure to state a claim and declined to exercise supplemental jurisdiction over her state law claims. Brady v. Sch. Bd., Somersworth Sch. Dist., 2016 DNH 204, 2016 WL 6537629, at *1 (D.N.H. Nov. 3, 2016), aff'd, No. 16-2448, Slip Op. (1st Cir. Oct. 13, 2017). Brady then filed a complaint in the Strafford County Superior Court, challenging her termination on state law grounds. Compl. ¶¶ 1, 9. The case was assigned to Judge Howard.

In December 2019, Judge Howard granted the school defendants' motion for summary judgment on all claims. Compl. ¶ 19; see Compl. Ex. 15, Doc. No. 1-3 at 2-13. Brady moved for reconsideration on the ground that the court had overlooked and

2

misconstrued material facts. Compl. ¶ 23; Compl. Ex. 16, Doc. No. 1-3 at 15-20. After Judge Howard denied her motion, Brady again moved for reconsideration, this time arguing that the summary judgment ruling had erroneously cited her original complaint instead of her amended complaint, which she maintains had cured the deficiencies of the original pleading and mooted defendants' motion for summary judgment. Compl. ¶¶ 24-26; see Compl. Ex. 18, Doc. No. 1-3 at 24-29. Judge Howard denied the second motion for reconsideration as untimely. Compl. ¶ 27.

Brady then appealed the summary judgment ruling to the New Hampshire Supreme Court. Id. ¶ 33. Among the alleged errors she raised was the trial court's reliance on her superseded complaint. See id.; Compl. Ex. 20, Doc. No. 1-3 at 35.

On July 21, 2020, the New Hampshire Supreme Court dismissed Brady's appeal as untimely. Compl. ¶ 34; Compl. Ex. 21, Doc. No. 1-3 at 59. The court explained that Brady had filed her notice of appeal more than thirty days after the denial of her first motion for reconsideration and that her successive motion did not toll the running of the appeal period. Compl. Ex. 21, Doc. No. 1-3 at 59. Brady moved for reconsideration, arguing that the timeliness requirement should be waived in part because Judge Howard's error violated her due process rights and amounted to "fraud on the court." Compl. Ex. 22, Doc. No. 1-3 at 66. The New Hampshire Supreme Court denied the motion on

August 18, 2020.  Compl. ¶ 38; Compl. Ex. 23, Doc. No. 1-3 at 69.

After her direct appeal of the summary judgment ruling proved unsuccessful, Brady twice petitioned the New Hampshire Supreme Court to exercise its original jurisdiction over her claims of judicial error in the superior court action.  Compl. ¶¶ 40, 43.  Both petitions were denied.  See Compl. Ex. 26, Doc. No. 1-3 at 89; Compl. Ex. 28, Doc. No. 1-3 at 105.  Brady's motion for reconsideration of the denial of her second petition was pending before the New Hampshire Supreme Court when she filed her federal complaint on July 22, 2021.  Compl. ¶ 41; see Compl. Ex. 29, Doc. No. 1-3 at 107-14.  The following week, the New Hampshire Supreme Court denied the motion, explaining that Brady's second petition raised the same issues that she had litigated unsuccessfully both on direct appeal of the summary judgment ruling and in her first petition.  See Ex. 1 to Pl.'s Obj. to Defs.' Mot. to Dismiss, Doc. No. 7 at 14.

Brady's federal complaint seeks declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 1985(3) on the ground that Judge Howard and the New Hampshire Supreme Court Justices violated her rights under the First and Fourteenth Amendments to the U.S. Constitution.  As she argued in her state court proceedings, Brady alleges that Judge Howard erroneously relied on her superseded complaint to grant the school defendants'

4

motion for summary judgment. From this, Brady asserts that Judge Howard engaged in "trickery and fraud on the court to dispose of [her] civil case" with the "sinister" intent of defaming her and retaliating against her. Compl. ¶¶ 1, 18, 20; see id. ¶¶ 21, 28, 29, 31. She likewise asserts that the New Hampshire Supreme Court Justices acted in "bad faith" because they "tacitly approved and perpetuated Judge Howard's unlawful and intentional use of legally void pleadings," thereby "show[ing] a concerted effort to deny . . . her right to access the courts in the state of New Hampshire." Id. ¶¶ 31, 36, 39.

Based on these allegations, Brady requests "an injunction requiring the Defendants to remand [her] civil case back to Strafford Superior Court so that she can seek justice for her unlawful termination." Id. at 24. She also seeks declarations that Judge Howard's summary judgment ruling and the New Hampshire Supreme Court's July 21, 2020 order dismissing her direct appeal of that ruling were abuses of discretion and violated her federal constitutional rights. Id.

