THE UNITED STATES DISTRICT COURT

OF NEW HAMPSHIRE

January 15, 2022

Lisa M. Brady, Pro se'
  *Plaintiff*
     v.                                                    Case No. 1:21-cv-00614-PB
Judge Mark E. Howard et al.
  *Defendants*

**PLAINTIFF MOTION TO AMEND COMPLAINT**
**AND ALTER OR AMEND JUDGEMENT**

Pro se' Plaintiff, Lisa Brady, respectfully moves this court under Rule 15(a)(2) and 59(e) of the Federal Rules of Civil Procedure to permit the Plaintiff to amend her complaint to cure the deficiencies and alter its judgment entered on January 7, 2022 by the honorable Judge Paul J. Barbadoro. In support of this motion, Brady relies on the federal rules for procedure, established case law, the record submitted to the court, accompanying affidavit, and argument herein to support that Ms. Brady's complaint warrants amendment so that justice can be served. Title 42 under the United States Code and Section §1983 provides that an individual has the right to sue *state* government employees, acting "under color of state law" in violation of the U.S Constitution.  Ms. Brady pleads this Court to allow her to amend her complaint and allow her to obtain justice for the egregious assault on her constitutional rights. Brady's arguments set forth standing to show that the N.H. Judges are proper defendants.

**ARGUMENTS**

   **A. PRO SE LITIGANTS**

1

The U.S. Supreme Court, in Foman v. Davis, set precedential case law for allowing pro se' litigants the opportunity to amend their complaint for "*any apparent or declared reason" such as undue delay, prejudice, or futility, plaintiffs should be given leave to amend their complaints.*" 371 U.S. 178, 182 (1962).  Pro se' litigants are entitled to "*meaningful access*" to courts, it is a "*fundamental constitutional right*." Bounds v. Smith, 430 U.S. 817, 828 (1977). Courts promote a flexible judicial approach when a pro se' litigant's due process is bulldozed by an "inadvertent forfeiture of important rights because of their lack of legal training." Traguth v. Zuck, 710 F.2d 90, 95 (2nd Circuit 1983). The Second Circuit Court has stated:

> *"In addition to liberally construing pro se complaints, a district court should not dismiss a pro se complaint without granting the petitioner leave to amend if "'a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Andersen v. Young & Rubicam Adver.,487 Fed. Appx. 675, 676 (2d Cir. 2012). See also* 909 F.2d 8,15(1st Cir. 1990), Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B. CRUX OF THE COMPLAINT**

The core of Ms. Brady's complaint is valid and linked to the State of New Hampshire's use of the judicial system to retaliate against the Plaintiff, a whistle blower, and to conspire and cover up the State's involvement with perpetuating the sale of a film that publicly exploited Ms. Brady's former special needs student, a non-verbal child with autism. See Com No. 2-8.  The Plaintiff's injuries were primarily caused by the unlawful acts of the New Hampshire State Judge Defendants who knowingly, willfully, and maliciously abused their discretion by denying Brady, even the most basic due process right of discovery, to protect the State of New Hampshire and the University of New Hampshire, Institute on Disability, from humiliation over the

2

public exploitation of Plaintiff's former special education student, featured in a fraudulent public film, "Axel," produced by Dan Habib, from the Institute on Disability.

Dan Habib's "Axel" film is part of his coveted "*Who Cares about Kelsey*" teaching kit which continues to sell world-wide without any legal consequences. The State of New Hampshire has good reason to want to silence Ms. Brady.  The film claims to be based on the truth when it was actually borne out of a three-ring circus. Staff from the University of New Hampshire Institute on Disability descended upon the Somersworth campus with their film crew to tell the world about the miraculous transformation of "Axel."  They likely targeted him because he was from a minority family that depended on the State of New Hampshire. The staff at Somersworth and the U.N.H. Institute on Disability used facilitated communication (FC), a notorious,[1] fraudulent communication technique,[2],[3] that is scientifically discredited.[4]  Advocates for FC proffer the false hope of an instant cure for Intellectual Disability. The use of FC, however, is at a minimum educational neglect, and otherwise an abusive practice. Moreover, there can be no