Defendants have moved to dismiss the complaint under Rule 12(b)(1) on the ground that this court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. In the alternative, defendants argue that dismissal is warranted under Rule 12(b)(6) because Brady's claims are barred by judicial and sovereign immunity. Because I conclude that the complaint must

5

be dismissed for lack of subject matter jurisdiction, I do not reach defendants' alternative arguments.

## II. STANDARD OF REVIEW

When subject matter jurisdiction is challenged under Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (cleaned up). Thus, where, as here, a plaintiff sues in federal court, the burden to establish jurisdiction is on the plaintiff. See id.

In determining whether Brady has met this burden, I must construe the complaint liberally, treat all well-pleaded facts as true, and view them in the light most favorable to her. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). I may also consider extrinsic evidence, such as exhibits and affidavits, without converting the motion to dismiss into one for summary judgment. See Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011); Pitroff v. United States, 2017 DNH 158, 2017 WL 3614436, at *3 (D.N.H. Aug. 22, 2017).

## III. ANALYSIS

Defendants' principal argument is that this court lacks subject matter jurisdiction over Brady's claims under the Rooker-Feldman doctrine because her claims amount to an impermissible attempt to appeal a final state court judgment to a federal district court. In her objection, Brady argues that

6

the doctrine does not apply because (1) her state court proceedings were not final when she filed her federal complaint, and (2) she is not challenging the state court judgment but conspiratorial conduct that corrupted the judicial process.

The Rooker-Feldman doctrine presumes that, with some exceptions not relevant here, the U.S. Supreme Court has exclusive jurisdiction over state court judgments. Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64-65 (1st Cir. 2018). The doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  In other words, "if federal litigation is initiated after state proceedings have ended, and the plaintiff implicitly or explicitly seeks review and rejection of the state judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts." Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24 (1st Cir. 2005) (cleaned up).  When Rooker–Feldman applies, this court lacks subject matter jurisdiction to review a state court judgment even if the judgment is wrong or was entered following patently

7

unconstitutional proceedings.  See D.C. Ct. App. v. Feldman, 460 U.S. 462, 486 (1983).

Brady's own pleadings make clear that the Rooker-Feldman doctrine bars her federal suit.  The state court proceedings ended before Brady – the losing party in those proceedings – filed this federal action.  For purposes of Rooker-Feldman, state court proceedings have ended if the highest state court in which review is available has affirmed the judgment below, rendering the judgment susceptible to certiorari review under 28 U.S.C. § 1257.  Federación, 410 F.3d at 24.  "Put another way, if a state court decision is final enough that the Supreme Court does have jurisdiction over a direct appeal, then it is final enough that a lower federal court does not have jurisdiction over a collateral attack on that decision."  Id. at 27.  The New Hampshire Supreme Court issued its final decision in Brady's superior court action on August 18, 2020, when it denied her motion to reconsider its order declining to entertain her direct appeal from the entry of summary judgment.  At that point, the trial court's order granting the school defendants' motion for summary judgment became a final state court judgment appealable to the U.S. Supreme Court.  Thus, Brady's state court proceedings ended almost a year before she filed this action in July 2021.

Brady argues that her state court proceedings were still ongoing when she filed her federal complaint because the New Hampshire Supreme Court had yet to adjudicate her motion for reconsideration of the denial of her second petition for original jurisdiction.  Her petitions for original jurisdiction, however, did not extend the end date of her state court proceedings for purposes of the Rooker-Feldman doctrine.  As the New Hampshire Supreme Court explained, those petitions merely rehashed the same arguments that Brady had raised unsuccessfully in her direct appeal.  Stated differently, the petitions were failed attempts to get second and third bites at the apple.  A litigant cannot revive a final state court judgment with post-judgment maneuvers that have no basis in the law.  Thus, the fact that one of Brady's improperly filed post-judgment petitions was pending when this lawsuit was filed is inapposite.

It is equally clear that Brady's federal action pertains to alleged injuries caused by the state court judgment.  The complaint challenges as fraudulent, improper, and illegal the trial court's entry of summary judgment in the school defendants' favor and the New Hampshire Supreme Court's decision to decline appellate review.  According to Brady, defendants used those adverse rulings to deny her a meaningful opportunity to contest her unlawful termination at trial, in violation of her due process, equal protection, and free speech rights.  At

9

bottom, the complaint asserts that defendants violated Brady's civil rights by ruling against her.  Her federal claims are, therefore, a thinly veiled attack on the state court judgment itself.  The only way for me to conclude that Brady suffered a cognizable injury would be to find that defendants wrongly decided the issues before them.  This is precisely the type of suit that Rooker-Feldman prevents federal district courts from hearing.