---

[1] See New York Times, 2015; Slate Magazine, Auerbach; Science-based Medicine, Novella, "Decision against Spelling to Communicate – A Small Victory for Science. December 18, 2019. https://sciencebasedmedicine.org/decision-against-spelling-to-communicate-a-small-victory-for-science/?fbclid=IwAR0qV1d3NbpwFq3DRxcDQ5_jWuHRU3rIn5QMb8_YOS0iwr-0NqB8NIf1VY.
[2] *In the Matter of Louis Bass, Inc*., 119 FTC Docket C-3562 March 13, 1995. p. 323. ("*It is ordered*, That respondent, Louis Bass, Inc. (d//a Crestwood Company), … do forthwith cease and desist from misrepresenting, in any manner, directly or by implication, that such product enables autistic individuals to communicate through facilitated communication.")
[3] *Storch v. Syracuse University*, Sup Ct. of NY, Ulster Cty., 629 N.Y.S.2d 958 , June 20, 1995. (Civil claim for fraud against original promoter of FC in the US dismissed because his "optimistic opinions" about FC were merely "premature," and made in advance of studies that the FC lacked validity and was potentially dangerous.)
[4] Lilienfeld, et. Al., "The persistence of fad interventions in the face of negative scientific evidence: Facilitated communication for autism as a case example,*" Evidence-Based Communication Assessment and Intervention*, 2014 pp. 62-101.

3

greater example of a practice that violates statutory requirements of Federal, and New Hampshire Education law, than the use of FC in the classroom. In using facilitated communication, the student miraculously transformed from a significantly cognitively impaired sixth-grade student to one that was functioning academically "on grade-level" and "college bound." When the student transferred into Ms. Brady's sixth-grade inclusion program, the Somersworth Superintendent, Jeni Mosca, and Director of Special Education, Pam MacDonald, fully expected her to go along with the charade and continue to neglect her student using FC. Ms. Brady was not alone in her condemnation of the school's top administrators, lying to the public about the student but, she was the only one that had the courage to file multiple civil rights and criminal complaints, that were delivered to the "*deaf ears"* of New Hampshire State Officials. Ms. Brady was a popular teacher with an impeccable teaching record prior to reporting the educational neglect and abuse of her student, something the law mandated that she was required to do. The Plaintiff is now fifty-eight years old and her career, and financial earnings (including retirement) were decimated after she followed her mandated duty to report the abuse of her student.

  Ms. Brady provided the N.H. Supreme Court Judges with a copy of her former student's draft IEP which; detailed his cognitive abilities at the time of filming. Com. No. 5.  It proved that Dan Habib and the Somersworth School District knew or should have known that the student featured in the film "Axel," a sixth-grade non-verbal child with Autism, functioned on a level consistent with a pre-school student and was not capable of performing "grade level" work and was not "*on a path to college*" as

4

attested to within the film. They had evidence to prove the film was fraudulent, and yet there has never been a criminal investigation or a public retraction about the veracity of truth asserted within the "Axel" film. The State of New Hampshire has a vested interest in perpetuating the fraudulent film that was funded by grants through the State of New Hampshire and the U.S. Department of Education.

**C. AMENDMENTS**

- The plaintiff acknowledges that she erred with regard to her claim number 5, conspiracy violations of 1985(3) (class-based) and would like to amend her complaint so that the claims are processed through U.S.C. Section §1983, color of law.

- The Plaintiff would also request that she be allowed to include additional State actors within her suit; The Institute on Disability, President of U.N.H., Dan Habib, Michael McSheehan, and the New Hampshire Commissioner of Education.

**D. REMEDIES**

The United States Supreme Court held "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." 466 U.S. at -541-542

- The amended complaint would seek monetary compensation and a jury. Judges are granted absolute immunity from damage liability for "acts committed within their judicial jurisdiction." Pierson v. Ray, 386 U.S. 547, 554 (1967).