Brady argues that her conspiracy claim asserted under 42 U.S.C. § 1985(3) fits within an exception to Rooker-Feldman because it alleges an injury independent of the state court judgment.  Some courts have recognized that a conspiracy claim falls outside of Rooker-Feldman if the claim is cognizable on its face and pleads an injury distinct from the state court judgment.  See, e.g., Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 172 (3d Cir. 2010); Frierson-Harris v. Kall, 198 F. App'x 529, 530 (7th Cir. 2006).  Brady's conspiracy claim, however, does not fit within this exception because it is neither cognizable under § 1985(3) nor based on an independent injury.

Section 1985(3) creates a private cause of action "for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

10

protection of the laws, or of equal privileges and immunities under the laws.'" Burns v. State Police Ass'n of Mass., 230 F.3d 8, 12 n.3 (1st Cir. 2000) (quoting 42 U.S.C. § 1985(3)). To state a claim under this statute, "the plaintiff must, among other requirements, allege that the conspiratorial conduct of which [she] complains is propelled by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Diva's Inc. v. City of Bangor, 411 F.3d 30, 38–39 (1st Cir. 2005) (cleaned up). Brady alleges that she belongs to a class of pro se litigants. That, however, is not a cognizable class for purposes of § 1985(3). Scheib v. Butcher, 602 F. App'x 67, 68 n.1 (3d Cir. 2015); Anderson v. Sullivan, 877 F.2d 64 (9th Cir. 1989) (table); Eitel v. Holland, 787 F.2d 995, 1000 (5th Cir.), on reh'g, 798 F.2d 815 (5th Cir. 1986).[1] Thus, Brady has failed to plausibly allege that § 1985(3) even provides relief for the type of conspiracy defendants purportedly formed against her.

Moreover, Brady's conspiracy claim does not assert an injury independent of the state court judgment. Rather than

---

[1] The alternative animus alleged in the complaint fares no better. Brady alleges that defendants conspired to preclude her from going to trial because the University of New Hampshire had a vested interest in selling the purportedly fraudulent film featuring Brady's autistic student. But "conspiracies motivated by economic or commercial animus" are outside the scope of § 1985(3). United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 838 (1983).

11

alleging facts indicative of a corrupt judicial process, Brady merely speculates that, because adverse rulings were made against her, defendants must have engaged in a conspiracy to deprive her of her day in court.  This is nothing more than an improper attempt to recast her challenge to the adverse rulings as a distinct injury under the guise of conspiracy.  See Callaghan v. Shirazi, 215 F.3d 1312 (1st Cir. 2000) (table) (holding that Rooker-Feldman barred a claim that defendants had "conspired to cause the state court to reach a wrong result" because "[a]s framed, it simply seems to be an indirect way of again saying that the state court's decisions were wrong"); Frierson-Harris, 198 F. App'x at 530 (holding that plaintiff's conspiracy claim was barred by Rooker-Feldman where it was "apparent from the complaint that the basis for the 'conspiracy' reaches no further than the state court's adverse rulings and not from a dishonest judicial proceeding").  Accordingly, Brady's conspiracy claim is not exempted from Rooker-Feldman because "the only real injury to [her] is ultimately still caused by a state court judgment." Davison v. Gov't of P.R. - P.R. Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006).

The final requirement for applying the Rooker-Feldman doctrine – that the relief sought in federal court is directed towards undoing the state court judgment – is also satisfied here.  Brady seeks an injunction mandating that her civil case

12

be remanded to the superior court for a new adjudication on the merits, as well as declarations that the adverse rulings violated her constitutional rights.  Because either form of relief would "effectively reverse the state court decision or void its holding," her claims are barred by Rooker-Feldman.  See Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999) (cleaned up); see also Walton v. Claybridge Homeowners Ass'n, Inc., 433 F. App'x 477, 478-79 (7th Cir. 2011) (holding that plaintiff's suit against a state court judge and others was barred by Rooker-Feldman where plaintiff asked for injunctive relief from state court rulings); Marciano v. White, 431 F. App'x 611, 612 (9th Cir. 2011) (same); Frierson-Harris, 198 F. App'x at 530 (same).

Brady's claims are, at their core, the claims of a disgruntled litigant, asking this court to review and to deem null and void state court orders that she believes are wrong and injurious to her.  I would necessarily be called upon to review the validity of those orders to adjudicate her federal claims.  Because the complaint "is, in effect, an end-run around a final state-court judgment," the Rooker-Feldman doctrine deprives me of jurisdiction to consider Brady's claims.  See Klimowicz, 907 F.3d at 66-67.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I grant defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. No. 6). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 7, 2022

cc: Lisa M. Brady, pro se
    Anne M. Edwards, Esq.