5

- A judge's engagement in a conspiracy, as an arm of the state, to purposefully commit a class B felony (falsification in official matters) to dispose of Ms. Brady's case is not considered an act within a judge's jurisdiction.

- The Plaintiff's amended complaint would include injunction remedy for a court order to require the Defendant's to widely publish the true facts related to the fraudulent "Axel" film, part of the *Who Cares about Kelsey* teaching kit, that continues to sell world-wide without penalty. This is a matter of public importance and the public has a right to know.

- An amended remedy would also include injunction for an order that would require the Defendant's to produce and widely published document to restore "reputational" damages to the Plaintiff.

- The amended complaint would continue to include reference to the Defendant's paying all incurred court and legal expenses as a result of this suit.

**E. OVERCOMING ROOKER FELDMAN**

On page 12 of the Federal District order the Court stated:

*"Brady's conspiracy claim is not exempted from Rooker-Feldman because "the only real injury to [her] is ultimately still caused by a state court judgment." Davison v. Gov't of P.R. - P.R. Firefighters Corps., 471 F.3d 220, 223 (1st Cir. 2006)."*

The State conspiracy that caused Ms. Brady's injuries began long before any court decision was ever issued in any New Hampshire State Court judgment. See Complaint No. 2 and 8. Brady attached evidence within her complaint (exhibits three and four) which; show that in 2014, New Hampshire Commissioner of Education, Virginia Barry, acting on behalf of the State of New Hampshire, knowingly and willfully refused to act

6

on charges, lodged by Ms. Brady, that detailed the educational neglect, exploitation, and fraud related to the "Axel" film. In *Brokaw v. Weaver*, a child neglect case, the seventh Circuit Court ruled that the Plaintiff was not barred by Rooker-Feldman because the conspiracy among the Defendants' happened long before any state court judgment. The claim stated

*"The defendants conspired, prior to any judicial involvement, to cause false child neglect proceedings to be filed."* Brokaw v. Weaver, 305 F.3d 660 (7th Cir. 2002). *Brady's claims would fall outside the Rooker-Feldman realm because the State's retaliation and conspiracy began years before the first state court decision.*

### F. CLASS B FELONY CLAIMS

The federal court decision glossed over class B felony allegations against Superior Court Judge Mark Howard and acts considered in furtherance of those felonies committed by the N.H. Supreme Court Justices. Ms. Brady's allegations can be corroborated within the attached complaint exhibits and are a matter of public record. Just some of the claims from the complaint included:

Claim number 20 stated:

> *"The New Hampshire Supreme Court created a liberty interest in a person's reputation protected by the due process clause of the state constitution*. See State v. Veale 972A.2d 1009 (N.H. 2009). Judge Howard knew or should have known that his omnibus order included <u>false defaming statements asserted as truth within a public record that would tend to cause Brady public hatred, contempt, or ridicule.</u>"*

Claim number 23 stated:

> *"Judge Howard defied N.H. rules for summary judgment when he <u>purposefully switched pleadings</u> to dispose of Brady's case:*

7

> *See NH Title LI, 491:8-a Motions for Summary Judgment. – III. "Summary judgment shall be rendered forthwith <u>if the pleadings</u>, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Judge Howard acted outside of his jurisdiction when he chose to tamper with Brady's legal record and use "legally void" pleadings to constitutionally harm Lisa Brady."*

Claim number 39 Brady stated:

> *"Judge Howard <u>violated Title LXII Criminal Code, Chapter 641:3 Falsification in Official Matters</u> with a purpose to deceive the public in the performance of his official function as a judge in the State of New Hampshire. Judge Howard made a written false statement in a public document, his omnibus order, which; he knew or should have known was not true. He knowingly created a false impression within his omnibus order when he granted the Somersworth School District summary judgment. He purposefully used Brady's "original" pleadings rather than the "amended" writ. Judge Howard's omnibus order is a fraud on the Court and should be voided. As a legal public document, it invites reliance from other legal professionals that look to case law in performance of their duties. As a public document it also perpetuated the defamation of character that Brady's amended writ attempted to redress in Strafford Superior Court. See Com No 28."*

Claim number 39 Brady stated:

> *The New Hampshire Supreme Court order failed to address the New Hampshire State Constitution violations alleged by Brady and other salient claims that challenged Judge Howard's legal, ethical, and judicial competence. The Supreme Court knew or should have known that Judge Howard's omnibus order was a "void judgment" because it relied on a "dead letter" (the original writ). They knew or should have known that Judge Howard's <u>omnibus order was a fraud on the court</u>; that the judge <u>knowingly replaced Brady's legal pleadings</u> with a void court document in <u>order to deceive Brady and the public</u>. The Supreme Court's inaction and failure to supervise or sanction Judge Howard's action shows <u>a concerted effort to deny Lisa Brady her right to access the courts in the state of New Hampshire</u>. The New Hampshire Supreme Court aided and <u>abetted Judge Howard's unlawful actions</u>, with willful blindness under color of state law and, in violation of Brady's fourteenth amendment right to equal access under the U.S. Constitution.*

**G. OTHER MATERIAL FEDERAL ORDER INCONSISTENCIES**

8

On page three of the federal court order the Court failed to report the discriminatory animus associated with Superior Court Judge Howard's ruling on Ms. Brady's second motion for reconsideration and simply stated: "Judge *Howard denied the second motion for reconsideration as untimely.  Compl. ¶ 27"* and further down page 3 stated:

> *"On July 21, 2020, the New Hampshire Supreme Court dismissed Brady's appeal as untimely.  Compl. ¶ 34; Compl. Ex. 21, Doc. No. 1-3 at 59.  The court explained that Brady had filed her notice of appeal more than thirty days after the denial of her first motion for reconsideration and that her successive motion did not toll the running of the appeal period."* P.3 Order.

Ms. Brady filed a second motion for Judge Howard to correct his "then error" under court rule 1 as stated in her federal complaint under 26:

> *" Plaintiff, Lisa Brady, files this motion to reconsider summary judgement under Superior Court General Principles Rule 1. Scope, Purpose, Enforcement, Waiver and Substantial Rights (e)* ***A plain error that affects substantial rights may be considered and corrected by the court of its own initiative or on the motion of any party."*** **[E18 P.187-193].**

AND, under number one of Brady's motions she stated:

> *"Brady's amended complaint granted by this Court on February 12, 2019 supplanted the original complaint filed on January 2, 2018.  See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). Because the Court's analysis and findings quoted the original complaint throughout the order, it unduly prejudiced the plaintiff."*

Judge Howard had jurisdiction to waive any time line to correct his mistake, and was legally and ethically obligated under Rule 1. When he chose to act outside his jurisdiction, he allowed a false legal document to remain on the record.  A false document that financially buried Ms. Brady's chance of recovering any damages from the egregious retaliation that she had endured. She filed her appeal to the N.H. Supreme Court and within the federal complaint number thirty-four it stated:

9

> *"**On July 21, 2020**, the New Hampshire Supreme Court abused their discretion when they denied Lisa Brady's mandatory appeal and stated: "The superior court denied Lisa Brady's motion to reconsider the court's December 12, 2019 order on March 10, 2020. The motion to reconsider that she filed on March 17, 2020*, **was a successive-post decision motion that did not stay the running of the appeal period**. *Consequently, the appeal should have been filed on or before April 9, 2020. The notice of appeal was filed on June 1, 2020, and thus is untimely filed." [E21 P.223224].*

The New Hampshire Supreme Court knew or should have known that prior case law delivered by them was evidence of a discriminatory animus: (Com. No. 35)

> "The N.H. Supreme Court had something different to say in *Prime Financial Group*, 41 N.H. at 34, 676 A.2d at 530:
> *"We hold that Ellis does not apply to a motion for a new trial and a <u>successive motion for reconsideration</u>. When a court denies a party's motion for a new trial,* **the party should be allowed to point out the errors of the lower court's order, and the lower court should be given the opportunity to correct those errors***. Cf. Dziama v. City of Portsmouth,* <u>140 N.H. 542, 545</u>, <u>669 A.2d 217, 218-19</u> *(1995) (recognizing that in context of RSA 677:3 (1986 Supp. 1988)."* Com Ex. 27 for mandamus

Judge Howard should have corrected his error and when he chose to constitutionally harm Ms. Brady, his actions went from being a simple 'error' to a purposeful class B felony and a fraud upon the court. Likewise, the N.H. Supreme Court justices became vicariously liable for his actions when they failed to do their job as a court of final jurisdiction.

Ms. Brady respectfully disagrees with the N.H. Federal District Court's determination that her complaint, for the purpose of tolling, ended on August 18, 2020. Her petitions for "original jurisdiction" *were not "second and third bites at the apple."* Order P. 9. The N.H. Supreme Court order that the Federal Circuit Court referenced was from a decision that the N.H. Supreme Court issued on <u>July 27, 2021</u>, five days after the Plaintiff filed her federal complaint. Pl.obj. to def. MTD Ex.1. The N.H. Supreme

10

Court did not provide any decisions with regard to Mandamus expressing that Plaintiff was attempting to get a second of third bite of the apple, they simply stated "*Petition for a writ of mandamus is denied*." See Rule 11. (Com. Ex. 26&28).  It was not the least bit meaningful and only confused Ms. Brady.

Under New Hampshire Supreme Court, Rule 3 Definitions, they define "Petition for original jurisdiction":

> "*Request that the supreme court exercise its original jurisdiction, whether exclusive or nonexclusive and whether in aid of its appellate jurisdiction or its supervisory jurisdiction, and that the court issue an extraordinary writ or grant other suitable relief."   The process is judicial and open to all citizens in the State of New Hampshire.*"

Ms. Brady's petition was extraordinary and clearly met the guidelines for exceptionality and relief. She filed multiple petitions because she made multiple mistakes i.e. naming the Somersworth School District instead of Judge Howard as the Defendant. Had the Supreme explained anything meaningful, she might have understood why they were denying her petitions.

**Conclusion**

Brady respectfully pleads this court to grant her motion to and alter the January 7, 2022 order so that she can Amend her complaint.

Respectfully submitted, (Sworn Affidavit Attached on p.13)

*Lisa Brady*

_____, January 15, 2022

/s/ Lisa Brady, Pro se'
8 Constable Road

11

Durham, NH 03824 lisa.brady@comcast.net
603-292-5052


**CERTIFICATION OF SERVICE:**

- I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ Lisa Brady, Pro Se'

12

## SWORN AFFIDAVIT SIGNED BEFORE A NEW HAMPSHIRE NOTARY

### THE United State District Court of New Hampshire

**STATE OF** New Hampshire

**COUNTY OF** Strafford

PERSONALLY came and appeared before me, the undersigned Notary, the within named Lisa Brady, who is a resident of Strafford County, State of New Hampshire, and makes this her statement and Affidavit upon oath and affirmation.

I declare under penalty of perjury under the laws of the State of New Hampshire, that I have read my motion: PLAINTIFF MOTION TO AMEND COMPLAINT AND ALTER JUDGEMENT under Rule 15(a)(2) and 59(e), submitted to the United States District Court of New Hampshire and I know it is true of my own knowledge, except as to those things stated upon information and belief, and as to those I believe it to be true. DATED this the 15th day of January, 2022 and extending to the date that the motion is electronically filed with the Court.

_Lisa Brady_
Signature of Affiant

SWORN to subscribed before me, this 15th day January, 2022

_[signature]_
NOTARY PUBLIC

My Commission Expires:
02/20/2024

[Notary Seal: Sara E McHugh, Notary Public, New Hampshire, Comm. Expires 02-20-2024]